# 15-0315-cv

## United States Court of Appeals

*for the*

## Second Circuit

HENRY PEREZ, On behalf of themselves and others similarly situated,
BASELICE RALPH, On behalf of themselves and others similarly situated,
JUAN BAYRON, On behalf of themselves and others similarly situated, JERRY
CORDERO, On behalf of themselves and others similarly situated, RONALD
EASON, On behalf of themselves and others similarly situated, DONALD
KOONCE, On behalf of themselves and others similarly situated, JOSEPH ORO,
On behalf of themselves and others similarly situated, RUBEN RIOS, JR., On
behalf of themselves and others similarly situated, PEDRO ROSADO, On behalf
of themselves and others similarly situated, DEREK G. WALTHER, On behalf of
themselves and others similarly situated,

*Plaintiffs-Appellants*,

ELIZABETH KAY BESOM,

*Plaintiff*,

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## APPENDIX

GLADSTEIN, REIF & MEGINNISS, LLP
*Attorneys for Plaintiffs-Appellants*
817 Broadway, 6th Floor
New York, New York 10003
(212) 228-7727

v.

THE CITY OF NEW YORK, MAYOR BILL DE BLASIO, THE NEW YORK
CITY DEPARTMENT OF PARKS & RECREATION, and MITCHELL J.
SILVER, in official capacity as Commissioner of the Department of Parks and
Recreation,

*Defendants-Appellees.*

**i**

# TABLE OF CONTENTS

**Page**

District Court Docket Entries ................................... A-1

Complaint with Attachments thereto, dated
   June 18, 2012 ........................................................ A-50

Answer to the Complaint, dated August 9, 2012 ....... A-65

Proposed Amended Complaint, dated
   September 10, 2012 ............................................... A-74

Answer to the Amended Complaint, dated
   November 13, 2012 ............................................... A-84

Second Amended Complaint, dated March 29, 2013    A-95

Answer to Second Amended Complaint, dated
   April 10, 2013 ...................................................... A-107

Notice of Motion for Summary Judgment, dated
   April 3, 2014 ........................................................ A-119

Defendant's Local Rule 56.1 Statement of
   Undisputed Material Facts, dated April 3, 2014 .... A-122

Declaration of James Reif, for Plaintiffs, in Support
   of Motion, dated May 16, 2014 ............................ A-136

   Exhibit 3 to Reif Declaration -
   Excerpts of Deposition Testimony of Kiaran
   Pierre, dated August 6, 2013................................. A-145

   Exhibit 34 to Reif Declaration -
   Excerpts of Deposition Testimony of Derek G.
   Walther, dated November 4, 2013 ......................... A-158

   Exhibit 54 to Reif Declaration -
   Excerpts of Deposition Testimony of Matthew
   Louis Greenberg, dated September 19, 2013......... A-165

ii

**Page**

Exhibit 57 to Reif Declaration -
Affidavit of Andre Greenfield, sworn to
December 16, 2013 ................................................. A-170

Exhibit 58 to Reif Declaration -
Affidavit of David Calderone, sworn to
December 16, 2013 ................................................. A-174

Exhibit 59 to Reif Declaration -
Excerpts of Deposition Testimony of Tonya
Prince, dated January 9, 2014 ............................... A-178

Exhibit 74 to Reif Declaration -
Declaration of Marlena Poelz-Giga, dated
May 16, 2014 ........................................................ A-190

    Appendix 1 to Poelz-Giga Declaration -
    Excerpts of Parks Department Handbook .......... A-198

    Appendix 2 to Poelz-Giga Declaration -
    E-mail Correspondence, dated June 11, 2013
    with Attachments thereto ................................... A-208

    Appendix 3 to Poelz-Giga Declaration -
    Parks Department Uniform Policy ..................... A-211

    Appendix 4 to Poelz-Giga Declaration -
    Sergeant's Daily Checklist ................................. A-219

Exhibit 75 to Reif Declaration -
Declaration of Domingo Sanchez, dated
May 14, 2014 ........................................................ A-223

Exhibit 84 to Reif Declaration -
Declaration of Ralph Baselice, dated
May 13, 2014 ........................................................ A-228

Exhibit 86 to Reif Declaration -
Declaration of Robin Wickert, dated
May 12, 2014 ........................................................ A-232

iii

**Page**

Plaintiffs' Response to Defendant's Local Rule 56.1
    Statement of Undisputed Material, dated
    May 16, 2014 ............................................. A-236

Notice of Motion for Leave to Maintain Collective
    Action, dated June 9, 2014 ................................... A-274

Order of the Honorable Shira A. Scheindlin, dated
    December 8, 2014 ................................................ A-277

Opinion and Order of the Honorable Shira A.
    Scheindlin, dated January 15, 2015 ....................... A-280

Judgment, dated January 16, 2015, Appealed From .. A-297

Notice of Appeal, dated February 2, 2015 ................. A-299

CLOSED,APPEAL,CASREF,ECF

## U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:12–cv–04914–SAS–MHD

| | |
|---|---|
| Perez et al v. The City of New York et al | Date Filed: 06/22/2012 |
| Assigned to: Judge Shira A. Scheindlin | Date Terminated: 01/16/2015 |
| Referred to: Magistrate Judge Michael H. Dolinger | Jury Demand: Plaintiff |
| Magistrate Judge Michael H. Dolinger (Settlement) | Nature of Suit: 710 Labor: Fair Standards |
| Cause: 29:201 Fair Labor Standards Act | Jurisdiction: Federal Question |

**Plaintiff**

**Henry Perez**
*On behalf of themselves and others
similarly situated*

represented by    **Amelia Kristin Tuminaro**
Gladstein Reif and Meginniss
817 Broadway
New York, NY 10003
(212) 228–7727 x222
Fax: (212) 222–7654
Email: atuminaro@grmny.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
Gladstein Reif and Meginniss
817 Broadway
New York, NY 10003
212–228–7727
Fax: 212–228–7654
Email: jreif@GRMNY.COM
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth Allen Falk**
Kenneth Falk, Attorney Law
171 Madison Avenue Ste. 1002
New York, NY 10016
(212) 366–4600
Fax: (212) 366–6950
Email: kfalklaw@gmail.com
*TERMINATED: 01/14/2013*
*LEAD ATTORNEY*

**Jane Chung**
Gladstein Reif and Meginniss, LLP
817 Broadway, 6th Floor
New York, NY 10003
(212) 228–7727
Fax: (212) 228–7654
Email: jchung@grmny.com
*ATTORNEY TO BE NOTICED*

**Jesse Douglass Gribben**
District Council 37, Afscme, Afl–Cio
125 Barclay Street
New York, NY 10007
(212)–815–1450
Fax: (212)–815–1440
Email: jgribben@dc37.net
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
District Council 37 Legal Services
125 Barclay Street

10th Floor
New York, NY 10007
(212)–815–1450
Fax: (212)–815–1440
Email: ssykes@dc37.net
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Baselice Ralph**                    represented by    **Amelia Kristin Tuminaro**
*On behalf of themselves and others*                    (See above for address)
*similarly situated*                                    *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **James Michael Reif**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jane Chung**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jesse Douglass Gribben**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Steven Edward Sykes**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Juan Bayron**                       represented by    **Amelia Kristin Tuminaro**
*On behalf of themselves and others*                    (See above for address)
*similarly situated*                                    *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **James Michael Reif**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jane Chung**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jesse Douglass Gribben**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Steven Edward Sykes**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jerry Cordero**                     represented by    **Amelia Kristin Tuminaro**
*On behalf of themselves and others*                    (See above for address)
*similarly situated*                                    *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **James Michael Reif**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jesse Douglass Gribben**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ronald Eason**                                    represented by    **Amelia Kristin Tuminaro**
*On behalf of themselves and others*                                  (See above for address)
*similarly situated*                                                  *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **James Michael Reif**
                                                                      (See above for address)
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Jane Chung**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Jesse Douglass Gribben**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Steven Edward Sykes**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Donald Koonce**                                   represented by    **Amelia Kristin Tuminaro**
*On behalf of themselves and others*                                  (See above for address)
*similarly situated*                                                  *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **James Michael Reif**
                                                                      (See above for address)
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Jane Chung**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Jesse Douglass Gribben**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Steven Edward Sykes**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joseph Oro**                                      represented by    **Amelia Kristin Tuminaro**
*On behalf of themselves and others*                                  (See above for address)
*similarly situated*                                                  *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jesse Douglass Gribben**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Ruben Rios, Jr.**
*On behalf of themselves and others similarly situated*

represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jesse Douglass Gribben**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Pedro Rosado**
*On behalf of themselves and others similarly situated*

represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jesse Douglass Gribben**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Derek G. Walther**<br>*On behalf of themselves and others similarly situated* | represented by | **Amelia Kristin Tuminaro**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **James Michael Reif**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Jane Chung**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Jesse Douglass Gribben**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Steven Edward Sykes**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Elizabeth Kay Besom** | represented by | **Amelia Kristin Tuminaro**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **James Michael Reif**<br>Gladstein Reif and Meginniss, LLP<br>817 Broadway, 6th Floor<br>New York, NY 10003<br>212–228–7727<br>Fax: 212–228–7654<br>Email: jreif@GRMNY.COM<br>*ATTORNEY TO BE NOTICED* |
| | | **Jane Chung**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **The City of New York** | represented by | **Asad Rizvi**<br>New York City Law Department<br>100 Church Street<br>New York, NY 10007<br>(212)–788–6838<br>Fax: (212)–788–8877<br>Email: arizvi@law.nyc.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Andrea Mary O'Connor**<br>NYC Law Department, Office of the Corporation Counsel (NYC)<br>100 Church Street<br>New York, NY 10007<br>(212)676–2750<br>Fax: (212)788–8877 |

Email: aoconnor@law.nyc.gov
*ATTORNEY TO BE NOTICED*

**Eamonn F. Foley**
New York City Transit Authority
130 Livingston Street,
Brooklyn, NY 11201
718−694−3905
Fax: 718−694−1070
Email: Eamonn.Foley@nyct.com
*ATTORNEY TO BE NOTICED*

**Kathryn E Martin**
New York City Law Department
100 Church Street
Rm. 2−303B
New York, NY 10007
(212)−788−8285
Fax: (212) 788−8877
Email: kathryn.martin@nyct.com
*ATTORNEY TO BE NOTICED*

| | | |
|---|---|---|
| **Defendant** | | |
| **Mayor Michael R. Bloomberg** | represented by | **Asad Rizvi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Andrea Mary O'Connor**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Eamonn F. Foley**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Kathryn E Martin**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Defendant** | | |
| **The New York City Department of Parks &Recreation** | represented by | **Asad Rizvi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Andrea Mary O'Connor**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Eamonn F. Foley**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Kathryn E Martin**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Defendant** | | |
| **Adrian Benepe**<br>*as Commissioner*<br>*TERMINATED: 04/01/2013* | represented by | **Asad Rizvi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Eamonn F. Foley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kathryn E Martin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Charles St. Louis**                 represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Chris Galgano**                 represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Donald Koonce**                 represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Frederica Johnson**                          represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Gina Berdecia**                          represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Hilario Ramos**                          represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**

(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Jerry Cordero**                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Juan Bayron**                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Marlena Poelz–Giga**             represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Mercedes Velilla**                    represented by    **Amelia Kristin Tuminaro**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **James Michael Reif**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Steven Edward Sykes**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jane Chung**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**ADR Provider**

**Paige Lener**                         represented by    **Amelia Kristin Tuminaro**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **James Michael Reif**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Steven Edward Sykes**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jane Chung**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**ADR Provider**

**Richard Ventura**                     represented by    **Amelia Kristin Tuminaro**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **James Michael Reif**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Steven Edward Sykes**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jane Chung**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**ADR Provider**

**Robert Green**                        represented by

**Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Barthel Joseph**          represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Darlene Lewis**          represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Domingo Sanchez**          represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Brenda Cruz**                    represented by    **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Sunny Corrao**                   represented by    **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Marlena Poelz–Giga**             represented by    **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Jeffrey Edusei**                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Chatory Brown**                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Mercedes Velilla**                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Haydee Fajardo**                   represented by    **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Jennifer Ragoonanansingh**         represented by    **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Eli Seyfried**                     represented by    **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Sandra Lawrence**                          represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Asha Harris**                              represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Ruthie Perez**                             represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**

(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Earl Fisher**                            represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Jacqueline Deleon**                      represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**davina r. yancey**                       represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

| | | |
|---|---|---|
| **Vincent Piccolo** | represented by | **Amelia Kristin Tuminaro** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **James Michael Reif** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Steven Edward Sykes** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Jane Chung** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |

**ADR Provider**

| | | |
|---|---|---|
| **Adrienne D. Johnson** | represented by | **Amelia Kristin Tuminaro** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **James Michael Reif** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Steven Edward Sykes** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Jane Chung** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |

**ADR Provider**

| | | |
|---|---|---|
| **Jayme Likely–Alston** | represented by | **Amelia Kristin Tuminaro** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **James Michael Reif** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Steven Edward Sykes** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Jane Chung** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |

**ADR Provider**

| | | |
|---|---|---|
| **Renso Vidal** | represented by | |

**Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Tammy Williams**                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Dana Hawkins**                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**kervin charlemagne**                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*

A-19

*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**jasmine brooks**                     represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Bruce Langston**                     represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Destiny Colon**                      represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*

Case 15-315, Document 24, 05/07/2015, 1504493, Page25 of 305

A-20

*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Steven Arriola**                  represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Cheriese Henderson**              represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Lori Knowles**                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

Tanisha Harris                                          represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

Eric Handy                                             represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

Tiffani Phillips                                       represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Jessica Torres**                                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Robin Wickert**                                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Iris Hernandez**                                   represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)

*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Aliah Kelly**                                        represented by    **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Rasheem Johnson**                                represented by    **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Kiaran Pierre**                                      represented by    **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Ruslan Shulyar**                           represented by **Amelia Kristin Tuminaro**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **James Michael Reif**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Steven Edward Sykes**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jane Chung**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**ADR Provider**

**william guzman**                           represented by **Amelia Kristin Tuminaro**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **James Michael Reif**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Steven Edward Sykes**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jane Chung**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**ADR Provider**

**earline e. reed**                          represented by **Amelia Kristin Tuminaro**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **James Michael Reif**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Steven Edward Sykes**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jane Chung**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**ADR Provider**

**teresa l. madeem**                         represented by **Amelia Kristin Tuminaro**
*TERMINATED: 11/28/2012*                                     (See above for address)
                                                            *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**donette n. davis**                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**vladis tobel**                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**alena brace**                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**stanley yu**                                  represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**nancy mercado**                              represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**andrew howell**                              represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

                                                     **Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**tashawna sadler**                              represented by  **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**roxann small**                                  represented by  **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**Aston A. McKen**                             represented by  **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**michele mason**                    represented by    **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**matthew l. greenberg**              represented by    **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**raquel ramos**                      represented by    **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**carillo maizio**                                 represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**laura spies**                                    represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**jamal charles**                                  represented by   **Amelia Kristin Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Reif**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Edward Sykes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ADR Provider**

**eunice yvonne hill**                          represented by   **Amelia Kristin Tuminaro**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **James Michael Reif**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Steven Edward Sykes**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Jane Chung**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**ADR Provider**

**Samuel Hendricks**                            represented by   **Amelia Kristin Tuminaro**
                                                                 Gladstein Reif and Meginniss, LLP
                                                                 817 Broadway, 6th Floor
                                                                 New York, NY 10003
                                                                 (212) 228–7727 x222
                                                                 Fax: (212) 222–7654
                                                                 Email: atuminaro@grmny.com
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Steven Edward Sykes**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **James Michael Reif**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Jane Chung**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**ADR Provider**

**Gabriel Vazquez, Jr.**                        represented by   **Amelia Kristin Tuminaro**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Steven Edward Sykes**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **James Michael Reif**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Jane Chung**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**All Defendants**

**Veronica White**
*in official capacity as Commissioner of of
the Department of Parks and Recreation*

represented by **Jane Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/22/2012 | 1 | COMPLAINT against Adrian Benepe, Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation. (Filing Fee $ 350.00, Receipt Number 1041711)Document filed by Pedro Rosado, Derek G. Walther, Juan Bayron, Ruben Rios, Jr., Henry Perez, Baselice Ralph, Jerry Cordero, Ronald Eason, Donald Koonce, Joseph Oro.(jfe) (Additional attachment(s) added on 6/26/2012: # 1 exA) (ml). (Entered: 06/26/2012) |
| 06/22/2012 | | SUMMONS ISSUED as to Adrian Benepe, Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation. (jfe) (Entered: 06/26/2012) |
| 06/22/2012 | | Magistrate Judge Michael H. Dolinger is so designated. (jfe) (Entered: 06/26/2012) |
| 06/22/2012 | | Case Designated ECF. (jfe) (Entered: 06/26/2012) |
| 06/26/2012 | | ***NOTE TO ATTORNEY TO E–MAIL PDF. Note to Attorney Jesse Douglass Gribben and Steven Edward Sykes for noncompliance with Section 14.3 of the S.D.N.Y. Electronic Case Filing Rules &Instructions. E–MAIL the PDF for Document 1 Complaint, to: caseopenings@nysd.uscourts.gov. (jfe) (Entered: 06/26/2012) |
| 06/26/2012 | 2 | SUMMONS RETURNED EXECUTED Summons and Complaint, served. Michael R. Bloomberg served on 6/22/2012, answer due 7/13/2012; Adrian Benepe served on 6/22/2012, answer due 7/13/2012; The City of New York served on 6/22/2012, answer due 7/13/2012; The New York City Department of Parks &Recreation served on 6/22/2012, answer due 7/13/2012. Service was accepted by Dmitry Aronov. Document filed by Michael R. Bloomberg; Juan Bayron; Henry Perez; Adrian Benepe; Jerry Cordero; Ronald Eason; Donald Koonce; Joseph Oro. (Sykes, Steven) (Entered: 06/26/2012) |
| 06/26/2012 | 3 | AFFIDAVIT OF SERVICE of Summons and Complaint,. Service was accepted by Dmitry Aronov. Document filed by Pedro Rosado, Ruben Rios, Jr., Henry Perez, Baselice Ralph, Jerry Cordero, Ronald Eason, Donald Koonce, Joseph Oro. (Sykes, Steven) (Entered: 06/26/2012) |
| 06/27/2012 | 4 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Charles St. Louis.(Sykes, Steven) (Entered: 06/27/2012) |
| 06/27/2012 | 5 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Chris Galgano.(Sykes, Steven) (Entered: 06/27/2012) |
| 06/27/2012 | 6 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Donald Koonce.(Sykes, Steven) (Entered: 06/27/2012) |
| 06/27/2012 | 7 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Frederica Johnson.(Sykes, Steven) (Entered: 06/27/2012) |
| 06/27/2012 | 8 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Gina Berdecia.(Sykes, Steven) (Entered: 06/27/2012) |
| 06/27/2012 | 9 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Hilario Ramos.(Sykes, Steven) (Entered: 06/27/2012) |
| 06/27/2012 | 10 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Jerry Cordero.(Sykes, Steven) (Entered: 06/27/2012) |
| 06/27/2012 | 11 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Juan Bayron.(Sykes, Steven) (Entered: 06/27/2012) |

| | | |
|---|---|---|
| 06/27/2012 | 12 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Marlena Poelz–Giga.(Sykes, Steven) (Entered: 06/27/2012) |
| 06/27/2012 | 13 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Mercedes Velilla.(Sykes, Steven) (Entered: 06/27/2012) |
| 06/27/2012 | 14 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Paige Lener.(Sykes, Steven) (Entered: 06/27/2012) |
| 06/27/2012 | 15 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Richard Ventura.(Sykes, Steven) (Entered: 06/27/2012) |
| 07/03/2012 | 16 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Robert Green.(Sykes, Steven) (Entered: 07/03/2012) |
| 07/03/2012 | 17 | NOTICE OF INITIAL PRETRIAL CONFERENCE: Initial Conference set for 8/9/2012 at 03:30 PM in Courtroom 17B of the United States District Court for the Southern District of New York, 500 Pearl Street, New York, NY 10007 before Judge Alison J. Nathan. (Signed by Judge Alison J. Nathan on 7/3/2012) Parties ordered to submit via email proposed case management plan and joint letter nine days before conference. (ft) Modified on 7/5/2012 (ft). (Entered: 07/05/2012) |
| 07/05/2012 | 18 | NOTICE OF APPEARANCE by Asad Rizvi on behalf of Adrian Benepe, Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation (Rizvi, Asad) (Entered: 07/05/2012) |
| 07/09/2012 | 19 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Barthel Joseph.(Sykes, Steven) (Entered: 07/09/2012) |
| 07/09/2012 | 20 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Darlene Lewis.(Sykes, Steven) (Entered: 07/09/2012) |
| 07/09/2012 | 21 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Domingo Sanchez.(Sykes, Steven) (Entered: 07/09/2012) |
| 07/09/2012 | 22 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Brenda Cruz.(Sykes, Steven) (Entered: 07/09/2012) |
| 07/09/2012 | 23 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Sunny Corrao.(Sykes, Steven) (Entered: 07/09/2012) |
| 07/09/2012 | 24 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Marlena Poelz–Giga.(Sykes, Steven) (Entered: 07/09/2012) |
| 07/09/2012 | 25 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Jeffrey Edusei.(Sykes, Steven) (Entered: 07/09/2012) |
| 07/10/2012 | 26 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Chatory Brown.(Sykes, Steven) (Entered: 07/10/2012) |
| 07/10/2012 | 27 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Mercedes Velilla.(Sykes, Steven) (Entered: 07/10/2012) |
| 07/11/2012 | 28 | ENDORSED LETTER addressed to Judge Alison J. Nathan from Asad Rizvi dated 7/10/2012 re: Defendants respectfully request a four week extension of time to 8/10/12 to respond to the complaint. ENDORSEMENT: So Ordered. Adrian Benepe answer due 8/10/2012; Michael R. Bloomberg answer due 8/10/2012; The City of New York answer due 8/10/2012; The New York City Department of Parks &Recreation answer due 8/10/2012. (Signed by Judge Alison J. Nathan on 7/11/2012) (jfe) (Entered: 07/11/2012) |
| 07/12/2012 | 29 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Haydee Fajardo.(Sykes, Steven) (Entered: 07/12/2012) |
| 07/12/2012 | 30 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Jennifer Ragoonanansingh.(Sykes, Steven) (Entered: 07/12/2012) |
| 07/13/2012 | 31 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Eli Seyfried.(Sykes, Steven) (Entered: 07/13/2012) |

Case 15-315, Document 24, 05/07/2015, 1504493, Page38 of 305

**A-33**

| 07/16/2012 | 32 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Sandra Lawrence.(Sykes, Steven) (Entered: 07/16/2012) |
|---|---|---|
| 07/16/2012 | 33 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Asha Harris.(Sykes, Steven) (Entered: 07/16/2012) |
| 07/16/2012 | 34 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Ruthie Perez.(Sykes, Steven) (Entered: 07/16/2012) |
| 07/18/2012 | 35 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Earl Fisher.(Sykes, Steven) (Entered: 07/18/2012) |
| 07/19/2012 | 36 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Jacqueline Deleon.(Sykes, Steven) (Entered: 07/19/2012) |
| 07/25/2012 | 37 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by davina r. yancey.(Sykes, Steven) (Entered: 07/25/2012) |
| 07/25/2012 | 38 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by Vincent Piccolo.(Sykes, Steven) (Entered: 07/25/2012) |
| 07/25/2012 | 39 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by Adrienne D. Johnson.(Sykes, Steven) (Entered: 07/25/2012) |
| 07/25/2012 | 40 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by Jayme Likey–Alston.(Sykes, Steven) (Entered: 07/25/2012) |
| 07/26/2012 | 41 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by Renso Vidal.(Sykes, Steven) (Entered: 07/26/2012) |
| 08/07/2012 | 42 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Tammy Williams.(Sykes, Steven) (Entered: 08/07/2012) |
| 08/07/2012 | 43 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Dana Hawkins.(Sykes, Steven) (Entered: 08/07/2012) |
| 08/09/2012 |  | Minute Entry for proceedings held before Judge Alison J. Nathan: Initial Pretrial Conference held on 8/9/2012. (snu) (Entered: 08/09/2012) |
| 08/09/2012 | 44 | ANSWER to 1 Complaint,. Document filed by Adrian Benepe, Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation.(Rizvi, Asad) (Entered: 08/09/2012) |
| 08/09/2012 | 47 | ORDER: As discussed at the conference held on August 9, 2012, the parties shall on or before September 14, 2012, jointly submit to the Court for approval a proposal for a Notice to be mailed to all potential class members. (Signed by Judge Alison J. Nathan on 8/9/2012) (ja) (Entered: 08/10/2012) |
| 08/09/2012 | 48 | CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER FOR CASES INVOLVING FLSA CLAIMS: is submitted by the parties in accordance with Fed. R. Civ.P. 26(f)(3). Plaintiff(s)' will move for conditional certification of this case as a collective action. Plaintiff(s)' motion to conditionally certify this case as an FLSA action shall be filed on or before Sept. 21, 2012. Defendant(s)' response to Plaintiff(s)' motion for conditional certification shall be filed on or before Oct. 12, 2012. Plaintiff(s)' reply concerning their motion for conditional certification shall be filed on or before Oct. 26, 2012. Depositions to be completed by January 9, 2013. Requests to admit shall be served by November 1, 2012. All expert Discovery to be completed no later than March 26, 2013. Plaintiffs' designation of an expert witness for trial, if any, and production of expert witness report: January 15, 2013. Defendants' designation of an expert witness in response to plaintiffs' expert, and production of expert witness report: February 26, 2013. Plaintiffs' designation of an expert witness in response to defendants' expert, and production of expert witness report: March 19, 2013. The parties shall be ready for trial on June 3, 2013. This case is to be tried by a jury. Motions due by 9/21/2012. Responses due by 10/12/2012, Replies due by 10/26/2012. Deposition due by 1/9/2013. Expert Discovery due by 3/26/2013. Ready for Trial by 6/3/2013. (Signed by Judge Alison J. Nathan on 8/9/2012) (ja) (Entered: 08/10/2012) |

| 08/10/2012 | 45 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by kervin charlemagne.(Sykes, Steven) (Entered: 08/10/2012) |
|---|---|---|
| 08/10/2012 | 46 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by jasmine brooks.(Sykes, Steven) (Entered: 08/10/2012) |
| 08/22/2012 | 49 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Bruce Langston.(Sykes, Steven) (Entered: 08/22/2012) |
| 08/22/2012 | 50 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Destiny Colon.(Sykes, Steven) (Entered: 08/22/2012) |
| 08/22/2012 | 51 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Steven Arriola.(Sykes, Steven) (Entered: 08/22/2012) |
| 08/22/2012 | 52 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Cheriese Henderson.(Sykes, Steven) (Entered: 08/22/2012) |
| 08/22/2012 | 53 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Lori Knowles.(Sykes, Steven) (Entered: 08/22/2012) |
| 08/23/2012 | 54 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Tanisha Harris.(Sykes, Steven) (Entered: 08/23/2012) |
| 08/23/2012 | 55 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by Eric Handy.(Sykes, Steven) (Entered: 08/23/2012) |
| 08/23/2012 | 56 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Tiffani Phillips.(Sykes, Steven) (Entered: 08/23/2012) |
| 08/23/2012 | 57 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Jessica Torres.(Sykes, Steven) (Entered: 08/23/2012) |
| 08/23/2012 | 58 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Robin Wickert.(Sykes, Steven) (Entered: 08/23/2012) |
| 08/23/2012 | 59 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Iris Hernandez.(Sykes, Steven) (Entered: 08/23/2012) |
| 08/24/2012 | 60 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Aliah Kelly.(Sykes, Steven) (Entered: 08/24/2012) |
| 08/24/2012 | 61 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Rasheem Johnson.(Sykes, Steven) (Entered: 08/24/2012) |
| 08/30/2012 | 62 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Kiaran Pierre.(Sykes, Steven) (Entered: 08/30/2012) |
| 09/10/2012 | 63 | **FILING ERROR – DEFICIENT DOCKET ENTRY** – FIRST MOTION to Amend/Correct *Complaint*. Document filed by Henry Perez. (Attachments: # 1 Affidavit Sykes Affirmation, # 2 Exhibit Proposed Amended Complaint)(Sykes, Steven) Modified on 9/11/2012 (ldi). (Entered: 09/10/2012) |
| 09/10/2012 | | **\*\*\*NOTE TO ATTORNEY TO RE–FILE DOCUMENT – DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Steven Edward Sykes to RE–FILE Document 63 FIRST MOTION to Amend/Correct *Complaint*. ERROR(S): Supporting documents must be filed separately, each receiving their own document number. Affirmation in Support of Motion is found under the event list Replies, Opposition and Supporting Documents. (ldi)** (Entered: 09/11/2012) |
| 09/11/2012 | 64 | FIRST MOTION to Amend/Correct *Complaint*. Document filed by Henry Perez.(Sykes, Steven) (Entered: 09/11/2012) |
| 09/11/2012 | 65 | AFFIRMATION of Steven E. Sykes in Support re: 64 FIRST MOTION to Amend/Correct *Complaint*.. Document filed by Henry Perez. (Attachments: # 1 Exhibit Proposed Amended Complaint)(Sykes, Steven) (Entered: 09/11/2012) |
| 09/13/2012 | 66 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Ruslan Shulyar.(Sykes, Steven) (Entered: 09/13/2012) |

| 09/25/2012 | 67 | NOTICE OF APPEARANCE by Kenneth Allen Falk on behalf of Henry Perez (Falk, Kenneth) (Entered: 09/25/2012) |
|---|---|---|
| 10/01/2012 | 68 | ORDER. The proposed "Court–Authorized Notice" attached to this Order is approved. Plaintiff is granted leave to file an amended complaint on or before October 15, 2012. Defendant's responsive pleading shall be submitted by November 5, 2012. Granting 64 Motion to Amend/Correct. (Signed by Judge Alison J. Nathan on 10/1/2012) (rjm) (Entered: 10/01/2012) |
| 10/01/2012 | | Set/Reset Deadlines: Amended Pleadings due by 10/15/2012. (rjm) (Entered: 10/01/2012) |
| 10/11/2012 | 73 | AMENDED COMPLAINT amending 1 Complaint, against Adrian Benepe, Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation with JURY DEMAND.Document filed by Juan Bayron, Donald Koonce, Jerry Cordero, Joseph Oro, Henry Perez, Pedro Rosado, Derek G. Walther, Ruben Rios, Jr., Ronald Eason, Ralph Baselice. Related document: 1 Complaint, filed by Derek G. Walther, Joseph Oro, Ruben Rios, Jr., Pedro Rosado, Juan Bayron, Donald Koonce, Jerry Cordero, Baselice Ralph, Henry Perez, Ronald Eason.(djc) (rdz). (Entered: 10/25/2012) |
| 10/11/2012 | | ***NOTE TO ATTORNEY TO E–MAIL PDF. Note to Attorney Steven E. Sykes for noncompliance with Section 14.3 of the S.D.N.Y. Electronic Case Filing Rules &Instructions. E–MAIL the PDF for Document 73 Amended Complaint,, to: caseopenings@nysd.uscourts.gov. (djc) (Entered: 10/25/2012) |
| 10/16/2012 | 69 | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Settlement. Referred to Magistrate Judge Michael H. Dolinger. (Signed by Judge Alison J. Nathan on 10/16/2012) (cd) (Entered: 10/17/2012) |
| 10/16/2012 | 70 | ENDORSED LETTER addressed to Judge Alison J Nathan from Asad Rizvi dated 10/15/2012 re: Joint letter advising of the status of discovery in this action and we propose submitting a joint stipulation on discovery of representative plaintiffs to the Court for its consideration by 11/30/2012. ENDORSEMENT: So ordered. The Court will open a referral to Judge Dolinger for a settlement conference. The Parties may contact him when they are ready. (Signed by Judge Alison J. Nathan on 10/16/2012) (cd) (Entered: 10/17/2012) |
| 10/16/2012 | 71 | CASE MANAGEMENT PLAN: Deposition due by 1/9/2013. Fact Discovery due by 2/9/2013. Expert Discovery due by 3/26/2013, and as further set forth in this document. ENDORSEMENT: This case management plan shall supersedes the one entered by the court on 8/9/12 (docket #48). (Signed by Judge Alison J. Nathan on 10/16/2012) (cd) (Entered: 10/17/2012) |
| 10/23/2012 | 72 | CONFIDENTIALITY STIPULATION AND PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Judge Alison J. Nathan on 10/23/2012) (ft) (Entered: 10/23/2012) |
| 11/06/2012 | 74 | ENDORSED LETTER addressed to Judge Alison J. Nathan from Asad Rizvi dated 11/5/2012 re: Accordingly, for the reasons outlined above, defendants respectfully request an extension of time until November 13, 2012 to serve their answer to the Amended Complaint. ENDORSEMENT: So Ordered. (Signed by Judge Alison J. Nathan on 11/6/2012) (djc) (Entered: 11/07/2012) |
| 11/13/2012 | 75 | ANSWER to 73 Amended Complaint,,. Document filed by Adrian Benepe, Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation.(Rizvi, Asad) (Entered: 11/13/2012) |
| 11/28/2012 | 76 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by william guzman.(Sykes, Steven) (Entered: 11/28/2012) |
| 11/28/2012 | 77 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by earline e. reed.(Sykes, Steven) (Entered: 11/28/2012) |
| 11/28/2012 | 78 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by teresa l. madeem.(Sykes, Steven) (Entered: 11/28/2012) |

| 11/28/2012 | 79 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by donette n. davis.(Sykes, Steven) (Entered: 11/28/2012) |
|---|---|---|
| 11/28/2012 | 80 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by vladis tobel.(Sykes, Steven) (Entered: 11/28/2012) |
| 11/28/2012 | 81 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by alena brace.(Sykes, Steven) (Entered: 11/28/2012) |
| 11/28/2012 | 82 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by stanley yu.(Sykes, Steven) (Entered: 11/28/2012) |
| 11/28/2012 | 83 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by nancy mercado.(Sykes, Steven) (Entered: 11/28/2012) |
| 11/28/2012 | 84 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by andrew howell.(Sykes, Steven) (Entered: 11/28/2012) |
| 11/28/2012 | 85 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by tashawna sadler.(Sykes, Steven) (Entered: 11/28/2012) |
| 11/28/2012 | 86 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by roxann small.(Sykes, Steven) (Entered: 11/28/2012) |
| 11/28/2012 | 87 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by Aston A. McKen.(Sykes, Steven) (Entered: 11/28/2012) |
| 11/28/2012 | 88 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by michele mason.(Sykes, Steven) (Entered: 11/28/2012) |
| 11/28/2012 | 89 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by matthew l. greenberg.(Sykes, Steven) (Entered: 11/28/2012) |
| 12/11/2012 | 90 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by raquel ramos.(Sykes, Steven) (Entered: 12/11/2012) |
| 12/11/2012 | 91 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by carillo maizio.(Sykes, Steven) (Entered: 12/11/2012) |
| 12/11/2012 | 92 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by laura spies.(Sykes, Steven) (Entered: 12/11/2012) |
| 12/11/2012 | 93 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by jamal charles.(Sykes, Steven) (Entered: 12/11/2012) |
| 12/11/2012 | 94 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by eunice yvonne hill.(Sykes, Steven) (Entered: 12/11/2012) |
| 01/14/2013 | 95 | ENDORSED LETTER addressed to Judge Alison J. Nathan, from Kenneth Falk, dated 1/11/2013, re: I am attorney for plaintiffs, writing to notify the Court that I am hereby withdrawing as counsel, effective immediately. Request that the Court effectuate this withdrawal in the official records of the Court. ENDORSEMENT: The Clerk of Court shall terminate the appearance of Mr. Falk. (Signed by Judge Alison J. Nathan on 1/14/2013) (ja) (Entered: 01/15/2013) |
| 01/15/2013 | 96 | NOTICE OF APPEARANCE by James Michael Reif on behalf of Steven Arriola, Ralph Baselice, Juan Bayron, Juan Bayron, Gina Berdecia, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey–Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz–Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne |

| | | hill, andrew howell, teresa l. madeem, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu (Reif, James) (Entered: 01/15/2013) |
|---|---|---|
| 01/15/2013 | 97 | NOTICE OF APPEARANCE by Amelia Kristin Tuminaro on behalf of Steven Arriola, Ralph Baselice, Juan Bayron, Juan Bayron, Gina Berdecia, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey–Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz–Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, teresa l. madeem, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu (Tuminaro, Amelia) (Entered: 01/15/2013) |
| 01/31/2013 | 98 | ORDER: The Court is in receipt of the attached letters from the parties seeking an extension of time to complete discovery. A conference with the Court shall be held on February 14, 2013, at 11:00 AM. On or before February 8, 2013, the parties shall each submit letters stating: (1) What discovery has been produced, (2) What remains to be completed, (3) What disputes remain unresolved, and (4) Providing a time frame for the completion of all discovery. The Court's willingness to grant an extension, and its view of the reasonable length of any such extension, will turn on the parties' ability to demonstrate diligence and good faith in conducting discovery thus far. ( Status Conference set for 2/14/2013 at 11:00 AM before Judge Alison J. Nathan.) (Signed by Judge Alison J. Nathan on 1/31/2013) (mro) Modified on 2/4/2013 (mro). (Entered: 02/04/2013) |
| 02/05/2013 | 99 | ENDORSED LETTER addressed to Judge Alison J. Nathan from James Reif dated 2/4/2013 re: We received today an electronic copy of the Order dated January 31, 2013 (Doc. 98) wherein the Court scheduled a conference for February 14, 2013 at 11:00 am. I am writing to request an adjournment of said conference. ENDORSEMENT: So ordered. The conference is adjourned until 2/21/2013 at 4:00 p.m. in Courtroom 519 of 40 Foley Square. (Status Conference set for 2/21/2013 at 04:00 PM, Crtrm. 519, U.S. Courthouse, 40 Foley Square before Judge Alison J. Nathan.) (Signed by Judge Alison J. Nathan on 2/5/2013) (rjm) (Entered: 02/06/2013) |
| 02/08/2013 | 100 | ENDORSED LETTER addressed to Judge Alison J. Nathan from Asad Rizvi dated 2/7/13 re: Counsel writes on behalf of the parties to request that the Court grant an extension of time to 2/15/13 for the submission of their respective discovery status letters. ENDORSEMENT: So ordered. (Signed by Judge Alison J. Nathan on 2/8/2013) (mro) (Entered: 02/08/2013) |
| 02/21/2013 | 101 | NOTICE OF APPEARANCE by Asad Rizvi on behalf of Adrian Benepe, Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation (Rizvi, Asad) (Entered: 02/21/2013) |
| 02/21/2013 | | Minute Entry for proceedings held before Judge Alison J. Nathan: Status Conference held on 2/21/2013. See transcript. (cd) (Entered: 02/26/2013) |
| 03/07/2013 | 102 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE flsa. Document filed by Samuel Hendricks.(Sykes, Steven) (Entered: 03/07/2013) |
| 03/19/2013 | | **Please be advised that Judge Nathans Courtroom and Chambers have been moved to the Thurgood Marshall United States Courthouse located at 40 Foley Square, New York, New York 10007. Effective immediately, all proceedings before the Court will take place in Courtroom 906, and the Courts Chambers located in Room 2102, of 40 Foley Square. The Courts other contact information, |

Case 15-315, Document 24, 05/07/2015, 1504493, Page43 of 305

**A-38**

| | | |
|---|---|---|
| | | as set forth in the Courts Individual Rules and Practices, available at http://www.nysd.uscourts.gov/judge/Nathan, remains the same.** (snu) (Entered: 03/19/2013) |
| 04/01/2013 | 103 | SECOND AMENDED COMPLAINT amending 73 Amended Complaint against Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation, Veronica White. Document filed by Juan Bayron, Donald Koonce, Jerry Cordero, Joseph Oro, Henry Perez, Pedro Rosado, Derek G. Walther, Ruben Rios, Jr., Ronald Eason, Baselice Ralph. Related document: 73 Amended Complaint, filed by Derek G. Walther, Joseph Oro, Ruben Rios, Jr., Pedro Rosado, Juan Bayron, Donald Koonce, Jerry Cordero, Henry Perez, Ronald Eason.(ja) (Entered: 04/04/2013) |
| 04/10/2013 | 104 | ANSWER to 103 Amended Complaint,,. Document filed by Adrian Benepe, Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation.(Rizvi, Asad) (Entered: 04/10/2013) |
| 05/03/2013 | 105 | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non–dispositive pretrial motions, and settlement). Referred to Magistrate Judge Michael H. Dolinger. (Signed by Judge Alison J. Nathan on 5/3/2013) (cd) (Entered: 05/03/2013) |
| 05/03/2013 | 106 | Letter addressed to Judge Alison J. Nathan from James Reif dated 3/6/2013 re: The parties have been unable to reach agreement on a plan for the selection and use of representatives in discovery and at trial. Document filed by Henry Perez.(cd) (Entered: 05/03/2013) |
| 05/09/2013 | 107 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE FLSA. Document filed by Gabriel Vazquez, Jr..(Sykes, Steven) (Entered: 05/09/2013) |
| 05/09/2013 | 108 | ORDER: Initial Conference set for Monday, 5/20/2013 at 02:00 PM in Courtroom 17D, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Michael H. Dolinger. Any requests for adjournment of this scheduled conference must be in writing, with copies to all other parties, and must be preceded by reasonable efforts by the requesting party to obtain the consent of those parties. (Signed by Magistrate Judge Michael H. Dolinger on 5/9/2013) Copies Sent By Chambers. (cd) (Entered: 05/09/2013) |
| 05/13/2013 | 109 | Letter addressed to Magistrate Judge Michael H. Dolinger from Asad Rizvi dated 5/13/2013 re: For the foregoing reasons, defendants respectfully request that the Court "so order" its March 6, 2013 proposed Order concerning representative discovery. Document filed by The City of New York.(cd) (Entered: 05/13/2013) |
| 05/20/2013 | 110 | NOTICE OF APPEARANCE by Eamonn F. Foley on behalf of Adrian Benepe, Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation (Foley, Eamonn) (Entered: 05/20/2013) |
| 05/29/2013 | 111 | Letter addressed to Magistrate Judge Michael H. Dolinger from Asad Rizvi dated 5/24/2013 re: Defendants respectfully withdraw their proposed March 6, 2013 order concerning representative discovery and consent to individualized discovery of all 81 claims. Document filed by Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation.(lmb) (Entered: 05/29/2013) |
| 05/29/2013 | 112 | Letter addressed to Magistrate Judge Michael H. Dolinger from James Reif dated 5/29/2013 re: Pursuant to this Court's directive on May 20, 2013, Plaintiffs submit this letter in response to Defendants' letter dated May 24, 2013. Document filed by Juan Bayron, Jerry Cordero, Ronald Eason, Donald Koonce, Joseph Oro, Henry Perez, Baselice Ralph, Ruben Rios, Jr., Pedro Rosado, Derek G. Walther.(lmb) (Entered: 05/30/2013) |
| 05/29/2013 | 113 | Letter addressed to Magistrate Judge Michael H. Dolinger from Asad Rizvi dated 5/29/2013 re: I am an Assistant Corporation Counsel in the Office of Michael A. Cardozo, Corporation Counsel of the City of New York, one of the attorneys assigned to represent the defendants in the above–referenced Fair Labor Standards Act ("FLSA") collective action. I write in response to plaintiffs' May 24, 2013 letter to the Court regarding their assertion that the statute of limitations should be |

| | | |
|---|---|---|
| | | equitably tolled in this case. Document filed by Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation.(lmb) (Entered: 05/30/2013) |
| 06/02/2013 | 114 | Letter addressed to Magistrate Judge Michael H. Dolinger from James Reif dated 5/31/2013 re: Plaintiffs hereby request leave to submit this letter to reply to Defendants' May 29, 2013 Letter regarding Plaintiffs' requests for production of documents pertaining to certain events occurring prior to June 22, 2009. Document filed by Henry Perez.(cd) (Entered: 06/03/2013) |
| 06/03/2013 | 115 | ORDER: It is hereby ORDERED that a conference has been scheduled in the above captioned action on THURSDAY, JUNE 13, 2013, at 9:00 A.M., at which time you are directed to appear in Courtroom 17D, 500 Pearl Street, New York, New York 10007–1312. Any requests for adjournment of this scheduled conference must be in writing, with copies to all other parties, and must be preceded by reasonable efforts by the requesting party to obtain the consent of those parties., ( Status Conference set for 6/13/2013 at 09:00 AM in Courtroom 17D, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Michael H. Dolinger.) (Signed by Magistrate Judge Michael H. Dolinger on 6/3/2013) Copies Sent By Chambers. (lmb) (Entered: 06/03/2013) |
| 06/13/2013 | | Minute Entry for proceedings held before Magistrate Judge Michael H. Dolinger: Discovery Hearing held on 6/13/2013. (Snell, Kevin) (Entered: 06/13/2013) |
| 06/13/2013 | 116 | ORDER. It is hereby ORDERED that a conference has been scheduled in the above–captioned action on THURSDAY, AUGUST 15, 2013, at 10:00 A.M., at which time you are directed to appear in Courtroom 17D, 500 Pearl Street, New York, New York 10007–1312, and as further set forth. (Conference set for 8/15/2013 at 10:00 AM in Courtroom 17D, U.S. Courthouse, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Michael H. Dolinger.) (Signed by Magistrate Judge Michael H. Dolinger on 6/13/2013). Copies Sent By Chambers via Fax. (rjm) (Entered: 06/13/2013) |
| 06/27/2013 | 117 | TRANSCRIPT of Proceedings re: CONFERENCE held on 6/13/2013 before Magistrate Judge Michael H. Dolinger. Court Reporter/Transcriber: Steven Griffing, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/22/2013. Redacted Transcript Deadline set for 8/1/2013. Release of Transcript Restriction set for 9/30/2013.(Rodriguez, Somari) (Entered: 06/27/2013) |
| 06/27/2013 | 118 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 6/13/13 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(Rodriguez, Somari) (Entered: 06/27/2013) |
| 07/09/2013 | 119 | CONSENT TO BECOME PARTY PLAINTIFF UNDER THE F.L.S.A.. Document filed by Elizabeth Kay Besom.(Tuminaro, Amelia) (Entered: 07/09/2013) |
| 08/14/2013 | 120 | NOTICE OF APPEARANCE by Kathryn Elena Leone on behalf of Adrian Benepe, Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation. (Leone, Kathryn) (Entered: 08/14/2013) |
| 08/15/2013 | 121 | **DOCUMENT REFERRED TO JUDGE FOR APPROVAL –** STIPULATION OF VOLUNTARY DISMISSAL It is hereby stipulated and agreed by and between the parties and/or their respective counsel(s) that the above–captioned action is voluntarily dismissed, with prejudice against the defendant(s) Adrian Benepe, Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation and without costs to either party pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Document filed by teresa l. madeem.(Tuminaro, Amelia) Modified on 8/16/2013 (jno). (Entered: 08/15/2013) |

| 08/15/2013 | | Minute Entry for proceedings held before Magistrate Judge Michael H. Dolinger: Discovery Hearing held on 8/15/2013. (Snell, Kevin) (Entered: 08/15/2013) |
|---|---|---|
| 08/16/2013 | | ***NOTE TO ATTORNEY – DOCUMENT REFERRED TO JUDGE FOR APPROVAL. Note to Attorney Amelia Tuminaro Document 121 Stipulation of Voluntary Dismissal, was referred to Judge Alison J. Nathan for approval. (jno) (Entered: 08/16/2013) |
| 08/16/2013 | 122 | ORDER: Pursuant to yesterday's conference, we hereby ORDER the following discovery schedule: 1. Fact discovery is to be completed by no later than NOVEMBER 15, 2013. 2. Defendants are to designate their experts and provide expert reports by no later than DECEMBER 2, 2013. 3. Plaintiffs are to provide rebuttal reports by no later than DECEMBER 16, 2013. 4. All expert discovery is to be completed by DECEMBER 31, 2013. 5. The joint pretrial order or any dispositive motions are due no later than JANUARY 31, 2014., ( Expert Discovery due by 12/31/2013., Fact Discovery due by 11/15/2013., Motions due by 1/31/2014., Pretrial Order due by 1/31/2014.) (Signed by Magistrate Judge Michael H. Dolinger on 8/16/2013) Copies Sent By Chambers. (lmb) (Entered: 08/16/2013) |
| 08/19/2013 | 123 | STIPULATION OF DISMISSAL: It is hereby stipulated and agreed by Plaintiff Teresa L. Nadeem and Defendants that all claims herein by the said Teresa L. Nadeem are voluntarily dismissed with prejudice to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (Signed by Judge Alison J. Nathan on 8/19/2013) (mro) (Entered: 08/19/2013) |
| 09/16/2013 | 124 | TRANSCRIPT of Proceedings re: CONFERENCE held on 5/20/2013 before Magistrate Judge Michael H. Dolinger. Court Reporter/Transcriber: Jennifer Thun, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/10/2013. Redacted Transcript Deadline set for 10/21/2013. Release of Transcript Restriction set for 12/19/2013.(Rodriguez, Somari) (Entered: 09/16/2013) |
| 09/16/2013 | 125 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 5/20/13 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(Rodriguez, Somari) (Entered: 09/16/2013) |
| 10/21/2013 | 126 | NOTICE OF APPEARANCE by Jane Chung on behalf of Steven Arriola, Juan Bayron, Juan Bayron, Gina Berdecia, Elizabeth Kay Besom, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Samuel Hendricks, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey–Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz–Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Gabriel Vazquez, Jr., Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Veronica White, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, teresa l. madeem, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu. (Chung, Jane) (Entered: 10/21/2013) |
| 10/23/2013 | 127 | ORDER: Conference set for 10/25/2013 at 12:00 PM in Courtroom 17D, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Michael H. Dolinger. (Signed by Magistrate Judge Michael H. Dolinger on 10/22/2013) Copies Sent By Chambers. (tn) (Entered: 10/23/2013) |

| 10/25/2013 | 128 | NOTICE OF APPEARANCE by Andrea Mary O'Connor on behalf of Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation. (O'Connor, Andrea) (Entered: 10/25/2013) |
| --- | --- | --- |
| 10/25/2013 | 129 | TRANSCRIPT of Proceedings re: CONFERENCE held on 8/15/2013 before Magistrate Judge Michael H. Dolinger. Court Reporter/Transcriber: Sonya Ketter Huggins, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/18/2013. Redacted Transcript Deadline set for 12/2/2013. Release of Transcript Restriction set for 1/26/2014.(Rodriguez, Somari) (Entered: 10/25/2013) |
| 10/25/2013 | 130 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 8/15/13 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(Rodriguez, Somari) (Entered: 10/25/2013) |
| 11/13/2013 | 131 | AMENDED SCHEDULING ORDER: Fact discovery shall be completed by December 16, 2013. Defendants' expert designation(s) and expert report(s) shall be submitted by January 6, 2014. Plaintiffs' rebuttal reports shall be submitted by January 21, 2014. Expert discovery shall be completed by February 4, 2014. Dispositive motions or the joint pretrial order shall be filed by March 6, 2014. (Motions due by 3/6/2014. Fact Discovery due by 12/16/2013. Expert Discovery due by 2/4/2014. Pretrial Order due by 3/6/2014.) (Signed by Magistrate Judge Michael H. Dolinger on 11/13/2013) (rjm) (Entered: 11/14/2013) |
| 12/10/2013 | 132 | ENDORSED LETTER addressed to Magistrate Judge Michael H. Dolinger from James Reif dated 12/6/2013 re: Enclosed please find the Declarations of Ronald Eason and Tom Curtin concerning Mr. Eason's financial status and expenses he would incur were he compelled to appear in person in New York City for a deposition in this action. ENDORSEMENT: Defendants may respond to this submission by December 11, 2013. (Signed by Magistrate Judge Michael H. Dolinger on 12/9/2013) (rjm) (Entered: 12/10/2013) |
| 12/10/2013 | 133 | ENDORSED LETTER addressed to Magistrate Judge Michael H. Dolinger from Kathryn E. Leone dated 12/10/2013 re: Counsel writes in response to Plaintiffs' letter dated December 6, 2013, which attached declarations from plaintiff Ronald Eason and legal assistant Tom Curtin. Defendants do not oppose conducting his deposition by telephone. ENDORSEMENT: Defendants may conduct the deposition of Mr. Eason either by Telephone or in person in Florida. (Signed by Judge Colleen McMahon on 12/9/2013) (ft) (Entered: 12/10/2013) |
| 12/13/2013 | 134 | AMENDED SCHEDULING ORDER: Fact discovery shall be completed by January 17, 2014. Defendants' expert designation(s) and expert report(s) shall be submitted by January 20, 2014. Plaintiffs' rebuttal reports shall be submitted by February 4, 2014. Expert discovery shall be completed by February 18, 2014.Dispositive motions or the joint pretrial order shall be filed by March 20, 2014. No further extensions should be expected. (Motions due by 3/20/2014. Fact Discovery due by 1/17/2014. Expert Discovery due by 2/18/2014. Joint Pretrial Order due by 3/20/2014.) (Signed by Magistrate Judge Michael H. Dolinger on 12/13/2013) (rjm) (Entered: 12/16/2013) |
| 01/08/2014 | 135 | TRANSCRIPT of Proceedings re: CONFERENCE held on 10/25/2013 before Magistrate Judge Michael H. Dolinger. Court Reporter/Transcriber: Patricia Nilsen, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/3/2014. Redacted Transcript Deadline set for 2/13/2014. Release of Transcript Restriction set for 4/11/2014.(Rodriguez, Somari) (Entered: 01/08/2014) |
| 01/08/2014 | 136 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 10/25/13 has been |

| | | |
|---|---|---|
| | | filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(Rodriguez, Somari) (Entered: 01/08/2014) |
| 01/13/2014 | 137 | ENDORSED LETTER addressed to Magistrate Judge Michael H. Dolinger from Andrea O'Connor dated 1/09/2014 re: I write today to apprise the Court of a discovery dispute that has arisen regarding expert discovery. ENDORSEMENT: Application denied. A schedule for expert discovery is currently in place, and there is no reason to alter it. Whether plaintiffs intend to use an expert is for them to decide, but defendants are of course free to use one (or more). (Signed by Magistrate Judge Michael H. Dolinger on 1/10/2014) (ama) (Entered: 01/13/2014) |
| 02/11/2014 | 138 | LETTER MOTION for Extension of Time to Complete Discovery *Expert Discovery* addressed to Magistrate Judge Michael H. Dolinger from Kathryn E. Martin dated February 11, 2014. Document filed by Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation.(Martin, Kathryn) (Entered: 02/11/2014) |
| 02/11/2014 | 139 | LETTER addressed to Magistrate Judge Michael H. Dolinger from James Reif dated February 11, 2014 re: Response to Defendants' February 11, 2014 Letter. Document filed by Steven Arriola, Juan Bayron, Juan Bayron, Gina Berdecia, Elizabeth Kay Besom, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Samuel Hendricks, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey–Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz–Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Gabriel Vazquez, Jr., Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, teresa l. madeem, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu.(Reif, James) (Entered: 02/11/2014) |
| 02/14/2014 | 140 | ORDER granting 138 Letter Motion for Extension of Time to Complete Discovery. Application Granted.(Signed by Magistrate Judge Michael H. Dolinger on 2/11/2014) (ama) (Entered: 02/14/2014) |
| 02/14/2014 | | Set/Reset Deadlines: Expert Discovery due by 2/25/2014. (ama) (Entered: 02/14/2014) |
| 02/21/2014 | 141 | ENDORSED LETTER addressed to Magistrate Judge Michael H. Dolinger, from Kathryn E. Martin, dated 2/20/2014, re: request a pre–motion conference to address a discovery dispute. ENDORSEMENT: Plaintiffs are to produce to defendants' counsel all portions of notes by counselor their staff of individual plaintiffs' interviews insofar as those notes contain data used to create the chart of off–the–clock work that was provided to Mr. Ritz. They may redact the balance of those notes. Production is due by Feb. 24, 2014. (Signed by Magistrate Judge Michael H. Dolinger on 2/21/2014) (ja) (Entered: 02/21/2014) |
| 03/11/2014 | 142 | FIRST LETTER MOTION for Extension of Time *to file dispositive motions and for an enlargement of the page limitations for the memorandum of law and Rule 56.1 statement* addressed to Judge Alison J. Nathan from Kathryn E. Martin dated March 11, 2014. Document filed by The City of New York, The New York City Department of Parks &Recreation.(Martin, Kathryn) (Entered: 03/11/2014) |
| 03/11/2014 | 143 | ORDER: granting 142 Letter Motion for Extension of Time. SO ORDERED. Motions due by 4/3/2014. (Signed by Judge Alison J. Nathan on 3/11/2014) (djc) (Entered: 03/12/2014) |

| 03/17/2014 | 144 | LETTER addressed to Judge Alison J. Nathan from James Reif dated March 17, 2014 re: maintenance of collective action. Document filed by Steven Arriola, Juan Bayron, Juan Bayron, Gina Berdecia, Elizabeth Kay Besom, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Samuel Hendricks, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey−Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz−Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Gabriel Vazquez, Jr., Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu.(Reif, James) (Entered: 03/17/2014) |
| 03/17/2014 | 145 | MEMO ENDORSEMENT on re: 144 Letter, filed by matthew l. greenberg, laura spies, Cheriese Henderson, Mercedes Velilla, Jacqueline Deleon, Chris Galgano, Tanisha Harris, Jennifer Ragoonanansingh, Ruslan Shulyar, Charles St. Louis, vladis tobel, jasmine brooks, Earl Fisher, eunice yvonne hill, Baselice Ralph, tashawna sadler, Henry Perez, Vincent Piccolo, Destiny Colon, Kiaran Pierre, Lori Knowles, Joseph Oro, Juan Bayron, Tammy Williams, Renso Vidal, andrew howell, carillo maizio, stanley yu, donette n. davis, Sandra Lawrence, Ronald Eason, Gina Berdecia, Derek G. Walther, Ruthie Perez, Pedro Rosado, Asha Harris, Brenda Cruz, william guzman, roxann small, Iris Hernandez, earline e. reed, Robert Green, Haydee Fajardo, Richard Ventura, Jessica Torres, Jayme Likey−Alston, Barthel Joseph, kervin charlemagne, Jerry Cordero, Aston A. McKen, Dana Hawkins, davina r. yancey, Elizabeth Kay Besom, Marlena Poelz−Giga, nancy mercado, Eric Handy, Ruben Rios, Jr., alena brace, Donald Koonce, raquel ramos, Robin Wickert, Domingo Sanchez, Sunny Corrao, Rasheem Johnson, Adrienne D. Johnson, Jeffrey Edusei, Aliah Kelly, Eli Seyfried, Paige Lener, Bruce Langston, Chatory Brown, Frederica Johnson, michele mason, Darlene Lewis, jamal charles, Steven Arriola, Tiffani Phillips, Gabriel Vazquez, Jr., Hilario Ramos, Samuel Hendricks. ENDORSEMENT: The parties should prepare a proposed order and accompany it with a brief summary of the governing legal principles, along with any affidavits or other materials that the parties believe the Court should consider. (Signed by Judge Alison J. Nathan on 3/17/2014) (djc) (Entered: 03/18/2014) |
| 04/03/2014 | 146 | MOTION for Summary Judgment. Document filed by Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation. Responses due by 4/17/2014(O'Connor, Andrea) (Entered: 04/03/2014) |
| 04/03/2014 | 147 | DECLARATION of Andrea O'Connor in Support re: 146 MOTION for Summary Judgment.. Document filed by Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation. (Attachments: # 1 Exhibit A, B, # 2 Exhibit C, # 3 Exhibit D part 1, # 4 Exhibit D part 2, # 5 Exhibit E, F, G, H, I, # 6 Exhibit J, K, L, M, # 7 Exhibit N, O, P, Q, R, # 8 Exhibit S, T, U, # 9 Exhibit V, W, X, Y, Z, # 10 Exhibit AA, BB, CC, DD, EE, # 11 Exhibit FF, GG, HH, II, JJ, KK, # 12 Exhibit LL, MM, NN, OO, PP, # 13 Exhibit QQ, RR, SS, TT, UU, VV, # 14 Exhibit WW, XX, YY, ZZ, AAA, BBB, # 15 Exhibit CCC, DDD, EEE, FFF, GGG, # 16 Exhibit HHH, III, JJJ, LLL, # 17 Exhibit MMM, NNN, OOO, PPP, QQQ)(O'Connor, Andrea) (Entered: 04/03/2014) |
| 04/03/2014 | 148 | RULE 56.1 STATEMENT. Document filed by Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation. (O'Connor, Andrea) (Entered: 04/03/2014) |
| 04/03/2014 | 149 | MEMORANDUM OF LAW in Support re: 146 MOTION for Summary Judgment.. Document filed by Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation. (O'Connor, Andrea) (Entered: |

| | | 04/03/2014) |
|---|---|---|
| 04/15/2014 | 150 | LETTER MOTION for Extension of Time to File Response/Reply as to 147 Declaration in Support of Motion,,, 148 Rule 56.1 Statement, 146 MOTION for Summary Judgment., 149 Memorandum of Law in Support of Motion addressed to Judge Alison J. Nathan from Amelia K. Tuminaro dated April 15, 2014. Document filed by Steven Arriola, Juan Bayron, Juan Bayron, Gina Berdecia, Elizabeth Kay Besom, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Samuel Hendricks, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey−Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz−Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Gabriel Vazquez, Jr., Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, teresa l. madeem, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu.(Tuminaro, Amelia) (Entered: 04/15/2014) |
| 04/16/2014 | 151 | ORDER: granting 150 Letter Motion for Extension of Time to File Response/Reply re: 146 MOTION for Summary Judgment. SO ORDERED.Responses due by 5/16/2014 Replies due by 6/3/2014. (Signed by Judge Alison J. Nathan on 4/16/2014) (djc) (Entered: 04/16/2014) |
| 05/09/2014 | 152 | LETTER MOTION for Leave to File Excess Pages addressed to Judge Alison J. Nathan from Amelia K. Tuminaro dated May 9, 2014. Document filed by Steven Arriola, Juan Bayron, Juan Bayron, Gina Berdecia, Elizabeth Kay Besom, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Samuel Hendricks, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey−Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz−Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Gabriel Vazquez, Jr., Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu.(Tuminaro, Amelia) (Entered: 05/09/2014) |
| 05/09/2014 | 153 | LETTER MOTION for Leave to File Excess Pages *(CORRECTED)* addressed to Judge Alison J. Nathan from Amelia K. Tuminaro dated May 9, 2014. Document filed by Steven Arriola, Juan Bayron, Juan Bayron, Gina Berdecia, Elizabeth Kay Besom, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Samuel Hendricks, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey−Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz−Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli |

| | | |
|---|---|---|
| | | Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Gabriel Vazquez, Jr., Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu.(Tuminaro, Amelia) (Entered: 05/09/2014) |
| 05/09/2014 | 154 | ORDER granting 152 Letter Motion for Leave to File Excess Pages. ENDORSEMENT: SO ORDERED. (Signed by Judge Alison J. Nathan on 5/9/2014) (ft) (Entered: 05/12/2014) |
| 05/16/2014 | 155 | DECLARATION of James Reif in Opposition re: 146 MOTION for Summary Judgment.. Document filed by Steven Arriola, Juan Bayron, Juan Bayron, Gina Berdecia, Elizabeth Kay Besom, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Samuel Hendricks, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey–Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz–Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Gabriel Vazquez, Jr., Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu. (Attachments: # 1 Exhibit 1–10, # 2 Exhibit 11–19, # 3 Exhibit 20–27, # 4 Exhibit 28–39, # 5 Exhibit 40–50, # 6 Exhibit 51–60, # 7 Exhibit 61–68, # 8 Exhibit 69–75, # 9 Exhibit 76–82, # 10 Exhibit 83–93, # 11 Certificate of Service)(Reif, James) (Entered: 05/16/2014) |
| 05/16/2014 | 156 | COUNTER STATEMENT TO 148 Rule 56.1 Statement. Document filed by Steven Arriola, Juan Bayron, Juan Bayron, Gina Berdecia, Elizabeth Kay Besom, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Samuel Hendricks, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey–Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz–Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Gabriel Vazquez, Jr., Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu. (Attachments: # 1 Certificate of Service)(Tuminaro, Amelia) (Entered: 05/16/2014) |
| 05/16/2014 | 157 | MEMORANDUM OF LAW in Opposition re: 146 MOTION for Summary Judgment. . Document filed by Steven Arriola, Juan Bayron, Juan Bayron, Gina Berdecia, Elizabeth Kay Besom, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Samuel Hendricks, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme |

| | | |
|---|---|---|
| | | Likey–Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz–Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Gabriel Vazquez, Jr., Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu. (Attachments: #_1 Appendix A &B, #_2 Certificate of Service)(Reif, James) (Entered: 05/16/2014) |
| 05/27/2014 | 158 | LETTER MOTION for Leave to File Excess Pages *for defendants' reply memorandum in further support of their partial motion for summary judgment* addressed to Judge Alison J. Nathan from Andrea O'Connor dated May 27, 2014. Document filed by The City of New York, The New York City Department of Parks &Recreation.(O'Connor, Andrea) (Entered: 05/27/2014) |
| 05/28/2014 | 159 | ORDER granting 158 Letter Motion for Leave to File Excess Pages. 15. So ordered. (Signed by Judge Alison J. Nathan on 5/28/2014) (lmb) Modified on 5/29/2014 (lmb). (Entered: 05/28/2014) |
| 06/03/2014 | 160 | DECLARATION of Andrea O'Connor in Support re: 146 MOTION for Summary Judgment.. Document filed by The City of New York, The New York City Department of Parks &Recreation. (Attachments: #_1 Exhibit RRR, #_2 Exhibit SSS, #_3 Exhibit TTT (1 of 2), #_4 Exhibit TTT (2 or 2), #_5 Exhibit UUU)(O'Connor, Andrea) (Entered: 06/03/2014) |
| 06/03/2014 | 161 | REPLY to Response to Motion re: 146 MOTION for Summary Judgment. *Reply to Plaintiffs' Counter 56.1 Statement*. Document filed by The City of New York, The New York City Department of Parks &Recreation. (O'Connor, Andrea) (Entered: 06/03/2014) |
| 06/03/2014 | 162 | REPLY MEMORANDUM OF LAW in Support re: 146 MOTION for Summary Judgment. . Document filed by The City of New York, The New York City Department of Parks &Recreation. (O'Connor, Andrea) (Entered: 06/03/2014) |
| 06/09/2014 | 163 | MOTION For Leave To Maintain Collective Action . Document filed by Steven Arriola, Juan Bayron, Juan Bayron, Gina Berdecia, Elizabeth Kay Besom, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Samuel Hendricks, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey–Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz–Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Gabriel Vazquez, Jr., Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, teresa l. madeem, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu. (Attachments: #_1 Certificate of Service)(Reif, James) (Entered: 06/09/2014) |
| 06/09/2014 | 164 | DECLARATION of James Reif in Support re: 163 MOTION For Leave To Maintain Collective Action .. Document filed by Steven Arriola, Juan Bayron, Juan Bayron, Gina Berdecia, Elizabeth Kay Besom, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Samuel Hendricks, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald |

| | | |
|---|---|---|
| | | Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey–Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz–Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Gabriel Vazquez, Jr., Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, teresa l. madeem, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu. (Attachments: # 1 Exhibit A, # 2 Certificate of Service)(Reif, James) (Entered: 06/09/2014) |
| 06/09/2014 | 165 | MEMORANDUM OF LAW in Support re: 163 MOTION For Leave To Maintain Collective Action . . Document filed by Steven Arriola, Juan Bayron, Juan Bayron, Gina Berdecia, Elizabeth Kay Besom, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Samuel Hendricks, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey–Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz–Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Gabriel Vazquez, Jr., Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, teresa l. madeem, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu. (Attachments: # 1 Appendix, # 2 Certificate of Service)(Reif, James) (Entered: 06/09/2014) |
| 08/04/2014 | 166 | LETTER addressed to Judge Alison J. Nathan from Andrea O'Connor dated August 4, 2014 re: Section 3(H) of Your Honor's Individual Practices. Document filed by The City of New York, The New York City Department of Parks &Recreation.(O'Connor, Andrea) (Entered: 08/04/2014) |
| 12/08/2014 | | NOTICE OF CASE REASSIGNMENT to Judge Shira A. Scheindlin. Judge Alison J. Nathan is no longer assigned to the case. (pgu) (Entered: 12/08/2014) |
| 12/08/2014 | 167 | ORDER: granting 163 Motion for leave to maintain a collective action pursuant to section 16(b) of the Fair Labor Standards Act. With the consent of Defendants, Plaintiffs' motion for leave to maintain a collective action pursuant to section 16(b) of the Fair Labor Standards Act is hereby GRANTED. The Clerk of the Court is directed to close Dkt. No. 163. (Signed by Judge Shira A. Scheindlin on 12/8/2014) (djc) (Entered: 12/08/2014) |
| 12/15/2014 | 168 | LETTER addressed to Judge Shira A. Scheindlin from Andrea O'Connor dated December 15, 2014 re: Decision in Integrity Staffing Solutions. Document filed by Michael R. Bloomberg, The City of New York, The New York City Department of Parks &Recreation.(O'Connor, Andrea) (Entered: 12/15/2014) |
| 12/15/2014 | 169 | LETTER addressed to Judge Shira A. Scheindlin from Amelia K. Tuminaro dated December 15, 2014 re: Effect of U.S. Supreme Court's Integrity Staffing Solutions decision on Defendants' pending motion for partial summary judgment. Document filed by Steven Arriola, Juan Bayron, Juan Bayron, Gina Berdecia, Elizabeth Kay Besom, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Samuel Hendricks, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey–Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent |

| | | |
|---|---|---|
| | | Piccolo, Kiaran Pierre, Marlena Poelz–Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Gabriel Vazquez, Jr., Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, teresa l. madeem, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu.(Tuminaro, Amelia) (Entered: 12/15/2014) |
| 01/15/2015 | 170 | OPINION AND ORDER #105178 granting 146 Motion for Summary Judgment. At the close of fact discovery, defendants moved for summary judgment on three grounds. First, defendants argue that the donning and doffing of AUPR uniforms is a non–compensable "preliminary or postliminary" activity. Second, defendants argue that the donning and doffing of AUPR uniforms is exempt from FLSA liability under the "changing clothes" clause of section 203(o) of the Act. Third, defendants argue that even if plaintiffs' legal position is sound, time spent donning and doffing is de minimus. For the reasons set forth below, defendants' first argument prevails, and their motion is GRANTED. The Clerk of the Court is directed to close this motion (Dkt. No. 146) and close this case. (Signed by Judge Shira A. Scheindlin on 1/15/2015) (kko) Modified on 2/2/2015 (ca). (Entered: 01/15/2015) |
| 01/15/2015 | | Transmission to Judgments and Orders Clerk. Transmitted re: 170 Order on Motion for Summary Judgment, to the Judgments and Orders Clerk. (kko) (Entered: 01/15/2015) |
| 01/16/2015 | 171 | CLERK'S JUDGMENT: It is, ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion and Order dated January 15, 2015, Defendants' first argument prevails, and their motion is granted; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 01/16/2015) (Attachments: # 1 Right to Appeal, # 2 Right to Appeal)(km) (Entered: 01/16/2015) |
| 01/16/2015 | | Terminate Transcript Deadlines (km) (Entered: 01/16/2015) |
| 02/03/2015 | 172 | NOTICE OF APPEAL from 171 Clerk's Judgment,. Document filed by Steven Arriola, Juan Bayron, Juan Bayron, Gina Berdecia, Elizabeth Kay Besom, Chatory Brown, Destiny Colon, Jerry Cordero, Jerry Cordero, Sunny Corrao, Brenda Cruz, Jacqueline Deleon, Ronald Eason, Jeffrey Edusei, Haydee Fajardo, Earl Fisher, Chris Galgano, Robert Green, Eric Handy, Asha Harris, Tanisha Harris, Dana Hawkins, Cheriese Henderson, Samuel Hendricks, Iris Hernandez, Adrienne D. Johnson, Frederica Johnson, Rasheem Johnson, Barthel Joseph, Aliah Kelly, Lori Knowles, Donald Koonce, Donald Koonce, Bruce Langston, Sandra Lawrence, Paige Lener, Darlene Lewis, Jayme Likey–Alston, Aston A. McKen, Joseph Oro, Henry Perez, Ruthie Perez, Tiffani Phillips, Vincent Piccolo, Kiaran Pierre, Marlena Poelz–Giga, Jennifer Ragoonanansingh, Baselice Ralph, Hilario Ramos, Ruben Rios, Jr., Pedro Rosado, Domingo Sanchez, Eli Seyfried, Ruslan Shulyar, Charles St. Louis, Jessica Torres, Gabriel Vazquez, Jr., Mercedes Velilla, Richard Ventura, Renso Vidal, Derek G. Walther, Robin Wickert, Tammy Williams, alena brace, jasmine brooks, kervin charlemagne, jamal charles, donette n. davis, matthew l. greenberg, william guzman, eunice yvonne hill, andrew howell, teresa l. madeem, carillo maizio, michele mason, nancy mercado, raquel ramos, earline e. reed, tashawna sadler, roxann small, laura spies, vladis tobel, davina r. yancey, stanley yu. Filing fee $ 505.00, receipt number 0208–10557705. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Reif, James) (Entered: 02/03/2015) |
| 02/03/2015 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 172 Notice of Appeal. (tp) (Entered: 02/03/2015) |
| 02/03/2015 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 172 Notice of Appeal, filed by matthew l. greenberg, laura spies, Cheriese Henderson, Mercedes Velilla, teresa l. madeem, Jacqueline Deleon, Chris Galgano, Tanisha Harris, Jennifer Ragoonanansingh, Ruslan |

Case 15-315, Document 24, 05/07/2015, 1504493, Page54 of 305

| | | Shulyar, Charles St. Louis, vladis tobel, jasmine brooks, Earl Fisher, eunice yvonne hill, Baselice Ralph, tashawna sadler, Henry Perez, Vincent Piccolo, Destiny Colon, Kiaran Pierre, Lori Knowles, Joseph Oro, Juan Bayron, Tammy Williams, Renso Vidal, andrew howell, carillo maizio, stanley yu, donette n. davis, Sandra Lawrence, Ronald Eason, Gina Berdecia, Derek G. Walther, Ruthie Perez, Pedro Rosado, Asha Harris, Brenda Cruz, william guzman, roxann small, Iris Hernandez, earline e. reed, Robert Green, Haydee Fajardo, Richard Ventura, Jessica Torres, Jayme Likey–Alston, Barthel Joseph, kervin charlemagne, Jerry Cordero, Aston A. McKen, Dana Hawkins, davina r. yancey, Elizabeth Kay Besom, Marlena Poelz–Giga, nancy mercado, Eric Handy, Ruben Rios, Jr., alena brace, Donald Koonce, raquel ramos, Robin Wickert, Domingo Sanchez, Sunny Corrao, Rasheem Johnson, Adrienne D. Johnson, Jeffrey Edusei, Aliah Kelly, Eli Seyfried, Paige Lener, Bruce Langston, Chatory Brown, Frederica Johnson, michele mason, Darlene Lewis, jamal charles, Steven Arriola, Tiffani Phillips, Gabriel Vazquez, Jr., Hilario Ramos, Samuel Hendricks were transmitted to the U.S. Court of Appeals. (tp) (Entered: 02/03/2015) |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
———————————————————————————X

**PEREZ, HENRY**
**BASELICE, RALPH**
**BAYRON, JUAN**
**CORDERO, JERRY**                              **COMPLAINT**
**EASON, RONALD**                               ECF CASE
**KOONCE, DONALD**
**ORO, JOSEPH**
**RIOS, RUBEN JR.**
**ROSADO, PEDRO**
**WALTHER, DEREK G. on behalf**
**of themselves and others similarly situated,**

                         Plaintiffs,

          v.                                        **Civil Action No: 12 CIV 4914 AJN**

**THE CITY OF NEW YORK, MICHAEL R. BLOOMBERG,**
**AS MAYOR and THE NEW YORK CITY DEPARTMENT**
**OF PARKS & RECREATION, ADRIAN BENEPE,**
**AS COMMISSIONER**                             **JURY TRIAL DEMANDED**

                         **Defendants.**
———————————————————————————X


## INTRODUCTION

Plaintiffs, Henry Perez, Ralph Baseline, Juan Bayron, Jerry Cordero, Ronald

Eason, Donald Koonce, Joseph Oro, Ruben Rios, Jr., Pedro Rosado, and Derek G.

Walther, by and through their attorneys, Mary J. O'Connell, General Counsel, Steven E.

Sykes and Jesse Gribben, of Counsel, complaining of defendants, the City of New York

1

("New York City")  and the New York City Department of Parks & Recreation (hereinafter collectively referred to as "defendants"), state as follows:

### NATURE OF ACTION

1.      Plaintiffs, and others similarly situated, are and at all times material herein, have been employed by defendants in the position of Associate Urban Park Ranger at the New York City Department of Parks & Recreation.

2.      Plaintiffs seek declaratory judgment, the amount of their unpaid wages, unpaid overtime, punitive damages, liquidated damages, attorneys' fees, and other relief pursuant to 29 U.S.C. § 206, 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the defendants' willful and unlawful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, complained of herein.

### PARTIES

3.      Plaintiffs are identified in the caption of the Complaint and have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b). These written consent forms set forth each plaintiff's name and home address.

4.      Each of the plaintiffs in this action while employed by defendants in the position of Associate Urban Park Ranger has been an "employee" within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

5.      As Associate Urban Park Rangers, plaintiffs primarily performed and continue to perform tasks which include, but are not limited to, patrolling City parks and park facilities, performing crowd control functions, enforcing compliance with City park rules and regulations and health and sanity codes, issuing summonses, making arrests,

providing safety and educational services to the public, and under direction, supervising subordinates in performing the same.

6.      Plaintiffs do not qualify as exempt executive workers pursuant to 29 U.S.C.A. § 213(a)(1) because their primary duty is not management. While at times the plaintiffs direct the work of subordinate rangers, such supervision is incidental in relation to the plaintiffs' main duties. 29 CFR § 541.3(b)(1); 29 CFR § 541.3(b)(2).

7.      Defendant New York City is, among other things, an incorporated municipality of the State of New York amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). New York City has a principal office and place of business located at Broadway and Park Row, New York, New York, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, New York 10007.

8.      Defendant Michael Bloomberg is the mayor of the City of New York, and is named in this action in his official capacity as mayor of the City of New York.

9.      Defendant New York City Department of Parks & Recreation is a mayoral agency duly organized and existing under the New York City Charter, and is amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The New York City Department of Parks & Recreation has its principal office located at Arsenal North, 1234 Fifth Avenue, New York, New York 10029.

10.     Defendant Adrian Benepe is the Commissioner of the New York City Department of Parks & Recreation, and is named in this action in his official capacity as

Commissioner of the New York City Department of Parks & Recreation.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331

and 29 U.S.C. § 216(b).

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

13.    At all times material herein, and since at least January 2009, the plaintiffs

have worked within the New York City Department of Parks and Recreation for the

defendants in the position of Associate Urban Park Ranger.

14.    Within the last three years while working in the position of Associate Urban

Park Ranger, plaintiffs have worked in excess of forty hours per week.

15.    During the times plaintiffs have worked in excess of 40 hours in a week,

defendants failed to provide plaintiffs with the rights and protections provided under the

FLSA. Moreover, defendants have violated the FLSA, 29 U.S.C. §§ 207(a) and (o)

through such actions as (1) suffering or permitting plaintiffs to work before and after

their scheduled shifts and failing to compensate plaintiffs for such work activities (Ex.

donning and doffing required uniform); (2) knowingly and willfully failing to pay plaintiffs

overtime compensation when plaintiffs have worked beyond forty hours in any given

workweek; (3) failing to pay the plaintiffs overtime compensation at time and a half, as

opposed to straight time, when plaintiffs have worked beyond forty hours a week; (4)

improperly converting plaintiffs' compensatory time off, earned in lieu of overtime

compensation, into sick time at the conclusion of each fiscal year; and (5) improperly

designating compensatory time as "non-FLSA" compensatory time and failing to afford this earned compensatory time the protections of the FLSA.

## CLAIMS FOR RELIEF FOR VIOLATIONS OF THE
## FAIR LABOR STANDARDS ACT (FLSA)

16.     Plaintiffs hereby incorporate by reference all preceding paragraphs of this complaint and repeat the allegations set forth therein.

17.     Section 206 of the FLSA requires that no less than minimum wage be paid at an hourly rate to each employee who is engaged in or employed in an enterprise engaged in commerce or in the production of goods for commerce in any workweek.

18.     Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all work hours in excess of forty hours per week. Section 207(o) of the FLSA permits the limited use of compensatory time off as a substitute for cash compensation for overtime pay for public sector employees, but only under the terms and conditions prescribed by the FLSA, 29 U.S.C. § 207(o).

19.     Section 207(o)(3)(A) of the FLSA provides that an employee performing a public safety activity, an emergency response activity, or a seasonal activity may not accrue more than 480 hours of compensatory time. Any employee who has accrued 480 hours shall be paid overtime compensation in cash for all additional overtime hours of work. 29 U.S.C. § 207(o)(3)(A).

20.    Defendants willfully failed to compensate plaintiffs with at least the minimum wage hourly rate for the time they worked before and after their shifts, in violation of the FLSA, 29 U.S.C. § 206(a).

21.    Defendants willfully failed to comply with the overtime pay requirements of the FLSA in the manners outlined herein and in particular in paragraph 15, in violation of the FLSA, 29 U.S.C. § 207.

22.    By failing and refusing to pay the plaintiffs the overtime pay required under law, the defendants have violated, and are continuing to violate in a willful and intentional manner, the provisions of the FLSA. This action is brought to remedy the violations of the FLSA for the maximum period allowed under the law. At all times material herein, the plaintiffs have been unlawfully deprived of overtime compensation and other relief for the maximum statutory period allowed under federal law.

23.    As a result of the defendants' willful and purposeful violations of the FLSA, the plaintiffs are entitled to recover from defendants an amount that has not yet been precisely determined. The employment and work records for the plaintiffs are in the exclusive possession, custody, and control of the defendants, and the plaintiffs are unable to state at this time the exact amount owing to them. Defendants are under a duty under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs, from which the amount of defendants' liability can be ascertained.

24.    Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendants' failure to

pay overtime compensation. In addition, plaintiffs are entitled to an award of interest on their back pay damages until such damages are paid.

25.    Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

26.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs, on their own behalf and on behalf of others similarly situated, respectfully requests that this Court grant the following relief:

(a)  Enter judgment declaring that the defendants have willfully and wrongfully violated their statutory obligations, and deprived each of the plaintiffs of his and her rights;

(b)  Order a complete and accurate accounting of all the compensation to which the plaintiffs are entitled;

(c)  Award plaintiffs monetary liquidated damages equal to their unpaid compensation;

(d)  Award plaintiffs punitive damages consistent with the claims herein;

(e)  Award plaintiffs interest on their unpaid compensation;

(f)   Award plaintiffs their reasonable attorneys fees to be paid by the defendants, and the costs and disbursements of this action; and

(g)  Grant such other relief as may be just and proper.

Dated: June 18, 2012          Respectfully Submitted,
New York, New York

                              MARY J. O'CONNELL
                              General Counsel
                              District Council 37, AFSCME, AFL-CIO
                              Attorney for Petitioners
                              125 Barclay Street—Room 510
                              New York, NY 10007
                              (212) 815-1450


                              By: _____
                                  Steven E. Sykes
                                  Senior Assistant General Counsel


                              By: _____
                                  Jesse Gribben
                                  Assistant General Counsel

**A-58**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PEREZ, HENRY
BASELICE, RALPH
BAYRON, JUAN
CORDERO, JERRY
EASON, RONALD
KOONCE, DONALD
ORO, JOSEPH                                    CONSENT TO BECOME
RIOS, RUBEN JR.                                A PLAINTIFF
ROSADO, PEDRO
WALTHER, DEREK G. on behalf
of themselves and others similarly situated,

                Plaintiffs,

    -against-

THE CITY OF NEW YORK, MICHAEL R. BLOOMBERG,
AS MAYOR AND THE CITY OF NEW YORK PARKS &
RECREATION, ADRIAN BENEPE, AS COMMISSIONER

             Defendants.
-------------------------------------------------------------X

    I am employed by The New York City Department of Parks & Recreation as an
Associate Urban Park Ranger. In at least one workweek, I worked in excess of forty hours and
was not compensated at all and/or not at time-and-a-half for my overtime hours.

    I hereby consent to become a party plaintiff in the above-captioned action. I designate
Mary J. O'Connell, General Counsel, Steven E. Sykes and Jesse Gribben, of Counsel, District
Council 37, 125 Barclay St., Rm. 510, New York, NY 10007, as my counsel.

Dated: _____6-20-12_____

_____, New York

Signature

Print Name   HENRY PEREZ

Home Address   86-11 252ND ST. Bellerose
N.Y. 11426

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PEREZ, HENRY
BASELICE, RALPH
BAYRON, JUAN
CORDERO, JERRY
EASON, RONALD
KOONCE, DONALD
ORO, JOSEPH                                            CONSENT TO BECOME
RIOS, RUBEN JR.                                        A PLAINTIFF
ROSADO, PEDRO
WALTHER, DEREK G. on behalf
of themselves and others similarly situated,

                        Plaintiffs,

          -against-

THE CITY OF NEW YORK, MICHAEL R. BLOOMBERG,
AS MAYOR AND THE CITY OF NEW YORK PARKS &
RECREATION, ADRIAN BENEPE, AS COMMISSIONER

                        Defendants.
-------------------------------------------------------------X

        I am employed by The New York City Department of Parks & Recreation as an
Associate Urban Park Ranger. In at least one workweek, I worked in excess of forty hours and
was not compensated at all and/or not at time-and-a-half for my overtime hours.

        I hereby consent to become a party plaintiff in the above-captioned action. I designate
Mary J. O'Connell, General Counsel, Steven E. Sykes and Jesse Gribben, of Counsel, District
Council 37, 125 Barclay St., Rm. 510, New York, NY 10007, as my counsel.

Dated: _6-20-12_
_____, New York
                                            Signature

                                            _Ralph Baselice_
                                            Print Name
                                            _9 Lupine Lane, LK Grove NY 11755_
                                            Home Address

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
PEREZ, HENRY
BASELICE, RALPH
BAYRON, JUAN
CORDERO, JERRY
EASON, RONALD
KOONCE, DONALD
ORO, JOSEPH                                              CONSENT TO BECOME
RIOS, RUBEN JF..                                         A PLAINTIFF
ROSADO, PEDRO
WALTHER, DEREK G. on behalf
of themselves and others similarly situated,

                              Plaintiffs,

                    -against-

THE CITY OF NEW YORK, MICHAEL R. BLOOMBERG,
AS MAYOR AND THE CITY OF NEW YORK PARKS &
RECREATION, ADRIAN BENEPE, AS COMMISSIONER

                              Defendants.
---------------------------------------------------------------X
        I am employed by The New York City Department of Parks & Recreation as an
Associate Urban Park Ranger. In at least one workweek, I worked in excess of forty hours and
was not compensated at all and/or not at time-and-a-half for my overtime hours.

        I hereby consent to become a party plaintiff in the above-captioned action. I designate
Mary J. O'Connell, General Counsel, Steven E. Sykes and Jesse Gribben, of Counsel, District
Council 37, 125 Barclay St., Rm. 510, New York, NY 10007, as my counsel.


Dated: 6/19/12
_____, New York

                                        Ronald Eason
                                        Signature

                                        Ronald Eason
                                        Print Name

                                        2035 E 16 ST Bklyn, N.Y. 11229
                                        Home Address
                                                APT 2F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PEREZ, HENRY
BASELICE, RALPH
BAYRON, JUAN
CORDERO, JERRY
EASON, RONALD
KOONCE, DONALD
ORO, JOSEPH                                               CONSENT TO BECOME
RIOS, RUBEN JR.                                           A PLAINTIFF
ROSADO, PEDRO
WALTHER, DEREK G. on behalf
of themselves and others similarly situated,

                          Plaintiffs,

          -against-

THE CITY OF NEW YORK, MICHAEL R. BLOOMBERG,
AS MAYOR AND THE CITY OF NEW YORK PARKS &
RECREATION, ADRIAN BENEPE, AS COMMISSIONER

                          Defendants.
------------------------------------------------------------------X

     I am employed by The New York City Department of Parks & Recreation as an
Associate Urban Park Ranger. In at least one workweek, I worked in excess of forty hours and
was not compensated at all and/or not at time-and-a-half for my overtime hours.

     I hereby consent to become a party plaintiff in the above-captioned action. I designate
Mary J. O'Connell, General Counsel, Steven E. Sykes and Jesse Gribben, of Counsel, District
Council 37, 125 Barclay St., Rm. 510, New York, NY 10007, as my counsel.


Dated: _____6-20-12_____
                    _____, New York       _____
                                                         Signature
                                                         _JOSEPH ORO_____
                                                         Print Name
                                                         _131-19 Fowler Ave_____
                                                         Home Address
                                                         Flushing N.Y. 11355

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PEREZ, HENRY
BASELICE, RALPH
BAYRON, JUAN
CORDERO, JERRY
EASON, RONALD
KOONCE, DONALD
ORO, JOSEPH                                                    CONSENT TO BECOME
RIOS, RUBEN JR.                                                A PLAINTIFF
ROSADO, PEDRO
WALTHER, DEREK G. on behalf
of themselves and others similarly situated,

                Plaintiffs,

        -against-

THE CITY OF NEW YORK, MICHAEL R. BLOOMBERG,
AS MAYOR AND THE CITY OF NEW YORK PARKS &
RECREATION, ADRIAN BENEPE, AS COMMISSIONER

                Defendants.
-------------------------------------------------------------------X

      I am employed by The New York City Department of Parks & Recreation as an
Associate Urban Park Ranger. In at least one workweek, I worked in excess of forty hours and
was not compensated at all and/or not at time-and-a-half for my overtime hours.

      I hereby consent to become a party plaintiff in the above-captioned action. I designate
Mary J. O'Connell, General Counsel, Steven E. Sykes and Jesse Gribben, of Counsel, District
Council 37, 125 Barclay St., Rm. 510, New York, NY 10007, as my counsel.

Dated: June 18, 2012
_____, New York

Signature

Print Name: Ruben Rios Jr.

Home Address: 2455 Cruger Ave Bx NY 10467

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
PEREZ, HENRY
BASELICE, RALPH
BAYRON, JUAN
CORDERO, JERRY
EASON, RONALD
KCONCE, DONALD
ORO, JOSEPH                                                          CONSENT TO BECOME
RIOS, RUBEN JR.                                                      A PLAINTIFF
ROSADO, PEDRO
WALTHER, DEREK G. on behalf
of themselves and others similarly situated,

                Plaintiffs,

      -against-

THE CITY OF NEW YORK, MICHAEL R. BLOOMBERG,
AS MAYOR AND THE CITY OF NEW YORK PARKS &
RECREATION, ADRIAN BENEPE, AS COMMISSIONER

                Defendants.
---------------------------------------------------------------X

    I am employed by The New York City Department of Parks & Recreation as an
Associate Urban Park Ranger. In at least one workweek, I worked in excess of forty hours and
was not compensated at all and/or not at time-and-a-half for my overtime hours.

    I hereby consent to become a party plaintiff in the above-captioned action. I designate
Mary J. O'Connell, General Counsel, Steven E. Sykes and Jesse Gribben, of Counsel, District
Council 37, 125 Barclay St., Rm. 510, New York, NY 10007, as my counsel.

Dated: _June 19, 2012_____
    _____, New York

                               _Pedro L. Rosado_____
                               Signature
                               _Pedro L. Rosado_____
                               Print Name
                               _2455 CRUGER AVE   APT 5H_
                               Home Address
                               _BRONX NY 10467_____

**A-64**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PEREZ, HENRY
BASELICE, RALPH
BAYRON, JUAN
CORDERO, JERRY
EASON, RONALD
KOONCE, DONALD
ORO, JOSEPH                                                    CONSENT TO BECOME
RIOS, RUBEN JR.                                                A PLAINTIFF
ROSADO, PEDRO
WALTHER, DEREK G. on behalf
of themselves and others similarly situated,

                                    Plaintiffs,

                        -against-

THE CITY OF NEW YORK, MICHAEL R. BLOOMBERG,
AS MAYOR AND THE CITY OF NEW YORK PARKS &
RECREATION, ADRIAN BENEPE, AS COMMISSIONER

                        Defendants.
------------------------------------------------------------X

        I am employed by The New York City Department of Parks & Recreation as an
Associate Urban Park Ranger. In at least one workweek, I worked in excess of forty hours and
was not compensated at all and/or not at time-and-a-half for my overtime hours.

        I hereby consent to become a party plaintiff in the above-captioned action. I designate
Mary J. O'Connell, General Counsel, Steven E. Sykes and Jesse Gribben, of Counsel, District
Council 37, 125 Barclay St., Rm. 510, New York, NY 10007, as my counsel.

Dated: 6/19/2012

_____, New York

Signature

Derek Walther
Print Name

120 Co-op City Blvd. Bronx, NY 10475
APT 7E
Home Address

A-65

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                           :
PEREZ, HENRY                                               :
BASELICE, RALPH                                            :
BAYRON, JUAN                                               :
CORDERO, JERRY                                             :
EASON, RONALD                                              :          **ANSWER TO THE COMPLAINT**
KOONCE, DONALD                                             :
ORO, JOSEPH                                                :          12 Civ. 4914 (AJN)
RIOS, RUBEN JR.                                            :
ROSADO, PEDRO                                              :
WALTHER, DEREK G., on behalf                               :
themselves and others similarly situated,                 :
                                                           :
                                       Plaintiffs,         :

              v.


THE CITY OF NEW YORK, MICHAEL R.
BLOOMBERG, AS MAYOR and THE NEW YORK
CITY DEPARTMENT OF PARKS &
RECREATION, ADRIAN BENEPE, AS
COMMISSIONER,
                                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Defendants, by and through their attorney, **Michael A. Cardozo**, Corporation

Counsel of the City of New York, for their answer to the complaint, respectfully allege as

follows:

        1.  Deny the truth of the allegations set forth in paragraph "1" of the complaint,

except admit that the New York City Department of Parks and Recreation (hereinafter "Parks

Department") has employed named plaintiffs in the position of Associate Urban Park Rangers

within three years preceding the filing of the instant complaint and deny knowledge or

information sufficient to form a belief as to whether unidentified allegedly similarly situated

Associate Urban Park Rangers were employed.

1

2.   Deny the allegations set forth in paragraph "2" of the complaint, except admit that plaintiffs purport to proceed as set forth therein.

3.   Deny the truth of the allegations set forth in paragraph "3" of the complaint, except admit that plaintiffs purport to proceed as set forth therein and respectfully refer the Court to 29 U.S.C. §216(b) and the consent forms referenced therein for a complete and accurate description of their contents.

4.   Deny the truth of the allegations set forth in paragraph "4" of the complaint and respectfully refer the Court to 29 U.S.C. §203(e)(1) for a complete and accurate description of the statute.

5.   Deny the truth of the allegations set forth in paragraph "5" of the complaint, except admit that Associate Urban Park Rangers supervise subordinates in enforcing compliance with departmental rules and regulations through the issuance of summonses, direct and review staff, programs and operations providing informational, educational, and safety services to the general public, and could serve as communications supervisors among other supervisory responsibilities.

6.   Deny the truth of the allegations set forth in paragraph "6" of the complaint and respectfully refer the Court to the statute cited therein for a complete and accurate statement of its content.

7.   Deny the truth of the allegations set forth in paragraph "7" of the complaint, except admit that defendant City of New York is a municipality incorporated by the State of New York and subject to the Fair Labor Standards Act ("FLSA") and may be served with process at the Office of the Corporation Counsel, 100 Church Street, New York, New York 10007 and

respectfully refer the Court to 29 U.S.C. §203(x) for a complete and accurate statement of its contents.

8. Deny the truth of the allegations set forth in paragraph "8" of the complaint, except admit that Michael R. Bloomberg is the current Mayor of the City of New York and respectfully refer the Court to Chapter I of the Charter of the City of New York for a complete and accurate description of the duties and powers of the Mayor.

9. Deny the truth of the allegations set forth in paragraph "9" of the complaint, except admit that the Parks Department is a mayoral agency, with offices located at The Arsenal, 830 Fifth Avenue, New York, New York 10065 and respectfully refer the Court to Chapter 21 of the Charter of the City of New York and Title 18 of the Administrative Code of the City of New York for a complete and accurate description of the organizational structure and powers of the Parks Department and to 29 U.S.C. U.S.C. §203(x) for a complete and accurate statement of its contents.

10. Deny the truth of allegations set forth in paragraph "10" of the complaint, except admit that defendant Adrian Benepe is the current Commissioner of the Parks Department and respectfully refer the Court to section 533 of the Charter of the City of New York for a complete and accurate statement of the powers and duties of the Commissioner.

11. Deny the truth of the allegations set forth in paragraph "11" of the complaint, except admit that plaintiffs seek to invoke the jurisdiction of this court as set forth therein.

12. Deny the truth of the allegations set forth in paragraph "12" of the complaint, except admit that venue of this Court is proper.

13.  Deny the truth of the allegations set forth in paragraph "13" of the complaint, except admit that the Parks Department has employed plaintiffs in the position of Associate Urban Park Ranger within the three years preceding the filing of the instant complaint.

14. Deny the truth of the allegations set forth in paragraph "14" of the complaint.

15. Deny the truth of the allegations set forth in paragraph "15" of the complaint, except admit that defendants have classified the title of Associate Urban Park Ranger as exempt from the provisions of the FLSA.

16. In response to paragraph "16" of the complaint, defendants repeat and reallege paragraphs "1" through "15" as if fully set forth herein.

17. State that the allegations purport to set forth a conclusion of law for which no response is required.  To extent that a response is required, deny the truth of the allegations set forth in paragraph "17" of the complaint, and respectfully refer the Court to 29 U.S.C. §206 for a complete and accurate statement of its contents.

18. State that the allegations purport to set forth a conclusion of law for which no response is required.  To extent that a response is required, deny the truth of the allegations set forth in paragraph "18" of the complaint, and respectfully refer the Court to 29 U.S.C. §§207(a) and 207(o) for a complete and accurate statement of their contents.

19. State that the allegations purport to set forth a conclusion of law for which no response is required.  To extent that a response is required, deny the truth of the allegations set forth in paragraph "19" of the complaint, and respectfully refer the Court to 29 U.S.C. §207(o)(3)(A) for a complete and accurate statement of its contents.

20. Deny the truth of the allegations set forth in paragraph "20" of the complaint.

21. Deny the truth of the allegations set forth in paragraph "21" of the complaint.

22. Deny the allegations set forth in paragraph "22" of the complaint.

23. Deny the truth of the allegations set forth in paragraph "23" of the complaint and respectfully refer the Court to 29 U.S.C. §211(c) for a complete and accurate statement of its contents.

24. Deny the truth of the allegations set forth in paragraph "24" of the complaint.

25. Deny the truth of the allegations set forth in paragraph "25" of the complaint.

26. Deny the truth of the allegations set forth in paragraph "26" of the complaint, except admit that plaintiffs demand a trial by jury.

27. Deny the allegations in the WHEREFORE clause of the complaint, inclusive of all subparagraphs set forth therein.

## AS AND FOR A FIRST DEFENSE

28. Plaintiffs fail to state a claim upon which relief may be granted.

## AS AND FOR A SECOND DEFENSE

29. Plaintiffs' claims are barred, in whole or in part, by the applicable limitations periods.

## AS AND FOR A THIRD DEFENSE

30. Plaintiffs may be estopped from asserting some or all of the claims asserted in the complaint because defendants' actions were based upon and in accordance with the governing collective bargaining agreements and the past practices established thereunder.

## AS AND FOR A FOURTH DEFENSE

31. Plaintiffs' claims are barred, in whole or in part, by their failure to exhaust contractual remedies.

## AS AND FOR A FIFTH  DEFENSE

32. Plaintiffs' claims may be barred, in whole or in part, by the doctrines of laches, estoppel and waiver.

## AS AND FOR A SIXTH DEFENSE

33. Plaintiffs, those similarly situated to plaintiffs, and any opt-in plaintiffs are exempt from the provisions of the FLSA.

## AS AND FOR A SEVENTH DEFENSE

34. At all times, and in all manners, defendants acted in accordance with any and all duties and obligations that they may have had under the FLSA.

## AS AND FOR AN EIGHTH DEFENSE

35. Defendants state, in the alternative if necessary, and subject to proof through discovery, that part or all of any time that plaintiffs allege should be paid to themselves and/or

allegedly similarly-situated employees, is properly preliminary or postliminary time under the Portal-to-Portal Pay Act, 29 U.S.C. § 254(a), and therefore not compensable.

**AS AND FOR A  NINTH DEFENSE**

36. Defendants state that, in the alternative if necessary, to the extent that plaintiffs performed preliminary or postliminary activities, the activities actually performed were not an integral and indispensable part of the plaintiffs' principal activities of employment and are not compensable under the FLSA.

**AS AND FOR A TENTH  DEFENSE**

37. Defendants have at all times acted in good faith and had reasonable grounds for believing that the Parks Department's  pay practices complied with the FLSA.

**AS AND FOR AN ELEVENTH DEFENSE**

38. Subject to proof through discovery, plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

**AS AND FOR A TWELFTH  DEFENSE**

39. Plaintiffs' are barred from recovery of some or all of the damages sought because they are not authorized by the FLSA.

**AS AND FOR A THIRTEENTH DEFENSE**

40. As an agency of the City of New York, the Parks Department is not a suable entity under section 396 of the Charter of the City of New York.

**AS AND FOR A FOURTEENTH DEFENSE**

41. Defendant Michael R. Bloomberg cannot be held individually liable under the FLSA.

### AS AND FOR A FIFTEENTH DEFENSE

42. Defendant Adrian Benepe cannot be held individually liable under the FLSA.

### AS AND FOR A SIXTEENTH DEFENSE

43. Plaintiffs were properly paid overtime compensation in accordance with 29 U.S.C. §207(k), which was properly invoked by defendants.

### AS AND FOR A SEVENTEENTH DEFENSE

44. Plaintiffs are barred from recovery in this action because and to the extent that they are "bona fide executives" as set forth in 29 C.F.R. §541.100(a), and therefore are exempt from the overtime pay provisions of the FLSA.

### AS AND FOR AN EIGHTEENTH DEFENSE

45. This case may not be maintained as a collective action because the named plaintiffs are not similarly-situated to or otherwise adequate representatives for the persons whom they purport to represent.

### AS AND FOR A NINETEENTH DEFENSE

46. Defendants have not violated the FLSA as to the Parks Department compensatory time practices because the compensatory time used or sought to be used was for non-FLSA overtime or, in the alternative, the requests cannot be separated as to whether they are intended to invoke FLSA or non-FLSA overtime.

### AS AND FOR A TWENTIETH DEFENSE

47. Plaintiffs are barred from recovery of some or all of the damages sought because they are not authorized by the FLSA, the Constitution of the State of New York and/or the United States Constitution.

**WHEREFORE**, defendants respectfully request that the complaint be dismissed in its entirety and the relief sought therein be denied in all respects, with such other and further relief as the Court deems appropriate.

Dated:      New York, New York
             August 9, 2012

                         **MICHAEL A. CARDOZO**
                         Corporation Counsel of the City of New York
                         Attorneys for Defendants
                         New York City Law Department
                         100 Church Street, Room 2-316
                         New York, New York 10007
                         (212) 788-6838
                         arizvi@law.nyc.gov

                         By_____/s/ *Asad Rizvi*___
                           Asad Rizvi
                           Assistant Corporation Counsel

cc:    **Jesse Douglass Gribben, Esq.** (via ECF)
        District Council 37. AFSCME, AFL-CIO
        Attorney for Plaintiffs
        125 Barclay Street
        New York, New York 10007
        (212) 815-1450
        Email: jgribben@dc37.net

        **Steven Edward Sykes, Esq.** (via ECF)
        District Council 37. AFSCME, AFL-CIO
        Attorney for Plaintiffs
        125 Barclay Street, 10th Floor
        New York, New York 10007
        (212) 815-1450
        Email: ssykes@dc37.net

A-74

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————X

PEREZ, HENRY
BASELICE, RALPH
BAYRON, JUAN
CORDERO, JERRY
EASON, RONALD
KOONCE, DONALD
ORO, JOSEPH
RIOS, RUBEN JR.
ROSADO, PEDRO
WALTHER, DEREK G. on behalf
of themselves and others similarly situated,

        Plaintiffs,

   v.

THE CITY OF NEW YORK, MICHAEL R. BLOOMBERG,
AS MAYOR and THE NEW YORK CITY DEPARTMENT
OF PARKS & RECREATION, ADRIAN BENEPE,
AS COMMISSIONER,

        Defendants.

————————————————————————X

**PROPOSED
AMENDED COMPLAINT**

**ECF CASE**

**Civil Action No: 12 CIV 4914 AJN**

**JURY TRIAL DEMANDED**

## INTRODUCTION

    Plaintiffs, Henry Perez, Ralph Baselice, Juan Bayron, Jerry Cordero, Ronald

Eason, Donald Koonce, Joseph Oro, Ruben Rios, Jr., Pedro Rosado, and Derek G.

Walther, by and through their attorneys, Mary J. O'Connell, General Counsel, Steven E.

Sykes and Jesse Gribben, of Counsel, complaining of defendants, the City of New York

("New York City"), Michael R. Bloomberg as Mayor and the New York City Department

of Parks & Recreation Commissioner, Veronica M. White (hereinafter collectively referred to as "defendants"), state as follows:

## NATURE OF ACTION

1.    Plaintiffs, and others similarly situated, are and at all times material herein, have been employed by defendants in the position of Associate Urban Park Ranger at the New York City Department of Parks & Recreation.

2.    Plaintiffs seek declaratory judgment, the amount of their unpaid wages, unpaid overtime, punitive damages, liquidated damages, attorneys' fees, and other relief pursuant to 29 U.S.C. § 206, 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the defendants' willful and unlawful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, complained of herein.

## PARTIES

3.    Plaintiffs are identified in the caption of the Complaint and have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b). These written consent forms set forth each plaintiff's name and home address.

4.    Each of the plaintiffs in this action while employed by defendants in the position of Associate Urban Park Ranger has been an "employee" within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

5.    Defendant New York City is, among other things, an incorporated municipality of the State of New York amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). New York City has a principal office and place of

2

business located at Broadway and Park Row, New York, New York, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, New York 10007.

6.     Defendant Michael Bloomberg is the mayor of the City of New York, and is named in this action in his official capacity as mayor of the City of New York.

7.     Defendant New York City Department of Parks & Recreation is a mayoral agency duly organized and existing under the New York City Charter, and is amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The New York City Department of Parks & Recreation has its principal office located at Arsenal North, 1234 Fifth Avenue, New York, New York 10029.

8.     Defendant Veronica M. White[1] is the Commissioner of the New York City Department of Parks & Recreation, and is named in this action in his official capacity as Commissioner of the New York City Department of Parks & Recreation.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

### The Associate Urban Park Ranger Position

11.     As Associate Urban Park Rangers ("AUPRs"), the plaintiffs primarily perform a public safety function which includes such tasks as patrolling City Parks and

---

[1] Adrian Benepe, the former Commissioner resigned from his position on or about September 4, 2012 and was replaced by Veronica M. White.

3

facilities; implementing crowd control strategies; enforcing compliance with City park rules, regulations, and health and sanitary codes; issuing summonses; making arrests; and providing safety and educational services to the public, among other such duties that comprise the overwhelming majority of their AUPR position.  The AUPR position is the second lowest-raking park ranger title, above that of only Urban Park Rangers ("UPRs")

12.     In the performance of their job, the plaintiff AUPRs mostly work alone on patrol in the field, or alongside a handful (between one and four) of subordinate UPRs whom plaintiffs, under the direction of a Captain, may supervise in performing the same public safety function and duties described above.

13.     The plaintiffs perform their AUPR job functions at parks facilities throughout the City, including facilities in Queens (plaintiffs Perez, Baselice, Oro), The Bronx (plaintiffs Cordero, Bayron), Manhattan (plaintiffs Eason, Koonce, Walther) and, Randall's Island (plaintiffs Rios and Rosado).

14.     Plaintiffs do not qualify as exempt executive workers pursuant to 29 U.S.C.A. § 213(a)(1) because their primary duty is not management. While at times the plaintiffs direct the work of subordinate rangers, such supervision is incidental in relation to the plaintiffs' main duties. 29 CFR § 541.3(b)(1); 29 CFR § 541.3(b)(2).

15.     Each of the plaintiffs has worked in their AUPR positions for at least three years preceding the filing of the complaint herein, and some plaintiffs have been park rangers for upwards of 25 years.

4

Collective action

16.    In addition to the named plaintiffs in this action, fifty-seven (57) other individual AUPRs have indicated their desire to opt into this case under FLSA, and their consent forms have been filed with the Clerk's Office.   Upon information and belief, there exists over 100 other AUPRs who have worked for defendants during the past three years, performing the same functions as plaintiffs, and being  subject to the same policies of defendants under the FLSA complained of herein.

Overtime wage treatment of AUPRs by defendants under FLSA

17.    The annual base salary of an Associate Urban Park Ranger currently is $50,529 for a 40-hour workweek.   Extrapolated at an hourly rate, an AUPR earns approximately $24.20 per hour, straight time.

18.    Upon information and belief, while  AUPRs formerly are time and one half for all cash overtime over 40 hours in a workweek,  AUPRs has been compensated at the straight time rate, hour for hour, for all compensation leave time ("comp time") for time worked over 40 hours in a workweek.

19.    Unlike UPRs who are paid time and a half for assigned overtime under the FLSA, irrespective of whether the UPR receives cash or comp tome, AUPRs are compensated by defendants at the straight time rate, hour for hour, when comp time is given for overtime t compensatory leave time ("comp time").

20.    Defendants do not compensate AUPRs at all for time they spend in excess of their 40-hour workweek donning and doffing their uniforms, nor are they compensated for time spent in excess of their 40-hour workweek completing paperwork associated with their limited supervisory responsibilities.

5

21.    Where defendants have earned comp time at the straight time rate for assigned overtime work in lieu of cash payouts, defendants have engaged in the practice of improperly converting such comp time into sick leave time at the conclusion of each fiscal year, and improperly designating such comp time as "non-FLSA" compensatory time, thereby failing to afford this earned comp time the protection of the FLSA.

22.    For the past three years, the plaintiffs have each earned up to hundreds of hours' worth of cash or comp time, paid by defendants at the straight time rate for overtime, with the exact amounts varying from individual to individual, depending upon the individual's assignments and work locations.   Upon information and belief, defendants may readily access the precise information for each plaintiff based upon defendant's payroll and leave bank records maintained by them.

## CLAIMS FOR RELIEF FOR VIOLATIONS OF THE
## FAIR LABOR STANDARDS ACT (FLSA)

23.    At all times material herein, and since at least January 2009, the plaintiffs have worked within the New York City Department of Parks and Recreation for the defendants in the position of Associate Urban Park Ranger.

24.    Within the last three years while working in the position of Associate Urban Park Ranger, plaintiffs have worked in excess of forty hours per week.

25.    During the times plaintiffs have worked in excess of 40 hours in a week, defendants failed to provide plaintiffs with the rights and protections provided under the FLSA. Moreover, defendants have violated the FLSA, 29 U.S.C. §§ 207(a) and (o) through such actions as (1) suffering or permitting plaintiffs to work before and after

6

their scheduled shifts and failing to compensate plaintiffs for such work activities (Ex. donning and doffing required uniform); (2) knowingly and willfully failing to pay plaintiffs overtime compensation when plaintiffs have worked beyond forty hours in any given workweek; (3) failing to pay the plaintiffs overtime compensation at time and a half, as opposed to straight time, when plaintiffs have worked beyond forty hours a week; (4) improperly converting plaintiffs' compensatory time off, earned in lieu of overtime compensation, into sick time at the conclusion of each fiscal year; and (5) improperly designating compensatory time as "non-FLSA" compensatory time and failing to afford this earned compensatory time the protections of the FLSA.

26.    Plaintiffs hereby incorporate by reference all preceding paragraphs of this complaint and repeat the allegations set forth therein.

27.    Section 206 of the FLSA requires that no less than minimum wage be paid at an hourly rate to each employee who is engaged in or employed in an enterprise engaged in commerce or in the production of goods for commerce in any workweek.

28.    Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all work hours in excess of forty hours per week. Section 207(o) of the FLSA permits the limited use of compensatory time off as a substitute for cash compensation for overtime pay for public sector employees, but only under the terms and conditions prescribed by the FLSA, 29 U.S.C. § 207(o).

29.     Section 207(o)(3)(A) of the FLSA provides that an employee performing a public safety activity, an emergency response activity, or a seasonal activity may not accrue more than 480 hours of compensatory time. Any employee who has accrued 480 hours shall be paid overtime compensation in cash for all additional overtime hours of work. 29 U.S.C. § 207(o)(3)(A).

30.     Defendants willfully failed to compensate plaintiffs with at least the minimum wage hourly rate for the time they worked before and after their shifts, in violation of the FLSA, 29 U.S.C. § 206(a).

31.     Defendants willfully failed to comply with the overtime pay requirements of the FLSA in the manners outlined herein and in particular in paragraph 15, in violation of the FLSA, 29 U.S.C. § 207.

32.     By failing and refusing to pay the plaintiffs the overtime pay required under law, the defendants have violated, and are continuing to violate in a willful and intentional manner, the provisions of the FLSA. This action is brought to remedy the violations of the FLSA for the maximum period allowed under the law. At all times material herein, the plaintiffs have been unlawfully deprived of overtime compensation and other relief for the maximum statutory period allowed under federal law.

33.     As a result of the defendants' willful and purposeful violations of the FLSA, the plaintiffs are entitled to recover from defendants an amount that has not yet been precisely determined. The employment and work records for the plaintiffs are in the exclusive possession, custody, and control of the defendants, and the plaintiffs are unable to state at this time the exact amount owing to them. Defendants are under a

duty under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs, from which the amount of defendants' liability can be ascertained.

34.    Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendants' failure to pay overtime compensation. In addition, plaintiffs are entitled to an award of interest on their back pay damages until such damages are paid.

35.    Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

36.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs, on their own behalf and on behalf of others similarly situated, respectfully requests that this Court grant the following relief:

(a) Enter judgment declaring that the defendants have willfully and wrongfully violated their statutory obligations, and deprived each of the plaintiffs of his and her rights;

(b) Order a complete and accurate accounting of all the compensation to which the plaintiffs are entitled, including but not limited to time and one-half for a work on a 40-hour in a workweek met from which straight time was paid;

(c) Award plaintiffs monetary liquidated damages equal to their unpaid compensation;

(d)  Award plaintiffs punitive damages consistent with the claims herein;

(e)  Award plaintiffs interest on their unpaid compensation;

(f)  Award plaintiffs their reasonable attorneys fees to be paid by the defendants,

and the costs and disbursements of this action; and

(g)  Grant such other relief as may be just and proper.


Dated: September 10, 2012          Respectfully Submitted,
New York, New York
                                   MARY J. O'CONNELL
                                   General Counsel
                                   District Council 37, AFSCME, AFL-CIO
                                   Attorney for Petitioners
                                   125 Barclay Street—Room 510
                                   New York, NY 10007
                                   (212) 815-1450


                                   By: _____
                                        Steven E. Sykes (SS1637)
                                        Senior Assistant General Counsel


                                   By:  /S/_____
                                        Jesse Gribben
                                        Assistant General Counsel

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
PEREZ, HENRY                                                  :
BASELICE, RALPH                                               :
BAYRON, JUAN                                                  :
CORDERO, JERRY                                                :        **ANSWER TO THE AMENDED**
EASON, RONALD                                                 :        **COMPLAINT**
KOONCE, DONALD                                                :
ORO, JOSEPH                                                   :        12 Civ. 4914 (AJN)
RIOS, RUBEN JR.                                               :
ROSADO, PEDRO                                                 :
WALTHER, DEREK G., on behalf                                  :
themselves and others similarly situated,                     :
                                                              :
                                      Plaintiffs,             :
                                                              :
                v.                                            

THE CITY OF NEW YORK, MICHAEL R.
BLOOMBERG, AS MAYOR and THE NEW YORK
CITY DEPARTMENT OF PARKS &
RECREATION, ADRIAN BENEPE, AS
COMMISSIONER,
                                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Defendants, by and through their attorney, **Michael A. Cardozo**, Corporation Counsel of the City of New York, for their answer to the amended complaint, respectfully allege as follows:

1.  Deny the truth of the allegations set forth in paragraph "1" of the amended complaint, except admit that the New York City Department of Parks and Recreation (hereinafter "Parks Department") has employed named plaintiffs in the position of Associate Urban Park Rangers within three years preceding the filing of the instant action and deny knowledge or information sufficient to form a belief as to whether unidentified allegedly similarly situated Associate Urban Park Rangers were employed by the Parks Department.

1

2.   Deny the allegations set forth in paragraph "2" of the amended complaint, except admit that plaintiffs purport to proceed as set forth therein.

3.   Deny the truth of the allegations set forth in paragraph "3" of the amended complaint, except admit that plaintiffs purport to proceed as set forth therein and respectfully refer the Court to 29 U.S.C. §216(b) and the consent forms referenced therein for a complete and accurate description of their contents.

4.   Deny the truth of the allegations set forth in paragraph "4" of the amended complaint and respectfully refer the Court to 29 U.S.C. §203(e)(1) for a complete and accurate description of the statute.

5.   Deny the truth of the allegations set forth in paragraph "5" of the amended complaint, except admit that defendant City of New York is a municipality incorporated by the State of New York and subject to the Fair Labor Standards Act ("FLSA") and may be served with process at the Office of the Corporation Counsel, 100 Church Street, New York, New York 10007 and respectfully refer the Court to 29 U.S.C. §203(x) for a complete and accurate statement of its contents.

6.   Deny the truth of the allegations set forth in paragraph "6" of the amended complaint, except admit that Michael R. Bloomberg is the current Mayor of the City of New York and respectfully refer the Court to Chapter I of the Charter of the City of New York for a complete and accurate description of the duties and powers of the Mayor.

7.   Deny the truth of the allegations set forth in paragraph "7" of the amended complaint, except admit that the Parks Department is a mayoral agency, with offices located at The Arsenal, 830 Fifth Avenue, New York, New York 10065 and respectfully refer the Court to Chapter 21 of the Charter of the City of New York and Title 18 of the Administrative Code of

2

the City of New York for a complete and accurate description of the organizational structure and powers of the Parks Department and to 29 U.S.C. U.S.C. §203(x) for a complete and accurate statement of its contents.

8.   Deny the truth of allegations set forth in paragraph "8" of the amended complaint, except admit that Veronica M. White is the current Commissioner of the Parks Department, that Adrian Benepe was the Parks Department Commissioner from February 4, 2002 to September 2, 2012, and respectfully refer the Court to section 533 of the Charter of the City of New York for a complete and accurate statement of the powers and duties of the Commissioner.

9.   Deny the truth of the allegations set forth in paragraph "9" of the amended complaint, except admit that plaintiffs seek to invoke the jurisdiction of this court as set forth therein.

10. Deny the truth of the allegations set forth in paragraph "10" of the amended complaint, except admit that venue of this Court is proper.

11. Deny the truth of the allegations set forth in paragraph "11" of the amended complaint, except admit that Associate Urban Park Rangers supervise subordinates in enforcing compliance with departmental rules and regulations through the issuance of summonses, direct and review staff, programs and operations providing informational, educational, and safety services to the general public, could serve as communications supervisors among other supervisory responsibilities, and supervise subordinates including Urban Park Rangers, Job Training Participants, Parks Enforcement Patrol, and City Seasonal Aide Parks Enforcement Patrol.

12. Deny the truth of the allegations set forth in paragraph "12" of the amended complaint, except admit that Associate Urban Park Rangers supervise subordinates in enforcing compliance with departmental rules and regulations through the issuance of summonses, direct and review staff, programs and operations providing informational, educational, and safety services to the general public, could serve as communications supervisors among other supervisory responsibilities, and supervise subordinates including Urban Park Rangers, Job Training Participants, Parks Enforcement Patrol, and City Seasonal Aide Parks Enforcement Patrol.

13. Deny the truth of the allegations set forth in paragraph "13" of the amended complaint, except admit that Associate Urban Park Rangers are employed in a variety of Parks Department facilities in all five boroughs of the City of New York and deny knowledge or information sufficient to form a belief as to plaintiffs' specific assignment locations for unidentified dates.

14. Deny the truth of the allegations set forth in paragraph "14" of the amended complaint, except admit that plaintiffs supervisor subordinates, including Urban Park Rangers, and respectfully refer the Court to the statutes and regulations cited therein for a complete and accurate statement of their contents.

15. Deny the truth of the allegations set forth in paragraph "15" of the amended complaint, except admit that the Parks Department has employed plaintiffs in the position of Associate Urban Park Ranger within the three years preceding the filing of the instant action.

16. Deny the truth of the allegations set forth in paragraph "16" of the amended complaint, except admit that the parties have jointly identified a total of 159 individuals, including plaintiffs, that worked in the position of Associate Urban Park Ranger at some point

within the three years immediately preceding the filing of the instant action, and that on October 26, 2012, court-approved notices to opt-in to the proposed FLSA collective action were mailed to all 159 individuals by defendants' counsel and admit that no court-approved consent notices to opt-in have yet been filed as of the date of this answer.

17. Deny the truth of the allegations set forth in paragraph "17" of the amended complaint, except admit that the current salary for newly hired Associate Urban Park Rangers is $43,938 per annum and $50,529 per annum for incumbents and that Associate Urban Park Rangers are scheduled to work a 40-hour week.

18. Deny the truth of the allegations set forth in paragraph "18" of the amended complaint.

19. Deny the truth of the allegations set forth in paragraph "19" of the amended complaint, except admit that Urban Park Rangers are compensated at their regular rate of pay for any hours worked in excess of their 40-hour workweek.

20. Deny the truth of the allegations set forth in paragraph "20" of the amended complaint, except admit that Associate Urban Park Rangers there are required to wear uniforms and are assigned to supervisory duties which require the completion of paperwork at the worksite.

21. Deny the truth of the allegations set forth in paragraph "21" of the amended complaint.

22. Deny the truth of the allegations set forth in paragraph "22" of the amended complaint, except admit that defendants have payroll and leave records that detail the amount of time actually worked by plaintiffs, the amount of compensation they were paid and the amount of leave they accrued and used.

23. Deny the truth of the allegations set forth in paragraph "23" of the amended complaint, except admit that plaintiffs have been employed in the position of Associate Urban Park Ranger with the Parks Department in the three years preceding the filing of the instant action.

24. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "24" of the amended complaint.

25. State that the allegations purport to set forth a conclusion of law for which no response is required.  To extent that a response is required, deny the truth of the allegations set forth in paragraph "25" of the amended complaint, and respectfully refer the Court to 29 U.S.C. §§207(a) and 207(o) for a complete and accurate statement of their contents.

26. In response to paragraph "26" of the amended complaint, defendants repeat and reallege paragraphs "1" through "25" as if fully set forth herein.

27. State that the allegations purport to set forth a conclusion of law for which no response is required.  To extent that a response is required, deny the truth of the allegations set forth in paragraph "27" of the amended complaint, and respectfully refer the Court to 29 U.S.C. §206 for a complete and accurate statement of its contents.

28. State that the allegations purport to set forth a conclusion of law for which no response is required.  To extent that a response is required, deny the truth of the allegations set forth in paragraph "28" of the amended complaint, and respectfully refer the Court to 29 U.S.C. §§207(a) and 207(o) for a complete and accurate statement of their contents.

29. State that the allegations purport to set forth a conclusion of law for which no response is required.  To extent that a response is required, deny the truth of the allegations set

forth in paragraph "29" of the amended complaint, and respectfully refer the Court to 29 U.S.C. §207(o)(3)(A) for a complete and accurate statement of its contents.

30. Deny the truth of the allegations set forth in paragraph "30" of the amended complaint.

31. Deny the truth of the allegations set forth in paragraph "31" of the amended complaint.

32. Deny the allegations set forth in paragraph "32" of the amended complaint.

33. Deny the truth of the allegations set forth in paragraph "33" of the amended complaint and respectfully refer the Court to 29 U.S.C. §211(c) for a complete and accurate statement of its contents.

34. Deny the truth of the allegations set forth in paragraph "34" of the amended complaint.

35. Deny the truth of the allegations set forth in paragraph "35" of the amended complaint.

36. Deny the truth of the allegations set forth in paragraph "36" of the amended complaint, except admit that plaintiffs demand a trial by jury.

37. Deny the allegations in the WHEREFORE clause of the amended complaint, inclusive of all subparagraphs set forth therein.

## AS AND FOR A FIRST DEFENSE

38. Plaintiffs fail to state a claim upon which relief may be granted, either on their own behalf or on behalf of those persons whom they purport to represent.

## AS AND FOR A SECOND DEFENSE

39. The amended complaint is barred, in whole or in part, by the applicable limitations periods.

### AS AND FOR A THIRD DEFENSE

40. Plaintiffs may be estopped from asserting some or all of the claims asserted in the amended complaint because defendants' actions were based upon and in accordance with the governing collective bargaining agreements and the past practices established thereunder.

### AS AND FOR A FOURTH DEFENSE

41. Plaintiffs' claims are barred, in whole or in part, by their failure to exhaust contractual remedies.

### AS AND FOR A FIFTH  DEFENSE

42. Plaintiffs' claims may be barred, in whole or in part, by the doctrines of laches, estoppel and waiver.

### AS AND FOR A SIXTH DEFENSE

43. Plaintiffs, those similarly situated to plaintiffs, and any opt-in plaintiffs are exempt from the provisions of the FLSA.

### AS AND FOR A SEVENTH DEFENSE

44. At all times, and in all manners, defendants acted in accordance with any and all duties and obligations that they may have had under the FLSA**.**

### AS AND FOR AN EIGHTH DEFENSE

45. Defendants state, in the alternative if necessary, and subject to proof through discovery, that part or all of any time that plaintiffs allege should be paid to themselves and/or allegedly similarly-situated employees, is properly preliminary or postliminary time under the Portal-to-Portal Pay Act, 29 U.S.C. § 254(a), and therefore not compensable.

### AS AND FOR A  NINTH DEFENSE

46. Defendants state that, in the alternative if necessary, to the extent that plaintiffs performed preliminary or postliminary activities, the activities actually performed were

8

not an integral and indispensable part of the plaintiffs' principal activities of employment and are not compensable under the FLSA.

### AS AND FOR A TENTH  DEFENSE

47. Defendants have at all times acted in good faith and had reasonable grounds for believing that the Parks Department's pay practices complied with the FLSA.

### AS AND FOR AN ELEVENTH DEFENSE

48. Subject to proof through discovery, plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

### AS AND FOR A TWELFTH  DEFENSE

49. Plaintiffs' are barred from recovery of some or all of the damages sought because they are not authorized by the FLSA.

### AS AND FOR A THIRTEENTH DEFENSE

50. As an agency of the City of New York, the Parks Department is not a suable entity under section 396 of the Charter of the City of New York.

### AS AND FOR A FOURTEENTH DEFENSE

51. Defendant Michael R. Bloomberg cannot be held individually liable under the FLSA.

### AS AND FOR A FIFTEENTH DEFENSE

52. Defendant Veronica M. White cannot be held individually liable under the FLSA.

### AS AND FOR A SIXTEENTH DEFENSE

53. Plaintiffs were properly paid overtime compensation in accordance with 29 U.S.C. §207(k), which was properly invoked by defendants.

### AS AND FOR A SEVENTEENTH DEFENSE

54. Plaintiffs are barred from recovery in this action because and to the extent that they are "bona fide executives" as set forth in 29 C.F.R. §541.100(a), and therefore are exempt from the overtime pay provisions of the FLSA.

### AS AND FOR AN EIGHTEENTH DEFENSE

55. This case may not be maintained as a collective action because the named plaintiffs are not similarly-situated to or otherwise adequate representatives for the persons whom they purport to represent.

### AS AND FOR A NINETEENTH DEFENSE

56. Defendants have not violated the FLSA as to the Parks Department compensatory time practices because the compensatory time used or sought to be used was for non-FLSA overtime or, in the alternative, the requests cannot be separated as to whether they are intended to invoke FLSA or non-FLSA overtime.

### AS AND FOR A TWENTIETH DEFENSE

57. Plaintiffs are barred from recovery of some or all of the damages sought because they are not authorized by the FLSA, the Constitution of the State of New York and/or the United States Constitution.

        **WHEREFORE**, defendants respectfully request that the amended complaint be dismissed in its entirety and the relief sought therein be denied in all respects, with such other and further relief as the Court deems appropriate.

Dated:       New York, New York
              November 13, 2012

                      **MICHAEL A. CARDOZO**
                      Corporation Counsel of the City of New York
                      Attorneys for Defendants
                      New York City Law Department
                      100 Church Street, Room 2-112
                      New York, New York 10007
                      (212) 788-6838
                      arizvi@law.nyc.gov

                      By_____/s/  *Asad Rizvi*\_\_\_\_\_
                        Asad Rizvi
                        Assistant Corporation Counsel

cc:    **Jesse Douglass Gribben, Esq.** (via ECF)
       District Council 37. AFSCME, AFL-CIO
       Attorney for Plaintiffs
       125 Barclay Street
       New York, New York 10007
       (212) 815-1450
       Email: jgribben@dc37.net

       **Steven Edward Sykes, Esq.** (via ECF)
       District Council 37. AFSCME, AFL-CIO
       Attorney for Plaintiffs
       125 Barclay Street
       New York, New York 10007
       (212) 815-1450
       Email: ssykes@dc37.net; Steven_e_sykes@hotmail.com

       **Kenneth Allen Falk, Esq.** (via ECF)
       Kenneth Falk, Attorney Law
       Of Counsel
       171 Madison Avenue, Ste. 1002
       New York, NY 10016
       (212) 366-4600
       Email: kfalklaw@gmail.com

A-95

Mary J. O'Connell
   General Counsel
Steven E. Sykes
Jesse Gribben
District Council 37, AFSCME, AFL-CIO
125 Barclay Street, Room 510
New York, New York 10007
(212) 815-1450

James Reif
Amelia K. Tuminaro
Gladstein, Reif & Meginniss, LLP
817 Broadway, 6th Floor
New York, New York 10003
(212) 228-7727

Attorneys for Plaintiffs



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

**HENRY PEREZ, et al.,**

|                          |                                   |
|--------------------------|-----------------------------------|
| **Plaintiffs,**          | **EFC Case**                      |
| **-versus-**             | **No. 12 Civ. 4914 (AJN) (MHD)**  |
| **THE CITY OF NEW YORK, et al.,** |                          |
| **Defendants.**          | **SECOND AMENDED COMPLAINT** |

-------------------------------------------------------------x

          Plaintiffs, by their undersigned attorneys, hereby complain of Defendants as

follows:

          1.      This is an action to redress violations of the Fair Labor Standards Act of

1938, as amended ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and regulations promulgated thereunder.

Said violations arose and are continuing to arise from (a) Defendants' willful failures to

compensate Plaintiffs for time worked in excess of forty (40) hours per week at one and one-half

times Plaintiffs' regular rates of pay, as required by FLSA Section 7(a)(1), 29 U.S.C. §

207(a)(1), and/or FLSA Sec. 7(o), 29 U.S.C. § 207(o), and (b) Defendants' willful failures to pay Plaintiffs at not less than the applicable minimum wage rates guaranteed by FLSA Sec. 6(a)(1), 29 U.S.C. § 206 (a)(1), for time worked by Plaintiffs but not compensated by Defendants.

2.    Plaintiffs' causes of action arise under FLSA Section 16(b), 29 U.S.C. § 216(b).

3.    This Court has jurisdiction of Plaintiffs' causes of action pursuant to 29 U.S. C. § 216(b).

4.    Venue lies in this District because (a) a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District, (b) one or more Defendants resides in this District and, on information and belief, all Defendants are New York residents, and (c) one or more Defendants may be found in this District.

5.    Plaintiffs demand a trial by jury of all issues triable as of right by a jury.

## PARTIES

### Plaintiffs

6.    Henry Perez, Ralph Baselice, Juan Bayron, Jerry Cordero, Ronald Eason, Donald Koonce, Joseph Oro, Ruben Rios, Jr., Pedro Rosado and Derek G. Walther (sometimes "Plaintiffs") are and/or were each employed as an Associate Urban Park Ranger ("AUPR") or otherwise to perform the work of an AUPR for the New York City Department of Parks and Recreation. At all times relevant hereto, each Plaintiff is and/or was an employee within the meaning of FLSA Section 3(e), 29 U.S.C. § 203(e), and is and/or was employed by Defendants within the meaning of FLSA Section 3(g), 29 U.S.C. § 203(g), in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of FLSA Section 3(s)(1), 29 U.S.C. § 203(s)(1).

2

7.      Each named Plaintiff has given his/her consent in writing to be a plaintiff in this action, and such consent has been filed in this Court. Each other person who has become a plaintiff by "opting in" to this action, by filing with this Court his/her written consent to become a plaintiff herein, is similarly situated to one or more of the aforesaid named Plaintiffs. Defendants are treating and have treated the opt-in Plaintiffs as they are treating and have treated the named Plaintiffs as described below. The named Plaintiffs bring this action on behalf of themselves and on behalf of the opt-in Plaintiffs.

**Defendants**

8.      At all times relevant hereto, the City of New York is and/or was an employer of Plaintiffs within the meaning of 29 U.S.C. § 203(d) and is and/or was a public agency within the meaning of 29 U.S.C. § 203(x). Said Defendant's principal office and place of business is located at Broadway and Park Row in the City, County and State of New York. The City of New York may be served with process by serving the Office of Corporation Counsel, 100 Church Street in the City, County and State of New York.

9.      At all time relevant hereto, Michael Bloomberg is and/or was the Mayor of the City of New York. Said Defendant is sued herein in his official capacity as Mayor. The Mayor's principal office and place of business is located at Broadway and Park Row in the City, County and State of New York.

10.     The New York City Department of Parks and Recreation ("Department of Parks and Recreation") is a New York City agency duly organized and existing under the New York City Charter. At all times relevant hereto, the Department of Parks and Recreation is and/or was an employer of Plaintiffs within the meaning of 29 U.S.C. § 203(d) and is and/or was a public agency within the meaning of 29 U.S.C. § 203(x). Said Defendant's principal office and

3

A-98

place of business is located at Arsenal North, 1234 Fifth Avenue in the City, County and State of New York.

11.    Veronica White is the Commissioner of the Department of Parks and Recreation and is sued in this action in her official capacity as Commissioner.[1] The Commissioner's principal office and place of business is located at Arsenal North, 1234 Fifth Avenue in the City, County and State of New York.

## STATEMENT OF FACTS

12.    While employed at the Department of Parks and Recreation, each Plaintiff is and/or was employed as an AUPR and/or otherwise performs and/or performed the duties of an AUPR.

13.    Each Plaintiff is working and/or worked a regularly-scheduled workweek consisting of forty (40) hours. Normally each Plaintiff works and/or worked five (5) days per week. Each regularly-scheduled daily shift is and/or was eight and one-half (8 1/2) hours long, consisting of eight (8) hours of work and one-half (1/2) hour for an unpaid meal break. Plaintiffs are and/or were paid at straight time for the forty (40) hours of regularly-scheduled work.

14.    The annual base salary of an AUPR is currently $50,529.00.

15.    As an AUPR or while performing the duties of an AUPR, each Plaintiff primarily performs and/or performed law enforcement and other public safety duties including such tasks as patrolling City Parks and facilities; implementing crowd control strategies; enforcing compliance with City park rules, regulations and health and sanitary codes; issuing summonses; making arrests; and providing safety and educational services to the public, which

---

[1]    Prior to approximately September 4, 2012, Adrian Benepe held the position of Commissioner of the Department of Parks and Recreation.

4

tasks comprise the overwhelming majority of each Plaintiff's AUPR duties. The AUPR position is the second lowest-ranking park ranger title, above only that of Urban Park Ranger ("UPR").

16.     As an AUPR or while performing the duties of an AUPR, each Plaintiff reports and/or reported to, and works and/or worked under the direction of a Captain who is and/or was in charge of the command to which the Plaintiff is and/or was assigned.

17.     Defendants are not and/or were not entitled to treat Plaintiffs or any of them as exempt from the protection of the FLSA pursuant to 29 U.S.C. § 213 (a)(1) because, among other reasons, their primary duty is not and/or was not management of the Department of Parks and Recreation or of a customarily recognized subdivision thereof.

18.     While employed as an AUPR or otherwise performing the duties of an AUPR, each Plaintiff works and/or worked in excess of forty (40) hours per week.

19.     Pursuant to FLSA Sec. 7(a)(1), 29 U.S.C. § 207(a)(1), each Plaintiff is and/or was entitled to receive compensation from Defendants for each hour or part thereof worked per week in excess of forty (40) hours at the rate of one and one-half times his/her regular rate of pay. Pursuant to FLSA Sec 7(o)(1), 29 U.S.C. § 207(o)(1),  and when otherwise consistent with FLSA Sec. 7(o), 29 U.S.C. § 207(o), in lieu of overtime compensation paid pursuant to FLSA Sec. 7(a)(1), 29 U.S.C. § 207(a)(1), each Plaintiff may receive and/or might have received compensatory time off ("comp time") at a rate not less than one and one-half hours for each hour of work in excess of forty (40) hours per week.

20.     At the express direction of Defendants, each Plaintiff is performing and/or performed work of an AUPR at times outside and in addition to his/her regularly-scheduled forty (40) hour workweek. Defendants are compensating and/or compensated Plaintiffs for this work with comp time but only at the rate of one hour off for each such hour worked.

5

21.     In addition, each Plaintiff is performing and/or performed certain work of an AUPR with the knowledge of Defendants immediately before the start of a regularly-scheduled shift, to wit, donning a uniform and equipment as required by Defendants, completing required paperwork and performing other required, regularly recurrent tasks.  Defendants are failing and/or failed to compensate Plaintiffs for this work at all or, if Defendants do and/or did compensate Plaintiffs, they are failing and or failed to compensate them at one and one-half times Plaintiffs' respective regular rates of pay or with comp time at the rate of one and one-half hours off for each such hour worked.

22.     In addition, each Plaintiff is performing and/or performed certain work of an AUPR with the knowledge of Defendants immediately following the conclusion of a regularly-scheduled shift, to wit, the doffing of a uniform and equipment as required by Defendants, completing required paperwork and performing other required, regularly recurrent tasks.  Defendants are failing and/or failed to compensate Plaintiffs for this work at all or, if Defendants do and/or did compensate Plaintiffs, they are failing and/or failed to compensate them at one and one-half times Plaintiffs' respective regular rates of pay or with comp time at the rate of one and one-half hours off for each such hour worked.

23.     In addition, each Plaintiff is performing and/or performed work of an AUPR through or predominantly through the daily meal break with the knowledge of Defendants.  Defendants are failing and/or failed to compensate Plaintiffs for this work at all or, if Defendants do and/or did compensate Plaintiffs, they are failing and/or failed to compensate them at one and one-half times Plaintiffs' respective regular rates of pay or with comp time at the rate of one and one-half hours off for each such hour worked.

24.     The conduct of Defendants described above is continuing.

6

25. At all times relevant hereto, Defendants have failed and are failing to post and keep posted a notice explaining the FLSA as prescribed by the Wage and Hour Division of the U.S. Department of Labor in conspicuous places in every establishment where Plaintiffs were and are employed.

### FIRST CAUSE OF ACTION

26. Plaintiffs repeat and reallege herein Paragraphs 1 - 25 above.

27. In failing to compensate each Plaintiff for each hour worked at Defendants' express direction in excess of forty (40) hours per week at the rate of one and one-half times the Plaintiff's regular rate of pay, or with comp time at the rate of one and one-half hours off for each hour worked, Defendants are violating and/or violated FLSA Sec 7(a)(1), 29 U.S.C. § 207(a)(1), and/or FLSA Sec. 7(o)(1), 29 U.S.C. § 207(o)(1).

28. Said violations are and/or were willful within the meaning of 29 U.S.C. § 255(a). At all relevant times, Defendants know or show reckless disregard and/or knew or showed reckless disregard for whether their conduct described above is and/or was violating FLSA Sec. 7(a)(1), 29 U.S.C. § 207(a)(1), and/or FLSA Sec. 7(o)(1), 29 U.S.C. § 207(o)(1).

### SECOND CAUSE OF ACTION

29. Plaintiffs repeat and reallege herein Paragraphs 1 - 28 above.

30. In failing to compensate each Plaintiff for each hour worked immediately before the start of a regularly-scheduled shift at one and one-half times his/her regular rate of pay, or with comp time at the rate of one and one-half hours off for each such hour worked, Defendants are violating and/or violated FLSA Sec. 7(a)(1), 29 U.S.C. § 207(a)(1), and or FLSA Sec. 7(o)(1), 29 U.S.C. § 207(o)(1).

31. Said violations are and/or were willful within the meaning of 29 U.S.C. §255(a). At all relevant times, Defendants know or show reckless disregard and/or knew or

7

A-102

showed reckless disregard for whether their conduct described above is and/or was violating

FLSA Sec. 7(a)(1), 29 U.S.C. § 207(a)(1), and/or FLSA Sec. 7(o)(1), 29 U.S.C. § 207(o)(1).

## THIRD CAUSE OF ACTION

32.      Plaintiffs repeat and reallege herein Paragraphs 1 - 31 above.

33.      In failing to compensate each Plaintiff for each hour worked immediately

following the conclusion of a regularly-scheduled shift at one and one-half times his/her regular

rate of pay, or with comp time at the rate of one and one-half hours off for each such hour

worked, Defendants are violating and/or violated FLSA Sec. 7(a)(1), 29 U.S.C. § 207(a)(1),

and/or FLSA Sec. 7(o)(1), 29 U.S.C. § 207(o)(1).

34.      Said violations are and/or were willful within the meaning of 29 U.S.C. §

255(a).  At all relevant times, Defendants know or show reckless disregard and/or knew or

showed reckless disregard for whether their conduct described above is and/or was violating

FLSA Sec. 7(a)(1), 29 U.S.C. § 207(a)(1), and/or FLSA Sec. 7(o)(1), 29 U.S.C. § 207(o)(1).

## FOURTH CAUSE OF ACTION

35.      Plaintiffs repeat and reallege herein Paragraphs 1 - 34 above.

36.      In failing to compensate each Plaintiff for working entirely or

predominately through his/her supposed meal breaks at one and one-half times his/her regular

rate of pay, or with comp time at the rate of one and one-half hours off for each such hour

worked, Defendants are violating and/or violated FLSA Sec. 7(a)(1), 29 U.S.C. § 207(a)(1),

and/or FLSA Sec. 7(o)(1), 29 U.S.C. § 207(o)(1).

37.      Said violations are and/or were willful within the meaning of 29 U.S.C. §

255(a).  At all relevant times, Defendants know or show reckless disregard and/or knew or

showed reckless disregard for whether their conduct described above is and/or was violating

FLSA Sec. 7(a)(1), 29 U.S.C. § 207(a)(1), and/or FLSA Sec. 7(o)(1), 29 U.S.C. § 207(o)(1).

## FIFTH CAUSE OF ACTION

38.     Plaintiffs repeat and allege Paragraphs 1 - 37 above.

39.     Upon information and belief, Plaintiffs worked and accrued in excess of four hundred eighty (480) overtime hours for purposes of the FLSA for which they were compensated with time off.

40.     In compensating Plaintiffs for overtime worked and accrued in excess of four hundred eighty (480) overtime hours with time off instead of paying them at one and one-half times their respective regular rates of pay for each overtime hour accrued in excess of four hundred eighty (480), Defendants are violating and/or violated 29 U.S.C. § 207(o)(3)(A) and FLSA Sec. 7(a)(1), 29 U.S.C. § 207(a)(1).

41.     Said violations are and/or were willful within the meaning of 29 U.S.C. § 255(a).  At all relevant times, Defendants know or show reckless disregard and/or knew or showed reckless disregard for whether their conduct described above is and/or was violating 29 U.S.C. § 207(o)(3)(A) and FLSA Sec. 7(a)(1), 29 U.S.C. § 207(a)(1).

## SIXTH CAUSE OF ACTION

42.     Plaintiffs repeat and reallege Paragraphs 1 - 41 above.

43.     FLSA Sec. 6(a)(1), 29 U.S.C. § 206(a)(1), requires the payment by Defendants to each Plaintiff of wages (a) at not less than $7.25 per hour for all work performed on or after July 24, 2009, (b) at not less than $6.55 per hour for all work performed on or after July 24, 2008 and on or before July 23, 2009, (c) at not less than $5.85 per hour for all work performed on or after July 24, 2007 and on or before July 23, 2008, and (d) at not less than $5.15 per hour for all work performed on or after September 1, 1997 and on or before July 23, 2007.

44.     In failing to compensate each Plaintiff at all for time worked with the knowledge of Defendants immediately before or after his/her regularly-scheduled shift or

9

A-104

through or predominantly through his/her meal break as described above, Defendants are violating and/or violated FLSA Sec. 6(a)(1), 29 U.S.C. § 206(a)(1).

45. Said violations are and/or were willful within the meaning of 29 U.S.C. § 255(a). At all relevant times, Defendants know or show reckless disregard and/or knew or showed reckless disregard for whether their conduct described above is and/or was violating FLSA Sec. 6(a)(1), 29 U.S.C. § 206(a)(1).

## RELIEF

WHEREFORE, the named Plaintiffs on their own behalf and on behalf of the opt-in Plaintiffs request the following relief:

A. A judgment in favor of each named Plaintiff and each opt-in Plaintiff and against Defendants jointly and severally:

(i) in the amount of overtime compensation due and owing to said Plaintiff under FLSA Sec. 7(a)(1), 29 U.S.C. § 207(a)(1) and/or FLSA Sec. 7(o), 29 U.S.C. § 207(o);

(ii) for liquidated damages pursuant to 29 U.S.C. § 260 in an amount equal to the amount of the judgment in favor of said Plaintiff on his/her overtime compensation claims;

(iii) in the amount of the wages at minimum wage rates due and owing to said Plaintiff under FLSA Sec. 6(a)(1), 29 U.S.C. § 206(a)(1); and

(iv) for liquidated damages pursuant to 29 U.S.C. § 260 in an amount equal to the amount of the judgment in favor of said Plaintiff on his/her minimum wage claims;

B. A judgment in favor of Plaintiffs and against Defendants jointly and severally for costs and for reasonable attorney's fees, including expenses, pursuant to FLSA Sec. 16(b), 29 U.S.C. § 216(b); and

10

A-105

C.  A judgment in favor of Plaintiffs and against Defendants jointly and severally

for such other and further relief as may be just and appropriate.

Dated:      March 29th, 2013

                                                            Yours, etc.,

                                                            Mary J. O'Connell
                                                                General Counsel
                                                            Steven E. Sykes
                                                            Jesse Gribben
                                                            DISTRICT COUNCIL 37, AFSCME,
                                                                AFL-CIO
                                                            125 Barclay Street, Room 510
                                                            New York, New York 10007
                                                            (212) 815-1450

                                                            GLADSTEIN, REIF & MEGINNISS, LLP

                                                            By: _____
                                                                    James Reif (JR 2974)
                                                                    Amelia K. Tuminaro
                                                            817 Broadway, 6th Floor
                                                            New York, New York 10003
                                                            (212) 228-7727

                                                            Attorneys for Plaintiffs

11

A-106

**CERTIFICATE OF SERVICE**

I hereby certify that I am more than eighteen (18) years of age and not a party to this action and that this document(s) was served upon all defendants herein by e-mailing a copy thereof on April 1, 2013 to an attorney of record for defendants, to wit, Diana Goell Voigt (dvoigt@law.nyc.gov).

                                               /s/   James Reif
                                                 James Reif

A-107

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
PEREZ, HENRY                                            :
BASELICE, RALPH                                         :
BAYRON, JUAN                                            :
CORDERO, JERRY                                          :
EASON, RONALD                                           :      **ANSWER TO THE SECOND**
KOONCE, DONALD                                          :      **AMENDED COMPLAINT**
ORO, JOSEPH                                             :
RIOS, RUBEN JR.                                         :      12 Civ. 4914 (AJN) (MHD)
ROSADO, PEDRO                                           :
WALTHER, DEREK G., on behalf                            :
themselves and others similarly situated,              :
                                                        :
                                      Plaintiffs,       :

                  v.

THE CITY OF NEW YORK, MICHAEL R.
BLOOMBERG, AS MAYOR and THE NEW YORK
CITY DEPARTMENT OF PARKS &
RECREATION, ADRIAN BENEPE, AS
COMMISSIONER,
                                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       Defendants, by and through their attorney, **Michael A. Cardozo**, Corporation

Counsel of the City of New York, for their answer to the second amended complaint (hereinafter

"Second Amended Complaint"), respectfully allege as follows:

       1. Deny the allegations set forth in paragraph "1" of the Second Amended

Complaint, except admit that plaintiffs purport to proceed as set forth therein, and respectfully

refer the Court to the statutes cited therein for a complete and accurate statement of their

contents.

       2. Deny the allegations set forth in paragraph "2" of the Second Amended

Complaint, except admit that plaintiffs purport to proceed as set forth therein, and respectfully

A-108

refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

3.   Deny the allegations set forth in paragraph "3" of the Second Amended Complaint, except admit that plaintiffs seek to invoke the jurisdiction of this court as set forth therein, and respectfully refer the Court to the statute cited therein for a complete and accurate statement of its contents.

4.   Deny the allegations set forth in paragraph "4" of the Second Amended Complaint, except admit that the venue of this court is proper.

5.   Deny the allegations set forth in paragraph "5" of the Second Amended Complaint, except admit that plaintiffs purport to proceed as set forth therein.

6.   Deny the allegations set forth in paragraph "6" of the Second Amended Complaint, except admit that on or about June 22, 2009 to present, the ten named plaintiffs in this action were employed by defendant New York City Department of Parks and Recreation in the title of Associate Urban Park Ranger, and respectfully refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

7.   Deny the allegations set forth in paragraph "7" of the Second Amended Complaint, except admit that plaintiffs have filed consents for 69 plaintiffs to opt-in to this collective action, and respectfully refer the Court to the opt-in forms referenced therein for a complete and accurate statement of their contents.

8.   Deny the allegations set forth in paragraph "8" of the Second Amended Complaint, except admit that defendant City of New York is a municipality incorporated by the State of New York and may be served with process at the Office of the Corporation Counsel, 100

Church Street, New York, New York 10007 and respectfully refer the Court to the statues cited therein for a complete and accurate statement of their contents.

9. Deny the allegations set forth in paragraph "9" of the Second Amended Complaint, except admit that Michael R. Bloomberg is the current Mayor of the City of New York and respectfully refer the Court to Chapter I of the Charter of the City of New York for a complete and accurate description of the duties and powers of the Mayor.

10. Deny the allegations set forth in paragraph "10" of the Second Amended Complaint, except admit that the New York City Department of Parks and Recreation (hereinafter "Parks Department") is a mayoral agency, with offices located at The Arsenal, 830 Fifth Avenue, New York, New York 10065 and respectfully refer the Court to Chapter 21 of the Charter of the City of New York and Title 18 of the Administrative Code of the City of New York for a complete and accurate description of the organizational structure and powers of the Parks Department and to the statutes cited therein for a complete and accurate statement of their contents.

11. Deny the allegations set forth in paragraph "11" of the Second Amended Complaint, except admit that Veronica M. White is the current Commissioner of the Parks Department, that Adrian Benepe was the Parks Department Commissioner from February 4, 2002 to September 2, 2012, and respectfully refer the Court to section 533 of the Charter of the City of New York for a complete and accurate statement of the powers and duties of the Commissioner.

12. Deny the allegations set forth in paragraph "12" of the Second Amended Complaint, except admit that, within the period June 22, 2009 to present, plaintiffs, for all or a

13. Deny the allegations set forth in paragraph "13" of the Second Amended Complaint, except admit that Associate Urban Park Rangers are assigned to forty-hour workweeks, with daily shifts of eight and one-half hours in length, inclusive of a half-hour unpaid meal break.

14. Deny the allegations set forth in paragraph "14" of the Second Amended Complaint, except admit that Associate Urban Park Rangers with under two years of service with the City of New York are compensated at an annual new hire rate of $43,938.00 and Associate Urban Park Rangers with over two years of service with the City of New York are compensated at an annual incumbent rate of $50,529.00.

15. Deny the allegations set forth in paragraph "15" of the Second Amended Complaint, except admit that an Associate Urban Park Ranger is one rank above the title of Urban Park Ranger within the Parks Department.

16. Deny the allegations set forth in paragraph "16" of the Second Amended Complaint, except admit that Associate Urban Park Rangers are directly supervised by Captains within the Parks Department.

17. Deny the allegations set forth in paragraph "17" of the Second Amended Complaint, except admit as of March 31, 2013, the title of AUPR has been classified as non-exempt and respectfully refer the Court to the statute cited therein for a complete and accurate statement of its contents.

18. Deny the allegations set forth in paragraph "18" of the Second Amended Complaint, except admit that plaintiffs may have worked in excess of forty hours in a single

workweek in the title of Associate Urban Park Rangers within the period June 22, 2009 to present.

19. Deny the allegations set forth in paragraph "19" of the Second Amended Complaint, except admit that plaintiffs have received overtime cash and compensatory time compensation for hours worked over forty in a work week and respectfully refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

20. Deny the allegations set forth in paragraph "20" of the Second Amended Complaint.

21. Deny the allegations set forth in paragraph "21" of the Second Amended Complaint.

22. Deny the allegations set forth in paragraph "22" of the Second Amended Complaint.

23. Deny the allegations set forth in paragraph "23" of the Second Amended Complaint.

24. Deny the allegations set forth in paragraph "24" of the Second Amended Complaint.

25. Deny the allegations set forth in paragraph "25" of the Second Amended Complaint.

26. In response to paragraph "26" of the Second Amended Complaint, defendants repeat and reallege paragraphs "1" through "25," inclusive of all subparts, as if fully set forth herein.

27. Deny the allegations set forth in paragraph "27" of the Second Amended Complaint, and respectfully refer the Court to the statues cited therein for a complete and accurate statement of its contents.

28. Deny the allegations set forth in paragraph "28" of the Second Amended Complaint, and respectfully refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

29. In response to paragraph "29" of the Second Amended Complaint, defendants repeat and reallege paragraphs "1" through "28, " inclusive of all subparts, as if fully set forth herein.

30. Deny the allegations set forth in paragraph "30" of the Second Amended Complaint, and respectfully refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

31. Deny the allegations set forth in paragraph "31" of the Second Amended Complaint, and respectfully refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

32. In response to paragraph "32" of the Second Amended Complaint, defendants repeat and reallege paragraphs "1" through "31," inclusive of all subparts, as if fully set forth herein.

33. Deny the allegations set forth in paragraph "33" of the Second Amended Complaint, and respectfully refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

34. Deny the allegations set forth in paragraph "34" of the Second Amended Complaint, and respectfully refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

35. In response to paragraph "35" of the Second Amended Complaint, defendants repeat and reallege paragraphs "1" through "34," inclusive of all subparts, as if fully set forth herein.

36. Deny the allegations set forth in paragraph "36" of the Second Amended Complaint, and respectfully refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

37. Deny the allegations set forth in paragraph "37" of the Second Amended Complaint, and respectfully refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

38. In response to paragraph "38" of the Second Amended Complaint, defendants repeat and reallege paragraphs "1" through "37," inclusive of all subparts, as if fully set forth herein.

39. Deny the allegations set forth in paragraph "39" of the Second Amended Complaint.

40. Deny the allegations set forth in paragraph "40" of the Second Amended Complaint, and respectfully refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

41. Deny the allegations set forth in paragraph "41" of the Second Amended Complaint, and respectfully refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

42. In response to paragraph "42" of the Second Amended Complaint, defendants repeat and reallege paragraphs "1" through "41," inclusive of all subparts, as if fully set forth herein.

43. Deny the allegations set forth in paragraph "43" of the Second Amended Complaint, and respectfully refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

44. Deny the allegations set forth in paragraph "44" of the Second Amended Complaint, and respectfully refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

45. Deny the allegations set forth in paragraph "45" of the Second Amended Complaint, and respectfully refer the Court to the statutes cited therein for a complete and accurate statement of their contents.

### AS AND FOR A FIRST DEFENSE

46. Plaintiffs fail to state a claim upon which relief may be granted, either on their own behalf or on behalf of those persons whom they purport to represent.

### AS AND FOR A SECOND DEFENSE

47. The Second Amended Complaint is barred, in whole or in part, by the applicable limitations periods.

### AS AND FOR A THIRD DEFENSE

48. Plaintiffs may be estopped from asserting some or all of the claims asserted in the Second Amended Complaint because defendants' actions were based upon and in accordance with the governing collective bargaining agreements and the past practices established thereunder.

### AS AND FOR A FOURTH DEFENSE

49. Plaintiffs' claims may be barred, in whole or in part, by their failure to exhaust contractual remedies.

### AS AND FOR A FIFTH  DEFENSE

50. Plaintiffs' claims may be barred, in whole or in part, by the doctrines of laches, estoppel and waiver.

### AS AND FOR A SIXTH DEFENSE

51. At all times, and in all manners, defendants acted in accordance with any and all duties and obligations that they may have had under the Fair Labor Standards Act ("FLSA").

### AS AND FOR A SEVENTH DEFENSE

52. Defendants state, in the alternative if necessary, and subject to proof through discovery, that part or all of any time that plaintiffs allege should be paid to themselves and/or

allegedly similarly-situated employees, is properly preliminary or postliminary time under the Portal-to-Portal Pay Act, 29 U.S.C. § 254(a), and therefore not compensable.

### AS AND FOR AN EIGHTH DEFENSE

53. Defendants state that, in the alternative if necessary, to the extent that plaintiffs performed preliminary or postliminary activities, the activities actually performed were not an integral and indispensable part of the plaintiffs' principal activities of employment and are not compensable under the FLSA.

### AS AND FOR A NINTH  DEFENSE

54. Defendants have at all times acted in good faith and had reasonable grounds to believe that the Parks Department's pay practices complied with the FLSA.

### AS AND FOR A TENTH DEFENSE

55. Subject to proof through discovery, plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

### AS AND FOR AN ELEVENTH  DEFENSE

56. Plaintiffs' are barred from recovery of some or all of the damages sought because they are not authorized by the FLSA.

### AS AND FOR A TWELFTH DEFENSE

57. As an agency of the City of New York, the Parks Department is not a suable entity under section 396 of the Charter of the City of New York.

### AS AND FOR A THIRTEENTH DEFENSE

58. Defendant Michael R. Bloomberg cannot be held individually liable under the FLSA.

## AS AND FOR A FOURTEENTH DEFENSE

59. Defendant Veronica M. White cannot be held individually liable under the FLSA.

## AS AND FOR A FIFTEENTH DEFENSE

60. Plaintiff's claims are barred, in whole or in part, by the *de minimis* doctrine.

## AS AND FOR A SIXTEENTH DEFENSE

61. This case may not be maintained as a collective action because the named plaintiffs are not similarly-situated to or otherwise adequate representatives for the persons whom they purport to represent.

## AS AND FOR A SEVENTEENTH DEFENSE

62. Defendants have not violated the FLSA as to the Parks Department compensatory time practices because the compensatory time used or sought to be used was for non-FLSA overtime or, in the alternative, the requests cannot be separated as to whether they are intended to invoke FLSA or non-FLSA overtime.

## AS AND FOR AN EIGHTEENTH DEFENSE

63. Plaintiffs are barred from recovery of some or all of the damages sought because they are not authorized by the FLSA, the Constitution of the State of New York, and/or the United States Constitution.

## AS AND FOR A NINETEENTH DEFENSE

64. Defendant City of New York has no overtime liability under the FLSA because it is entitled to credits for contractual premium payments under the governing collective bargaining agreements.

A-118

**WHEREFORE**, defendants respectfully request that the Second Amended Complaint be dismissed in its entirety and the relief sought therein be denied in all respects, with such other and further relief as the Court deems appropriate.

Dated:          New York, New York
                April 10, 2013

                                        **MICHAEL A. CARDOZO**
                                        Corporation Counsel of the City of New York
                                        Attorneys for Defendants
                                        New York City Law Department
                                        100 Church Street, Room 2-112
                                        New York, New York 10007
                                        (212) 788-6838
                                        arizvi@law.nyc.gov

                                By:          /s/  *Asad Rizvi*
                                        Asad Rizvi (AR-2964)
                                        Assistant Corporation Counsel

cc:     **Jesse D. Gribben, Esq.**
        District Council 37, AFSCME, AFL-CIO
        Attorney for Plaintiffs
        125 Barclay Street
        New York, New York 10007
        (212) 815-1450

        **Steven E. Sykes, Esq.**
        District Council 37, AFSCME, AFL-CIO
        Attorney for Plaintiffs
        125 Barclay Street, 10th Floor
        New York, New York 10007
        (212) 815-1450

        **James M. Reif, Esq.**
        Gladstein Reif and Meginniss
        817 Broadway
        New York, NY 10003
        (212) 228-7727

        **Amelia K. Tuminaro, Esq.**
        Gladstein Reif and Meginniss
        817 Broadway
        New York, NY 10003
        (212) 228-7727

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
------------------------------------------------------------------ x
PEREZ, HENRY
BASELICE, RALPH
BAYRON, JUAN
CORDERO, JERRY
EASON, RONALD
KOONCE, DONALD
ORO, JOSEPH                                            **NOTICE OF MOTION FOR**
RIOS, RUEBEN JR.                                       **SUMMARY JUDGMENT**
ROSADO, PEDRO
WALTHER, DEREK G. on behalf of themselves and
others similarly situated,                             12 Civ. 4914 (AJN)(MHD)

                                          Plaintiffs,

                    v.

THE  CITY  OF  NEW  YORK,  MICHAEL  R.
BLOOMBERG,  AS  MAYOR and  THE  NEW  YORK
CITY DEPARTMENT OF PARKS & RECREATION,
ADRIAN BENEPE, AS COMMISSIONER
                                          Defendants.

------------------------------------------------------------------ x

        **PLEASE TAKE NOTICE** that upon the accompanying statement pursuant to

Rule 56.1 of the Local Rules of this Court, dated April 3, 2014, the Declaration of Andrea

O'Connor, dated April 3, 2014, the exhibits, affidavit and declaration annexed thereto, the

Memorandum of Law in Support of Defendants' Motion for Partial Summary Judgment, dated

April 3, 2014, and upon all prior pleadings and proceedings, defendants will move this Court,

before the Honorable Alison J. Nathan, United States District Judge, at the United States

Courthouse for the Southern District of New York, located at 500 Pearl Street, New York, New

York, on a date to be designated by the Court, for an order pursuant to Rule 56 of the Federal

Rules of Civil Procedure for partial summary judgment.  Specifically, defendants move for

summary judgment on the following grounds:  (1) any claim that accrued prior to two years from

the date that each plaintiff filed a consent to join this action is time-barred; (2) the time spent by plaintiffs donning and doffing their uniforms and/or equipment is non-compensable under the FLSA; (3) defendants did not have actual or imputed knowledge that plaintiffs were working compensable overtime in excess of the overtime they were already reporting to defendants; and (4) DPR is a non-suable entity.  Defendants respectfully submit that there is no issue material fact requiring a trial on these claims and that, as a matter of law, defendants are entitled to summary judgment on these claims, and for such other and further relief as the Court may deem just and proper.

    **PLEASE  TAKE  FURTHER  NOTICE** pursuant Local Civil Rule 6.1(b), answering papers, if any, must be served and filed upon the undersigned within fourteen days (14)

after service of the defendants' moving papers, and reply papers, if any, are to be served and filed

upon the plaintiffs within seven days (7) after service of the answering papers.

Date:        New York, New York
             April 3, 2014

                                        ZACHARY W. CARTER
                                        Corporation Counsel
                                          of the City of New York
                                        Attorney for Defendants
                                        100 Church Street, Room 2-104
                                        New York, New York 10007
                                        (212) 356-4015
                                        aoconnor@law.nyc.gov

                                        By: _____/s/_____
                                            Andrea O'Connor
                                            Assistant Corporation Counsel

TO:     James Reif, Esq. (by ECF)
        Gladstein Reif and Meginniss LLP
        Attorneys for the Plaintiff
        817 Broadway, 6th Floor
        New York, New York 10003

        Jesse Douglass Gribben, Esq. (by ECF)
        District Council 37. AFSCME, AFL-CIO
        Attorney for Plaintiffs
        125 Barclay Street
        New York, New York 10007

        Steven Edward Sykes, Esq. (by ECF)
        District Council 37. AFSCME, AFL-CIO
        Attorney for Plaintiffs
        125 Barclay Street, 10th Floor
        New York, New York 10007

A-122

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
---------------------------------------------------------------- x
PEREZ, HENRY
BASELICE, RALPH
BAYRON, JUAN                                    **DEFENDANT'S LOCAL RULE**
CORDERO, JERRY                                  **56.1 STATEMENT OF**
EASON, RONALD                                   **UNDISPUTED MATERIAL**
KOONCE, DONALD                                  **FACTS**
ORO, JOSEPH
RIOS, RUEBEN JR.
ROSADO, PEDRO                                   12 Civ. 4914 (AJN)(MHD)
WALTHER, DEREK G. on behalf of themselves and
others similarly situated,

                                    Plaintiffs,

                        v.

THE CITY OF NEW YORK, MICHAEL R.
BLOOMBERG, AS MAYOR and THE NEW YORK
CITY DEPARTMENT OF PARKS & RECREATION,
ADRIAN BENEPE, AS COMMISSIONER
                                    Defendants.

---------------------------------------------------------------- x

        Pursuant to Local Rule 56.1 of the Local Civil Rules of this Court, Defendants

submit their statement of material facts as to which there is no genuine issue to be tried:

A.      **Background**

        1.      Plaintiff Henry Perez brings this suit on behalf of himself, and other

"similarly situated" Associate Urban Park Rangers ("AUPR") employed, or formerly employed,

by the New York City Department of Parks and Recreation ("DPR") who filed timely consents

to join this action, alleging violations of the Fair Labor Standards Act ("FLSA"). See Exhibit A,

Second Amended Complaint; Exhibit B, Docket in Perez, et al. v. City of New York et al.,

Docket No. 12 Civ. 4914 (AJN)(MHD)

2.      There are 10 named plaintiffs in this action and approximately 69 opt-in plaintiffs filed consents to join this action on various dates between June 27, 2012 and July 9, 2013.  See Exhibit B, Docket Sheet in Perez, et al. v. City of New York et al., Docket No. 12 Civ. 4914 (AJN)(MHD).

3.      Plaintiffs filed their original Complaint in this action on June 22, 2012. See Exhibit B, Docket Sheet in Perez, et al. v. City of New York et al., Docket No. 12 Civ. 4914 (AJN)(MHD).

4.      Plaintiffs subsequently amended their complaint on October 11, 2012 and April 1, 2013.  See Exhibit B, Docket Sheet in Perez, et al. v. City of New York et al., Docket No. 12 Civ. 4914 (AJN)(MHD).

5.      During all relevant time periods, plaintiffs' work schedule was based on a 40 hour workweek.  See Exhibit C,  Blue Collar Agreement; Exhibit QQQ, Predecessor Blue Collar Agreement.

6.      During all relevant time periods, pursuant to the collective bargaining agreements in place between plaintiffs' union and the City of New York, plaintiffs were entitled to overtime compensation for work performed in excess of their regularly scheduled tours.  See Exhibit C,  Blue Collar Agreement; Exhibit QQQ, Predecessor Blue Collar Agreement; Exhibit D, Citywide Agreement.

7.      Plaintiffs were designated as exempt under the FLSA until March 31, 2013 when they were reclassified by DPR as covered employees under the FLSA.  See Exhibit PPP, Trimble Aff. at ¶ 21.

**B.      AUPR Uniform and Equipment**

8.      AUPRs are required to wear a uniform during the performance of their job duties and responsibilities.   See Exhibit E,   Uniform and Equipment Specifications and Regulations.

9.      The AUPR uniform consists of a uniform shirt, to which DPR emblems and badge are attached, trousers, socks, boots and a hat ("uniform").   See Exhibit E,   Uniform and Equipment Specifications and Regulations.

10.      The AUPR equipment consist of a bullet-proof vest and utility belt ("equipment").   See Exhibit E,   Uniform and Equipment Specifications and Regulations.

11.      Thirty-nine plaintiffs testified, either via deposition or interrogatory, regarding the amount of time it takes to put on each piece[1] of their uniform and equipment individually.   See Exhibit F, Harris Dep. at 48:2-5; 61:18-25; 62-69, 72:7-25; 73; 96:13-17, Exhibit G, Corrao Dep. at 55-56, Exhibit H, Pierre Dep. at 45:13-25; 46; 47; 48:1-11, 74:17-25; 75:1-19, Exhibit I, Rosado Dep. 65:11-24; 67:9-15; 68:15-25; 69; 70:1-9; 97:5-25; 98:1-10; 113:15-25; 114:1-17, Exhibit J, Small Dep. at 36-45, Exhibit K, Torres Dep. at 53-55; 57-59; 66, Exhibit L, Bayron Dep. at 28:15-20, 37:18-25; 38; 39:1-10, Exhibit M, Brooks Dep. at 37:18-25; 38-45; 46:1-8, Exhibit N, Lener Dep. at 70-77; Exhibit O, Oro Dep. at 53:13-25; 54; 55:1-16, Exhibit P, Cruz Dep. at 84-95; 96:1-14, Exhibit Q, Guzman Dep. at 41:25; 43:1-23, Exhibit R, Seyfried Dep. at 39:9-25; 40; 41; 42:1-8, Exhibit S, Hawkins Dep. at 89-98, Exhibit T, Baselice Dep. at 58-60; 64; 65; 80; 81-86; 104; 108; 136, Exhibit U, Walther Dep. at 109-113; 115;  118;

---

[1] Not all plaintiffs who were deposed or who submitted interrogatory responses testified regarding the time it took them to put on each piece of their uniforms and/or equipment.  For example, some plaintiffs testified regarding the total amount of time it took to put on their uniforms and equipment as a whole, rather than how long it took them to put on each piece of uniform and equipment individually.

- 3 -

119, Exhibit V, Charles Dep. at 33-49, Exhibit W, Greenberg Dep. at 72-83, Exhibit X, Schulyer

Dep. at 54-66, Exhibit Y, Reed Dep. at 59:7-19; 82:1-12; 83; 84:1-8; Exhibit Z, Velilla

Interrogatory Responses, Exhibit AA, Vazquez Interrogatory Responses, Exhibit BB, Yancy

Interrogatory Responses, Exhibit CC, Ventura Interrogatory Responses, Exhibit DD, Tobel

Interrogatory Responses, Exhibit EE, Simon Interrogatory Responses, Exhibit FF, Sanchez

Interrogatory Responses, Exhibit GG, Raquel Ramos Interrogatory Responses, Exhibit HH,

Hilario Ramos Interrogatory Responses, Exhibit II, Ruthie Perez Interrogatory Responses,

Exhibit JJ, Lewis Interrogatory Responses, Exhibit KK Howell Interrogatory Responses, Exhibit

LL, Hendricks Interrogatory Responses, Exhibit MM, Henderson Interrogatory Responses,

Exhibit NN, Green Interrogatory Responses, Exhibit OO, Edusei Interrogatory Responses,

Exhibit PP, Charlemagne Interrogatory Responses, Exhibit QQ Mason Interrogatory Responses,

and Exhibit RR, Mercado Interrogatory Responses.

   12. The thirty-nine plaintiffs referenced in paragraph 11 testified that it takes

the following number of minutes to put on their uniforms[2]: Exhibit F, Harris Dep. at 48:2-5;

61:18-25; 62-69, 72:7-25; 73; 96:13-17 (8 minutes), Exhibit G, Corrao Dep. at 55-56 (3

minutes), Exhibit H, Pierre Dep. at 45:13-25; 46; 47; 48:1-11, 74:17-25; 75:1-19 (11 minutes),

Exhibit I, Rosado Dep. 65:11-24; 67:9-15; 68:15-25; 69; 70:1-9; 97:5-25; 98:1-10; 113:15-25;

114:1-17 (4 minutes), Exhibit J, Small Dep. at 36-45 (5 minutes), Exhibit K, Torres Dep. at 53-

55; 57-59; 66 (7 minutes), Exhibit L, Bayron Dep. at 28:15-20, 37:18-25; 38; 39:1-10 (12

minutes), Exhibit M, Brooks Dep. at 37:18-25; 38-45; 46:1-8 (10.5 minutes), Exhibit N, Lener

---

[2] When plaintiffs testified as to a range of minutes, the longer period of time was construed as the period utilized for putting on both the uniform and equipment.  Also, if a plaintiff testified as to the time it took him or her to put on additional uniform items that are only utilized during particular seasons (i.e. sweaters and jackets), the time putting on such uniform items was excluded.

Dep. at 70-77 (21 minutes); Exhibit O, Oro Dep. at 53:13-25; 54; 55:1-16 (15 minutes), Exhibit P, Cruz Dep. at 84-95; 96:1-14 (12 minutes), Exhibit Q, Guzman Dep. at 41:25; 43:1-23 (21 minutes), Exhibit R, Seyfried Dep. at 39:9-25; 40; 41; 42:1-8 (7.5 minutes), Exhibit S, Hawkins Dep. at 89-98 (16 minutes), Exhibit T, Baselice Dep. at 58-60; 64; 65; 80; 81-86; 104; 108; 136 (18.5 minutes), Exhibit U, Walther Dep. at 109-113; 115;  118; 119 (14.5 minutes), Exhibit V, Charles Dep. at 33-49 (12 minutes), Exhibit W, Greenberg Dep. at 72-83 (13.5 minutes), Exhibit X, Schulyer Dep. at 54-66 (18 minutes), Exhibit Y Reed Dep. at 59:7-19; 82:1-12; 83; 84:1-8 (16 minutes); Exhibit Z, Velilla Interrogatory Responses (26 minutes), Exhibit AA, Vazquez Interrogatory Responses (9.5 minutes), Exhibit BB, Yancy Interrogatory Responses (5 minutes), Exhibit CC, Ventura Interrogatory Responses (11.5 minutes), Exhibit DD, Tobel Interrogatory Responses (11 minutes), Exhibit EE, Simon Interrogatory Responses (9 minutes), Exhibit FF, Sanchez Interrogatory Responses (9 minutes), Exhibit GG, Raquel Ramos Interrogatory Responses (11 minutes), Exhibit HH, Hilario Ramos Interrogatory Responses (8.75 minutes), Exhibit II, Ruthie Perez Interrogatory Responses (11.5 minutes), Exhibit JJ, Lewis Interrogatory Responses (30 minutes), Exhibit KK, Howell Interrogatory Responses (14.5 minutes), Exhibit LL, Hendricks Interrogatory Responses (15 minutes), Exhibit MM, Henderson Interrogatory Responses (3.25 minutes), Exhibit NN Green Interrogatory Responses (15 minutes), Exhibit OO, Edusei Interrogatory Responses (8 minutes), Exhibit PP, Charlemagne Interrogatory Responses (25.5 minutes), Exhibit QQ, Mason Interrogatory Responses (4 minutes), and Exhibit RR, Mercado Interrogatory Responses (10.5 minutes).

       13.    The thirty-nine plaintiffs referenced in paragraph 11 testified that it takes the following number of minutes to put on their equipment: Exhibit F, Harris Dep. at 48:2-5; 61:18-25; 62-69, 72:7-25; 73; 96:13-17 (3.5 minutes), Exhibit G, Corrao Dep. at 55-56 (6

minutes), Exhibit H, Pierre Dep. at 45:13-25; 46; 47; 48:1-11, 74:17-25; 75:1-19 (6 minutes),

Exhibit I, Rosado Dep. 65:11-24; 67:9-15; 68:15-25; 69; 70:1-9; 97:5-25; 98:1-10; 113:15-25;

114:1-17 (2 minutes), Exhibit J, Small Dep. at 36-45 (6 minutes), Exhibit K, Torres Dep. at 53-

55; 57-59; 66 (2.5 minutes), Exhibit L, Bayron Dep. at 28:15-20, 37:18-25; 38; 39:1-10 (7

minutes), Exhibit M, Brooks Dep. at 37:18-25; 38-45; 46:1-8 (4.5), Exhibit N, Lener Dep. at 70-

77 (5 minutes); Exhibit O, Oro Dep. at 53:13-25; 54; 55:1-16 (20 minutes), Exhibit P, Cruz Dep.

at 84-95; 96:1-14 (6.5 minutes), Exhibit Q, Guzman Dep. at 41:25; 43:1-23 (8 minutes), Exhibit

R, Seyfried Dep. at 39:9-25; 40; 41; 42:1-8 (5.5 minutes), Exhibit S, Hawkins Dep. at 89-98 (11

minutes), Exhibit T, Baselice Dep. at 58-60; 64; 65; 80; 81-86; 104; 108; 136 (8 minutes),

Exhibit U, Walther Dep. at 109-113; 115;  118; 119 (7 minutes), Exhibit V, Charles Dep. at 33-

49 (3.5 minutes), Exhibit W, Greenberg Dep. at 72-83 (10 minutes), Exhibit X, Schulyer Dep. at

54-66 (9 minutes), Exhibit Y, Reed Dep. at 59:7-19; 82:1-12; 83; 84:1-8 (6 minutes); Exhibit Z,

Velilla Interrogatory Responses (10 minutes), Exhibit AA, Vazquez Interrogatory Responses (2

minutes), Exhibit BB, Yancy Interrogatory Responses (3 minutes), Exhibit CC, Ventura

Interrogatory Responses (4 minutes), Exhibit DD, Tobel Interrogatory Responses (9 minutes),

Exhibit EE, Simon Interrogatory Responses (2 minutes), Exhibit FF, Sanchez Interrogatory

Responses (5.5 minutes), Exhibit GG, Raquel Ramos Interrogatory Responses (4 minutes),

Exhibit HH, Hilario Ramos Interrogatory Responses (3 minutes), Exhibit II, Ruthie Perez

Interrogatory Responses (4 minutes), Exhibit JJ, Lewis Interrogatory Responses (2.5 minutes),

Exhibit KK, Howell Interrogatory Responses (6), Exhibit LL, Hendricks Interrogatory

Responses (7 minutes), Exhibit MM, Henderson Interrogatory Responses (2 minutes), Exhibit

NN, Green Interrogatory Responses (4 minutes), Exhibit OO, Edusei Interrogatory Responses (4

minutes), Exhibit PP, Charlemagne Interrogatory Responses (6.5 minutes), Exhibit QQ, Mason

Interrogatory Responses (1.5 minutes),  and Exhibit RR, Mercado Interrogatory Responses (2 minutes).

14.     Captain Benne McCants testified that he "d[id]n't know of any rule" stating that an employee cannot wear his or her uniform to/from work. Exhibit SS, McCants Dep. at 17:20-25; 18:1-19.

15.     Captain McCants testified that AUPRs could wear their entire uniforms to work, perhaps with a jacket over it.  <u>See</u> Exhibit SS, McCants Dep. at 17:20-25; 18:1-19.

16.     Captain McCants testified that he is not aware of any AUPR who was reprimanded or disciplined for wearing his/her uniform to/from work.  <u>See</u> Exhibit SS, McCants dep. at 18:20-22.

17.     Captain David Calderon testified that he is not aware of any AUPR being reprimanded or disciplined for wearing his/her uniform to/from work.  <u>See</u> Exhibit TT, Calderon Dep. at 19:11-16.

18.     Captain Calderon testified that AUPRs are permitted to commute to/from work in their uniform pants and that wearing a jacket over their uniform shirt to commute is permitted.  <u>See</u> Exhibit TT, Calderon Dep. at 17:17-2.

19.     Captain Calderon testified that he commutes in his uniform pants. <u>See</u> Exhibit TT, Calderon Dep. at 18:24-25; 19:1-4.

20.     Captain Tonya Prince testified that she is not aware of any AUPR who has been reprimanded or disciplined for wearing his/her uniform to/from work.  <u>See</u> Exhibit UU, Prince Dep. at 22:11-18.

21.     Captain Prince testified that AUPRs routinely report to/from work in his/her uniform pants.  <u>See</u> Exhibit UU, Prince Dep. at 22:6-10.

22.     Captain Prince testified that there is an unspecified "operations order" which states that AUPRs are not permitted to commute to/from work in their uniform.  See Exhibit UU, Prince Dep. at 21:11-22.

23.     Captain Prince was unable to l identify the "operations order" referred to in the above-paragraph and could not recall the last time she saw it.  See Exhibit UU, Prince Dep. at 21:11-22.

24.     Captain Andre Greenfield testified that AUPRs are permitted to commute to/from work in his/her uniform pants and that wearing jackets over his/her uniform shirts to commute is permitted.  See Exhibit VV, Greenfield Dep. at 29:14-25; 30:1-12.

25.     Captain Greenfield testified that he commutes in his complete uniform but covers any DPR insignias while doing so.  See Exhibit VV, Greenfield Dep. at 29:14-25; 30:1-12.

26.     Seven plaintiffs testified at their depositions that they commute to/from work in at least part of their uniforms.  See Exhibit WW, Ragoonanansigh Dep. at 26:24-25; 27:1-12 (commuted in uniform pants and boots); Exhibit XX, Berdecia Dep. at 47:14-16 (commuted in uniform pants and boots); Exhibit S, Hawkins Dep. at 79:25; 80; 81:1-14 (commuted in full uniform except for shirt on a number of occasions); Exhibit K, Torres Dep. at 53:14-15 (commuted in his uniform pants to/from work approximately one time per week); Exhibit F, Harris Dep. at 69:16-18 (commuted in uniform pants); Exhibit R, Seyfried Dep. at 53:24-15; 54:1-2 (commuted in full uniform).

27.     Twenty-three plaintiffs testified via interrogatory that they had reported to work, including reporting to special detail assignments outside of their regular commands, in, at least part of, their uniforms.  See Exhibit AA, Interrogatory Response for Vasquez, Exhibit CC,

Interrogatory Response for Ventura, Exhibit FFF, Interrogatory Response for Williams, Exhibit DD, Interrogatory Response for Tobel, Exhibit ZZ, Interrogatory Response for St. Louis, Exhibit FF, Interrogatory Response for Sanchez, Exhibit HH, Interrogatory Response for Hilario Ramos, Exhibit AAA, Interrogatory Response for Phillips, Exhibit II, Interrogatory Response for Ruthie Perez, Exhibit JJ, Interrogatory Response for Lewis, Exhibit BBB, Interrogatory Response for Lawrence, Exhibit CCC, Interrogatory Response for Joseph, Exhibit DDD, Interrogatory Response for Rasheem Johnson, Exhibit EEE, Interrogatory Response for Adrienne Johnson, Exhibit KK, Interrogatory Response for Howell, Exhibit LL, Interrogatory Response for Hendricks, Exhibit MM, Interrogatory Response for Henderson, Exhibit OO, Interrogatory Response for Edusi, Exhibit GGG, Interrogatory Response for Carriollo, Exhibit HHH, Interrogatory Response for Besom, Exhibit III, Interrogatory Response for Arriola, Exhibit QQ, Interrogatory Response for Mason and Exhibit RR, Interrogatory Response for Mercado.

28.     Four plaintiffs wore their full duty uniforms to/from their deposition in this action.  See Exhibit M, Brooks Dep. at 10:18-20, Exhibit h, Pierre Dep. at 71:15-18,  Exhibit F, Harris Dep. at 16:11-18; Exhibit JJJ, Henry Perez Dep. at 119; 120.

**C.      Timekeeping and Overtime Compensation**

     **a)  Timekeeping Procedures**

29.     Since 2011, all DPR employees, with the exception of employees in the civil service titles Job Training Participant, Lifeguard and Chief Lifeguard, utilized a system called CityTime to record their hours worked.  See Exhibit PPP, Trimble Aff. at ¶ 7.

30.     CityTime is a web-based software tool that DPR employees use to manage their time and attendance and submit their Timesheets (electronically) for approval.  See Exhibit PPP, Trimble Aff. at ¶ 8.

31.     AUPRs are required to record in CityTime their work start and end times, their meal break start and end times and any overtime performed.  See Exhibit PPP, Trimble Aff. at ¶ 9.

32.     In order for AUPRs to be compensated for time worked outside of his/her regularly scheduled tours, whether that work was performed before or after his/her scheduled tours or during his/her dedicated meal breaks, AUPRs must enter an overtime compensation request in CityTime.  See Exhibit PPP, Trimble Aff. at ¶ 10.

33.     The AUPRs' supervisors then either approve or deny the requests for overtime compensation entered into CityTime by the AUPRs.  See Exhibit PPP, Trimble Aff. at ¶ 11.

34.     Prior to 2011, AUPRs utilized paper timecards to manage their time and attendance; however, the procedures for requesting compensation were the same as those under CityTime in that AUPRs were required to record on his/her timecards his/her work start and end times, his/her meal break start and end times and any overtime performed.  See Exhibit PPP, Trimble Aff.  at ¶¶ 12, 13.

35.     While utilizing paper timecards, in order for AUPRs to be compensated for time worked outside of his/her regularly scheduled tours, whether that work was performed before or after his/her scheduled tours or during his/her dedicated meal breaks, AUPRs were required to submit written overtime compensation request forms in addition to recording the overtime on his/her paper timecards.  See Exhibit PPP, Trimble Aff. at ¶ 14.

36.     Paper overtime compensation requests submitted before the implementation of CityTime were also either approved or denied by the AUPRs' supervisors. See Exhibit PPP, Trimble Aff. at ¶ 15.

37.     AUPRs can request overtime compensation for any time worked in excess of his/her regularly scheduled tours, whether that work was performed before or after his/her scheduled tours or during their dedicated meal breaks.  See Exhibit PPP, Trimble Aff.  at ¶ 16.

38.     At all times relevant to this action, an AUPR could request overtime compensation for any work performed in excess of his/her regularly scheduled tour.  See Exhibit PPP, Trimble Aff.  at ¶¶16-25.

**b)  Supervisor's Role in Approving Overtime Requests**

39.     Captain Tonya Prince testified that if an AUPR performs work in advance of his or her regularly scheduled tour start time, the AUPR should request overtime compensation for such time and that she approves such requests.  See Exhibit UU, Prince Dep. at 17:1-16.

40.     Captain Prince testified that she has never denied a request for "pre-shift" overtime compensation and has never directed an AUPR not to request compensation for such time worked. See Exhibit UU, Prince Dep. at 17:1-16.

41.     With respect to work performed after an AUPR's regularly scheduled tour end time, Captain Prince testified that, in such a case, the AUPR should request overtime compensation.  See Exhibit UU, Prince Dep. at 19:12-25; 20:1-11.

42.     Captain Prince testified that she has never denied such a request for "post-shift" overtime compensation and she has never directed an AUPR not to request post-shift overtime compensation.  See Exhibit UU, Prince Dep. at 19:12-25; 20:1-11.

43.     Captain Prince testified that she has never denied an AUPR's request for overtime compensation for working through his or her dedicated meal break.  See Exhibit UU, Prince Dep. at 27:13-15.

- 11 -

44.     Captain Benne McCants testified that if an AUPR worked prior to or after his or her tour start or end time or worked through his/her meal break, he/she would request overtime compensation and would "absolutely" be compensated for such work.  See Exhibit SS, McCants Dep. at 20:23-25; 21:1-9; 22:1-19; 24:4-18.

45.     Captain McCants testified that he has never denied a request for overtime compensation for work performed pre- or post-shift or during the AUPR's meal break.   See Exhibit SS, McCants Dep. at 22:1-19; 24:4-23.

c) **Plaintiffs' Receipt of Overtime Compensation**

46.     Plaintiffs were paid $995,658.79 in cash overtime between June 22, 2009 and June 29, 2013.  See Exhibit LLL, Erath Declaration at ¶ 5; Appendix A.

47.     The total amount of compensation for overtime paid to plaintiffs in compensatory time between June 22, 2009 and June 29, 2013 is 11,373.5 hours.  See Exhibit LLL, Erath Declaration at ¶ 5; Appendix A.

48.     Every plaintiff received overtime compensation at some point between June 22, 2009 and June 29, 2013.  See Exhibit LLL, Erath Declaration at ¶ 5; Appendix A.

49.     Plaintiffs received overtime compensation on 12,931 separate occasions between June 22, 2009 and June 29, 2013. See Exhibit LLL, Erath Declaration at ¶ 5.

50.     Of those 12,391 separate instances on which plaintiffs received overtime compensation, 2,117 instances were for periods of work amounting to thirty minutes or less.  See Exhibit LLL, Erath Declaration at ¶ 5; Appendix B.

51.     Seventy-seven plaintiffs received overtime compensation for periods of time amounting to 30 minutes or less between June 22, 2009 and June 29, 2013.  See Exhibit LLL, Erath Declaration at ¶ 5; Appendix B.

52.     Plaintiff Sadler testified that she always requested overtime compensation for any pre-shift work performed.  See Exhibit YY, Sadler Dep. at 40:4-9.

53.     Plaintiff Baselice testified that he requested overtime compensation for pre-shift work.  See Exhibit T, Baselice Dep. at 111:4-19.

54.     Five plaintiffs testified that they requested, and received, overtime compensation for pre-shift work.  See Exhibit M, Brooks Dep. at 55:10-25; 56:1-14; Exhibit MMM, Cordero Dep. at 65:24-25;66:1-10; Exhibit NNN, Brown Dep. at 96:1-24; Exhibit H, Pierre Dep. 118:24-25; 119:1-5; Exhibit JJJ, Henry Perez Dep. at 98:9-16,

55.     Plaintiffs Charles, Bayron, Cordero and Oro testified that they requested overtime compensation for work performed during their meal breaks.  See Exhibit V, Charles Dep. at 68:25; 69:1-6, Exhibit L, Bayron Dep. at 35:11-18, Exhibit MMM, Cordero Dep. at 79:11-18; Exhibit O, Oro Dep. at 81:21-23.

56.     Eighteen plaintiffs testified that they requested, and received, overtime compensation for work performed during their meal breaks.  See Exhibit XX, Berdecia Dep. at 81:19; 82; 83:1, Exhibit H, Pierre Dep. at 68:20-25; 69:1-3, Exhibit W, Greenberg Dep. at 97:12-18, Exhibit OOO, Eason Dep. at 111:1-23, Exhibit Z, Velilla Interrogatory Responses, Exhibit CC, Ventura Interrogatory Responses, Exhibit HH, Hilario Ramos Interrogatory Responses, Exhibit II, Ruthie Perez Interrogatory Responses, Exhibit KK Howell Interrogatory Responses, Exhibit LL, Hendricks Interrogatory Responses, Exhibit MM, Henderson Interrogatory Responses, Exhibit NN, Green Interrogatory Responses, Exhibit PP, Charlemagne Interrogatory Responses,  Exhibit RR, Mercado Interrogatory Responses, Exhibit BBB, Interrogatory Response for Lawrence, Exhibit CCC, Interrogatory Response for Joseph, Exhibit DDD,

A-135

Interrogatory Response for Rasheem Johnson, and Exhibit HHH, Interrogatory Response for

Besom.

Dated:        New York, New York
              April 3, 2014

                              ZACHARY W. CARTER
                              Corporation Counsel of the City of New York
                                  Attorney for Defendants
                              100 Church Street, Room 2-104
                              New York, New York 10007
                              (212) 356-4015
                              aoconnor@law.nyc.gov


                      By:    _____/s/_____
                              Andrea O'Connor
                              Assistant Corporation Counsel

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**HENRY PEREZ, et al.,**

                                **Plaintiffs,**                        **ECF CASE**

        -versus-                                  **No. 12 Civ. 4914 (AJN) (MHD)**

**THE CITY OF NEW YORK, et al.,**

                                **Defendants.**             **DECLARATION OF**
                                                             **JAMES REIF**
-------------------------------------------------------------x

           JAMES REIF, under penalty of perjury, declares that the following statements are

true and correct:

          1.        I am a partner in the firm of Gladstein, Reif & Meginniss, LLP, counsel to

Plaintiffs in the above-captioned matter.  I make this declaration in support of Plaintiffs'

opposition to Defendants' motion for partial summary judgment.

          2.        Annexed hereto as Exhibit 1 is a copy of an excerpt from the transcript of the

deposition of Plaintiff Tanisha Harris taken on August 1, 2013.

          3.        Annexed hereto as Exhibit 2 is a copy of an excerpt from the transcript of the

deposition of Plaintiff Sunny Corrao taken on September 30, 2013.

          4.        Annexed hereto as Exhibit 3 is a copy of an excerpt from the transcript of the

deposition of Plaintiff Kiaran Pierre taken on August 6, 2013.

          5.        Annexed hereto as Exhibit 4 is a copy of an excerpt from the transcript of the

deposition of Plaintiff Pedro Rosado taken on November 18, 2013.

          6.        Annexed hereto as Exhibit 5 is a copy of an excerpt from the transcript of the

deposition of Plaintiff Roxann Small taken on September 18, 2013.

7.      Annexed hereto as Exhibit 6 is a copy of an excerpt from the transcript of the deposition of Plaintiff Jessica Torres taken on August 23, 2013.

8.      Annexed hereto as Exhibit 7 is a copy of an excerpt from the transcript of the deposition of Plaintiff Juan Bayron taken on September 13, 2013.

9.      Annexed hereto as Exhibit 8 is a copy of an excerpt from the transcript of the deposition of Plaintiff Paige Lener taken on October 7, 2013.

10.     Annexed hereto as Exhibit 9 is a copy of an excerpt from the transcript of the deposition of Plaintiff Elijah Seyfried taken on September 24, 2013.

11.     Annexed hereto as Exhibit 10 is a copy of an excerpt from the transcript of the deposition of Plaintiff Jamal Charles taken on August 7, 2013.

12.     Annexed hereto as Exhibit 11 is a copy of an excerpt from the transcript of the deposition of Plaintiff Ruslan Shulyar taken on September 12, 2013.

13.     Annexed hereto as Exhibit 12 is a copy of an excerpt from the transcript of the deposition of Plaintiff Earline Reed taken on September 13, 2013.

14.     Annexed hereto as Exhibit 13 is a copy of Plaintiff Gabriel Vasquez's Interrogatory Responses dated December 6, 2013.

15.     Annexed hereto as Exhibit 14 is a copy of Plaintiff Davina Yancey's Interrogatory Responses dated December 1, 2013.

16.     Annexed hereto as Exhibit 15 is a copy of Plaintiff Richard Ventura's Interrogatory Responses dated December 6, 2013.

17.     Annexed hereto as Exhibit 16 is a copy of Plaintiff Robert Simon's Interrogatory Responses dated December 2, 2013.

A-138

18.     Annexed hereto as Exhibit 17 is a copy of Plaintiff Domingo Sanchez's Interrogatory Responses dated November 20, 2013.

19.     Annexed hereto as Exhibit 18 is a copy of Plaintiff Raquel Ramos's Interrogatory Responses dated December 12, 2013.

20.     Annexed hereto as Exhibit 19 is a copy of Plaintiff Hilario Ramos's Interrogatory Responses dated December 11, 2013.

21.     Annexed hereto as Exhibit 20 is a copy of Plaintiff Ruthie Perez's Interrogatory Responses dated December 23, 2013.

22.     Annexed hereto as Exhibit 21 is a copy of Plaintiff Andrew Howell's Interrogatory Responses dated December 14, 2013.

23.     Annexed hereto as Exhibit 22 is a copy of Plaintiff Samuel Hendrick's Interrogatory Responses dated December 1, 2013.

24.     Annexed hereto as Exhibit 23 is a copy of Plaintiff Robert Green's Interrogatory Responses dated December 10, 2013.

25.     Annexed hereto as Exhibit 24 is a copy of Plaintiff Jeffery Edusei's Interrogatory Responses dated December 4, 2013.

26.     Annexed hereto as Exhibit 25 is a copy of Plaintiff Michele Mason's Interrogatory Responses dated December 23, 2013.

27.     Annexed hereto as Exhibit 26 is a copy of Plaintiff Nancy Mercado's Interrogatory Responses dated December 31, 2013.

28.     Annexed hereto as Exhibit 27 is a copy of Plaintiff Darlene Lewis's Interrogatory Responses dated December 11, 2013.

29.    Annexed hereto as Exhibit 28 is the Declaration of Earline Reed dated May 13, 2014.

30.    Annexed hereto as Exhibit 29 is a copy of an excerpt from the transcript of the deposition of non-party witness Benne McCants taken on January 14, 2013.

31.    Annexed hereto as Exhibit 30 is a copy of an excerpt from the transcript of the deposition of Plaintiff Ralph Baselice taken on November 8, 2013.

32.    Annexed hereto as Exhibit 31 is a copy of an excerpt from the transcript of the deposition of Plaintiff Jerry Cordero taken on November 6, 2013.

33.    Annexed hereto as Exhibit 32 is a copy of an excerpt from the transcript of the deposition of Plaintiff Donald Koonce taken on November 6, 2013.

34.    Annexed hereto as Exhibit 33 is a copy of an excerpt from the transcript of the deposition of Plaintiff Henry Perez taken on November 5, 2013.

35.    Annexed hereto as Exhibit 34 is a copy of an excerpt from the transcript of the deposition of Plaintiff Derek Walther taken on November 4, 2013.

36.    Annexed hereto as Exhibit 35 is a copy of an excerpt from the transcript of the deposition of Plaintiff Ronald Eason taken on January 15, 2014.

37.    Annexed hereto as Exhibit 36 is a copy of an excerpt from the transcript of the deposition of Plaintiff Marlena Poelz-Giga taken on October 9, 2013.

38.    Annexed hereto as Exhibit 37 is a copy of an excerpt from the transcript of the deposition of Plaintiff Robin Wickert taken on October 15, 2013.

39.    Annexed hereto as Exhibit 38 is a copy of an excerpt from the transcript of the deposition of Plaintiff William Guzman taken on September 24, 2013.

40.    Annexed hereto as Exhibit 39 is a copy of an excerpt from the transcript of the deposition of Plaintiff Dana Hawkins taken on August 2, 2013.

41.    Annexed hereto as Exhibit 40 is a copy of an excerpt from the transcript of the deposition of Plaintiff Brenda Cruz taken on September 12, 2013.

42.    Annexed hereto as Exhibit 41 is a copy of an excerpt from the transcript of the deposition of Plaintiff Jacqueline DeLeon taken on September 11, 2013.

43.    Annexed hereto as Exhibit 42 is a copy of an excerpt from the transcript of the deposition of Plaintiff Bruce Langston taken on August 7, 2013.

44.    Annexed hereto as Exhibit 43 is a copy of an excerpt from the transcript of the deposition of Plaintiff Lori Knowles taken on August 2, 2013.

45.    Annexed hereto as Exhibit 44 is a copy of an excerpt from the transcript of the deposition of Plaintiff Stanley Yu taken on July 25, 2013.

46.    Annexed hereto as Exhibit 45 is a copy of an excerpt from the transcript of the deposition of Plaintiff Joseph Oro taken on August 14, 2013.

47.    Annexed hereto as Exhibit 46 is a copy of an excerpt from the transcript of the deposition of Plaintiff Renso Vidal taken on August 9, 2013.

48.    Annexed hereto as Exhibit 47 is a copy of an excerpt from the transcript of the deposition of Plaintiff Tashawna Sadler taken on August 8, 2013.

49.    Annexed hereto as Exhibit 48 is a copy of an excerpt from the transcript of the deposition of Plaintiff Gina Berdecia taken on August 8, 2013.

50.    Annexed hereto as Exhibit 49 is a copy of an excerpt from the transcript of the deposition of Plaintiff Jasmine Brooks taken on September 18, 2013.

51.     Annexed hereto as Exhibit 50 is a copy of an excerpt from the transcript of the deposition of Plaintiff Earl Fisher taken on September 17, 2013.

52.     Annexed hereto as Exhibit 51 is a copy of an excerpt from the transcript of the deposition of Plaintiff Rubin Rios taken on August 6, 2013.

53.     Annexed hereto as Exhibit 52 is a copy of an excerpt from the transcript of the deposition of Plaintiff Chris Galgano taken on August 1, 2013.

54.     Annexed hereto as Exhibit 53 is a copy of an excerpt from the transcript of the deposition of Plaintiff Jennifer Ragoonanansingh taken on September 27, 2013.

55.     Annexed hereto as Exhibit 54 is a copy of an excerpt from the transcript of the deposition of Plaintiff Matthew Greenberg taken on September 19, 2013.

56.     Annexed hereto as Exhibit 55 is a copy of an excerpt from the transcript of the deposition of non-party witness David Calderon taken on January 14, 2014.

57.     Annexed hereto as Exhibit 56 is a copy of an excerpt from the transcript of the deposition of non-party witness Andre Greenfield taken on January 7, 2014.

58.     Annexed hereto as Exhibit 57 is the Affidavit of Andre Greenfield dated December 16, 2013.

59.     Annexed hereto as Exhibit 58 is the Affidavit of David Calderon dated December 16, 2013.

60.     Annexed hereto as Exhibit 59 is a copy of an excerpt from the transcript of the deposition of non-party witness Tonya Prince taken on January 9, 2014.

61.     Annexed hereto as Exhibit 60 is a copy of Plaintiff Charles St. Louis's Interrogatory Responses dated December 3, 2013.

62.      Annexed hereto as Exhibit 61 is a copy of Plaintiff Tammy William's Interrogatory Responses dated December 27, 2013.

63.      Annexed hereto as Exhibit 62 is a copy of Plaintiff Laura Spies's Interrogatory Responses dated January 10, 2014.

64.      Annexed hereto as Exhibit 63 is a copy of Plaintiff Steven Arriola's Interrogatory Responses dated December 17, 2013.

65.      Annexed hereto as Exhibit 64 is a copy of Plaintiff Barthel Joseph's Interrogatory Responses dated November 26, 2013.

66.      Annexed hereto as Exhibit 65 is a copy of Plaintiff Iris Hernandez's Interrogatory Responses dated November 19, 2013.

67.      Annexed hereto as Exhibit 66 is a copy of Plaintiff Elizabeth Besom's Interrogatory Responses dated November 22, 2013.

68.      Annexed hereto as Exhibit 67 is a copy of Plaintiff Aston McKen's Interrogatory Responses dated November 26, 2013.

69.      Annexed hereto as Exhibit 68 is a copy of Plaintiff Roc Sainte's Interrogatory Responses dated December 12, 2013.

70.      Annexed hereto as Exhibit 69 is a copy of Plaintiff Tiffani Phillips's Interrogatory Responses dated December 12, 2013.

71.      Annexed hereto as Exhibit 70 is a copy of Plaintiff Mercedes Villila's Interrogatory Responses dated December 12, 2013.

72.      Annexed hereto as Exhibit 71 is a copy of Plaintiff Vladis Tobel's Interrogatory Responses dated December 10, 2013.

73.    Annexed hereto as Exhibit 72 is a copy of Plaintiff Sandra Lawrence's Interrogatory Responses dated December 12, 2013.

74.    Annexed hereto as Exhibit 73 is a copy of Plaintiff Kervin Charlemagne's Interrogatory Responses dated December 1, 2013.

75.    Annexed hereto as Exhibit 74 is the Declaration of Plaintiff Marlena Poelz-Giga dated May 16, 2014.

76.    Annexed hereto as Exhibit 75 is the Declaration of Plaintiff Domingo Sanchez dated May 14, 2014.

77.    Annexed hereto as Exhibit 76 is the Declaration of Alex Ritz dated May 16, 2014.

78.    Annexed hereto as Exhibit 77 is a copy of an excerpt from the transcript of the deposition of Plaintiff Chatory Brown taken on July 23, 2013.

79.    Annexed hereto as Exhibit 78 is a copy of Plaintiff Cheriese Henderson's Interrogatory Responses dated December 6, 2013.

80.    Annexed hereto as Exhibit 79 is a copy of Plaintiff Rasheem Johnson's Interrogatory Responses dated December 6, 2013.

81.    Annexed hereto as Exhibit 80 is a copy of Plaintiff Destiny Colon's Interrogatory Responses dated December 6, 2013.

82.    Annexed hereto as Exhibit 81 is a copy of Plaintiff Mario Carillo's Interrogatory Responses dated December 26, 2013.

83.    Annexed hereto as Exhibit 82 is a copy of Plaintiff Aliah Kelly's Interrogatory Responses dated November 25, 2013.

84.    Annexed hereto as Exhibit 83 is a copy of Plaintiff Asha Harris's Interrogatory Responses dated January 6, 2014.

8

85.     Annexed hereto as Exhibit 84 is the Declaration of Plaintiff Ralph Baselice dated May 13, 2014.

86.     Annexed hereto as Exhibit 85 is the Declaration of Plaintiff Eunice Hill dated May 12, 2014.

87.     Annexed hereto as Exhibit 86 is the Declaration of Plaintiff Robin Wickert dated May 12, 2014.

88.     Annexed hereto as Exhibit 87 is the Declaration of Evelyn Seinfeld dated May 9, 2014.

89.     Annexed hereto as Exhibit 88 is a copy of Letter to Hon. Alison J. Nathan from Diana Goell Voigt dated April 10, 2013.

90.     Annexed hereto as Exhibit 89 is a copy of an excerpt of the transcript from a conference before Hon. Michael H. Dolinger on May 20, 2013.

91.     Annexed hereto as Exhibit 90 is a copy of Letter to Hon. Michael H. Dolinger from Asad Rizvi dated May 29, 2013.

92.     Annexed hereto as Exhibit 91 is a copy of Letter to Hon. Michael H. Dolinger from James Reif dated May 31, 2013.

93.     Annexed hereto as Exhibit 92 is a copy of an excerpt of the transcript from a conference before Hon. Michael H. Dolinger on June 13, 2013.

94.     Annexed hereto as Exhibit 93 is a copy of an excerpt from Defendants' Responses to Plaintiffs' Second Document Requests.

Dated: New York, New York
       May 16, 2014

_____
James Reif

9

A-145

# EXHIBIT 3

# ORIGINAL

1

1    UNITED STATES DISTRICT COURT
2    SOUTHERN DISTRICT OF NEW YORK
     ------------------------------------------------X
3    PEREZ, HENRY, et al., on behalf of themselves and other
     similarly situated,
4                                         PLAINTIFFS,
5
6                    -against-              Case No:
                                            12CIV4914
7
8    THE CITY OF NEW YORK, et al.,
9                                         DEFENDANTS.
     ------------------------------------------------X
10
11                    DATE:  August 6, 2013
12                    TIME:  2:05 P.M.
13
14
15                    DEPOSITION of the Plaintiff,
16   KIARAN PIERRE, taken by the Defendants, pursuant to an
17   Order and to the Federal Rules of Civil Procedure, held at
18   the offices of Sullivan & Cromwell, LLP., 125 Broad Street,
19   New York, New York 10004, before a Notary Public of the
20   State of New York.
21
22
23
24
25

     DIAMOND REPORTING   (718) 624-7200   info@diamondreporting.com
                                1

36

K. PIERRE

1      A.      It varied, but most time I use the time of the

2    start of my tour.

3      Q.      And did anyone ever tell you to do that?

4      A.      No.  At the time I was just about a year

5    on-the-job, so as far as I knew my start of actually

6    getting paid, I got paid when my tour started.

7      Q.      Did anyone at Parks ever tell you to arrive

8    before your tour began when you were a pool sergeant?

9      A.      Well, I was always told that you had to be ready

10   to go at the start of your tour, and to be ready to be

11   going and do what you have to do by the start of your tour,

12   you had to be there early at the tour, so you could be

13   ready and prep to the actual start of the tour.

14     Q.      Where did you learn this?

15     A.      At the academy.

16     Q.      Did anyone tell you that after the academy?

17     A.      It was repeated that you were late if you arrived

18   after your tour.  And your start of tour meant you had to

19   be in uniform at the start of your tour.  So you can't

20   exactly arrive at 10:30 and be in uniform at 10:30, because

21   you can't travel in uniform either, which is another rule

22   told to us by the academy, so yes.

23     Q.      Who told you that?

24     A.      The academy.

25     Q.      But maybe I missed something.  You just said

37

K. PIERRE

1   someone told you that after the training academy, do you

2   remember who told you that?

3       A.     Yeah, your supervision always reminded you to be

4   on time, you had to be dressed and ready at the start of

5   your tour.

6       Q.     Do you remember their names?

7       A.     No.   I mean, anybody that supervises told you,

8   you had to be on time, in uniform at the start of your

9   tour.   It's like a common practice.

10      Q.     And who told you, you couldn't wear your uniform

11  when traveling to work?

12      A.     The academy, you were advised to never wear your

13  uniform, either public transportation or get in personal

14  cars.

15      Q.     Why did you personally not wear your uniform on

16  your way to work?

17      A.     Because I was told not to wear my uniform in my

18  car.

19      Q.     After the academy, did anyone tell you not to

20  wear your uniform on your way to work?

21      A.     I've asked and again I was told it was better not

22  to, because of safety issue.

23      Q.     Who did you ask?

24      A.     My direct supervision.

25      Q.     And who was that at the time?

39

K. PIERRE

1     A.     They're called CSAs, City Seasonal Aides.

2     Q.     Then when you were a pool sergeant, what were

3  their ranks of the people?

4     A.     The same thing, City Seasonal Aides.

5     Q.     When you were a pool sergeant, what time do the

6  CSAs arrive for their tour?

7     A.     They start at 10:30.

8     Q.     And when you're an event sergeant, what time

9  would the CSAs arrive?

10    A.     Average, 9:30.

11    Q.     So when you were an event sergeant, you traveled

12  to work not wearing your uniform; is that correct?

13    A.     Correct.

14    Q.     And when you're a pool sergeant, you traveled to

15  work not wearing your uniform; is that correct?

16    A.     Correct.

17    Q.     Have you ever been identified by someone you

18  arrest or someone you issued a summons to outside of work?

19    A.     No.

20    Q.     Are you provided with time to change into uniform

21  after your tour starts when you're an event sergeant?

22    A.     Say that one more time.

23    Q.     Are you provided with time to change into your

24  uniform after your tour starts as an event sergeant?

25    A.     I don't think I'm provided any time, no.

40

K. PIERRE

1    Q.    Are you provided a time to change into your

2    uniform after your tour starts as a pool sergeant?

3              MR. REIF:  Object to the form of the

4         question.

5          You can answer.

6    A.    State the question again or rephrase it maybe to

7    make more sense.

8    Q.    When you're a pool sergeant, do you have time to

9    change into your uniform after your tour starts?

10              MR. REIF:  Objection to the form of the

11         question.

12          You can answer.

13    A.    No.

14    Q.    And why not?

15    A.    Because you're supposed to be ready to start work

16    at the beginning of your tour.

17    Q.    Is there ever a time when you arrived five

18    minutes or less prior to the start of your tour?

19    A.    No.

20    Q.    So when you're a pool sergeant, you never arrived

21    five minutes before your tour start?

22    A.    I always arrived prior to five minutes.  Earlier

23    to five minutes before I started the tour.

24    Q.    And when you're an event sergeant, did you always

25    arrive more than five minutes before your tour started?

K. PIERRE

1      A.      Yes, most times.

2      Q.      I want to ask you how long it takes you to put on

3   these items when you get ready.

4              How long does it take you to put on your vest

5   when you're getting ready?

6      A.      How long?

7      Q.      Yes.

8      A.      Hard to really say.  Maybe three minutes or so.

9   Maybe two to three minutes.

10     Q.      What do you have to do to put the vest on?

11     A.      Well, depending.  If it is a day that I just

12   washed it, I have to put all the pieces back in, the front

13   portion and the back portion.  And then you want to make

14   sure that it fits snug, if it right, not too high, not to

15   low.  It take a little bit of adjusting sometimes, you ate

16   a big breakfast, you might need it looser than other days.

17   It's under everything, so you want to make it kind of as

18   comfortable as it can when you put your shirt back on.

19     Q.      How long does it take for you to put your pants

20   on?

21     A.      One leg at a time, so maybe another two minutes I

22   guess.

23     Q.      And how long does it take you to put on your

24   utility belt?

25     A.      That could take about three minutes or so.

K. PIERRE

1    Q.    And why does it take three minutes?

2    A.    You got to put it in, make sure everything is

3    like nice and balanced, so you're not feeling heavier on

4    one side than the other.  And then you got to secure it to

5    your regular belt, the keepers, and six to eight of those.

6    I'm a little bit OCD, it has to be just right, because

7    you're coming in and out of cars, you don't want it to move

8    around, if you got to run, that kind of stuff.

9    Q.    How long does it take you to put on your shirt?

10    A.    Probably a minute or two.

11    Q.    How about the buttons you mentioned, is that

12    included in the shirt?

13    A.    Yes, I would say so.  Give it two minutes, two or

14    three minutes, you know.

15    Q.    How long does it take you to put on your boots?

16    A.    I guess another three or so minutes.  I want to

17    make sure they're put in and make sure it's nice and

18    brushed.

19    Q.    So when you put on your boots, how do they tie?

20    A.    Yes, tie.

21    Q.    And do you do anything else to the boots?

22    A.    I polish it.

23    Q.    And how do you polish them?

24    A.    With a polish, a little water on it, brush it and

25    make sure it shines nice.

48

K. PIERRE

1     Q.     So all in all in tying and polishing your boots

2   that's three to five minutes?

3     A.     That's five minutes.

4     Q.     How long does it take you to put on your hat?

5     A.     I guess a minute or two.  You put it on, makes

6   sure it is comfortable.  It depends on which hat.  If it's

7   the cap, the Stetson.  The Stetson is a little tricky, you

8   have to brush it, put it on, make sure the medallions are

9   put on, make sure it is straight.

10     Q.     How long does it take you to put on your socks?

11     A.     A minute.

12     Q.     What parts of your uniform do you take home?

13     A.     None except my shirt to wash.

14     Q.     So then all of your other equipment stays in your

15   command overnight?

16     A.     Yes.

17     Q.     After you change into uniform as an event

18   sergeant what do you do next?

19     A.     Usually by the time I get to my uniform, it's

20   usually a couple of minutes before Muster time, so getting

21   ready to do Muster at that point.

22     Q.     And is Muster at the start of the tour?

23     A.     Yes.

24     Q.     Right when the tour starts?

25     A.     I usually start mine five, ten minutes after the

K. PIERRE

1    supervisor about being late, but usually he knows that I am

2    going to be late.  I am very good in giving prior knowledge

3    that I am running late.

4        Q.    So that has happened, correct, where you spoken

5    to your supervisor or your supervisor spoke to you about

6    arriving after the start of your tour?

7        A.    Whenever I think I am going to be tardy, I do

8    reach out to my direct supervisor, correct.

9        Q.    As both as an event sergeant and pool sergeant?

10       A.    Correct.

11       Q.    And how often did that occur, is that just what

12   we discussed, the amount of time that it occurred as an

13   event sergeant?

14       A.    Yes.

15       Q.    Are you wearing your uniform today?

16       A.    Yes.

17       Q.    Did you travel here in your uniform?

18       A.    Yes.

19       Q.    Why are you wearing your uniform today?

20       A.    Because I was at work.  Actually, I am still

21   technically at work, I was dropped off in a marked vehicle

22   here.

23       Q.    And how do you plan to return to work?

24       A.    When I call for a pickup when I'm done.

25       Q.    From whom?

A-155

116

K. PIERRE

1    A.    Yes.

2    Q.    And you testified that you did various things to

3    plan the deployment plan and to put on your uniform and

4    equipment in that period of time, between your arrival time

5    and the start of the scheduled start time of the shift.

6          Do you recall that testimony?

7    A.    As a pool sergeant, yes.

8    Q.    And when you did that, that is, when you did

9    those various things before the scheduled start time of

10   your shift, did you put in for overtime for that work?

11   A.    No.

12   Q.    Why not?

13   A.    I was always advised that you only got paid from

14   your tour start.

15   Q.    And when you worked at the Lasker Pool in 2012

16   and did various things before the scheduled start of your

17   tour to prepare the deployment plan and/or to put on your

18   uniform, did you put in for that time?

19          MR. GILMAN:  Objection to form.

20   A.    No.

21   Q.    Why not?

22   A.    I was advised you get paid at the start of your

23   tour time.

24   Q.    Did there come a time when you're doing step up

25   work when you did put in for that sort of time, that sort

117

K. PIERRE

1    of work, that is, work done immediately before the

2    scheduled start of your shift?

3         A.    Yes.

4         Q.    And when was that?

5         A.    I started this season as an event sergeant.

6              MR. REIF:  Nothing further.

7              MR. GILMAN:  I am just going to follow-up

8         briefly on that line of questioning.

9    EXAMINATION BY

10   MR. GILMAN:

11        Q.    Mr. Pierre, you testified that you're advised not

12   to put in an overtime request for your time spent at work

13   before your tour at the pool in 2011?

14        A.    Well, I was advised that I wouldn't get paid

15   until the start of my tour.

16        Q.    And who advised you that?

17        A.    Most likely the captain at the time, Captain

18   Calderon?

19        Q.    You said, most likely.  Do you know or do you not

20   know?

21        A.    Not sure.

22        Q.    In 2012 you also testified that you were advised

23   not to put in an overtime request for time before the start

24   of the tour; is that correct?

25        A.    No, I was never advised not to put in overtime.

DIAMOND REPORTING   (718) 624-7200   info@diamondreporting.com
117

119

K. PIERRE

1    and received overtime for it.

2        A.    Not that I was able to, I just did.

3        Q.    You did.  And have you received overtime for

4    times spent before your tour?

5        A.    Yes.

6                MR. GILMAN:  Thank you.

7                (Whereupon, at 5:15 P.M., the Examination of

8            this Witness was concluded.)

9

10

11    _____
                    KIARAN PIERRE

12

13   Subscribed and sworn to before me

14   this _____ day of _____ 20____.

15

16   _____
              NOTARY PUBLIC

17

18

19

20

21

22

23

24

25

# EXHIBIT 34

ORIGINAL

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------------------------X
    HENRY PEREZ, RALPH BASELICE, JUAN BAYRON, JERRY CORDERO,
3   RONALD EASON, DONALD KOONCE, JOSEPH ORO, RUBEN RIO, JR.,
    PEDRO ROSADO, DEREK G. WALTHER, ON BEHALF OF THEMSELVES
4   AND OTHERS SIMILARLY SITUATED,

5                                          PLAINTIFFS,

6
                 -against-              Case No.:
7                                       12 CIV 4914(AJN)(MHD)

8
    THE CITY OF NEW YORK, MICHAEL R. BLOOMBERG, AS MAYOR AND
9   THE NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION,
    ADRIAN BENEPE, AS COMMISSIONER,
10
                                        DEFENDANTS.
11  ------------------------------------------------X

12

13              DATE:  November 4, 2013

14              TIME:  2:05 P.M.

15

16

17          DEPOSITION of the Plaintiff, DEREK G. WALTHER, taken

18  by the Defendants, pursuant to Notice and to the Federal

19  Rules of Civil Procedure, held at the offices of Sullivan &

20  Cromwell, LLP, 125 Broad Street, New York, New York 10004,

21  before Gena Nardone, a Notary Public of the State of New

22  York.

23

24

25

A-160

103

D. WALTHER

1    recreation building, before your tour starts during the

2    summer, is another thing that you do these tasks related to

3    the pool?

4        A.    Yes, they are related to the pool.

5        Q.    You do those before your tour starts?

6        A.    Well, I do it -- yeah, on the way in before the

7    tour starts because I'm in and I walk in, I'll observe it

8    because like I'm the supervisor for the north.  So

9    ultimately even though there's a pool supervisor that's

10   supposed to do those things, I kind of double-check to make

11   sure because it's in my sector.  That's just how I do it.

12   Then I check to make sure, you know, what's going on.  I

13   let them do it but I double-check, you know.

14       Q.    Mr. Walther, a few questions about your uniform.

15             Do you arrive for the Manhattan North Command at

16   High Bridge Park rec center Parks enforcement office there,

17   do you arrive in your uniform?

18       A.    No.

19       Q.    Why not?

20       A.    You're not supposed to arrive in uniform to work.

21   They had a thing back when we was UPRs, they used to tell

22   us don't wear your uniform.  Take your uniform off before

23   you come in.

24       Q.    So when you were a UPR someone told you not to

25   wear your uniform to work?

D. WALTHER

1    A.   Yes.

2    Q.   Do you remember who that was?

3    A.   That was Sergeant Rosado.

4    Q.   How do you spell Sergeant Rosado's last name?

5    A.   R-O-S-A-D-O.

6    Q.   What is Sergeant Rosado's first name?

7    A.   Pete.

8    Q.   Pete Rosado?

9    A.   Uh-huh.

10   Q.   Do you remember kind of the approximate time

11   period that he told you that?

12   A.   That was when I was in -- when I was in Battery

13   Park City patrolling -- that was on UPR when I first

14   started, that was like '96.

15   Q.   Other than Sergeant Rosado back in '96, has

16   anyone ever told you not to wear your Parks uniform to

17   work?

18   A.   No.

19   Q.   Have you ever worn your uniform to work for any

20   reason?

21   A.   The whole uniform, no.

22   Q.   You said the whole uniform?

23   A.   Right.

24   Q.   Have you worn parts of it?

25   A.   One time I wore my pants in only because I had

D. WALTHER

1    them ironed at home.  Then I just came in with them ironed

2    and, you know.  I did my boots, polished my boots when I

3    got to work and then just swapped my sneakers out for my

4    boots, you know.  I think it was a detail that I had to do

5    and I didn't have a pair at the office.

6        Q.    Mr. Walther, you said that you did that once?

7              Have you ever worn any part of your uniform to

8    work otherwise?

9        A.    No.

10       Q.    Mr. Walther, do you have time to change into your

11   uniform after your tour starts?

12       A.    After my tour starts?  I'm supposed to be dressed

13   already.  So I would say no, because I'm supposed to be

14   dressed by 8:30 and ready to go.  And ready to go on call.

15       Q.    That's true for the 10:30 tour as well?

16       A.    Yes.

17       Q.    Supposed to be dressed my 10:30?

18       A.    Right.

19       Q.    You say that you're supposed to be dressed.

20             How do you know that you're supposed to be

21   dressed?

22       A.    That was from the academy.  They always tell us,

23   you come in, you got to be ready.  You're supposed to be

24   ready by the start of your tour.

25       Q.    Mr. Walther, are you typically dressed by the

D. WALTHER

1   wasn't no detail.

2       Q.      Mr. Walther, when as you said each of the

3   captains that supervised you, the three commands that we've

4   been discussing told you that you could not request

5   overtime for coming in earlier than your tour start on a

6   typical day, did you ever try to request overtime for

7   coming in early on a typical day?

8       A.      No, just always knew, you know.

9       Q.      So you never had such a request denied; is that

10  correct?

11      A.      I'm not sure.

12      Q.      When you say you're not sure, could it have

13  happened that you put in a request for that time and had it

14  denied?

15      A.      Yes.

16      Q.      Do you think that's the case?

17      A.      Yes.

18      Q.      Who do you think denied the request or requests?

19      A.      I don't know.  I don't know.

20      Q.      Do you think it happened frequently?

21      A.      Yes.

22      Q.      So you frequently would put in for overtime for

23  the time before your tour started on a typical day?

24      A.      I wouldn't frequently put it in because I just

25  know that you can't get it unless there's a detail so I

D. WALTHER

1    kind of know so I don't ask.

2        Q.    A moment ago you said that you did it frequently.

3    What do you mean by that, Mr. Walther, was it that you

4    asked if you could frequently?

5        A.    Well, when I was a UPR I used to ask for overtime

6    and, you know, then they would say no, there's no details.

7    There's no overtime.  So you just learned you just don't

8    ask.  You just only when there's a detail.  That's when

9    they are going to offer you the overtime.

10       Q.    You were told that as well when you were an AUPR?

11       A.    Yes.

12       Q.    But the reason that you didn't ask when you were

13   an AUPR as opposed to a UPR is passage of time you

14   understood how things worked now?

15       A.    Yes.

16       Q.    Is there any other reason?

17       A.    No.

18       Q.    That's helpful.  Thank you.

19             Tell me, what is muster?

20       A.    Muster is supervisor, we muster up the units,

21   check their uniform, make sure that they have everything in

22   order, sign their memo books or don't sign their memo

23   books, you know, and then just make sure that their uniform

24   is tight.  Usually ask them if they have any questions for

25   the day, assign them to detail, a regular tour detail like

# EXHIBIT 54

# ORIGINAL



1

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------------------------------X
      HENRY PEREZ, RALPH BASELICE, JUAN BAYRON, JERRY CORDERO,
 3    RONALD EASON, DONALD KOONCE, JOSEPH ORO, RUBEN RIO, JR.,
      PEDRO ROSADO, DEREK G. WALTHER, ON BEHALF OF THEMSELVES
 4    AND OTHERS SIMILARLY SITUATED,

 5                                  PLAINTIFFS,

 6

 7         -against-          Case No.:
                              12 CIV 4914(AJN)(MHD)
 8

 9    THE CITY OF NEW YORK, MICHAEL R. BLOOMBERG, AS MAYOR AND
      THE NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION,
10    ADRIAN BENEPE, AS COMMISSIONER,

11                                  DEFENDANTS.
      ------------------------------------------------------X

12

13                     DATE: September 19, 2013

14                     TIME: 9:30 A.M.

15

16

17         DEPOSITION of the Plaintiff, MATTHEW LOUIS

18    GREENBERG, taken by the respective parties, pursuant to a

19    Court Order and to the Federal Rules of Civil Procedure,

20    held at the offices of Sullivan & Cromwell, LLP, 125 Broad

21    Street, New York, New York 10004, before Gena Nardone, a

22    Notary Public of the State of New York.

23

24

25
```

61

M. GREENBERG

1    A.    Yes.

2    Q.    But regarding the sick box deployment and e-mail,

3    what you just described is what you typically did at all

4    four commands?

5    A.    Correct.

6    Q.    Why didn't you arrive at any of those four

7    commands already dressed in your uniform?

8    A.    We were told in our, in the academy we were

9    instructed not -- that we weren't allowed to travel to and

10   from work in full uniform.

11   Q.    You were taught in your training when you first

12   joined Parks Department, that you're not allowed to wear a

13   uniform when you are commuting to and from work?

14   A.    Correct, and most locations they provide you with

15   a locker to keep the uniform in.

16   Q.    Did they say why they didn't -- why you were not

17   allowed to wear your uniform when you're commuting to and

18   from work?

19   A.    I don't remember if they gave a reason, they just

20   emphasized that you're not supposed to travel to and from

21   work in uniform, full uniform.

22   Q.    Could you travel to and from work in your uniform

23   but say have a jacket covering it?

24   A.    I didn't.

25   Q.    If you did that, would that be violating the

96

M. GREENBERG

1      Q.      If you worked through your meal break, do you get

2    paid for that?

3      A.      Yes.

4      Q.      Is it -- you get paid overtime?

5      A.      No.

6      Q.      You get -- you don't get paid cash overtime?

7      A.      Correct, you get Comp.

8      Q.      Why do you get Comp. only?

9      A.      Because then you need to justify to bosses why

10   you're getting overtime.   Generally they wouldn't accept

11   your justification.

12     Q.      So have you worked through your meal break and

13   put in a request for being paid in cash overtime --

14     A.      No.

15     Q.      Why not?

16     A.      Because it was just, it was just known that you

17   don't do that.   It's like an un-written rule.   You just

18   put in Comp.  Overtime for cash overtime, it's previously

19   known you're going to be doing cash overtime unless it's an

20   arrest.

21     Q.      So when you generally, when you submitted

22   overtime for working through your meal break, you requested

23   Comp. time?

24     A.      Correct.

25     Q.      You said there was kind of a general unwritten

97

M. GREENBERG

1   understanding that you could not request cash overtime if

2   you worked through your meal break?

3       A.      Yes.

4       Q.      Who did you hear that from?

5       A.      Senior offers.

6       Q.      Do you remember which senior offers?

7       A.      No, I don't remember the names.

8       Q.      I think you said you've never submitted for cash

9   OT for working through your meal.  Do you know of other

10  AUPRs who have?

11      A.      I have no idea,  I don't know.

12      Q.      Have you ever -- when you submitted for Comp.

13  time,  for working through your meal break,  were you ever

14  denied that Comp. time?

15      A.      No.

16      Q.      So to be clear, when you worked through your meal

17  you were compensated in Comp. time?

18      A.      Correct.

19      Q.      In terms of your meal, what would you eat?

20      A.      I don't know.  If I made something at home,  I

21  would eat that, or sandwich, pizza.

22      Q.      So you said you would sometimes eat something

23  that you made at home and brought to your shift?

24      A.      Yes.

25      Q.      There were other times where you didn't bring

A-170

# EXHIBIT 57

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HENRY PEREZ, et al.,

                               **Plaintiffs,**               ECF Case

   -versus-                               No. 12 Civ. 4914 (AJN)(MHD)

**THE CITY OF NEW YORK, et al.,**

                           **Defendants.**          **AFFIDAVIT OF**
                                                **ANDRE GREENFIELD**
-----------------------------------------------------------x

State of New York
County of New York      ss.:

        Andre Greenfield, being duly sworn, deposes and says:

        1.     I currently work as a Captain for the New York City Department of Parks & Recreation (the "Parks Department"). The civil service title for Captain is "Community Coordinator." As a Captain, I am familiar with the rules, policies and requirements of the Parks Department as they apply to Associate Urban Park Rangers ("AUPRs"). I have been a Captain since approximately 1994.

        2.     My duties as a Captain have included, among other things, supervising Associate Urban Park Rangers ("AUPRs"), during all times of my employment as a Captain.

        3.     I was first employed by the Parks Department in approximately 1987 as an Urban Park Ranger. I worked as an AUPR during two summer seasons in or around 1990 and 1991, and was promoted to a permanent AUPR line in or around 1993 or 1994. I was a permanent line AUPR for approximately six months before I was promoted to Captain.

        4.     I currently work in the Bronx at Mill Pond. I have worked as a Captain at almost all of the Parks Department's work locations.

P000870

5.      When I worked as an AUPR, I arrived before my tour to change out of civilian clothes and into full uniform, sign in, and begin preparing a deployment plan. The AUPRs I supervise/have supervised generally follow the same practice. Where an AUPR's tour starts at the same time as the employees he/she supervises, the AUPR must have the deployment ready in time for muster, which begins approximately 5 minutes after the tour start time.

6.      As per the Parks Department's rules, an AUPR is not allowed to wear his/her uniform while off-duty, including but not limited to while commuting to or from work. I was given this instruction at the Parks Department's Training Academy when I began my employment with the Parks Department.

7.      As per the directives of the Parks Department, an AUPR must be in full uniform by the AUPR's tour start time. The Parks Department allows a five minute grace period. (This policy does not necessarily apply to AUPRs who perform mounted duty, because of the requirements of mounted duty.)

8.      The Parks Department requires an AUPR to stay in full uniform until the end of his/her tour because he/she may need to respond to an incident.

9.      Most of the AUPRs I supervise/have supervised change out of uniform and into civilian clothes after completing their administrative work.

10.     When the Parks Department used time cards (handwritten), it required AUPRs to record as "time in" and "time out" the start and end times of their tour, respectively, unless otherwise authorized. The same rules apply where an AUPR manually enters "time in" and "time out" into Citytime. Where an AUPR uses Citytime Webclock and/or handscanner, the Parks Department requires the AUPR to scan/punch at approximately his/her tour start and end times.

P000871

11.    The Parks Department entitles an AUPR one 30 minute meal break during his/her tour.  However, there are occasions where an AUPR works though all or a substantial portions of the meal break due to the demands of the job.

12.    Unless his/her superior(s) authorize otherwise, an AUPR must record the full 30 minute meal break in his/her time records.

13.    In addition to other duties, an AUPR must review the summonses issued by the employees he/she supervises, complete logging in his/her summonses, and complete and submit any 61 reports, all before leaving the command for the day or before his/her next scheduled tour if he/she is working the next day.  This administrative work must be kept up-to-date so that certain Parks Department reports and records are accurate.

14.    I have informed AUPRs of, and instructed AUPRs to abide by, each of the rules, policies and requirements described herein on numerous occasions throughout my employment as a Captain with the Parks Department.  I have been instructed to do so by the Parks Department.

Andre Greenfield

Sworn to before me
this 16th day of December, 2013

Notary Public

JANE CHUNG
Notary Public, State of New York
Registration #02CH6229663
Qualified in New York County
Commission Expires Oct. 18, 2014

A-174

# EXHIBIT 58

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HENRY PEREZ, et al.,

                      Plaintiffs,             ECF Case

    -versus-                       No. 12 Civ. 4914 (AJN)(MHD)

THE CITY OF NEW YORK, et al.,

                   Defendants.     **AFFIDAVIT OF
                                    DAVID CALDERONE**
------------------------------------------------------------x

State of New York
County of New York       ss.:

David Calderone, being duly sworn, deposes and says:

      1.     I am employed as a Community Coordinator, also known as Captain, by the New York City Department of Parks & Recreation (the "Parks Department"). As a Captain, I have familiarity with the rules, policies and requirements of the Parks Department as applied to Associate Urban Park Rangers ("AUPRs").

      2.     I have been employed as a Captain since approximately 1997. I began my employment with the Parks Department in approximately 1992 as an Urban Park Ranger. During the summer season of 1996, I was employed by the Parks Department as an AUPR.

      3.     As a Captain, I currently work out of Flushing Meadows Corona Park in Queens. I have worked as a Captain at almost all of the work locations covered by the Parks Department.

      4.     During all times of my employment as a Captain, my duties have included, among other things, supervising AUPRs.

P000873

5.      The Parks Department requires an AUPR to be in full uniform by the AUPR's tour start time, with a five minute grace period. (Because of certain requirements of mounted duty, this rule does not necessarily apply to AUPRs who perform mounted duty.)

6.      The Parks Department prohibits an AUPR from wearing his/her uniform while off-duty, including but not limited to while commuting to or from work. I was given this instruction at the Training Academy when I began my employment with the Parks Department.

7.      When I was an AUPR, I arrived at my command before my tour started in order to change out of civilian clothes and into full uniform, sign in, and begin preparing the deployment plan. The AUPRs I supervise/have supervised generally follow the same practice. Where an AUPR's tour starts at the same time as the employees he/she supervises, the AUPR must have the deployment ready in time for muster, which begins approximately 5 minutes after the tour start time.

8.      An AUPR is entitled to one 30 minute meal break during his/her tour. However, there are tours where, due to the demands of the job, an AUPR works through all or a substantial portion of his/her meal break.

9.      An AUPR must record the full 30 minute meal break in his/her time records unless authorized to do otherwise by his/her superior(s).

10.     Among other tasks, an AUPR must complete logging in his/her summonses, complete and submit any "61 reports," and review the summonses issued by the employees he/she supervises, all prior to leaving the command for the day or prior to his/her next scheduled tour if he/she is working the next day. Such administrative work must be kept up-to-date so that certain Parks Department reports and records are accurate.

P000874

11.    Pursuant to Parks Department policy, an AUPR is required to remain in full uniform until the end of his/her tour because he/she may need to respond to an incident.

12.    Most of the AUPRs I supervise/have supervised complete their administrative work before changing out of uniform and into civilian clothes.

13.    When the Parks Department utilized handwritten time cards, it required AUPRs to record the start and end times of their tour as "time in" and "time out," respectively, absent permission to do so otherwise.  Where an AUPR manually enters "time in" and "time out" into Citytime, the same rules apply.  Where an AUPR utilizes Citytime hand scanner and/or Webclock, the Parks Department requires the AUPR to scan/punch at approximately his/her tour start and end times.

14.    I have informed AUPRs of, and instructed AUPRs to abide by, each of the rules, policies and requirements described herein on numerous occasions throughout my employment as a Captain with the Parks Department.  I have been instructed to do so by the Parks Department.

David Calderone

Sworn to before me
this 16th day of December, 2013

Notary Public

JANE CHUNG
Notary Public, State of New York
Registration #02CH6229663
Qualified in New York County
Commission Expires Oct. 18, 2014

A-178

# EXHIBIT 59

1

```
 1     UNITED STATES DISTRICT COURT
 2     SOUTHERN DISTRICT OF NEW YORK
       ----------------------------------------------------------X
 3     PEREZ, HENRY
       BASELICE, RALPH
 4     BAYRON, JUAN
       CORDERO, JERRY
 5     EASON, RONALD
       KOONCE, DONALD
 6     ORO, JOSEPH
       RIOS, RUBEN JR.
 7     ROSADO, PEDRO
       WALTHER, DEREK G, on behalf of
 8     themselves and others similarly situated,

 9                                    PLAINTIFFS,

10          -against-        Case No.:
                             12 Civ. 4914(AJN)(MHD)
11
       THE CITY OF NEW YORK, MICHAEL R. BLOOMBERG, AS MAYOR and
12     THE NEW YORK CITY DEPARTMENT OF PARKS & RECREATION, ADRIAN
       BENEPE, AS COMMINSSIONER,
13
                                    DEFENDANTS.
14     ----------------------------------------------------------X

15

16                            DATE: January 9, 2014

17                            TIME: 2:10 P.M.

18

19                   DEPOSITION of a Non-Party witness, TONYA

20     PRINCE, taken by the respective parties, pursuant to the

21     Federal Rules of Civil Procedure, held at the offices of

22     The New York City Law Department, 100 Church Street, New

23     York, New York 10007, before Kim Ryan, a Notary Public of

24     the State of New York.

25
```

DIAMOND REPORTING   (718) 624-7200   info@diamondreporting.com

PRINCE

1    Q.    What is that time frame?

2    A.    At least half an hour prior to the start of the

3    tour.  So again, when they come in at 10:30, they're

4    supposed to get into uniform.

5    Q.    Meaning when they get in at 10:30, do you mean

6    when the tour starts at 10:30?

7    A.    Right, at the start of the tour.

8    Q.    Do you know AUPR's that commute to and from work

9    in their uniforms?

10    A.    No.

11    Q.    Is there any rule or regulation in Parks that

12    prevents AUPR's from commuting to and from work in their

13    uniforms or being off duty in their uniforms?

14    A.    Yes.  You're not supposed to commute to and from

15    work in your uniform.

16    Q.    Is that a written rule?

17    A.    Yes.

18    Q.    Where is that written?

19    A.    I want to say we have an operations order.

20    Q.    Do you know the number?

21    A.    No.

22    Q.    Do you know the last time you saw it?

23    A.    No.

24    Q.    Do you know where you saw it?

25    A.    I actually have a book where I keep all of the

22

PRINCE

1    operations orders, so I know where it is, but I can't tell

2    you the last time I physically looked at it.

3        Q.    Do you remember when it was issued?

4        A.    That operations order has been in effect for the

5    entire time I've been on the job.

6        Q.    Can an AUPR wear any part of their uniform while

7    off duty?

8        A.    We do have people that will report to and from

9    work in their trousers and just have on a regular shirt or

10   a sweater.

11       Q.    Are they reprimanded for doing that?

12       A.    No.

13       Q.    Have you ever reprimanded anyone for being in

14   uniform off duty or communicating to and from work in their

15   uniform?

16       A.    No.

17       Q.    Have you ever witnessed that happen?

18       A.    No.

19       Q.    Do you know why that is, why there is this -- why

20   would it be that a Parks employee shouldn't be in their

21   uniform?

22              MR. KREISBERG:  Objection to the form.  If

23              you can answer it, answer it.

24       A.    It's a safety issue.

25       Q.    What do you mean?

26

PRINCE

1    respond, or again, if they're at the precinct processing or

2    assisting in the processing of an arrest.

3         Q.    Can you give me an example of a condition they

4    would have to respond to?

5         A.    If an officer is in need and they call and

6    they're in distress or have a patron who's not compliant

7    and they need a supervisor to respond to the scene.

8         Q.    Are AUPR's provided to put in a request for

9    compensation for the time they worked through their meal?

10        A.    Yes.

11        Q.    To your knowledge do AUPR's in fact request that

12   compensation?

13        A.    I want to say at this point we haven't quite

14   figured out how to put that request into city time.

15        Q.    What do you mean by that?

16        A.    City time, you sign in and you sign out.  You

17   sign in and out for meal, but we haven't figured out how to

18   put it into the system saying that you did not have meal.

19        Q.    Do you do anything else then?

20        A.    What we try to do is either tell them to put it

21   onto the end of their tour or what I will try to do is

22   maybe the next day if they want come in a half hour later.

23   We try to work out a compensation.

24        Q.    What do you mean put it on the end of their tour?

25        A.    If they're going to get off at 4:30 signed out

28

PRINCE

1      A.      Alena Brace, number six.  Chatory Brown, number

2   8.  Jeffrey Eudsei, number 19.  Earl Fisher, number 20.

3   Robert Green, number 22.  Asha Harris, number 26.  Numbers

4   27, 28, 29, 31, 32, 33, 35, 37, 39, 40, 41, 42, 44, 50, 53,

5   61, 63, 64, 68, 72, 75, 76, 77, 78 and 79.

6      Q.      Besides the people you just identified as having

7   supervised as AUPR's, have you spoken to anyone on this

8   list about this lawsuit?

9      A.      No.

10      Q.      Is it correct that you are contemplating bringing

11   a lawsuit on your own behalf against Parks and New York

12   City?

13      A.      Yes.

14      Q.      What is that lawsuit about?

15      A.      That lawsuit is in regards to the time and a half

16   being earned for compensation and we also are contemplating

17   in regards to uniforms.

18      Q.      What about uniforms?

19      A.      We are -- our civil service title is community

20   coordinator, which is not a uniform title.  We are,

21   however, required to wear a uniform, and we are not

22   compensated with a uniform maintenance or allowance.

23      Q.      Have you retained Counsel for this contemplated

24   lawsuit?

25      A.      Not at this time.

DIAMOND REPORTING   (718) 624-7200   info@diamondreporting.com

31

PRINCE

1      Q.      You supervised him in both Manhattan and Brooklyn

2  Bridge?

3      A.      Yes.

4      Q.      Mr. Langston was deposed in this case, in the

5  same situation you are right now.

6      A.      Okay.

7      Q.      He testified that you told him to check his

8  e-mail before the start of his tour and after the end of

9  his tour.  Is that correct?

10             MR. KREISBERG:  Is that correct that he

11             testified that way or that she did that?

12     Q.      That you did that?

13     A.      I don't recollect that.  Like I said, they should

14  check their e-mails at the beginning of their tour and they

15  normally come in anywhere from half an hour to 45 minutes

16  prior to the end of their tours so that's the norm.

17     Q.      Would they be compensated for that time?

18     A.      They're still on the clock.

19     Q.      Do you know whether Mr. Langston does check his

20  e-mail before the start of his tour and after the end of

21  his tour?

22     A.      I want to say yes.

23     Q.      Why do you say you want to say yes?

24     A.      Usually when he checked his e-mails he would

25  respond to let you know he did receive the e-mail.  He's

DIAMOND REPORTING   (718) 624-7200   info@diamondreporting.com

32

PRINCE

1    currently not working in that title.

2        Q.    Did he ever put in for overtime for that time?

3        A.    Not to my recollection.

4        Q.    Ms. Brenda Cruz, number 15 on the list, you

5    didn't indicate that you supervised her but she claims that

6    you did at some point.  Does that sound familiar?

7        A.    Hudson River Park, yes, I did.

8        Q.    She was also deposed in this case.  She testified

9    that all of her captains, one of which was you, at some

10   point told her to check e-mail and the logbook before the

11   start of her tour.  Did you in fact tell her to check

12   e-mails and logbooks before the start of her tour?

13       A.    She was told to check her e-mails and the logbook

14   at the start of her tour.

15       Q.    Are you aware whether she was checking e-mails or

16   checking the logbook before her tour?

17       A.    No, I'm not aware of that.

18       Q.    Number 64, Mr. Ruslan Shulyar, that's a male?

19       A.    Yes.

20       Q.    He also testified in this lawsuit and he said

21   that you said that it was okay to arrive 30 minutes prior

22   to tour and that there was no issue claiming that time as

23   work time.  Do you know whether you told him that?

24       A.    Yes.

25       Q.    He claims he had to arrive in order to do

DIAMOND REPORTING   (718) 624-7200   info@diamondreporting.com

32

33

PRINCE

1    administrative work; is that correct?

2        A.    Yes.

3        Q.    He continued to testify though that sometime

4    later you told him that he could not get comp time for

5    pre-shift work.

6        A.    No.

7        Q.    You never told him that?

8        A.    No.

9        Q.    He also testified that you told him that he has

10   to take a meal no matter what.

11       A.    He was assigned to a pool which closes from three

12   p.m. to four p.m. for all employees to take a meal.  There

13   were no patrons in the pool.  The pool wasn't open to the

14   public, so there was no reason for him not to be able to

15   take his meal.

16       Q.    Do you recall whether there was any circumstance

17   that did require him to work through his meal?

18       A.    No.

19       Q.    Number 57, Earline Reed, did you ever supervise

20   her?

21       A.    I don't recall.

22       Q.    She also testified and said that you did in fact

23   supervise her.

24       A.    She might have been a seasonal step-up assigned

25   to a pool, but off the top of my head I just don't remember

34

PRINCE

1    which location.

2         Q.    She testified that you instructed her to not wear

3    her uniform outside of work.  Do you recall ever

4    instructing her not to wear her uniform outside of work?

5         A.    Yes.  I'm sure -- like I said, that is the

6    standard operation, so that would be an advisory that I

7    would give.

8         Q.    Is it also standard to tell the AUPR's that they

9    can change into their uniform when they arrive at work?

10        A.    Yes.

11        Q.    Ms. Reed also stated that you instructed her to

12   arrive one hour before her tour of duty, stating that it's

13   a 24-hour job.  She stated that during this time -- during

14   the time that she arrived prior to her tour she was

15   expected to change into her uniform and check the premises.

16   Did you ever instruct her to arrive one hour before her

17   tour of duty?

18        A.    No.

19        Q.    Do you expect that she arrived before her tour of

20   duty in order to change into her uniform and check the

21   premises?

22        A.    No.

23        Q.    Do you expect any AUPR to do that?

24        A.    No.

25        Q.    What is a memo book?

DIAMOND REPORTING   (718) 624-7200   info@diamondreporting.com

34

PRINCE

1    was something that you had -- you were requested or told to

2    do before the start of the tour and you did it that you

3    would put in for that time; is that correct?

4        A.    Yes.

5        Q.    So normally you changed into your uniform and

6    checked your equipment and prepared the deployment plan

7    before the start of your tour; correct?

8        A.    Yes.

9        Q.    If that's all you did, would you normally put in

10   for that time?

11       A.    Normally, no.

12       Q.    To your knowledge if other AUPR's working under

13   you normally changed into their uniform, checked their

14   equipment, put on the utility belt, prepared the deployment

15   plan, but did something else before the scheduled start of

16   their tour would they normally put in for that time?

17       A.    I want to say it's 50/50.   It's depending on the

18   person.

19       Q.    So some people wouldn't?

20       A.    Some people would, some people wouldn't.   That's

21   correct.

22            MR. REIF:   Nothing further.

23   EXAMINATION BY

24   MS. LEONE:

25       Q.    Just to follow up, why wouldn't you put in for

51

PRINCE

1   that time?

2        A.    It was my choice to come in early.  I preferred

3   to get into uniform and get situated because I don't like

4   to rush.  It wasn't a requirement.  I could have come in

5   the scheduled half hour prior to my tour started, but it

6   was just a personal choice that I made.  So because I

7   wasn't mandated and I chose to do it, I didn't request for

8   the compensation time during that period.

9   EXAMINATION BY

10  R. REIF:

11       Q.    You were required to be in uniform before the

12  start of your tour; correct?

13       A.    Right.  I was required if I was working -- if the

14  assigned tour for the officers was 11:00 a.m. to 7:00 p.m.,

15  my tour started at 10:30.  I'm required to be in uniform by

16  10:35.

17       Q.    Similarly you're required to check your equipment

18  and put your utility belt on by that time as well?

19       A.    Right.  Right.

20              MR. REIF:  Nothing further.

21  EXAMINATION BY

22  MS. LEONE:

23       Q.    Just to clarify, you said you were required to be

24  in your uniform at the start of your tour, but then you

25  said by 10:35, meaning within five minutes of your tour?

A-190

# EXHIBIT 74

A-191

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HENRY PEREZ, et al.,

           Plaintiffs,        ECF CASE

   -versus-             No. 12 Civ. 4914 (AJN) (MHD)

THE CITY OF NEW YORK, et al.,

           Defendants.      DECLARATION OF
                      MARLENA POELZ-GIGA
-----------------------------------------------------------x

   MARLENA POELZ-GIGA hereby declares under penalty of perjury that the following

statements are true and correct:

   1.  I am a plaintiff in the above-captioned lawsuit.  I make this declaration based on

my own personal knowledge.

   2.  As of June 2013 I have been on an unpaid administrative leave from the New

York City Department of Parks and Recreation ("Parks Department").  Prior to June 2013 I was

employed by the Parks Department as an Associate Urban Park Ranger ("AUPR").  I held the

AUPR title continuously since approximately December 2006.  I also served as an AUPR in a

seasonal capacity beginning in June 2004.

   3.  Prior to December 2006, I worked for the Parks Department as an Urban Park

Ranger ("UPR"), a title I held since May 2001.  UPRs are subordinates of and report to AUPRs.

   4.  During my employment as a UPR and an AUPR, I worked out of at least 14

"commands," in every borough of New York City except Staten Island.  My commands in

Manhattan included Central Park (North Meadow), Manhattan Mounted Unit at 59th Street,

Manhattan Mounted Unit at Claremont Stables (which no longer exists), Highbridge Park, Parks

Enforcement Headquarters, and the Thomas Jefferson Park Pool.  In the Bronx, my commands

1

included Van Cortlandt Park, Mill Pond, Ranaqua, and Bronx Mounted Unit.  My Queens commands included Queens Mounted Unit.  In Brooklyn, my commands included Brooklyn Mounted Unit.

5.      AUPRs are law enforcement personnel of the Parks Department.  AUPRs perform patrol work, supervise and assign tasks to subordinate officers, issue summonses, make arrests, and enforce Parks rules and regulations and the NY Penal Code.  AUPRs are scheduled to work five days per work week, 8 ½ hours per day, with thirty minutes of unpaid time that is supposed to be used for a meal break.  Each AUPR is paid for at least 40 hours per week.

6.      Since I started at the Parks Department until approximately May of 2013, no notice from the United States Department of Labor or any other notice regarding my rights as an employee under the Fair Labor Standards Act ("FLSA") was ever posted either at a command or at any site where I would work during my tour of duty.

7.      I was unaware of my right to overtime compensation pursuant to the FLSA until I became involved in this lawsuit.  In fact, the Parks Department Employee Handbook specifically informs employees that certain titles are not covered by the FLSA.  The AUPR title is listed as "not covered" by the FLSA on page seventeen of the Parks Department handbook.  Attached to this declaration as Appendix 1 is a copy of excerpted pages from the Parks Department handbook stating that AUPRs are "not covered" by the FLSA.

8.      In June of 2013, I received a "broadcast" email from the Parks Department Director of Personnel attaching a notice from the United States Department of Labor entitled, "Employee Rights Under the Fair Labor Standards Act."  Attached to this declaration as Appendix 2 is a copy of the broadcast email with the notice.  I had never seen this notice before at any Parks Department command where I had worked.

2

9.      Throughout my career as an AUPR, on a daily basis, I have had to work before and after my scheduled tour in order to get my work done.  In addition to the time I spend every day changing into my uniform and equipment (or changing at the end of the day), I also do daily administrative tasks before the start of my tour, including preparing the deployment plan, checking sick calls, checking and responding to email, among other things.  I also regularly spend about thirty minutes at the end of the day typing up incident reports and logging summonses.  As an AUPR, I have also received phone calls and emails from Parks Department managers about work-related matters before my tour has began and after it has ended.  These are the typical tasks performed by AUPRs before and after their shift.

10.     Parks Department policy requires AUPRs to be in uniform by the start of the tour but employees are not allowed to wear their uniform while off-duty (except during lunch, when we must remain in uniform).   We are told at the Parks Training academy that commuting in uniform is not permitted.  In order to be in uniform at the start of my tour, I have to report to my command in advance of my tour start time to change into uniform and prepare all of the required equipment.  It takes at least 15 minutes to change into the uniform.  At the end of the day, it takes another 10 minutes or so to take off the uniform and change back into civilian clothes.  Attached to this declaration as Appendix 3 is a copy of the Parks Department uniform policy.

11.     In addition to the time I spend getting into my uniform every day, I am required to check that the equipment on my utility belt is in good working order.  This also has to be done at the command before my tour of duty begins, and before I put on the equipment.   It takes me approximately 7-8 minutes to put on and take off the utility belt and test and prepare all the equipment on the belt, including my radio, handcuffs, flashlight, gloves, mace, baton, memo book, and tape recorder.  AUPRs are required to record a verbal heading on their tape recorder, and then play it back, test the radio and get a new battery, if necessary (the batteries are usually

3

A-194

locked away in a separate room of the command), test the flashlight, and write a header on the memo book indicating the date, your partner's name, your tour, when you will take your meal, and your work assignment. You also have to shake the mace, make sure you have working pens, and make sure you have enough summonses for the day.

12.     AUPRs cannot do their jobs without wearing a uniform. First, Parks rules mandate that we are in uniform at all times during our tour. Second, the uniform makes AUPRs identifiable to members of the public who may need to seek out our assistance in a range of situations including emergencies. Third, the uniform identifies AUPRs as law enforcement personnel and authorized representatives of the Parks Department, which is necessary for our work issuing summonses, making arrests, investigating incidents, and handling other public safety matters. Parks Department supervisors frequently tell AUPRs that our role is to be a highly visible uniformed presence in New York City.

13.     As an AUPR I am required to conduct the "muster" for UPRs, City Seasonal Aids ("CSAs") and Job Training Participants ("JTPs"). The "muster" is essentially a roll call when we check to ensure our subordinates are properly uniformed and have all required equipment, give our subordinates their patrol assignments for the day, and disseminate necessary information. Usually, the tour start time of the CSAs and JTPs begins at the same time as the AUPRs. When my tour starts at the same time as the CSAs or/and JTPs, I have to prepare their deployment plan and complete other administrative work in advance of my tour start time otherwise I will not be ready for muster until after the CSAs' or JTPs' tours start. In fact, according to the "Sergeant's Daily Checklist," I am required to report to my command ½ hour before my officers in order to prepare for the tour. (AUPRs are called "Sergeants".) Attached to this declaration as Appendix 4 is a copy of the "Sergeant's Daily Checklist."

4

14.    The Sergeants' Daily Checklist states that I should arrive and get into uniform ½ an hour before the reporting time of the officers I supervise.  This checklist also lists all of the tasks I am required to perform before my subordinate officers arrive, such as checking the logbook, vehicles, and radios, gathering equipment, calling central communications, checking the "bi-weekly," and preparing the daily deployment.    These are all the tasks I have to complete before the CSAs or JTPs arrive for the day.

15.    I have frequently worked through my meal break and not been paid for having done so.  City Time automatically deducts a 30 minute meal break whether or not you actually take one.  I have also been told by Parks Department managers that I would not be paid for meal breaks, even if had to work during the meal break.

16.    At every command where I have worked as an AUPR, Parks Department managers have known that I regularly work before and after my scheduled tour, putting on/taking off my uniform/equipment and performing the tasks identified in the Sergeant's Daily Checklist.  When I worked at the North Meadow command from approximately the end of 2002 until 2008, Captain McCants was generally present at the command and saw me working before and after my tour.

17.    Captain McCants, Captain Cardozo, Deputy Director Brown, and Inspector Reeves were all aware that I worked off-the-clock before and after my tour on a regular basis. Parks Department mangers (including McCants and Reeves) approved my time cards or City Time entries and knew that I usually did not record the time I spent working before and after my tour, unless it was a special detail assignment, special event or involuntary overtime.  Special detail assignments are done at the direction of a Captain or other manager and involve work beyond a normal patrol that is designed to target a particular violation or issue.

5

18.     I did not record the time I spent working before and after my tour because I was made to believe that I would not be paid for this time.  Parks Department managers including Inspector Reeves, Deputy Director Brown, Deputy Inspector Rodriquez, and Captain McCants frequently told me and other AUPRs that there was not money in the budget to pay overtime and that I had to get my work done even if it meant working off the clock.

19.     Usually the only overtime work AUPRs are paid for is episodic overtime done at the specific direction or approval of a Captain and is reserved for certain special assignments (such as those paid for with private funds), special events (often in the summer), or when something unusual happens during the tour like a medical emergency or an arrest.  AUPRs are usually compensated for working this "on-the-clock" overtime, but often only with compensatory time that is calculated at a "straight time" rate.  When AUPRs are paid cash for overtime work, it is usually at the rate of time and one-half.

20.     The other kind of overtime work AUPRs perform is regular, almost daily, "off-the-clock" overtime which AUPRs do pre-shift, post-shift, or during a meal break.  Off-the-clock overtime is generally not recorded and not compensated and is not based on a specific request, direction, or approval of a supervisor.  Off-the-clock overtime includes getting into uniform, preparing the deployment, checking sick-calls, completing paperwork, preparing, putting on and storing the equipment, and numerous other administrative tasks that have to be done on a regular basis.  AUPRs are rarely, if ever, paid for this regular off-the-clock overtime.

21.     It would not be administratively difficult to record the regular, off-the-clock work I do before and after my scheduled tour time, including the time I spend changing into my uniform, testing and putting on my equipment, and taking off my uniform and equipment.  When I used time cards, I could have manually written in the extra time I spent working before

6

and after my tour, indicating on the back the specific duties I performed including getting into uniform. With City Time, the process is even easier: I could simply sign in before performing these tasks and sign out after all the tasks are completed.

22.    The vast majority of an AUPR's tour is spent doing exactly the same work as a UPR. After muster and other administrative tasks are finished (usually no more than 30 minutes into the tour), AUPRs go out on patrol just like the UPRs. While on patrol, AUPRs and UPRs perform the same tasks which include providing information and assistance to the public, enforcing park rules and regulations, issuing summonses, making arrests, arranging for medical care when needed, and numerous other public safety tasks.

Dated: New York, New York
        May 16, 2014

                                                    MARLENA POELZ-GIGA

7

APPENDIX 1

30429_Cov.qxp:Layout 1   5/23/08   9:13 AM   Page 1

# EMPLOYEE

## Time & Leave
## and Benefits

# HANDBOOK

May 2008

City of New York   Parks & Recreation

Michael R. Bloomberg, Mayor
Adrian Benepe, Commissioner

# Introduction

This manual has been prepared by the Payroll & Benefits Division in order to help you better understand the Agency's Time & Leave policy and procedures, and to outline the various benefits programs available to you as employees.

Time and Leave represents one of your most basic responsibilities as an employee of the Department of Parks & Recreation. This manual should serve as both a source and a reference for the Agency's time & leave policies and procedures, and Benefits Programs. However, many of the policies in this manual have been summarized from other sources, changed, or left out entirely. The complete texts of the Rules and Regulations of the City Personnel Director, "The Parks & Recreation's Standards of Conduct", "Disciplinary Procedures", "Employee's Handbook," "Leave Regulations for Employees Who are Under the Career and Salary Plan,", "Leave Regulations for Management Employees" and other texts are available upon request. If you have any questions about how any of these policies apply to your job title, you should ask your immediate supervisor.

**Reviewed and Edited by:**
Patrick Jones, Benefits Analyst
Tarice Harris, Deputy Director of Benefits
Jose Diaz, Deputy Director of Payroll
Joseph Trimble, Director of Labor Relations, Payroll & Benefits
Parmod Tripathi, Chief of Management Services

**Written By:**
Edwin Chiquito, Payroll Analyst
Keisha Ford, Payroll Analyst
Zaire Hopson, Customer Service Representative
Ramon Cordero, Customer Service Representative

D 000012

# TABLE OF CONTENTS

**During the Workday**                                                                **Page**

Attendance.....................................................................1
Timecards.....................................................................1
Lateness.......................................................................3
Early Departure..............................................................4
Extended Absence...........................................................5
Lunch Break..................................................................5
Payday..........................................................................5
Check Cashing...............................................................6
Flextime........................................................................6

**Leave Usage and Accrual**

Sick Leave.....................................................................7
Sick Leave of Absence....................................................9
Absence Control............................................................10
Sick Leave Accrual.........................................................11
Annual Leave.................................................................11
Annual Leave Accrual.....................................................12
Emergency Personal Business...........................................13

**Premium Pay**

Overtime....................................................................... 15
Compensatory Time....................................................... 15
Cash Overtime.............................................................. 18
Holiday........................................................................ 19
Night Differential.......................................................... 20
Weekend Differential...................................................... 21
Assignment Differential for Heavy Duty Jobs.............. 21

**Miscellaneous Types of Leave**

Workers' Compensation...................................................23
Sick Leave Grant (Compassionate Leave)....................24
Family and Medical Leave Act (FMLA).................... 25
Special Leave of Absence Coverage (SLOAC)............. 26
Childcare Leave............................................................. 26

D 000014

**Miscellaneous Types of Leave (cont.)**                                    **Page**
    Bereavement Leave.................................................27
    Funerals............................................................28
    Leave for Religious Observance.........................28
    Leave to Participate in Parades.............................28
    Jury Duty..........................................................29
    Court Attendance...............................................30
    Leave Without Pay.............................................30
    Union Activities.................................................30
    Military Leave...................................................32
    Extended Military Benefits...................................33
    Salary Continuation Program................................33
    Job Training Participants.....................................38

**Health Benefits**
    Currently Available Plans.................................. 40
    Eligibility and Enrollment................................. 40
    Employee/Retiree Responsibilities........................ 41
    Choosing a Health Plan.......................................41
    Who To Contact For Help....................................42
    Option Available upon Termination of Coverage........... 43
    Health Benefit Buy-Out Waiver Program................... 44
    Health Care Flexible Spending Account Programs...........45

**Other Benefits**
    Union Benefits.................................................46
    Direct Deposit.................................................46
    TransitBenefit Program ......................................48
    Deferred Compensation .....................................49
    Roth 401(k).....................................................50
    NYCE IRA......................................................51
    New York City Pension Plan................................53
    529 College Savings Program...............................55
    Savings Bonds.................................................57
    Municipal Credit Union (MCU)..............................59
    Employee Assistance Program (EAP)........................61
    Long-Term Care Program (LTC) ...........................62

D 000015

**Other Benefits (cont.)**                                          Page
    Survivor Benefits............................................................65
    Combined Municipal Campaign...............................66
    Blood Donation Program......................................67

**Managerial Pay Plan and Benefits**
    Hours of Work.................................................................68
    Lunch Hour.....................................................................69
    Sick Leave Accrual.......................................................69
    Annual Leave Accrual..................................................69
    Authorized Leave Days................................................70
    Lump Sum Payment....................................................71
    Management Benefits Fund (MBF)............................71

Glossary..................................................................................76

D 000016

A-204

15

# Premium Pay

*Overtime*

When an employee works overtime, he/she can earn either compensatory time or cash overtime.

1. Supervisors may ask an employee to work voluntary overtime. If the employee chooses to work voluntary overtime, he/she earns compensatory time.

2. When directed by a supervisor, in writing, to work involuntary overtime, the employee earns cash overtime.

When an employee is recalled from home to work overtime, he/she will be compensated on an hour-for-hour basis for a minimum of four hours.

*Compensatory Time*

Compensatory Time (CT) is earned in quarter-hour increments. For non-FLSA (Fair Labor Standards Act) employees, there is a minimum of one hour credited per week for employees with a 35-hour workweek. Thus, the timekeeper will not record the time if the employee works less than one hour of compensatory time a week. Employees who are covered under the FLSA may earn less than one hour of compensatory time per week. Voluntary overtime actually worked by FLSA employees in excess of 40 hours in a calendar week shall be compensated at the rate of time and a half ($1\frac{1}{2}$x).

Compensatory Time must be authorized in advance by your direct supervisor, and must be approved at the Chief or Commissioner level in your chain of command.

The employee must clearly indicate any compensatory time on his/her timecard along with the reason for earning the time. Employees cannot earn compensatory time by working through lunch.

Employee Time & Leave and Benefits Handbook

D 000032

16

Compensatory Time off shall be scheduled at the discretion of the Agency Head, but it will not be scheduled without the consent of the employee within thirty calendar days following its earning. The employee must take all compensatory time off within four months following its earning. Furthermore, it can be taken in quarter-hour increments. Any such compensatory time the employee chooses not to use within the four- month timeframe established above shall be added to his/her sick leave balance.

Any compensatory time that an employee earns by working on a holiday can be scheduled for use by the Agency as early as the same week it is earned, but cannot be rolled over into any other leave balances.  Also, FLSA compensatory time cannot be rolled into any other leave balances.

If the Agency Head calls upon an employee not to take the compensatory time off or any part thereof within the four months, that portion shall be carried over until such time as it can be liquidated.

The following are many of the Agency titles that are *not* covered under FLSA (if you have a question about your title, contact Payroll & Timekeeping):

Accountant
Administrative Director of Fleet Maintenance
Administrative Staff Analyst (non-managerial)
Agency Attorney
Agency Attorney Intern
Architect
Architectural Intern
Assistant Accountant
Assistant Administrator of Youth Services
Assistant Architect
Assistant Civil Engineer
Assistant Electrical Engineer
Assistant Landscape Architect
Assistant Mechanical Engineer
Assistant Supervisor of Youth Services

Employee Time & Leave and Benefits Handbook

D 000033

A-206

17

Assistant Urban Designer
Associate City Planner
Associate Management Auditor
Associate Project Manager
Associate Staff Analyst
Associate Urban Park Ranger
Chief Dockmaster
Chief Lifeguard (including all levels/details, seasonal only)
City Planner
Civil Engineer
Civil Engineering Intern
Community Coordinator
Computer Aide (determined by duties performed)
Computer Associate – Operations (determined by duties performed)
Computer Associate – Software
Computer Associate – Technical Support
Computer Program Analyst
Computer Specialist – Software
Confidential Investigator
Construction Project Manager
Construction Project Manager Intern
Dockmaster
Electrical Engineer
Electrical Engineer Intern
Forester
Human Rights Specialist
Landmark Preservationist.
Landscape Architect
Landscape Architect Intern
Lifeguard (seasonal only)
Mechanical Engineer
Mechanical Engineer Intern
Park Supervisor
Playground Assistant (seasonal only)
Playground Associate (seasonal only)
Principal Administrative Associate Level III (also Level II if
supervising)
Principal Communications Liaison Worker

Employee Time & Leave and Benefits Handbook

D 000034

19

Cash overtime must be authorized in advance by your direct supervisor, and must be approved at the Chief or Commissioner level. Cash overtime is earned in quarter-hour increments.

There is a minimum of one hour credited per week for employees with a 35 hour workweek. Hence, a 35 hour per week employee will not earn cash overtime if he/she works less than one hour of overtime a week. Cash overtime must be accompanied by a written justification from your supervisor. You cannot earn overtime by working through lunch.

*Holiday*

There are twelve (12) holidays in a year, of which one (Lincoln's Birthday) is designated a Floating Holiday for Career and Salary employees. Employees hired on or after July 1st, 2004 are not entitled to the Floating Holiday. Trades employees are not eligible for the Floating Holiday; therefore the holiday must be taken on the day of observation. All employees (except for Trades & Managerial titles) who are scheduled to work on the other eleven (11) holidays are entitled to a regular day's pay plus 50% cash pay and one day of Holiday Compensatory time. If an employee works on the "observed" day, then the employee is entitled to Holiday Compensatory Time *only*, in addition to their regular days' pay.

Employees can request to use their Floating Holiday (Lincoln's Birthday) any date during the calendar year, provided it is approved. Employees must fill out a "Request to Use Floating Holiday" form and submit it to their supervisor. Supervisors will approve the request at their discretion based on the needs of the operation and other staffing. Floating Holidays that are not used in a calendar year will not be carried to the next year.

Below is a list of the holidays:

| | |
|---|---|
| New Year's Day* | January 1st |
| Martin L. King, Jr. Day | Third Monday in January |
| Lincoln's Birthday* | February 12th (Floating Holiday) |

Employee Time & Leave and Benefits Handbook

D 000036

APPENDIX 2

A-209

**From:** Broadcast Message (Parks) [mailto:Broadcast.Message@parks.nyc.gov]
**Sent:** Tue 6/11/2013 6:10 PM
**To:** Broadcast Message
**Subject:** Employee Rights Under The Fair Labor Wage and Hour Division

Please take a moment to review the attached document - "Employee Rights Under The Fair Labor Wage and Hour Division." This poster contains important information concerning federal regulations under the Fair Labor Standards Act (FLSA).

This poster is also available on the Intranet under "Personnel."

Sincerely,

David Terhune
Director of Personnel

A-210

# EMPLOYEE RIGHTS
## UNDER THE FAIR LABOR STANDARDS ACT
### THE UNITED STATES DEPARTMENT OF LABOR WAGE AND HOUR DIVISION

## FEDERAL MINIMUM WAGE
# $7.25 PER HOUR
**BEGINNING JULY 24, 2009**

**OVERTIME PAY**  At least 1½ times your regular rate of pay for all hours worked over 40 in a workweek.

**CHILD LABOR**  An employee must be at least **16** years old to work in most non-farm jobs and at least 18 to work in non-farm jobs declared hazardous by the Secretary of Labor.

Youths **14** and **15** years old may work outside school hours in various non-manufacturing, non-mining, non-hazardous jobs under the following conditions:

*No more than*
- **3** hours on a school day or **18** hours in a school week;
- **8** hours on a non-school day or **40** hours in a non-school week.

Also, work may not begin before **7 a.m.** or end after **7 p.m.**, except from June 1 through Labor Day, when evening hours are extended to **9 p.m.**  Different rules apply in agricultural employment.

**TIP CREDIT**  Employers of "tipped employees" must pay a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation. If an employee's tips combined with the employer's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference. Certain other conditions must also be met.

**ENFORCEMENT**  The Department of Labor may recover back wages either administratively or through court action, for the employees that have been underpaid in violation of the law. Violations may result in civil or criminal action.

Employers may be assessed civil money penalties of up to $1,100 for each willful or repeated violation of the minimum wage or overtime pay provisions of the law and up to $11,000 for each employee who is the subject of a violation of the Act's child labor provisions. In addition, a civil money penalty of up to $50,000 may be assessed for each child labor violation that causes the death or serious injury of any minor employee, and such assessments may be doubled, up to $100,000, when the violations are determined to be willful or repeated. The law also prohibits discriminating against or discharging workers who file a complaint or participate in any proceeding under the Act.

**ADDITIONAL INFORMATION**
- Certain occupations and establishments are exempt from the minimum wage and/or overtime pay provisions.
- Special provisions apply to workers in American Samoa and the Commonwealth of the Northern Mariana Islands.
- Some state laws provide greater employee protections; employers must comply with both.
- The law requires employers to display this poster where employees can readily see it.
- Employees under 20 years of age may be paid $4.25 per hour during their first 90 consecutive calendar days of employment with an employer.
- Certain full-time students, student learners, apprentices, and workers with disabilities may be paid less than the minimum wage under special certificates issued by the Department of Labor.



For additional information:
# 1-866-4-USWAGE
(1-866-487-9243)   TTY: 1-877-889-5627
# WWW.WAGEHOUR.DOL.GOV

≋WHD
U.S. Wage and Hour Division

U.S. Department of Labor  |  Wage and Hour Division

WHD Publication 1088 (Revised July 2009)

APPENDIX 3

# UNIFORM CODE

## UNIFORM AND EQUIPMENT STANDARDS

**PURPOSE:** To insure that all Urban Parks Service personnel are in full uniform and prepared.

**PROCEDURES:** All Urban Parks Service personnel are required to be in full uniform during their entire tour. This regulation requires that all personnel remain in full uniform during their meal hour. The uniform of the day may change only with the approval of Supervisors, Directors or the Chief of Urban Parks Service.

All employees must be in full uniform (including hat) at the start of ~~his/her~~ their scheduled tour of duty.

All employees must remain in full uniform until the end of their scheduled tour of duty.

All employees are subject to disciplinary action if not in full uniform during ~~his/her~~ their scheduled tour of duty.

It is the Supervisor's responsibility, if the situation warrants, to hold a Supervisor's Conference with ~~the~~ an employee(s) who ~~are~~ is out of uniform during ~~their~~ his/her scheduled tour of duty.

All U.P.S. personnel must be in full uniform prior to signing in for the day.

In order to pass daily inspections, all U.P.S. personnel are required to meet the following dress standards:

**UNIFORM PANTS:** Must be regulation green pants, clean and pressed with a crease. Mounted must wear the regulation green with yellow stripes along the side. Rear pockets are to be kept closed.

Case 15-315, Document 24, 05/07/2015, 1504493, Page218 of 305

A-213

 DPR 1-10 · OPERATIONS MANUAL

## URBAN PARK RANGER

**PANTS:** Certified regulation olive drab pants with black stripe are to be worn. During the summer months cotton pants are permitted at the discretion of the Borough Director. They should be clean and pressed with a crease. No pleats or cuffs. Rear trouser pockets are to be kept closed. Short regulation olive drab pants may be worn June 15–September 15.

**SHIRT:** Borough Directors (and Supervisors, during citywide special events) will wear the short sleeved or long sleeved white regulation shirt. Rangers' shirts are gray. Shirt sleeves may not be rolled up. Short sleeved shirts are to be worn with one button open at the neck. All shirts must be clean and pressed. T-shirts should not be visible at the neck or sleeve. Supervisors normally wear gray shirts.

**PATCH:** A City of New York/Urban Park Ranger patch must be sewn on all shirts ¾ of an inch below the shoulder seam on the left sleeve. Sergeant stripes should be worn on both sleeves of the shirt and jacket.

**TIE:** A black clip-on tie must be worn when wearing a long sleeved shirt or sweater. A regulation tie clasp must be worn with the tie.

**SHIELD:** The City of New York/Urban Park Ranger shield, issued by the Department, will be placed on a leather backing and pinned through the perforated holes located above the left pocket of the uniform shirt.

**NAMEPLATE:** Rangers will wear a silver nameplate with black block lettering; supervisors and directors will wear a gold nameplate. The nameplate will be worn on the left pocket, under the badge and leather backing. The nameplate should read as follows: first initial, followed by a period, followed by a full last name. In the case of supervisors or borough directors, the title should be placed on the second line below the name. All lettering should be uppercase.

**INSIGNIA:** Leaf pins, sergeant pins, lieutenant bars or 'captains' bars on each side of the uniform shirt collar.

**JACKET:** The jacket, issued by the Department, will be "Ike" style in olive drab, with an elasticized waist. When wearing an outer garment, patches, shield and nameplate are to be placed in the same position as on the uniform shirt. When wearing a raincoat only the badge/nameplate will be placed on the outside.

**HAT:** "Smokey the Bear" style hats must be worn when outdoors. They are to be worn with the brim parallel to the ground. The chin strap should be adjusted so that the buckle will rest on the back of the hat. A change from winter to summer uniform hat will occur June 15/September 15.

**SHOES:** Black leather tie shoes or boots will be worn. They must be clean, shined, in good condition, and without stitching or design on the top. Black shoelaces are to be worn. Patent leather shoes are not acceptable.

**SOCKS:** Black socks are to be worn.

**BELT:** A Sam Brown leather belt will be worn on the uniform pants. The belt and the buckle will be plain (without design).

**RAIN GEAR:** A uniform raincoat and plastic hat cover will be worn. Black rubbers are acceptable.

**POUCH:** The green pouch should be worn in the left hip, along with memo book and flashlight.

**RADIO:** Radios should be worn on the right hip.

**MEDALS/RIBBONS:** Should be worn on the uniform shirt or jacket, ¼ inch above and centered over the badge. The use of black leather backing for ribbons is also authorized. Only medals or ribbons awarded by the Department may be worn on the uniform.

4

D015198

Case 15-315, Document 24, 05/07/2015, 1504493, Page219 of 305

A-214



**SUNGLASSES:** Black rimmed sunglasses may be worn when driving but must be removed whenever addressing the public, except if they are prescription lenses. They should never be hung from epaulet or shirt pocket.

**GLOVES:** Black leather gloves are regulation.

**SWEATER:** Black regulation "commando style" sweater may be worn under winter uniform. Sweaters may never be the external garment.

**BIKE PATROL:** On bike patrol, a helmet must be worn.

**PARKLANDS COVERALLS:** Coveralls may be worn only for planting programs.

**STREET CLOTHES:** At the discretion of the Director, street clothes may be worn for tasks that involve becoming wet or dirty (i.e. vehicle washing).

**HAIR:** Hair must be tapered to the general shape of head, not reaching collar. Sideburns must be kept closely trimmed and not extending below the bottom of the ear lobe. Mustaches must be neatly trimmed, not extending beyond, nor drooping below the corners of the mouth. No beards or goatees will be permitted.

**EARRINGS:** No earrings or other adornments should be worn by male or female officers while performing duties.

**TURTLE NECK:** A Parks issued turtle neck sweater with "Parks" embossed on the collar can be worn as an internal garment under the long sleeve shirt with the top button left undone during the winter months.

**EQUIPMENT:**
* Pen holder
* Mace and holder
* Flashlight and holder
* Working wristwatch
* Black utility belt with:
    memo book

Case 1:12-cv-04914-SAS-MHD    Document 155-8    Filed 05/16/14    Page 96 of 108

Case 1:12-cv-04914-AJN-MHD    Document 147-5    Filed 04/03/14    Page 5 of 53

 DPR 1-20 · OPERATIONS MANUAL

## PARKS ENFORCEMENT PATROL OFFICER

**PANTS:** Certified regulation olive drab pants with black stripe are to be worn. They should be clean and pressed with a crease. Rear trouser pockets are to be kept closed.

**SHIRT:** Captains, lieutenants and sergeant will wear the short sleeved or long sleeved green regulation shirts, except for special events when supervisors must wear white shirts. Shirt sleeves may not be rolled up. Short sleeved shirts are to be worn with one button open at the neck. All shirts must be clean and pressed. T-shirts should not be visible at the neck or sleeve.

**PATCH:** NYC P.E.P. patches should be worn on both sleeves; 1½ inches below the left shoulder seam. Sergeant stripes should be worn on both sleeves of shirt and jacket.

**TIE:** A black clip-on tie must be worn when wearing a long sleeved shirt or sweater. A regulation tie clasp must be worn with the tie.

**SHIELD:** The City of New York/Park Enforcement shield, issued by the Department, will be placed on a leather backing and pinned through the perforated holes located above the left pocket of the uniform shirt.

**NAMEPLATE:** Officers will wear a silver nameplate with black block lettering; supervisors and captains will wear a gold nameplate. The nameplate will be worn on the left pocket, under the badge and leather backing. The nameplate should read as follows: first initial, followed by a period, followed by a full last name. All lettering should be uppercase.

**INSIGNIA:** Leaf pins, sergeant pins, lieutenant bars or captains' bars on each side of the uniform shirt collar. Division pins may also be worn on uniform shirt collar but must first be approved by the Chief and/or Inspector.

**JACKET:** The jacket, issued by the Department, will be "Ike" style in olive drab, with an elasticized waist. When wearing an outer garment, patches, shield and nameplate are to be placed in the same position as on the uniform shirt. When wearing a raincoat only the badge/nameplate will be placed on the outside.

**HAT:** Winter green sheriff style felt hats must be worn when outdoors. They are to be worn with the brim parallel to the ground. The chin strap should be adjusted so that the buckle will rest on the back of the hat.

**SHOES:** Black leather tie shoes or boots will be worn. They must be clean, shined, in good condition, and without stitching or design on the top. Black shoelaces are to be worn. Patent leather shoes are not acceptable.

**SOCKS:** Black socks are to be worn.

**BELT:** A 1½ inch black belt will be worn on the uniform pants. The belt and the buckle will be plain (without design).

**RAIN GEAR:** A uniform raincoat and plastic hat cover will be worn. Black rubbers are acceptable.

**EQUIPMENT:**
- One pair of Smith & Wesson handcuffs with case and key
- Pen holder (black, double, with 2 black pens)
- Flashlight and holder
- Whistle and whistle holder
- Working wristwatch
- Mace and holder
- PR-24 Baton and holder
- Black utility belt with:
  - memo book
  - summons book
  - 1 book, CB summonses
  - 1 book, universal summonses
  - Summons Code cards

6

D015200

PART I: GENERAL DUTIES • DPR 1-20 

Utility Belt must be centered. Radios should be worn on the right hip, strapped and secure at all times. Pen holder will be placed just left of the radio. Summons pouch will be worn on the left hip. Handcuffs will be worn at center back, strapped in case. Flash light will be placed between handcuffs and summons holder. Mace and baton placed on belt depending on person's handedness. Keys, watches, pagers, etc. are not to be attached to the utility belt.

**MEDALS/RIBBONS:** Should be worn on the uniform shirt or jacket, ¼ inch above and centered over the badge. The use of black leather backing for ribbons is also authorized. Only medals or ribbons awarded by the Department may be worn on the uniform; except an American Flag Bar.

**SUNGLASSES:** Black rimmed sunglasses may be worn when driving but must be removed whenever addressing the public, except if they are prescription lenses. They should never be hung from epaulet or shirt pocket.

**GLOVES:** Black leather gloves are regulation.

**SWEATER:** Black regulation "commando style" sweater may be worn under winter uniform. Sweaters may never be the external garment.

**BIKE PATROL:** On bike patrol, a helmet must be worn.

**PAGER:** Pagers can be worn by captains, lieutenants, sergeants and S.O.D. officers on the uniform belts.

**STREET CLOTHES:** At the discretion of the Inspector, street clothes may be worn for tasks that involve becoming wet or dirty (i.e. vehicle washing).

**HAIR:** Hair must be tapered to the general shape of head, not reaching collar. Sideburns must be kept closely trimmed, and not extend below the bottom of the ear lobe. Mustaches must be neatly trimmed, not extending beyond, nor drooping below the corners of the mouth. No beards or goatees will be permitted. Hair must be worn up in a bun above shirt collar and firmly under hat. Not visible outside of hat.

**EARRINGS:** No earrings or other adornments should be worn by male or female officers while performing duties.

**TURTLE NECK:** A Parks issued turtle neck sweater with "Parks" embossed on the collar can be worn as an internal garment under the long sleeve shirt with the top button left undone during the winter months.

**VESTS:** Vests must be worn at all times when in the field.

**UNIFORMS:** Uniforms will be issued for bicycle, mounted, and vendor patrols.

 DPR 1-70 · OPERATIONS MANUAL

## PERSONAL APPEARANCE

1. Remain in proper uniform at all times.
2. Be clean and neat.
3. Keep uniform clean, well pressed and in good repair.
4. Keep uniform securely buttoned.
5. Wear hat squarely on head.
6. Prevent non-uniform articles from showing.
7. Have hair tapered to general shape of head.
8. Keep sideburns trimmed and not extending below bottom of ear lobe.
9. Have mustache neatly trimmed, not extending past nor drooping past corner of mouth.
10. Do not grow beards, goatees, long hair except when required due to a medical problem and with written approval from a doctor.

D015202

Case 15-315, Document 24, 05/07/2015, 1504493, Page223 of 305

**A-218**

PART I: GENERAL DUTIES • DPR I-610 

## INSPECTION OF U.P.S. PERSONNEL
### DAILY UNIFORM INSPECTION

**PURPOSE:** To clarify the procedure for daily uniform inspections.

**PROCEDURE:**

*Sergeant*
1. Inspect uniforms of all employees every day at muster, ensuring that all employees are in full uniform.
2. If employee is not in full uniform, take appropriate disciplinary action.

*Directors*
1. Take appropriate disciplinary action against Supervisors who allow employees under their supervision to be out of uniform during a tour of duty.
2. Take appropriate disciplinary action against all Supervisors who are not in full uniform during their scheduled tour of duty.

## UNANNOUNCED UNIFORM INSPECTION

**PURPOSE:** To clarify the procedure for unannounced uniform inspections.

**PROCEDURE:** Chief of Urban Parks Service, Director of Parks Enforcement Patrol and Borough Captains:
1. Make unannounced uniform inspections in the morning before employees sign in.
2. At inspection, ensure that all employees, supervisors included, are in full uniform at the start of their tour of duty. Full uniform includes hats, Special Patrolman and Parks Department I.D. Cards and a valid N.Y.S. driver's license.
3. Direct Supervisors to take appropriate disciplinary action against all employees who are not in full uniform at the start of the tour of duty.
4. Take disciplinary action against Supervisors who allow employees under their supervision to be out of uniform at the start of the tour of duty.

5. Take appropriate disciplinary action against all Supervisors who are not in full uniform at the start of their tour of duty.

## RETURNING OF UNIFORM EQUIPMENT

**PURPOSE:** To keep accurate inventory of all uniform parts returned by U.P.S. personnel.

**PROCEDURE:** All uniform parts must be returned to the Divisional Operations Coordinator prior to releasing the officer's last paycheck.

A signed receipt (Supervisor's signature) of uniform parts received from the officer must be prepared in duplicate. One copy should be given to the Officer and the other forwarded to the Operations Coordinator with all uniform parts returned.

*Supervisor*
Telephone Operations Coordinator prior to resignation or termination to insure all uniform parts issued are returned.

*Operations Coordinator*
Gives Supervisor a listing of all uniform parts issued to the Officer.

*Officer*
Upon resignation or termination, all personnel must return their uniform parts as follows:
1. Pants, shirts and jackets must be cleaned and pressed. The size of the clothing articles must be indicated and affixed (staple a piece of paper to the clothing article).
2. All clothing articles must be on hangers and covered with plastic.
3. Badges and all I.D. cards must be contained in an envelope with the Officer's name indicated.

0014295

APPENDIX 4

**Sergeant's Daily Checklist**

**The following is a listing of the duties and responsibilities of all Park Enforcement Patrol Sergeants on a daily basis. Please use this list as a daily reminder of your responsibilities and check off as each task is completed:**

1- <u>Arrive at your work location ½ hour before your officers reporting time. Get into your prescribed uniform for the day.</u>

2- <u>During this time prepare for the day by:</u>
   Checking the red command logbook for any information, updates, events, announcements, vehicle issues, personnel issues, court appearances, etc.
   Check on the status of the vehicles your tour will be utilizing. Make sure they are in good working order/clean inside and out, any new damages observed, etc.
   Make sure all radios are charged and in good working order
   Check to make sure that you have the items you will need for the day such as ice rescue equipment, beach items such as umbrellas, sunscreen, bullhorns etc.
   Call Central Communications to see if you have any sick, EPB, or late calls
   Check bi-weekly schedule for staffing info/changes
   Prepare daily deployment sheet

3- <u>At the muster:</u>
   Acknowledge staff with greeting- good morning/good afternoon
   Conduct uniform inspections (Use daily uniform inspection sheet)
   Note deficiencies and bring those immediately to the attention of the officer
   Check driver's licenses of those that will be operating vehicles.
   * Ensure that all officers are wearing their department issued bullet proof vests
   * Ensure that all officers have a working tape recorder
   Check to make sure employees have their Parks issued identification cards
   * Ensure that all officers have an adequate supply of summonses on their person
   * Check and sign memo books
   Give out daily assignments in a clear manner
   Give specific instructions as to what locations you want covered, actions to be taken, information to be obtained, reports to be submitted, etc.
   Ask if there are any questions, concerns, comments, ideas, etc.

4- <u>Following the muster:</u>
   Fax deployment sheet to Central Communications and check to see that they received it.
   Check units in the field. (At this point you can again check memo books to see that they are updated or check memo books of those that were not at your muster.
   Check to see how the officers are doing, discuss deployment, get status reports, etc.
   Check trip tickets as well to se if they are updated, accurate, etc.

Constantly monitor radio transmissions

Respond to incidents/calls for assistance, etc.

If arrest made, respond to the precinct to assist, obtain info for reports, obtain info for Central, etc.

If employee injured/sick, respond to hospital to obtain info, contact Central, etc.

Continue to follow-up and monitor staff.

5- **At the end of tour:**

Check with staff on how their day went. See if any problems/complaints/issues.

Collect all summonses issued and check them for accuracy. All Sgts. should initial all summonses before they are submitted to 104th street/or turned into the appropriate precinct. In cases of criminal court summonses and movers, a copy should be made after it is checked and submitted to 104th street.

In cases where errors or omissions are made on any summons the issue should be brought to the attention of the issuing officer as soon as possible.

Collect and check all trip tickets. Look to make sure they are complete on both the front and back. Check for mileage/damage/parks covered, etc and make sure they are accurate. Sgt. should sign all trip tickets.

Check on the condition of the returning vehicles. Check for any new damage/cleanliness, etc.

Make sure all reports are completed and submitted including 61 reports/accident reports/ property damage/vandalism reports/ workman's compensation/ etc.

You can again check and sign memo books to see if they are completed properly and signed out for the end of their tour.

Make sure all equipment issued is returned and signed back in.

Make sure your staff is aware of any changes to their bi-weekly schedule, tour assignments, upcoming events, court appearances, new directives, etc.

Make final entries into command log book indicating any issues that should be brought to the attention of the next tour/ other Sgts/Command Captain.

Collect all timecards and make sure staff has signed in and off duty for the day.

6) **Thank staff for their work and wish them a good day, night, etc.**



### Supervisor's Daily Checklist

| | Responsibilities | | Comments |
|---|---|---|---|
| **Pre-Tour** | Checked Logbook | | |
| | Checked Vehicles | | |
| | Checked Radios | | |
| | Equipment needed | | |
| | Attendance | | |
| | Bi-Weekly | | |
| | Deployment | | |
| | | | |
| **Muster** | Uniform Inspection | | |
| | Daily Assignment | | |
| | Sign Memo books | | |
| | | | |
| **Post-Muster** | Faxed Deployment | | |
| | Officer Field Check | | |
| | | | |
| **End of Tour** | Review Tour | | |
| | C/C Summons | | |
| | C/C Trip Tickets | | |
| | Checked Vehicles | | |
| | Checked Timecards | | |
| | Any Issues | | |

A-223

# EXHIBIT 75

A-224

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HENRY PEREZ, et al.,

|                 | Plaintiffs, | ECF CASE |

-versus-                            No. 12 Civ. 4914 (AJN) (MHD)

THE CITY OF NEW YORK, et al.,

|                 | Defendants. | DECLARATION OF<br>DOMINGO SANCHEZ |

------------------------------------------------------------x

DOMINGO SANCHEZ hereby declares under penalty of perjury that the following statements are true and correct:

1.     I am a plaintiff in the above-captioned lawsuit. I make this declaration based on my own personal knowledge.

2.     I have been employed by the New York City Department of Parks and Recreation ("Parks Department") continuously since 1999. Throughout my employment with the Parks Department I have held the titles of Urban Park Ranger ("UPR") and Associate Urban Park Ranger ("AUPR"). I am currently employed as an AUPR.

3.     During my employment as a UPR and an AUPR, I worked out of numerous "commands" including Central Park (North Meadow), Battery Park City, Hudson River Park, Flushing Meadow Park, Webster Ave. (Bronx), Rockaway Beach, and Staten Island.

4.     No notice from the United States Department of Labor regarding my rights as an employee under the Fair Labor Standards Act ("FLSA") was posted at any of my commands or at any work location where I worked during my tour.

5.     I did not know that I had a right to overtime under the FLSA until I became involved with this lawsuit.

13728.docx

6.    While employed as an AUPR, I have routinely worked before and after my scheduled tour in order to complete all of the tasks required of my job.

7.    Because Parks Department policy requires me to be in uniform at the start of my tour, but prohibits me from traveling to work in uniform, on a daily basis I have to report to my command in advance of my tour to get dressed into uniform.

8.    In advance of my tour I also have to put on my including my utility belt, handcuffs, flashlight, mace, baton, gloves, pens, memo book, radio, and tape recorder. In addition to physically putting on the belt, I have to test the equipment on the belt and get it ready for my work day. Part of this involves making sure all of the items on my utility belt are functional (checking the handcuffs, the battery on the flashlight, shaking the mace, etc.). I also have to obtain my radio battery which is kept in a separate room from my locker, queue my tape recorder to the right place and record a new heading with the date, time, my assignment for the day, weather, partner and vehicle number, and enter headings into my memo book. Throughout my career as an AUPR, I have spent approximately 10 minutes each day before and after my tour putting on, taking off, preparing, testing, and storing my equipment.

9.    As an AUPR, I have to conduct muster for all employees under my supervision including, depending on the command, UPRs, City Seasonal Aids ("CSA"), and Job Training Participants ("JTPs"). Muster is conducted at the start of the UPRs', CSAs', JTPs' tour.

10.    In the summer of 2013 I worked as an AUPR at Rockaway Beach and supervised CSAs whose tours started at the same time as mine. In order to have the deployment plan ready at the start of the CSAs' tour, I had to prepare the deployment in advance of my scheduled tour.

11.    At each command where I worked as an AUPR, Parks Department managers have been aware that I routinely work before and after my scheduled tour. Captain Falcone, my

13728.docx

supervisor at North Meadow, specifically instructed me to arrive at the command at least thirty minutes in advance of my tour start time to get into uniform, prepare the deployment, and complete other tasks before the start of my tour. Captain Falcone was regularly present at the command and personally observed me working before and after my scheduled tour on a regular basis. At the North Meadow command, Captain McCants also regularly observed me working before and after my scheduled tour.

12.    Captain Falcone and Captain McCants reviewed and approved my time cards/City Time entries and knew that I generally did not record the time I spent working before and after my tour. Various Parks Department managers, including Deputy Inspector Rodriquez, Commission Dockett, and Inspector Reeves, Captain Falcone, and Captain McCants, have told me that the Parks Department would not compensate me for the time I spent working before and after my scheduled tour on a regular basis unless it was for a special detail assignment or another specific situation for which overtime was already approved (or overtime that was routinely approved, like overtime associated with processing an arrest) by the Parks Department. A special detail assignment is an assignment away from our regular command that is designed to address a particular concern or ongoing violation such as ATVs on the beach, illegal dumping, or vandalism. AUPRs also work away from our regular command for special events such as the NYC marathon, parades, etc. For both special detail assignments and special events, the assignments are made in advance and overtime is preapproved.

13.    Since I knew that I would not be paid for the time spent working before and after my tour, I generally did not record this time on my time card or in City Time. However, it would not be difficult to record the extra working time that I regularly spend working before and after my scheduled tour. With City Time, I would simply record the extra time I spend working

13728.docx

A-227

before and after my tour and indicate the work performed during that time to request

compensation for that additional time.


Dated:        New York, New York
              May 14 , 2014

                                          DOMINGO SANCHEZ

4

# EXHIBIT 84

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HENRY PEREZ, et al.,

                            **Plaintiffs,**                    ECF CASE

    -versus-                                 No. 12 Civ. 4914 (AJN) (MHD)

THE CITY OF NEW YORK, et al.,

                                       **DECLARATION OF**
             **Defendants.**           **RALPH BASELICE**
-----------------------------------------------------------x

      **RALPLH BASELICE** hereby declares under penalty of perjury that the following statements are true and correct:

      1.      I am a named plaintiff in the above-captioned lawsuit. I make this declaration based on my own personal knowledge.

      2.      I am employed by the New York City Department of Parks and Recreation ("Parks Department") in the title of Urban Park Ranger ("UPR"). I have held the UPR title at various times during my employment with the Parks Department, most recently from November of 2013. I have also served as an AUPR throughout my career, most recently from approximately 2011-2013. I have worked for the Parks Department since approximately 2005.

      3.      During my employment as a UPR and an AUPR, I worked out of a number of commands in Queens including Shea Stadium, Rockaway Beach, and Flushing Meadow Corona Park. I also worked at Brooklyn command in Prospect Park.

      4.      AUPRs work five days per week, 8 ½ hours a day, with a thirty minute unpaid meal break.

      5.      The vast majority of the tasks performed by AUPRs and UPRs are the same. While out on patrol (which constitutes most of the tour time), AUPRs and UPRs perform the

1

same tasks including enforcing Parks Department rules and regulations, issuing summonses, assisting the public, and making arrests.

6.      I did not know that I had a right to overtime compensation under the FLSA until I became involved in this lawsuit.

7.      Throughout my career with the Parks Department no notice from the United States Department of Labor or any other notice regarding my rights as an employee under the Fair Labor Standards Act ("FLSA") was posted at any command or at any site where I worked during my tour.

8.      Being in full uniform during the tour is a very important part of the work of an AUPR. The Parks Department often says that our job is to be a "highly visible uniformed presence."  The uniform makes us visible to members of the public who may need to seek out our assistance.  The uniform also lets the public know that we are authorized to enforce Parks Department rules and regulations, and to make arrest and issue summonses.

9.      Captain Calderon was my Captain for at least four of the years I worked as an AUPR in Queens.  During that time, Captain Calderon was aware that I frequently changed out of uniform prior to the end of my tour.  He was present at the command and was aware that I took off my uniform and signed out after I was in my civilian clothes. Captain Calderon approved my time cards and knew that I was paid for the time spent changing out of my uniform.

10.      Captain Calderon also knew that I occasionally changed into my uniform while I was on the clock.  This happened when I was late arriving for my tour (meaning when I arrived after my tour started or less than five minutes before my tour started).  I would inform Captain Calderon that I was late and I would request comp time to cover the period of time that I was

2

late.  Captain Calderon would generally approve my comp time request so that I was paid from the start of my tour and knew that I used part of this time to get into uniform.

Dated:        New York, New York
              May 13 , 2014

                                        RALPH BASELICE

13712.docx

A-232

# EXHIBIT 86

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
HENRY PEREZ, et al.,

|  |  |
|---|---|
| **Plaintiffs,** | **ECF CASE** |
| -versus- | **No. 12 Civ. 4914 (AJN) (MHD)** |
| THE CITY OF NEW YORK, et al., | |
| **Defendants.** | **DECLARATION OF**<br>**ROBIN WICKERT** |

-------------------------------------------------------x

**ROBIN WICKERT** hereby declares under penalty of perjury that the following

statements are true and correct:

1.       I am a plaintiff in the above-captioned lawsuit.  I make this declaration based on

my own personal knowledge.

2.       I am employed by the New York City Department of Parks and Recreation

("Parks Department") in the title of Associate Urban Park Ranger ("AUPR").  I have held the

AUPR title continuously since approximately 1992.

3.       Prior to 1992, I worked for the Parks Department as an Urban Park Ranger

("UPR"), a title I held since approximately 1989.

4.       During my employment as a UPR and an AUPR, I worked at a number of

"commands" including at Claremont Stables/Manhattan Mounted and the Zoo Garage in Central

Park , Flushing Meadow Corona Park (Queens PEP), Silver Lake Farms (Staten Island

Mounted), Staten Island Zoo, Kensington Stables (Brooklyn Mounted).

5.       Throughout my career with the Parks Department no notice was posted from the

United States Department of Labor regarding my rights as an employee under the Fair Labor

1

Standards Act ("FLSA") at any of the commands where I worked or at any place where I worked during my tours.

6.      I did not know that I had a right to overtime under the FLSA until I became involved with this lawsuit.

7.      It is easy to record in City Time or on a time card the time I spend every day performing work duties before and after my tour.  I can simply submit a request for overtime (through City Time or on time cards) and identify the reasons for the request such as preparing the deployment, preparing my equipment, checking emails, etc.

8.      Wearing a uniform is a very important part of my job as an AUPR.  Without the uniform, the public would not know that AUPRs are law enforcement employees of the City of New York and authorized to issue summonses, make arrests, and enforce Parks Department regulations.

9.      If the public did not recognize our authority as law enforcement personnel, we would be unable to do our jobs and face increased risks on the job.  Our uniforms also allow the public to seek us out when they are in need of assistance.

10.     In the mounted unit, personnel do not immediately get into uniform at the start of their tour because we have barn and horse duties and would make our uniforms dirty.  As a result, I change into uniform after my scheduled tour has started and while on the clock.

11.     Deputy Inspector Rodriquez is aware that mounted personnel, including AUPRs, frequently change into uniform while on the clock.  It is widely understood in the Parks Department that mounted personnel are not expected to be in uniform at the start of their tour.

12.     I also almost always change out of my uniform prior to the end of my tour and while on the clock.  I change into my civilian clothes before washing down the horses and performing other barn tasks before the end of my tour.


Dated:        New York, New York
              May 12, 2014

                                        ROBIN WICKERT

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
------------------------------------------------------------------- x
PEREZ, HENRY
BASELICE, RALPH
BAYRON, JUAN                                        **PLAINTIFFS' RESPONSE TO**
CORDERO, JERRY                                      **DEFENDANT'S LOCAL RULE**
EASON, RONALD                                       **56.1 STATEMENT OF**
KOONCE, DONALD                                      **UNDISPUTED MATERIAL**
ORO, JOSEPH                                         **FACTS_____**
RIOS, RUEBEN JR.
ROSADO, PEDRO
WALTHER, DEREK G. on behalf of themselves and       12 Civ. 4914 (AJN)(MHD)
others similarly situated,

                                        Plaintiffs,

                    v.

THE CITY OF NEW YORK, MICHAEL R.
BLOOMBERG, AS MAYOR and THE NEW YORK
CITY DEPARTMENT OF PARKS & RECREATION,
ADRIAN BENEPE, AS COMMISSIONER
                                        Defendants.

------------------------------------------------------------------- x

        Pursuant to Local Rule 56.1 of the Local Civil Rules of this Court, Plaintiffs

submit their response to Defendants' 56.1 Statement of Material Facts as to which Defendants

say there is no genuine issue to be tried:

**A.      Background**

        1.      Plaintiff Henry Perez brings this suit on behalf of himself, and other

"similarly situated" Associate Urban Park Rangers ("AUPR") employed, or formerly employed,

by the New York City Department of Parks and Recreation ("DPR") who filed timely consents

to join this action, alleging violations of the Fair Labor Standards Act ("FLSA").  See Exhibit A,

Second Amended Complaint; Exhibit B, Docket in Perez, et al. v. City of New York et al.,

Docket No. 12 Civ. 4914 (AJN)(MHD)

1

       **PLAINTIFFS' RESPONSE:** Not disputed.

       2.     There are 10 named plaintiffs in this action and approximately 69 opt-in plaintiffs filed consents to join this action on various dates between June 27, 2012 and July 9, 2013.  See Exhibit B, Docket Sheet in <u>Perez, et al. v. City of New York et al.</u>, Docket No. 12 Civ. 4914 (AJN)(MHD).

       **PLAINTIFFS' RESPONSE:** Not disputed.

       3.     Plaintiffs filed their original Complaint in this action on June 22, 2012. <u>See</u> Exhibit B, Docket Sheet in <u>Perez, et al. v. City of New York et al.</u>, Docket No. 12 Civ. 4914 (AJN)(MHD).

       **PLAINTIFFS' RESPONSE:** Not disputed.

       4.     Plaintiffs subsequently amended their complaint on October 11, 2012 and April 1, 2013.  See Exhibit B, Docket Sheet in <u>Perez, et al. v. City of New York et al.</u>, Docket No. 12 Civ. 4914 (AJN)(MHD).

       **PLAINTIFFS' RESPONSE:** Not disputed.

       5.     During all relevant time periods, plaintiffs' work schedule was based on a 40 hour workweek.  See <u>Exhibit</u> C, Blue Collar Agreement; Exhibit QQQ, Predecessor Blue Collar Agreement.

       **PLAINTIFFS' RESPONSE:** Not disputed.

       6.     During all relevant time periods, pursuant to the collective bargaining agreements in place between plaintiffs' union and the City of New York, plaintiffs were entitled to overtime compensation for work performed in excess of their regularly scheduled tours.  <u>See</u>

Exhibit C, Blue Collar Agreement; Exhibit QQQ, Predecessor Blue Collar Agreement; Exhibit D, Citywide Agreement.

   **PLAINTIFFS' RESPONSE**: Not disputed.

   7. Plaintiffs were designated as exempt under the FLSA until March 31, 2013 when they were reclassified by DPR as covered employees under the FLSA.  See Exhibit PPP, Trimble Aff. at ¶ 21.

   **PLAINTIFFS' RESPONSE**: Not disputed.

**B.**  **AUPR Uniform and Equipment**

   8. AUPRs are required to wear a uniform during the performance of their job duties and responsibilities. See Exhibit E, Uniform and Equipment Specifications and Regulations.

   **PLAINTIFFS' RESPONSE**: Not disputed.

   9. The AUPR uniform consists of a uniform shirt, to which DPR emblems and badge are attached, trousers, socks, boots and a hat ("uniform").  See Exhibit E,  Uniform and Equipment Specifications and Regulations.

   **PLAINTIFFS' RESPONSE**: Disputed to the extent that Defendants suggest the uniform does not include specific uniform pants (*i.e.*, certified regulation olive drab pants with black stripe), seasonal items (such as uniform jacket, uniform sweater, uniform turtleneck, gloves, etc.), and the required equipment, including:  a helmet for bike patrol, a helmet, boots, spurs and/or half chaps for mounted patrol, bullet proof vest, utility belt and all equipment items attached to the utility belt (such as Smith & Wesson handcuffs with case and key, pen holder and

pens, flashlight and holder, whistle and whistle holder, mace and holder, baton and holder, wristwatch, memo book, radio, pager/blackberry/cell phone and summons book).

10.     The AUPR equipment consists of a bullet-proof vest and utility belt ("equipment").  See Exhibit E, Uniform and Equipment Specifications and Regulations.

**PLAINTIFFS' RESPONSE**: Disputed to the extent that Defendants suggest the uniform equipment does not include a helmet for bike patrol, a helmet, boots, spurs and/or half chaps for mounted patrol, bullet proof vest, utility belt and all equipment items attached to the utility belt (such as Smith & Wesson handcuffs with case and key, pen holder and pens, flashlight and holder, whistle and whistle holder, mace and holder, baton and holder, wristwatch, memo book, radio, pager/blackberry/cell phone, and summons book).

11.     Thirty-nine plaintiffs testified, either via deposition or interrogatory, regarding the amount of time it takes to put on each piece[1] of their uniform and equipment individually.  See Exhibit F, Harris Dep. at 48:2-5; 61:18-25; 62-69, 72:7-25; 73; 96:13-17, Exhibit G, Corrao Dep. at 55-56, Exhibit H, Pierre Dep. at 45:13-25; 46; 47; 48:1-11, 74:17-25; 75:1-19, Exhibit I, Rosado Dep. 65:11-24; 67:9-15; 68:15-25; 69; 70:1-9; 97:5-25; 98:1-10; 113:15-25; 114:1-17, Exhibit J, Small Dep. at 36-45, Exhibit K, Torres Dep. at 53-55; 57-59; 66, Exhibit L, Bayron Dep. at 28:15-20, 37:18-25; 38; 39:1-10, Exhibit M, Brooks Dep. at 37:18-25; 38-45; 46:1-8, Exhibit N, Lener Dep. at 70-77; Exhibit O, Oro Dep. at 53:13-25; 54; 55:1-16, Exhibit P, Cruz Dep. at 84-95; 96:1-14, Exhibit Q, Guzman Dep. at 41:25; 43:1-23, Exhibit R,

---

[1]     Not all plaintiffs who were deposed or who submitted interrogatory responses testified regarding the time it took them to put on each piece of their uniforms and/or equipment.  For example, some plaintiffs testified regarding the total amount of time it took to put on their uniforms and equipment as a whole, rather than how long it took them to put on each piece of uniform and equipment individually.

4

Seyfried Dep. at 39:9-25; 40; 41; 42:1-8, Exhibit S, Hawkins Dep. at 89-98, Exhibit T, Baselice

Dep. at 58-60; 64; 65; 80; 81-86; 104; 108; 136, Exhibit U, Walther Dep. at 109-113; 115;  118;

119, Exhibit V, Charles Dep. at 33-49, Exhibit W, Greenberg Dep. at 72-83, Exhibit X, Schulyer

Dep. at 54-66, Exhibit Y, Reed Dep. at 59:7-19; 82:1-12; 83; 84:1-8; Exhibit Z, Velilla

Interrogatory Responses, Exhibit AA, Vazquez Interrogatory Responses, Exhibit BB, Yancy

Interrogatory Responses, Exhibit CC, Ventura Interrogatory Responses, Exhibit DD, Tobel

Interrogatory Responses, Exhibit EE, Simon Interrogatory Responses, Exhibit FF, Sanchez

Interrogatory Responses, Exhibit GG, Raquel Ramos Interrogatory Responses, Exhibit HH,

Hilario Ramos Interrogatory Responses, Exhibit II, Ruthie Perez Interrogatory Responses,

Exhibit JJ, Lewis Interrogatory Responses, Exhibit KK Howell Interrogatory Responses, Exhibit

LL, Hendricks Interrogatory Responses, Exhibit MM, Henderson Interrogatory Responses,

Exhibit NN, Green Interrogatory Responses, Exhibit OO, Edusei Interrogatory Responses,

Exhibit PP, Charlemagne Interrogatory Responses, Exhibit QQ Mason Interrogatory Responses,

and Exhibit RR, Mercado Interrogatory Responses.

      **PLAINTIFFS' RESPONSE**:  Disputed.  Each of the thirty-nine plaintiffs did not

testify as to the amount of time it takes to put on each piece of their uniform; some only testified

about putting on certain items of their uniform and not others.  *See, e.g.*, Deposition of Corrao

(did not testify about putting on shirt, socks, hat); Deposition of Rosado (did not testify about

putting on badge, pins, pants, socks, boots, hat, bullet proof vest); Deposition of Torres (did not

testify about putting on badge, pins, socks, hat, bullet proof vest); Deposition of Harris (did not

testify about putting on hat, socks); Deposition of Brooks (did not testify about putting on hat);

Deposition of Seyfried (did not testify about putting on hat); Deposition of Hawkins (did not

testify about putting on socks); Deposition of Baselice (did not testify about putting on hat);

Deposition of Walther (did not testify about putting on hat, socks); Deposition of Greenberg (did not testify about putting on hat, socks); Deposition of Reed (did not testify about putting on badge, pins); Deposition of Vazquez (did not testify about putting on hat); Deposition of Yancy (did not testify about putting on badge, pins, socks); Deposition of Ventura (did not testify about putting on belt); Deposition of Tobel (did not testify about putting on badge, pins, pants, socks, vest); Deposition of Simon (did not testify about putting on socks); Deposition of Ramos R. (did not testify about putting on badge, pins, socks); Deposition of Ramos H. (did not testify about putting on badge, pins, hat); Deposition of Perez R. (did not testify about putting on badge, pins); Deposition of Howell (did not testify about putting on socks); Deposition of Hendricks (did not testify about putting on pants, socks, hat); Deposition of Green (did not testify about putting on badge, pins); Deposition of Edusei (did not testify about putting on badge, pins, hat); Deposition of Mason (did not testify about putting on shirt, badge, pins, pants, hat); Deposition of Mercado (did not testify about putting on badge, pins).

12.     The thirty-nine plaintiffs referenced in paragraph 11 testified that it takes the following number of minutes to put on their uniforms[2]: Exhibit F, Harris Dep. at 48:2-5; 61:18-25; 62-69, 72:7-25; 73; 96:13-17 (8 minutes), Exhibit G, Corrao Dep. at 55-56 (3 minutes), Exhibit H, Pierre Dep. at 45:13-25; 46; 47; 48:1-11, 74:17-25; 75:1-19 (11 minutes), Exhibit I, Rosado Dep. 65:11-24; 67:9-15; 68:15-25; 69; 70:1-9; 97:5-25; 98:1-10; 113:15-25; 114:1-17 (4 minutes), Exhibit J, Small Dep. at 36-45 (5 minutes), Exhibit K, Torres Dep. at 53-55; 57-59; 66 (7 minutes), Exhibit L, Bayron Dep. at 28:15-20, 37:18-25; 38; 39:1-10 (12

---

[2]     When plaintiffs testified as to a range of minutes, the longer period of time was construed as the period utilized for putting on both the uniform and equipment.  Also, if a plaintiff testified as to the time it took him or her to put on additional uniform items that are only utilized during particular seasons (i.e. sweaters and jackets), the time putting on such uniform items was excluded.

6

minutes), Exhibit M, Brooks Dep. at 37:18-25; 38-45; 46:1-8 (10.5 minutes), Exhibit N, Lener

Dep. at 70-77 (21 minutes); Exhibit O, Oro Dep. at 53:13-25; 54; 55:1-16 (15 minutes), Exhibit

P, Cruz Dep. at 84-95; 96:1-14 (12 minutes), Exhibit Q, Guzman Dep. at 41:25; 43:1-23 (21

minutes), Exhibit R, Seyfried Dep. at 39:9-25; 40; 41; 42:1-8 (7.5 minutes), Exhibit S, Hawkins

Dep. at 89-98 (16 minutes), Exhibit T, Baselice Dep. at 58-60; 64; 65; 80; 81-86; 104; 108; 136

(18.5 minutes), Exhibit U, Walther Dep. at 109-113; 115;  118; 119 (14.5 minutes), Exhibit V,

Charles Dep. at 33-49 (12 minutes), Exhibit W, Greenberg Dep. at 72-83 (13.5 minutes), Exhibit

X, Schulyer Dep. at 54-66 (18 minutes), Exhibit Y Reed Dep. at 59:7-19; 82:1-12; 83; 84:1-8 (16

minutes); Exhibit Z, Velilla Interrogatory Responses (26 minutes), Exhibit AA, Vazquez

Interrogatory Responses (9.5 minutes), Exhibit BB, Yancy Interrogatory Responses (5 minutes),

Exhibit CC, Ventura Interrogatory Responses (11.5 minutes), Exhibit DD, Tobel Interrogatory

Responses (11 minutes), Exhibit EE, Simon Interrogatory Responses (9 minutes), Exhibit FF,

Sanchez Interrogatory Responses (9 minutes), Exhibit GG, Raquel Ramos Interrogatory

Responses (11 minutes), Exhibit HH, Hilario Ramos Interrogatory Responses (8.75 minutes),

Exhibit II, Ruthie Perez Interrogatory Responses (11.5 minutes), Exhibit JJ, Lewis Interrogatory

Responses (30 minutes), Exhibit KK, Howell Interrogatory Responses (14.5 minutes), Exhibit

LL, Hendricks Interrogatory Responses (15 minutes), Exhibit MM, Henderson Interrogatory

Responses (3.25 minutes), Exhibit NN Green Interrogatory Responses (15 minutes), Exhibit OO,

Edusei Interrogatory Responses (8 minutes), Exhibit PP, Charlemagne Interrogatory Responses

(25.5 minutes), Exhibit QQ, Mason Interrogatory Responses (4 minutes), and Exhibit RR,

Mercado Interrogatory Responses (10.5 minutes).

**PLAINTIFFS' RESPONSE:** Disputed.  As detailed in Plaintiffs' response to paragraph

11, each of the thirty-nine plaintiffs did not testify as to the amount of time it takes to put on their

entire uniform; the majority of these thirty-nine only testified about putting on certain items of their uniform and not others. Further, there are disputes of fact about how long it takes each plaintiff to put on their entire uniform. *See, e.g.,* Exhibit 1, Deposition of Harris 48:2-5; 72:7-9 (testified that it takes approximately 15-20 minutes to put on his uniform, stated specifically that it takes longer than 8 minutes to get into uniform); Exhibit 2, Deposition of Corrao 37:9-10 (testified that it takes approximately 15 minutes to get into uniform); Exhibit 3, Deposition of Pierre, 46:19-25;47:1-25,48:1-11 (testified that it takes approximately 12-16 minutes to get into uniform); Exhibit 4, Deposition of Rosado, 65:11-24; 67:9-13 (testified that it takes approximately 10 minutes to get into uniform); Exhibit 5, Deposition of Small 37:12-14 (testified that it takes approximately 10-15 minutes to get into uniform); Exhibit 6, Deposition of Torres 52:24-25,53:1 (testified that it takes approximately 20-25 minutes to get into uniform); Exhibit 7, Deposition of Bayron 28:15-20 (testified that it takes approximately 12-15 minutes to get into uniform); Exhibit 8, Deposition of Lener 71:4-12 (testified that it could take up to 30 minutes to get into uniform); Exhibit 9, Deposition of Seyfried 42:9-11 (testified that it took approximately 12-15 minutes to get into uniform); Exhibit 10, Deposition of Charles 33:24-25; 34:1 (testified that it takes approximately 20 minutes to get into uniform); Exhibit 11, Deposition of Shulyar 54:23-25; 55:1-3 (testified it can take approximately 25 minutes to get into uniform); Exhibit 12, Deposition of Reed 59:7-19 (testified that it takes approximately 30-45 minutes to get into uniform); Exhibit 13, Vazquez Interrogatory Response No. 8 (stated it takes 5-15 minutes to get into uniform); Exhibit 14, Yancy Interrogatory Response No. 8 (stated it takes 5-7 minutes to get into uniform); Exhibit 15, Ventura Interrogatory Response No. 8 (stated it takes 10-15 minutes to get into uniform); Exhibit 16, Simon Interrogatory Response No. 8 (stated that it takes approximately 15 minutes to get into uniform); Exhibit 17, Sanchez Interrogatory Response No.

8 (stated that it takes approximately 17-20 minutes to get into uniform; Exhibit 18, Ramos R. Interrogatory Response No. 8 (stated that it takes approximately 20 minutes to get into uniform); Exhibit 19, Ramos H. Interrogatory Response No. 8 (stated it takes 8-12 minutes to get into uniform); Exhibit 20, Perez R. Interrogatory Response No. 8 (stated it takes 10-15 minutes to get into uniform); Exhibit 21, Howell Interrogatory Response No. 8 (stated that it takes approximately 20 minutes to get into uniform); Exhibit 22, Hendricks Interrogatory Response No. 8 (stated it takes 15-20 minutes to get into uniform; Exhibit 23, Green Interrogatory Response No. 8 (stated it takes 20-25 minutes to get into uniform; Exhibit 24, Edusei Interrogatory Response No. 8 (stated it takes 10-15 minutes to get into uniform); Exhibit 25, Mason Interrogatory Response No. 8 (stated it takes 5-13 minutes to get into uniform); Exhibit 26, Mercado Interrogatory Response No. 8 (stated it takes 10-15 minutes to get into uniform).

      13.     The thirty-nine plaintiffs referenced in paragraph 11 testified that it takes the following number of minutes to put on their equipment: Exhibit F, Harris Dep. at 48:2-5; 61:18-25; 62-69, 72:7-25; 73; 96:13-17 (3.5 minutes), Exhibit G, Corrao Dep. at 55-56 (6 minutes), Exhibit H, Pierre Dep. at 45:13-25; 46; 47; 48:1-11, 74:17-25; 75:1-19 (6 minutes), Exhibit I, Rosado Dep. 65:11-24; 67:9-15; 68:15-25; 69; 70:1-9; 97:5-25; 98:1-10; 113:15-25; 114:1-17 (2 minutes), Exhibit J, Small Dep. at 36-45 (6 minutes), Exhibit K, Torres Dep. at 53-55; 57-59; 66 (2.5 minutes), Exhibit L, Bayron Dep. at 28:15-20, 37:18-25; 38; 39:1-10 (7 minutes), Exhibit M, Brooks Dep. at 37:18-25; 38-45; 46:1-8 (4.5), Exhibit N, Lener Dep. at 70-77 (5 minutes); Exhibit O, Oro Dep. at 53:13-25; 54; 55:1-16 (20 minutes), Exhibit P, Cruz Dep. at 84-95; 96:1-14 (6.5 minutes), Exhibit Q, Guzman Dep. at 41:25; 43:1-23 (8 minutes), Exhibit R, Seyfried Dep. at 39:9-25; 40; 41; 42:1-8 (5.5 minutes), Exhibit S, Hawkins Dep. at 89-98 (11 minutes), Exhibit T, Baselice Dep. at 58-60; 64; 65; 80; 81-86; 104; 108; 136 (8 minutes),

Exhibit U, Walther Dep. at 109-113; 115;  118; 119 (7 minutes), Exhibit V, Charles Dep. at 33-49 (3.5 minutes), Exhibit W, Greenberg Dep. at 72-83 (10 minutes), Exhibit X, Schulyer Dep. at 54-66 (9 minutes), Exhibit Y, Reed Dep. at 59:7-19; 82:1-12; 83; 84:1-8 (6 minutes); Exhibit Z, Velilla Interrogatory Responses (10 minutes), Exhibit AA, Vazquez Interrogatory Responses (2 minutes), Exhibit BB, Yancy Interrogatory Responses (3 minutes), Exhibit CC, Ventura Interrogatory Responses (4 minutes), Exhibit DD, Tobel Interrogatory Responses (9 minutes), Exhibit EE, Simon Interrogatory Responses (2 minutes), Exhibit FF, Sanchez Interrogatory Responses (5.5 minutes), Exhibit GG, Raquel Ramos Interrogatory Responses (4 minutes), Exhibit HH, Hilario Ramos Interrogatory Responses (3 minutes), Exhibit II, Ruthie Perez Interrogatory Responses (4 minutes), Exhibit JJ, Lewis Interrogatory Responses (2.5 minutes), Exhibit KK, Howell Interrogatory Responses (6), Exhibit LL, Hendricks Interrogatory Responses (7 minutes), Exhibit MM, Henderson Interrogatory Responses (2 minutes), Exhibit NN, Green Interrogatory Responses (4 minutes), Exhibit OO, Edusei Interrogatory Responses (4 minutes), Exhibit PP, Charlemagne Interrogatory Responses (6.5 minutes), Exhibit QQ, Mason Interrogatory Responses (1.5 minutes),  and Exhibit RR, Mercado Interrogatory Responses (2 minutes).

**PLAINTIFFS' RESPONSE**:  Disputed.  Plaintiff T. Harris testified that it took 5-6 minutes to put on bullet proof vest and utility belt.  Exhibit 1, Deposition of Harris, 62:3-6; Plaintiff Rosado did not testify about how long it takes to put on his bullet proof vest; Plaintiff Torres did not testify about how long it takes to put on bullet proof vest; Plaintiff Ventura did not state how long it took to put on utility belt; Plaintiff Tobel did not testify about how long it took to put on bullet proof vest; Plaintiff Howell stated that it took approximately 7 minutes to put on

equipment, Exhibit 21, Howell Interrogatory Responses; Plaintiff Hendricks stated that it took approximately 3-5 minutes to put on equipment, Exhibit 22, Hendricks Interrogatory Responses.

These disputes are material.  Defendants typically only questioned Plaintiffs about the time expended on putting on equipment and not the time expended on preparing and testing equipment, which Plaintiffs were required to do by the start of virtually every shift.   For example, Defendants state that Plaintiff Lewis spent 2.5 minutes putting on her equipment. However, Plaintiff Lewis also stated that it took 10-15 minutes to get her equipment ready. Exhibit 27, Lewis Interrogatory Responses.  Plaintiff Reed stated that it took approximately 10 minutes every day to prepare, put on, take off and store the required equipment.  Exhibit 28, Declaration of Reed, ¶ 8 (preparing equipment includes making sure all items on utility belt were functioning properly, locating and inserting radio battery, recording a heading for tape recorder, entering heading in memo book); *See also* Exhibit 12, Deposition of Reed, 59:15-25.  Plaintiff Sanchez stated that it takes approximately 10 minutes each day to put on, take off, prepare, test and store equipment.  Exhibit 75, Declaration of Sanchez, ¶ 8.  Plaintiff Poelz-Giga also stated it takes approximately 7-8 minutes each day to put on and take off and test equipment.  Exhibit 74, Declaration of Poelz-Giga, ¶ 11.

14.    Captain Benne McCants testified that he "d[id]n't know of any rule" stating that an employee cannot wear his or her uniform to/from work. Exhibit SS, McCants Dep. at 17:20-25; 18:1-19.

**PLAINTIFFS' RESPONSE**:  Disputed.  Captain McCants' stated, "I don't know if there's any rules or regulations [prohibiting employees from commuting to and from work in their uniform] but we ask that they don't." Exhibit 29, McCants Deposition, 16:20-21.  By "we," McCants testified he meant, "Supervisors, I believe the division in general." Exhibit 29,

McCants Deposition, 16:23.  McCants also testified that he told his subordinates not to commute to work in uniform.  Exhibit 29, McCants Deposition, 16:24-25; 17:1-7.

       Record evidence shows that Defendants did, in fact, maintain a rule and/or policy that employees had to put on and take off uniforms on the employer's premises because:  (1) employees could not wear their uniforms while commuting to or from work and, (2) employees are required to be in uniform by the start of their tour and continuously until the end of their tour. At least 37 plaintiffs and 4 Captains testified that it was Parks' Department policy – conveyed to them in a variety of ways including at the training academy and/or by Captain McCants, Captain Brown, Inspector Reeves, and other superiors including those at "104th street" – that employees were not permitted to commute to or from work in uniform.  *See, e.g.*, Exhibit 4, Deposition of Rosado, 42:7-11 ("policy states that we're not allowed to commute in full uniform"); Exhibit 30, Deposition of Baselice, 69:10-22 ("Because we're told not to [travel to the command wearing the uniform]"); Exhibit 31, Deposition of Cordero, 54:4-18 (told not to commute in uniform at the Training Academy); Exhibit 32, Deposition of Koonce, 25:16-24, 26:1-2 (policy dictates employees are not to commute in uniform); Exhibit 33, Deposition of H. Perez, 75:10-77:12;76:6-10;77:13-25 (instructed at training Academy not to commute in uniform and to be in uniform at the start of the tour); Exhibit 34, Deposition of D. Walther, 103:20, 104:1, 105:22 (told not to arrive to work in uniform, instructed at the Academy to be in uniform before start of tour); Exhibit 35, Deposition of Eason, 74:12-23 (Parks' policy prohibits wearing uniform to and from work); Exhibit 36, Deposition of Poelz-Giga, 37:21-25, 88:19-22, 111:10-16 (training at the academy – both written in the manual and verbal training – specified that AUPRs were not allowed to be in uniform while off duty or travel to work in uniform), 68:2-14 (deponent witnessed Captain McCants reprimand seasonal parks employee for wearing uniform to work),

69:11-19 (training manual, Captain Brown, and Inspector Reeves instructed deponent at the Academy that employees were not allowed to commute to work in uniform); Exhibit 37, Deposition of Wickert, 28:24-25, 29:1-16, 30:2-8 (Parks' rule prohibits wear uniforms off duty; each of plaintiff's supervisors have instructed her not to wear uniform while off duty); Exhibit 8, Deposition of Lener, 54:7-15, 165:16-22 (instructed at Academy to not take public transportation while in uniform; instructed at Academy to be in uniform prior to tour starting); Exhibit 9, Deposition of Seyfried, 33:12-14, 34:20-25 (told at the Academy by Captain Brown not to wear uniform on public transportation or while off duty); Exhibit 38, Deposition of Guzman, 36:12-18, 37:6-7, 37:12-20, 38:17-20 (instructed at Academy to not wear uniform while off duty or while traveling to work, has to be in uniform at the start of the tour); Exhibit 39, Deposition of Hawkins, 68:23-25, 80:3-5 (not supposed to drive from home to work in uniform, had to be in uniform by start of tour); Exhibit 5, Deposition of Small, 54:2-7, 55:4-6, 55:12, 55:23-25 (instructed at Training Academy and by captains to leave uniform in the locker, not permitted to wear uniforms while traveling to and from work or otherwise off duty); Exhibit 40, Deposition of Cruz, 54:4-5, 67:1-13; 70-71:1-21 (have to be in uniform by the start of the tour; deponent instructed by Parks Department supervisors, including Deputy Inspector Rodriquez, not to be in uniform outside of work); Exhibit 2, Deposition of Corrao, 52:10-20 (trained at the Academy not permitted to wear uniform while traveling to work or otherwise off duty); Exhibit 41, Deposition of Deleon, 39:15-20, 40:2-6 (advised by supervisors and at the training academy not to wear the uniform while commuting); Exhibit 42, Deposition of Langston, 40:4-12 (informed by Inspector Reeves and trained at Academy not permitted to travel to work in uniform); Exhibit 3, Deposition of Pierre, 36:9-24, 37:3-24, 39:23-25, 40:1-16 (advised of rule during training at Academy and by supervisors that cannot travel to work in uniform and must be in uniform at the

13

start of the tour); Exhibit 43, Deposition of Knowles, 52:1-17, 53:8-15 (informed by supervisors not allowed to go to work in uniform; not allowed time after tour starts to get dressed, must be dressed and ready at start of tour); Exhibit 44, Deposition of Yu, 30:15-19; 31:9-14; 51:19-21 (instructed at Training Academy to be in uniform prior to the start of tour and not to commute in uniform); Exhibit 6, Deposition of Torres, 56:19-21; 77:20-24; 78:6-10 (instructed at Training Academy to leave uniform at work and to not wear uniform while off-duty); Exhibit 45, Deposition of Oro, 48:15-22; 49:17-18; 50:18-20; 51:10-14 (instructed throughout employment with Parks Department, including at Academy, not permitted to wear uniform while traveling to work; deponent testified that must change into uniform before start of tour); Exhibit 46, Deposition of Vidal, 28:18-24; 30:21-22; 36:19-22; 37:3-13, 21-25 (instructed at Academy by Captain Brown not permitted to wear uniform while commuting or otherwise not at work); Exhibit 47, Deposition of Sadler, 31:12-16 (at training instructed not to wear uniform while traveling to work); Exhibit 48, Deposition of Berdecia, 47:1-7 (instructed as a recruit not permitted to wear uniform while commuting); Exhibit 10, Deposition of Charles, 25:17-19; 29:1-4 (instructed not to wear uniform while off-duty, deponent testified that had to change into uniform before tour); Exhibit 49, Deposition of Brooks 62:7-25, 63:1-2 (instructed at Training Academy not permitted to wear uniform while commuting and required to change into uniform at command); Exhibit 50, Deposition of Fisher, 97:2-5; 99:6-14 (instructed at Training Academy to not wear uniform while commuting);   Exhibit 12, Deposition of Reed, 69:18-24; 70:2-8 (instructed at Training Academy and by Captain Prince to not wear uniform while commuting or anytime while off-duty); Exhibit 7, Deposition of Bayron, 26:22-25; 27:1-4 (instructed not to commute in uniform by Captain Greenfield and other managers, deponent was required to change into uniform in advance of tour); Exhibit 11, Deposition of Shulyar, 49:8-25; 50:16-19

(instructed at Academy to not wear uniform while off-duty, deponent had to be in uniform at start of tour); Exhibit 51, Deposition of Rios, 52:9-21 (instructed not to wear any part of uniform while commuting); Exhibit 6, Deposition of Torres, 77:20-24; 78:6-10 (instructed at the academy not to wear uniform while off-duty); Exhibit 1, Deposition of Harris, 29:16-17; 60:9-16 (must be in full uniform at start of tour; instructed at Academy not to wear uniform while off duty); Exhibit 52, Deposition of Galgano, 21:2-5 (told not to commute in uniform); Exhibit 53, Deposition of Ragoonanansingh, 27:9-10 (instructed not to wear uniform while commuting); Exhibit 54, Deposition of Greenberg, 61:8-21 (instructed at Academy not to wear uniform while traveling to and from work); Exhibit 55, Deposition of Captain Calderon, 16:18-23 (AUPRs must be in uniform at the start of their tour and are not allowed to commute in uniform); Exhibit 56, Deposition of Captain Greenfield, 29:17-25; 30:20-21 (Parks Department protocol prohibits employees from wearing uniform while off-duty, taught at the Training Academy); Exhibit 57, Affidavit of Captain Greenfield, ¶ 7 (Parks Department directive that AUPRs must be in full uniform  by the AUPR's tour start time); Exhibit 58, Affidavit of Captain Calderon, at ¶¶ 5, 6 (AUPRs are required to be in uniform at the start of their tour and are prohibited from commuting to and from work in uniform).  *See also* Exhibit 55, Deposition of Captain Calderon 16:18-24; Exhibit 59, Deposition of Captain Prince, 21:8-17 (Parks Department rule that AUPRs are not supposed to commute while in uniform); Exhibit 29, Deposition of Captain McCants 16:17-25, 17:1 (tells employees not commute to work in uniform).

At least 15 plaintiffs and 2 Captains also testified that AUPRs had to be in uniform at the start of their tour.  *See, e.g.*, testimony cited above by plaintiffs Walther, Lener, Guzman, Hawkins, Cruz, Pierre, Knowles, Yu, Oro, Charles, Brooks, Bayron, Shulyar, Harris,

Captain Calderon, Captain Greenfied.  The Parks Department Uniform Policy (*see* Defs' Ex. E) also requires AUPRs to be in uniform at the start of and during the entirety of an AUPR's tour.

15.     Captain McCants testified that AUPRs could wear their entire uniforms to work, perhaps with a jacket over it.  <u>See</u> Exhibit SS, McCants Dep. at 17:20-25; 18:1-19.

**PLAINTIFFS' RESPONSE**:  Disputed.  McCants did not testify that AUPRs are permitted to wear their entire uniform to work by the Parks' Department.  As set forth in plaintiffs' response to paragraph 14, Captain McCants testified that the Parks Department asks AUPRs not to commute in uniform.  When asked whether McCants knew of anyone in particular "that wears their entire uniform to work but perhaps wears a jacket or something over it?," Captain McCants responded "No."  Exhibit 29, Deposition of McCants, 18:11.  Captain McCants testified that he was aware "in general" that some employees may commute to work in their entire uniform "and maybe drape a sweater over it," but he was unable to name anyone who does so and did not claim personal knowledge of this alleged circumstance.  Exhibit 29, Deposition of McCants, 18:3-11.

16.     Captain McCants testified that he is not aware of any AUPR who was reprimanded or disciplined for wearing his/her uniform to/from work.  <u>See</u> Exhibit SS, McCants dep. at 18:20-22.

**PLAINTIFFS' RESPONSE**:  Not disputed.  However, Captain McCants also testified that he did not know of anyone in particular who wears their entire uniform to work.  Nor did he testify that he had actually observed any Plaintiff in the act of wearing the uniform before arriving at work or after departing from work.  Exhibit 29, Deposition of McCants, 18:3-11.

17.    Captain David Calderon testified that he is not aware of any AUPR being reprimanded or disciplined for wearing his/her uniform to/from work.  See Exhibit TT, Calderon Dep. at 19:11-16.

**PLAINTIFF'S RESPONSE:**  Not disputed.  However, Captain Calderon also testified that he was not aware of any AUPR commuting to work in uniform, so the absence of discipline lacks probative value.  Nor did he testify that he had actually observed any Plaintiff in the act of wearing the uniform before arriving for work or after departing from work.  Exhibit 55, Deposition of Calderon, 19:8-13.

18.    Captain Calderon testified that AUPRs are permitted to commute to/from work in their uniform pants and that wearing a jacket over their uniform shirt to commute is permitted.  See Exhibit TT, Calderon Dep. at 17:17-2.

**PLAINTIFFS' RESPONSE:**  Disputed.  The deposition testimony cited by Defendant contains no such testimony.  Captain Calderon testified that AUPRs are "not supposed to" commute in their uniform.  Exhibit 55, Deposition of Calderon, 16:23.  Calderon stated there was a Parks Department "guideline" prohibiting commuting in uniform.  Exhibit 55, Deposition of Calderon, 16:25.  In response to a question about whether AUPRs were allowed to commute in any part of the uniform, Calderon stated that he "guessed" if the AUPRs wore their pants it would be acceptable, and he "guessed" if they wore their jacket and covered their shirt that would be acceptable.  Exhibit 55, Deposition of Calderon, 18:1,15-17.  *See also* Plaintiffs' response to paragraph 14 identifying the testimony of 37 plaintiffs and 4 Captains, including Captain Calderon, who testified that AUPRs are prohibited from commuting to work in uniform.

17

19.     Captain Calderon testified that he commutes in his uniform pants. <u>See</u> Exhibit TT, Calderon Dep. at 18:24-25; 19:1-4.

**PLAINTIFFS' RESPONSE:**  Disputed.  Captain Calderon testified that he "might" have worn his uniform pants while commuting.  Exhibit 55, Deposition of Calderon, 19:2-4.

20.     Captain Tonya Prince testified that she is not aware of any AUPR who has been reprimanded or disciplined for wearing his/her uniform to/from work.  <u>See</u> Exhibit UU, Prince Dep. at 22:11-18.

**PLAINTIFFS' RESPONSE:**  Not disputed.  However, Captain Prince did not testify that she personally observed any AUPR wearing his/her uniform while traveling to or from home.

21.     Captain Prince testified that AUPRs routinely report to/from work in his/her uniform pants.  <u>See</u> Exhibit UU, Prince Dep. at 22:6-10.

**PLAINTIFFS' RESPONSE:**  Disputed.  Captain Prince did not testify that AUPRs "routinely" report to/from work in uniform pants.  Captain Prince provided no testimony regarding the frequency with which AUPRs commuted to work while wearing uniform pants.

22.     Captain Prince testified that there is an unspecified "operations order" which states that AUPRs are not permitted to commute to/from work in their uniform.  <u>See</u> Exhibit UU, Prince Dep. at 21:11-22.

**PLAINTIFFS' RESPONSE:**  Not disputed**.**

23.    Captain Prince was unable to l [sic] identify the "operations order" referred to in the above-paragraph and could not recall the last time she saw it.  See Exhibit UU, Prince Dep. at 21:11-22.

**PLAINTIFFS' RESPONSE:**  Disputed.  Captain Prince testified that she knew where she kept the operations order and she testified that the operations order has been in effect the entire time she has been employed as a Captain.  Exhibit 59, Deposition of Prince, 21:25; 22:1-5.

24.    Captain Andre Greenfield testified that AUPRs are permitted to commute to/from work in his/her uniform pants and that wearing jackets over his/her uniform shirts to commute is permitted.  See Exhibit VV, Greenfield Dep. at 29:14-25; 30:1-12.

**PLAINTIFFS' RESPONSE:**  Disputed.  Captain Greenfield did not testify that AUPRs are permitted to commute to/from work in uniform pants.  Captain Greenfield testified that Parks Department Training Academy teaches employees not to wear the uniform while off duty. Exhibit 56, Greenfield Dep., 29:17-25.

25.    Captain Greenfield testified that he commutes in his complete uniform but covers any DPR insignias while doing so.  See Exhibit VV, Greenfield Dep. at 29:14-25; 30:1-12.

**PLAINTIFFS' RESPONSE:**  Disputed.  The testimony cited by Defendants does not contain any testimony about covering insignias.  Moreover, Captain Greenfield's testimony is unclear.  He states that he commutes to work in his uniform pants and that "depending on the event" he is in full uniform.  Exhibit 56, Greenfield Dep., 31:5-12.

19

26.     Seven plaintiffs testified at their depositions that they commute to/from work in at least part of their uniforms.  See Exhibit WW, Ragoonanansigh Dep. at 26:24-25; 27:1-12 (commuted in uniform pants and boots); Exhibit XX, Berdecia Dep. at 47:14-16 (commuted in uniform pants and boots); Exhibit S, Hawkins Dep. at 79:25; 80; 81:1-14 (commuted in full uniform except for shirt on a number of occasions); Exhibit K, Torres Dep. at 53:14-15 (commuted in his uniform pants to/from work approximately one time per week); Exhibit F, Harris Dep. at 69:16-18 (commuted in uniform pants); Exhibit R, Seyfried Dep. at 53:24-15; 54:1-2 (commuted in full uniform).

**PLAINTIFFS' RESPONSE:**  Disputed.  Plaintiff Ragoonanansigh testified that she "maybe once in a while" commuted in her boots or her pants, and she did not testify about her commute home.  Exhibit 53, Deposition of Ragoonanansigh, 27:2-4.  Plaintiff Hawkins testified that she wore her uniform pants while commuting "a few times when I had to work elsewhere."  Hawkins also did not testify that she commuted in full uniform except for her shirt. In fact, she specifically testified that she did not have her vest on while commuting.  Hawkins did not testify about her commute home.  Exhibit 39, Deposition of Hawkins, 80:8-23.  Plaintiff Torres provided no testimony about wearing pants while commuting from work.  Plaintiff Seyfried provided no such testimony about commuting in full uniform.  In fact, Plaintiff Seyfried testified that he never wore any part of his uniform while commuting.  Exhibit 9, Deposition of Seyfried, 34:7-9.

27.     Twenty-three plaintiffs testified via interrogatory that they had reported to work, including reporting to special detail assignments outside of their regular commands, in, at least part of, their uniforms.  See Exhibit AA, Interrogatory Response for Vasquez, Exhibit CC, Interrogatory Response for Ventura, Exhibit FFF, Interrogatory Response for Williams, Exhibit

DD, Interrogatory Response for Tobel, Exhibit ZZ, Interrogatory Response for St. Louis, Exhibit

FF, Interrogatory Response for Sanchez, Exhibit HH, Interrogatory Response for Hilario Ramos,

Exhibit AAA, Interrogatory Response for Phillips, Exhibit II, Interrogatory Response for Ruthie

Perez, Exhibit JJ, Interrogatory Response for Lewis, Exhibit BBB, Interrogatory Response for

Lawrence, Exhibit CCC, Interrogatory Response for Joseph, Exhibit DDD, Interrogatory

Response for Rasheem Johnson, Exhibit EEE, Interrogatory Response for Adrienne Johnson,

Exhibit KK, Interrogatory Response for Howell, Exhibit LL, Interrogatory Response for

Hendricks, Exhibit MM, Interrogatory Response for Henderson, Exhibit OO, Interrogatory

Response for Edusi, Exhibit GGG, Interrogatory Response for Carriollo, Exhibit HHH,

Interrogatory Response for Besom, Exhibit III, Interrogatory Response for Arriola, Exhibit QQ,

Interrogatory Response for Mason and Exhibit RR, Interrogatory Response for Mercado.

       **PLAINTIFFS' RESPONSE**:  Not disputed.  Note: the interrogatory did not ask

whether, and the 23 responding Plaintiffs did not state, they had ever reported to work in a part

of their uniform on any occasion other than when reporting to a special detail assignment outside

the Plaintiff's regular command.

       28.     Four plaintiffs wore their full duty uniforms to/from their deposition in

this action.  See Exhibit M, Brooks Dep. at 10:18-20, Exhibit h, Pierre Dep. at 71:15-18,  Exhibit

F, Harris Dep. at 16:11-18; Exhibit JJJ, Henry Perez Dep. at 119; 120.

       **PLAINTIFFS' RESPONSE**:  Not disputed.  However, all four Plaintiffs who

wore their uniform to/from their deposition were on duty during the time of the deposition.

Exhibit 49, Deposition of Brooks, 67:7-8; 21-25; Exhibit 3, Deposition of Pierre, 71:19-22;

Exhibit 1, Deposition of Harris, 92:18-20; Exhibit 33, Deposition of H. Perez 191:22-25; 192:1-

6.  AUPRs are permitted to wear their uniforms during breaks in their work day, including lunch

hour.  In fact, pursuant to the Parks Department Uniform Policy (*see* Defs' Ex. E), AUPRs are required to remain in uniform during the entirety of a tour of duty.

## C.   Timekeeping and Overtime Compensation

### a)  Timekeeping Procedures

29.    Since 2011, all DPR employees, with the exception of employees in the civil service titles Job Training Participant, Lifeguard and Chief Lifeguard, utilized a system called CityTime to record their hours worked.  See Exhibit PPP, Trimble Aff. at ¶ 7.

**PLAINTIFFS' RESPONSE:** Not disputed.

30.    CityTime is a web-based software tool that DPR employees use to manage their time and attendance and submit their Timesheets (electronically) for approval.  See Exhibit PPP, Trimble Aff. at ¶ 8.

**PLAINTIFFS' RESPONSE:** Not disputed.

31.    AUPRs are required to record in CityTime their work start and end times, their meal break start and end times and any overtime performed.  See Exhibit PPP, Trimble Aff. at ¶ 9.

**PLAINTIFFS' RESPONSE:**  Disputed.  Three Captains and thirty-eight Plaintiffs testified via deposition or interrogatory that the Parks Department instructs AUPRs to record only their *scheduled tour* start/end time, not the actual time they began performance of job responsibilities or the actual time they finished performance of job responsibilities, unless the pre-shift or post-shift work was preapproved.  *See e.g.*, Exhibit 56, Deposition of Captain Greenfield, 57-58; 68:2-21 (Parks Department policy is that AUPRs should record tour time only unless specifically approved; working before and after tour without compensation is a way to

show leadership); Exhibit 55, Deposition of Captain Calderon, 24:10-25; 25-26; 27:15-24; 33:5-11; 39:18-24 (knows that many AUPRs do not record time spent working before and after tour; has instructed AUPRs not to record time working before and after tour because it would not be paid; Parks Department policy to just enter tour start and end time); Exhibit 59, Deposition of Prince 51:12-21 (testified that at least half of the AUPRs she supervises do not record time spent working before their tour); Exhibit 41, Deposition of DeLeon, 35:18-25; 36:1-25; 37:1-25 (instructed by multiple supervisors, including Captain Thompson, to record only his tour time, not his actual work time, and that he would not be paid for work done before his scheduled tour); Exhibit 42, Deposition of Langston, 37:1-25,38:1 (instructed by Captain McCants to record his tour time, not time actually worked); Exhibit 3, Deposition of Pierre, 116:8-23 (instructed not to record pre-tour work, only tour time); Exhibit 4, Deposition of P. Rosado 52:5-11; 95:23-25, 95:9-25, 96:1-7 (throughout most of 23 year career with Parks Department was instructed to record only tour time, strongly discouraged from recording time worked outside of this tour); Exhibit 38, Deposition of Guzman 31:20-25; 32:1-23 (instructed to arrive in advance of tour but to only record tour start time); Exhibit 9, Deposition of Seyfried 48:6-25; 49:1-16 (instructed to arrive in advance of tour but to only record tour start time); Exhibit 11, Deposition of Shulyar 160:1-21,161-162 (told by Captain Prince that would not be compensated for working before tour); Exhibit 36, Deposition of Poelz-Giga, 34:20-25,35:1-18,65:15-23, 150:8-16 (instructed at the Academy and by Captain McCants, Inspector Reeves, and Captain Brown to just record tour time, not time worked outside of scheduled tour, told they would not be paid for having worked prior to their tour start time); Exhibit 33, Deposition of H. Perez, 64:7-15; 72:4-13 (Captain Cardozo said not to sign in before tour starts, time card would not be accepted listed time AUPRS arrived at the command instead of tour time); Exhibit 34, Deposition of Walther 140-

141:1 (instructed to enter only tour time, not the time he arrived at the command and started working, did not record the time because knew it would not be paid); Exhibit 50, Deposition of Fisher 60:1-24 (strongly discouraged from recording time spent working outside of scheduled tour, AUPRs were supposed to only record tour time, usually denied any overtime request for time worked before and after tour); Exhibit 19, H. Ramos Interrogatory Responses Nos. 2, 22; Exhibit 60, St. Louis Interrogatory Responses Nos. 2, 22; Exhibit 20, Perez, R. Interrogatory Responses Nos. 2, 22; Exhibit 61, Williams Interrogatory Responses Nos. 2, 22; Exhibit 62, Spies Interrogatory Responses Nos. 2, 22; Exhibit 13, Vasquez Interrogatory Responses Nos. 2, 22; Exhibit 63, Arriola Interrogatory Responses Nos. 2, 22; Exhibit 25, Mason Interrogatory Responses Nos. 2, 22; Exhibit 64, Joseph Interrogatory Responses Nos. 2, 22; Exhibit 65, Hernandez Interrogatory Responses Nos. 2, 22; Exhibit 24, Edusei Interrogatory Responses Nos. 2, 22; Exhibit 66, Besom Interrogatory Responses Nos. 2, 22; Exhibit 26, Mercado Interrogatory Responses Nos. 2, 22; Exhibit 67, McKen Interrogatory Responses Nos. 2, 22; Exhibit 23, Green Interrogatory Responses Nos. 2, 22; Exhibit 27, Lewis Interrogatory Responses Nos. 2, 22; Exhibit 14, Yancey Interrogatory Responses Nos. 2, 22; Exhibit 21, Howell Interrogatory Responses Nos. 2, 22; Exhibit 22, Hendricks Interrogatory Responses Nos. 2, 22; Exhibit 68, Sainte Interrogatory Responses Nos. 2, 22; Exhibit 18, R. Ramos Interrogatory Responses Nos. 2, 22; Exhibit 69, Phillips Interrogatory Responses Nos. 2, 22; Exhibit 70, Velilla Interrogatory Responses Nos. 2, 22; Exhibit 71, Tobel Interrogatory Responses Nos. 2, 22; Exhibit 72, Lawrence Interrogatory Responses Nos. 2, 22; Exhibit 73, Charlemange Interrogatory Responses Nos. 2, 22.

32.     In order for AUPRs to be compensated for time worked outside of his/her regularly scheduled tours, whether that work was performed before or after his/her scheduled tours or during his/her dedicated meal breaks, AUPRs must enter an overtime compensation request in CityTime.  See Exhibit PPP, Trimble Aff. at ¶ 10.

**PLAINTIFFS' RESPONSE:**  Not disputed on the understanding that Defendants mean to say that an entry by an AUPR of a request for overtime compensation is one necessary precondition to payment of overtime compensation.

33.     The AUPRs' supervisors then either approve or deny the requests for overtime compensation entered into CityTime by the AUPRs.  See Exhibit PPP, Trimble Aff. at ¶ 11.

**PLAINTIFFS' RESPONSE:**  Not disputed.

34.     Prior to 2011, AUPRs utilized paper timecards to manage their time and attendance; however, the procedures for requesting compensation were the same as those under CityTime in that AUPRs were required to record on his/her timecards his/her work start and end times, his/her meal break start and end times and any overtime performed.  See Exhibit PPP, Trimble Aff.  at ¶¶ 12, 13.

**PLAINTIFF'S RESPONSE**:  Disputed.  *See* Plaintiffs' response to paragraph 31. AUPRs did not use paper time cards to "manage" their time and attendance.  They were not required to report overtime worked either pre-shift, post-shift, or during a meal break.  However, they would not be compensated for overtime work if they did not include such work on a time card.

25

35.     While utilizing paper timecards, in order for AUPRs to be compensated for time worked outside of his/her regularly scheduled tours, whether that work was performed before or after his/her scheduled tours or during his/her dedicated meal breaks, AUPRs were required to submit written overtime compensation request forms in addition to recording the overtime on his/her paper timecards.  See Exhibit PPP, Trimble Aff. at ¶ 14.

**PLAINTIFFS' RESPONSE:** Not disputed on the understanding that Defendants mean to say that submission by an AUPR of an overtime compensation request was one necessary precondition to payment of overtime compensation.

36.     Paper overtime compensation requests submitted before the implementation of CityTime were also either approved or denied by the AUPRs' supervisors. See Exhibit PPP, Trimble Aff. at ¶ 15.

**PLAINTIFFS' RESPONSE:**  Not disputed.

37.     AUPRs can request overtime compensation for any time worked in excess of his/her regularly scheduled tours, whether that work was performed before or after his/her scheduled tours or during their dedicated meal breaks.  See Exhibit PPP, Trimble Aff.  at ¶ 16.

**PLAINTIFFS' RESPONSE:**  Disputed.  *See* Plaintiffs' response to paragraph 31.  Parks Department managers repeatedly discouraged, and at times prohibited, Plaintiffs from even requesting overtime compensation for time worked in excess of his/her regularly scheduled tour.

38.    At all times relevant to this action, an AUPR could request overtime compensation for any work performed in excess of his/her regularly scheduled tour.  See Exhibit PPP, Trimble Aff. at ¶¶16-25.

**PLAINTIFFS' RESPONSE:**  Disputed.  *See* Plaintiffs' response to paragraphs 31 and 37.

### b) Supervisor's Role in Approving Overtime Requests

39.    Captain Tonya Prince testified that if an AUPR performs work in advance of his or her regularly scheduled tour start time, the AUPR should request overtime compensation for such time and that she approves such requests.  See Exhibit UU, Prince Dep. at 17:1-16.

**PLAINTIFFS' RESPONSE:**  Disputed.  Captain Prince did not testify that an AUPR should request overtime for time working in advance of their tour.  Moreover, Captain Prince testified that she is aware that at least half of the AUPRs she supervised would not request compensation for time spent working before their tour, including time spent preparing the deployment.  Exhibit 59, Deposition of Prince, 50:12-21.  Captain Prince has supervised at least 32 of the Plaintiffs.  Exhibit 59, Deposition of Prince, 28, 32.  Plaintiff Shulyar testified that Captain Prince told him that he would not be compensated for working prior to his tour.  Exhibit 11, Deposition of Shulyar, 32-33.  In her Declaration, Plaintiff Earline Reed stated that Captain Prince told her to record only her tour start and end time and to not record the time she spent working before or after her tour.  Plaintiff Reed also stated that Captain Prince ripped up her time card because it listed the actual time spent working, including through her meal break, rather than only Reed's tour time including a thirty minute meal break.  Exhibit 28, Declaration of Reed, at 11; *see also* Exhibit 12, Deposition of Reed, 95:4-25, 96:1-10.

27

40.     Captain Prince testified that she has never denied a request for "pre-shift" overtime compensation and has never directed an AUPR not to request compensation for such time worked. See Exhibit UU, Prince Dep. at 17:1-16.

**PLAINTIFFS' RESPONSE:** Disputed.  See Plaintiffs' response to paragraph 39.

41.     With respect to work performed after an AUPR's regularly scheduled tour end time, Captain Prince testified that, in such a case, the AUPR should request overtime compensation.  See Exhibit UU, Prince Dep. at 19:12-25; 20:1-11.

**PLAINTIFFS' RESPONSE:**  Disputed.  Captain Prince did not testify that an AUPR should request overtime for time working after their scheduled tour.

42.     Captain Prince testified that she has never denied such a request for "post-shift" overtime compensation and she has never directed an AUPR not to request post-shift overtime compensation.  See Exhibit UU, Prince Dep. at 19:12-25; 20:1-11.

**PLAINTIFFS' RESPONSE:**  Disputed**.**  See Plaintiffs' response to paragraphs 39.

43.     Captain Prince testified that she has never denied an AUPR's request for overtime compensation for working through his or her dedicated meal break.  See Exhibit UU, Prince Dep. at 27:13-15.

**PLAINTIFFS' RESPONSE:**  Not disputed.  However, Captain Prince testified that City Time *automatically* deducts thirty minutes on the assumption that an AUPR takes a meal break and that the Parks Department "hasn't figured out how to put it into the system saying that you did not have a meal" break when an AUPR actually worked a shift without a meal break.  Exhibit 59, Deposition of Captain Prince, 26:8-18.

28

44.      Captain Benne McCants testified that if an AUPR worked prior to or after his or her tour start or end time or worked through his/her meal break, he/she would request overtime compensation and would "absolutely" be compensated for such work.  See Exhibit SS, McCants Dep. at 20:23-25; 21:1-9; 22:1-19; 24:4-18.

PLAINTIFFS' RESPONSE:  Disputed.  Captain McCants testified that he is "sure" that AUPRs he supervises have failed to request overtime compensation for work done outside of their tour time.  Exhibit 29, Deposition of McCants, 23:7-15.  Captain McCants testified only that AUPRs would "absolutely" be paid for time spent working before their tour *when done at the request of the deputy inspector*.  Exhibit 29, Deposition of McCants 20:23-25; 21:1-6.  In addition, Plaintiff Poelz-Giga testified that Captain McCants, and other Parks Department supervisors, told her that she would not be paid for working during what was supposed to be a meal break.  Exhibit 36, Deposition of Poelz-Giga 130:18-25;131:1-8; 136-137:1-3.

45.      Captain McCants testified that he has never denied a request for overtime compensation for work performed pre- or post-shift or during the AUPR's meal break.   See Exhibit SS, McCants Dep. at 22:1-19; 24:4-23.

PLAINTIFFS' RESPONSE:  Disputed.  Several Plaintiffs testified that Captain McCants explicitly discouraged them from requesting overtime for pre- or post- shift work, or work performed during meal breaks.  *See, e.g.*, Exhibit 36, Deposition of Poelz-Giga 130:18-25; 131:1-8; 136-137:1-3; Exhibit 74, Declaration of Poelz-Giga, ¶¶ 16-18; Exhibit 41, Deposition of DeLeon, 37:1-25 (told to record tour start/end, not the time when arrived at the command and started working); Exhibit 75, Sanchez Declaration, ¶¶ 11-12.  In addition, Captain McCants

testified that he knows that AUPRs under his supervision fail to request overtime compensation for work done outside of their tour time.  Exhibit 29, Deposition of McCants, 23:7-15.

### c)  Plaintiffs' Receipt of Overtime Compensation

46.  Plaintiffs were paid $995,658.79 in cash overtime between June 22, 2009 and June 29, 2013.  See Exhibit LLL, Erath Declaration at ¶ 5; Appendix A.

**PLAINTIFFS' RESPONSE:**  A.  Dispute.  Erath included data pertaining to Teresa L. Nadeem, who is not participating in this lawsuit, and excluded data pertaining to Roc Sainte, who is a participant herein.  Exhibit 76, Declaration of Alex J. Ritz, ¶¶ 4, 5.

B.  Not Material.  The dollar figure in Defendants' Paragraph 46, purporting to state the aggregate amount Plaintiffs were paid in cash for overtime between June 22, 2009 and June 29, 2013 is meaningless in the context of the particular claims in this action, and this is so not only because that period of time includes time after Defendants had abandoned their treatment of Plaintiffs as exempt from the protections of the FLSA.  Defendants' figure ignores the crucial distinction between "regular" overtime and "episodic" overtime.  Episodic overtime includes overtime performed at the specific request or direction or with the specific pre-approval of a Captain or other superior.  Such overtime work pertains to *occasional* matters such as a concert or other special event in a park, Marathon Sunday, overtime occasioned by an injury or other medical emergency befalling a member of the public toward the end of an AUPR's scheduled shift, or overtime occasioned by an arrest effected toward the end of an AUPR's scheduled shift.  With respect to overtime work performed in *these* types of circumstances, Defendants would pay for the overtime work requested, or directed or otherwise pre-approved and, if the payment was in cash, it was often paid for at one and one-half times the regular rate of pay.  *In contrast*, "regular" overtime is the work performed pre-shift and post-shift in connection

with virtually every tour of duty.  This overtime consists of donning/doffing uniforms (including equipment), preparation of a deployment plan for the forthcoming shift, completion of paperwork pertaining to a shift just completed or, if such paperwork was not completed at the end of a shift, the completion of that paperwork before the start of the next day's shift.  The "regular" overtime work was normally performed off the clock because AUPRs understood they were not going to be compensated for such overtime work.  Because this overtime work was not reported by Plaintiffs on time cards or, later, in the Citytime system, Plaintiffs were not compensated at all for this work, much less paid at one and one-half times their regular rates of pay for same.  This off-the-clock work is the principal predicate for Plaintiffs' overtime compensation claims.  Therefore, because the dollar figure provided by Defendants in Paragraph 46 does not pertain to *any* of this "regular" off-the-clock overtime work (nor even to "episodic" overtime work compensated in comp time) and pertains instead to on-the-clock "episodic" overtime work paid for in cash, it is essentially irrelevant.

47.    The total amount of compensation for overtime paid to plaintiffs in compensatory time between June 22, 2009 and June 29, 2013 is 11,373.5 hours.  See Exhibit LLL, Erath Declaration at ¶ 5; Appendix A.

**PLAINTIFFS' RESPONSE:**  A.  Disputed.  As set forth in Erath's Declaration, 11,373.5 purports to be the total number of overtime hours *worked* for compensatory time, not the total amount of compensation paid for overtime (as misstated by Defendants in paragraph 47).  As stated in plaintiffs' response to paragraph 46, Erath's calculations incorrectly include data for Teresa L. Nadeem and incorrectly exclude data for plaintiff Roc Sainte.  Exhibit 76, Declaration of Alex. J. Ritz, ¶¶ 4, 5.

B.  Not Material.  The figure of 11,373.5 hours purports to be the total number of overtime hours worked by Plaintiffs on the clock in the period specified.  It includes an unspecified number of hours for which Plaintiffs were compensated in cash at one and one-half times the regular rate of pay, an unspecified number of overtime hours for which Plaintiffs were compensated in cash at straight time, and an unspecified number of overtime hours for which Plaintiffs were compensated in comp time at straight time.  All of those hours involved the performance of "episodic" overtime.  It does not include, however, *any* off-the-clock overtime work, virtually all of which pertained to "regular" overtime and which constitutes the principal basis of plaintiffs' overtime claims.

48.     Every plaintiff received overtime compensation at some point between June 22, 2009 and June 29, 2013.  See Exhibit LLL, Erath Declaration at ¶ 5; Appendix A.

**PLAINTIFFS' RESPONSE:** Not disputed but not material.  *See* Plaintiffs' Responses to Defendants' Paragraphs 46 and 47.

49.     Plaintiffs received overtime compensation on 12,931 separate occasions between June 22, 2009 and June 29, 2013. See Exhibit LLL, Erath Declaration at  ¶ 5.

**PLAINTIFFS' RESPONSE:** Disputed and Not Material.  Defendants' calculations improperly include data for Teresa L. Nadeem and improperly exclude data for plaintiff Roc Sainte.  *And see* Plaintiffs' Responses to Defendants' Paragraphs 46 and 47.

50.     Of those 12,391 separate instances on which plaintiffs received overtime compensation, 2,117 instances were for periods of work amounting to thirty minutes or less.  See Exhibit LLL, Erath Declaration at  ¶ 5; Appendix B.

**PLAINTIFFS' RESPONSE:** Disputed and Not Material.  *See* Plaintiffs' Responses to Defendants' Paragraphs 46, 47 and 49.

51.    Seventy-seven plaintiffs received overtime compensation for periods of time amounting to 30 minutes or less between June 22, 2009 and June 29, 2013.  See Exhibit LLL, Erath Declaration at ¶ 5; Appendix B.

**PLAINTIFFS' RESPONSE:**  Disputed and Not Material.  *See* Plaintiffs' Responses to Defendants' Paragraphs 46 and 47.

52.    Plaintiff Sadler testified that she always requested overtime compensation for any pre-shift work performed.    See Exhibit YY, Sadler Dep. at 40:4-9.

**PLAINTIFFS' RESPONSE:**  Not Disputed.  Sadler worked as an AUPR for a total of two months.

53.    Plaintiff Baselice testified that he requested overtime compensation for pre-shift work.  See Exhibit T, Baselice Dep. at 111:4-19.

**PLAINTIFFS' RESPONSE:**  Disputed.  Plaintiff Baselice testified only that on one occasion he requested overtime for thirty minutes of pre-shift work.  When asked to explain why he submitted an overtime request for this particular pre-shift work, Plaintiff Baselice stated that a supervisor must have specifically asked him to come in to work early that day or the overtime would not have been approved.  Exhibit 30, Deposition of Baselice, 111:4-19.

54.    Five plaintiffs testified that they requested, and received, overtime compensation for pre-shift work.  See Exhibit M, Brooks Dep. at 55:10-25; 56:1-14; Exhibit

MMM, Cordero Dep. at 65:24-25;66:1-10; Exhibit NNN, Brown Dep. at 96:1-24; Exhibit H, Pierre Dep. 118:24-25; 119:1-5; Exhibit JJJ, Henry Perez Dep. at 98:9-16,

      **PLAINTIFFS' RESPONSE:** Disputed.  These five Plaintiffs testified that on certain occasions they requested and received overtime compensation for pre-shift work that was episodic, *i.e.*, due to special events or preapproved overtime.  This testimony does not pertain to whether Plaintiffs requested and/or received overtime compensation for regular, pre-shift work.

      Plaintiff Brooks testified that prior to 2012, she did not request compensation for the time she spent working prior to her tour.  Exhibit 49, Deposition of Plaintiff Brooks, 55:1-20.

      Plaintiff Cordero's testimony only pertained to a request submitted for September 7, 2011.  Cordero did not explain why he requested thirty minutes of overtime on September 7, 2011 or whether he did so with the specific authorization of a Captain. Exhibit 31, Deposition of Cordero 65:24-25;66:1-10. Cordero also testified that when he used timecards he generally did not record time spent working before and after his shift.  Exhibit 31, Deposition of Cordero, 101:13-21; 103:14-18.

      Plaintiff Brown testified that he received overtime on July 26, 2011 because there was a special event going on that day.  Exhibit 77, Deposition of Brown, 96:1-24.  Brown testified that he did not record regular time spent working beyond his tour of duty because he was told by his manager that he would not be compensated for it.  Exhibit 77, Deposition of Brown 81:1-25.

      Plaintiff Pierre testified that he received overtime for work done prior to his tour start time only since sometime in 2013.  Exhibit 3, Deposition of Pierre 119:1-5.  During 2011-2012, Pierre testified that he did not submit overtime requests for the 30 minutes of pre-shift

work he regularly performed because he was advised that he would only be paid from the start of his tour time.  Exhibit 3, Deposition of Pierre, 115-119.

Plaintiff Perez did not testify that he received compensation for work done prior to a tour of duty.  He testified that he was paid in comp time when he worked overtime that was pre-approved by the Parks Department.  Deposition of Exhibit 33, Perez 98:8-16, 99:1-3.

55.     Plaintiffs Charles, Bayron, Cordero and Oro testified that they requested overtime compensation for work performed during their meal breaks.  <u>See</u> Exhibit V, Charles Dep. at 68:25; 69:1-6, Exhibit L, Bayron Dep. at 35:11-18, Exhibit MMM, Cordero Dep. at 79:11-18; Exhibit O, Oro Dep. at 81:21-23.

**PLAINTIFFS' RESPONSE:** Disputed as to some Plaintiffs.  Charles testified that he received overtime pay for working through his meal due to an assault on a Parks employee.  Exhibit 10, Deposition of Charles, 68:18-25;69:1-6.  Bayron testified that he "believed" he had requested overtime pay for working through a meal break but did not know whether he received pay for the time spent working through his meal break. Exhibit 7, Deposition of Bayron, 35:11-18. Cordero stated that on one occasion he requested compensation for working through his meal and does not know whether he received compensation for that work.  Exhibit 31, Deposition of Cordero, 79:11-23.  It does not appear Oro provided any testimony about requesting overtime compensation for work performed during his meal break. Exhibit 45, Deposition of Oro, 81:21-23.

Further, Plaintiffs were asked only about particular, individual instances and not whether they generally requested overtime compensation for work performed during what was supposed to be a meal break.

56.    Eighteen plaintiffs testified that they requested, and received, overtime compensation for work performed during their meal breaks.  See Exhibit XX, Berdecia Dep. at 81:19; 82; 83:1, Exhibit H, Pierre Dep. at 68:20-25; 69:1-3, Exhibit W, Greenberg Dep. at 97:12-18, Exhibit OOO, Eason Dep. at 111:1-23, Exhibit Z, Velilla Interrogatory Responses, Exhibit CC, Ventura Interrogatory Responses, Exhibit HH, Hilario Ramos Interrogatory Responses, Exhibit II, Ruthie Perez Interrogatory Responses, Exhibit KK Howell Interrogatory Responses, Exhibit LL, Hendricks Interrogatory Responses, Exhibit MM, Henderson Interrogatory Responses, Exhibit NN, Green Interrogatory Responses, Exhibit PP, Charlemagne Interrogatory Responses,   Exhibit RR, Mercado Interrogatory Responses, Exhibit BBB, Interrogatory Response for Lawrence, Exhibit CCC, Interrogatory Response for Joseph, Exhibit DDD, Interrogatory Response for Rasheem Johnson, and Exhibit HHH, Interrogatory Response for Besom.

**PLAINTIFFS' RESPONSE:** Disputed.  Plaintiff Berdecia testified that she believed that, on one occasion, she was paid for working through her lunch, Exhibit 48, Deposition of Berdecia, 81:19; 82; 83:1, but that otherwise she was not paid when she worked through her meal break.  Exhibit 48, Deposition of Berdecia, 71:21-23.

Plaintiff Greenberg testified that he specifically received only comp time, *i.e.*, payment at straight time, when he worked through supposed meal breaks.  Exhibit 54, Deposition of Greenberg, 96:21-25; 97:12-18.

Plaintiff Eason testified that on one particular occasion he received comp time, *i.e.*, straight time compensation, for working through his meal break, Exhibit 35, Deposition of Eason, 111:1-23, but that he was often not compensated at all for working through his meal break.  Exhibit 35, Deposition of Eason, 103:25,104:1-15.

36

The Plaintiffs identified in paragraph 56 did not state in their interrogatory responses that they received compensation at one and one-half time their regular rates of pay if ever compensated for working through a meal break, and each one of these Plaintiffs stated in Interrogatory Response No. 15 that (s)he had worked through meal breaks and not received any compensation for having done so.  *See* Exhibit 70, Velilla Interrogatory Responses; Exhibit 15, Ventura Interrogatory Responses; Exhibit 19, Hilario Ramos Interrogatory Responses; Exhibit 20, Ruthie Perez Interrogatory Responses; Exhibit 21, Howell Interrogatory Responses; Exhibit 22, Hendricks Interrogatory Responses; Exhibit 78, Henderson Interrogatory Responses; Exhibit 23, Green Interrogatory Responses; Exhibit 73, Charlemagne Interrogatory Responses; Exhibit 26, Mercado Interrogatory Responses; Exhibit 72, Interrogatory Response for Lawrence; Exhibit 64, Interrogatory Response for Joseph; Exhibit 79, Interrogatory Response for R. Johnson; Exhibit 66, Interrogatory Response for Besom.  In addition, 21 additional Plaintiffs not identified in Defendants' paragraph 56 testified in response to Interrogatory Response No. 15 that they had worked through meal breaks and not been compensated for having done so.  *See* Exhibit 62, Spies Interrogatory Responses; Exhibit 63, Arriola Interrogatory Responses; Exhibit 25, Mason Interrogatory Responses; Exhibit 60, St. Louis Interrogatory Responses; Exhibit 13, Vasquez Interrogatory Responses; Exhibit 61, Williams Interrogatory Responses; Exhibit 64, Joseph Interrogatory Responses; Exhibit 65, Hernandez Interrogatory Responses; Exhibit 24, Edusei Interrogatory Responses; Exhibit 16, Simon Interrogatory Responses; Exhibit 17, Sanchez Interrogatory Responses; Exhibit 80, Colon Interrogatory Responses; Exhibit 81, Carillo Interrogatory Responses; Exhibit 79, R. Johnson Interrogatory Responses; Exhibit 82, Kelly Interrogatory Responses; Exhibit 83, A. Harris Interrogatory Responses; Exhibit 68, Sainte Interrogatory Responses; Exhibit 18, R. Ramos Interrogatory Responses; Exhibit 27, Lewis

Interrogatory Responses; Exhibit 14, Yancey Interrogatory Responses; Exhibit 71, Tobel

Interrogatory Responses.


Dated:   New York, New York
         May 16, 2014

                              ___/s/___Amelia K. Tuminaro_____
                              Amelia K. Tuminaro
                              GLADSTEIN, REIF & MEGINNISS, LLP
                              817 Broadway, 6th Floor
                              New York, New York  10003
                              (212) 228-7727

38

A-274

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

HENRY PEREZ, et al.,

                         Plaintiffs,

         -versus-                                    No. 12 Civ. 4914 (AJN) (MHD)

THE CITY OF NEW YORK, et al.,                        NOTICE OF MOTION FOR
                                                     LEAVE TO MAINTAIN
                         Defendants.                 COLLECTIVE ACTION
-----------------------------------------------------------------x

         With the consent of Defendants, pursuant to 29 U.S.C. § 216(b) and upon the Declaration

of James Reif dated June 9, 2014 and Plaintiffs' Memorandum In Support of Leave To Maintain

Collective Action, the named Plaintiffs and each of them move (i) for leave to maintain a

collective action herein on behalf of themselves and the approximately sixty-nine (69) other

persons who "opted in" to this action by filing consent-to-sue forms with this Court on or before

September 15, 2013 and who did not thereafter withdraw from this action and (ii) for such other

and further relief as may be just and appropriate.


Dated:  June 9, 2014


                                        Yours, etc.,


                                        GLADSTEIN, REIF & MEGINNISS, LLP


                                        By: _James Reif_____
                                            James Reif (JR 2974)
                                            Amelia K. Tuminaro (AKT 3490)
                                        817 Broadway, 6th Floor
                                        New York, New York  10003
                                        (212) 228-7727

Robin Roach, General Counsel
Steven E. Sykes, Asst. Gen. Counsel
Jesse Gribben, Asst. Gen. Counsel
DISTRICT COUNCIL 37, AFSCME,
   AFL-CIO
125 Barclay Street, Room 510
New York, New York  10007
(917) 576-0593

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I am more than eighteen (18) years of age and not a party to this action and that this document filed through the ECF system on June 9, 2014 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/   Tom Curtin
Tom Curtin

**A-277**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------- X

**HENRY PEREZ, et al.,**

              **Plaintiffs,**

  **- against -**

**THE CITY OF NEW YORK, et al.,**

          **Defendants.**

---------------------------------------------------- X

**USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/8/14**

**ORDER**

**12-cv-4914**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

      With the consent of Defendants, Plaintiffs' motion for leave to

maintain a collective action pursuant to section 16(b) of the Fair Labor Standards

Act is hereby GRANTED.[1]  The Clerk of the Court is directed to close Dkt. No.

163.

                        SO ORDERED:

                        Shira A. Scheindlin
                        U.S.D.J.

Dated:     New York, New York
           December 8, 2014

---

    [1]    This Order is no way impairs defendants' right, as requested, to move
to vacate this Order in the event that they learn of new facts that would sustain
such a motion.  *See* Plaintiffs' Memorandum in Support of Leave to Maintain
Collective Action (Dkt. No. 165), at 1, n.2.

-1-

**-Appearances-**

**For Plaintiffs:**

Amelia K. Tuminaro, Esq.
James M. Reif, Esq.
Jane Chung, Esq.
Gladstein Reif and Meginniss
817 Broadway
New York, NY 10003
(212) 228-7727

Kenneth A. Falk, Esq.
Kenneth Falk, Attorney at Law
171 Madison Avenue Ste. 1002
New York, NY 10016
(212) 366-4600

Jesse D. Gribben, Esq.
Steven E. Sykes, Esq.
District Council 37, AFSCME, AFL-CIO
125 Barclay Street
New York, NY 10007
(212) 815-1450

**For the City of New York:**

Asad Rizvi
Andrea M. O'Connor
Kathryn E. Martin
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007
(212) 788-6838

Eamonn F. Foley, Esq.
New York City Transit Authority
130 Livingston Street
Brooklyn, NY 11201
(718) 694-3905

A-280



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

HENRY PEREZ, et al., on behalf of
themselves and others similarly situated,

                 **Plaintiffs,**

     - against -

THE CITY OF NEW YORK, BILL DE
BLASIO, in his official capacity as Mayor,
THE NEW YORK CITY DEPARTMENT
OF PARKS & RECREATION, and
MITCHELL J. SILVER, in his official
capacity as Commissioner,

                 **Defendants.**
------------------------------------------------------------X

**OPINION AND ORDER**

**12 Civ. 4914 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

        Plaintiffs, Associate Urban Park Rangers ("AUPRs") currently and

previously employed by the New York City Department of Parks and Recreation,

seek compensation under the Fair Labor Standards Act ("FLSA") for time spent

donning and doffing their uniforms at the beginning and end of each work day.  At

the close of fact discovery, defendants moved for summary judgment on three

grounds.  *First*, defendants argue that the donning and doffing of AUPR uniforms

is a non-compensable "preliminary or postliminary" activity.  *Second*, defendants

argue that the donning and doffing of AUPR uniforms is exempt from FLSA

liability under the "changing clothes" clause of section 203(o) of the Act.  *Third*, defendants argue that even if plaintiffs' legal position is sound, time spent donning and doffing is *de minimus*.  For the reasons set forth below, defendants' first argument prevails, and their motion is GRANTED.[1]

## I.    BACKGROUND

The relevant facts are not dispute.  *First*, plaintiffs are "required to wear a uniform during the performance of their job duties and responsibilities."[2]  *Second*, in addition to wearing uniforms, plaintiffs are also required to don security equipment, including, *inter alia*, "a bullet proof vest and utility belt,"[3] as well as various items — such as handcuffs and mace — that "attach[] to the utility belt."[4]  *Third*, changing into the full AUPR uniform, plus security equipment, takes a small but appreciable amount of time.  Different plaintiffs testified to different exact amounts.  But estimates range from 5-7 minutes — on the shorter end — to

---

[1]    In so holding, this Court has no occasion to address defendants' other two arguments — both of which raise complicated questions under the FLSA.

[2]    Defendants' 56.1 Statement of Undisputed Facts ("Def. 56.1"), ¶ 8. *Accord* Plaintiffs' Response to Defendants' 56.1 Statement of Undisputed Facts ("Pl. 56.1"), ¶ 8.

[3]    Def. 56.1 ¶ 10.

[4]    Pl. 56.1 ¶ 10.  For a full list of the utility equipment that AUPRs don, see Uniform and Equipment Specifications and Regulations, Exhibit E to Def. 56.1.

upwards of 20 minutes — on the longer.[5]

## II.   APPLICABLE LAW

The FLSA authorizes employees to recover against employers that unlawfully withhold compensation.[6]  Under the Portal-to-Portal Act ("PPA"), however, compensation claims can only arise from employment obligations that are related to the "principal activity or activities" of employment.[7]  An employment obligation that is "preliminary to or postliminary to [an employee's] principal activity or activities" cannot give rise to an FLSA claim.[8]

To define the scope of the "preliminary or postliminary" exception, the Supreme Court has fashioned a two-part test.  Something is a "principal activity" of employment if it is both "integral and indispensable" to the job that an

---

[5]   *See* Def. 56.1 ¶¶ 12-13; Pl. 56.1 ¶¶ 12-13.  The main source of factual dispute in this case is whether plaintiffs are required to change into their uniforms at work, or whether they are permitted to do so at home.  According to plaintiffs, donning and doffing must occur at work.  Defendants disagree.  There has been extensive discovery on the question — without resolution.  *Compare* Def. 56.1 ¶¶ 14-28, *with* Pl. 56.1 ¶¶ 14-28.  For purposes of this Opinion, however, the dispute need not be resolved.  Where the donning and doffing occurred is immaterial to the FLSA analysis, as set forth below.

[6]   *See* 29 U.S.C. § 201 *et seq.*

[7]   29 U.S.C. § 254(a).

[8]   *Id.* § 254(a)(2).

employee is hired to perform.[9]  These elements are analytically distinct, and both must be satisfied for an FLSA claim to lie.

Indispensable "means 'necessary.'"[10] An activity is indispensable if the performance of one's job depends on its completion — if the activity "cannot be dispensed with, remitted, set aside, disregarded, or neglected."[11]  Integral, by contrast, "means [] 'essential to completeness.'"[12] An activity is integral if it is "*specifically* necessary to the completeness or integrity of the whole"[13] — if it relates to the core purpose of employment.  As the Second Circuit has explained, an activity "may be indispensable to [an employee's] principal activities without being integral."[14]  For example, an activity that an employer requires its employees to perform at the start of the workday — such as swiping a security badge — is

---

[9]     *Integrity Staffing Solutions v. Busk*, 135 S.Ct. 513, 517 (2014). *Accord IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005).

[10]    *Gorman v. ConEd Corp.*, 488 F.3d 586, 593 (2d Cir. 2007).

[11]    *Integrity Staffing*, 135 S.Ct. at 517 (internal citations omitted).

[12]    *Gorman*, 488 F.3d at 593.

[13]    *Integrity Staffing*, 135 S.Ct. at 517 (emphasis in original) (internal citations omitted).

[14]    *Gorman*, 488 F.3d at 594.

-4-

indispensable insofar as it is mandatory.[15]  But that, alone, does not make the activity integral to the employee's job.[16]  Indeed, the purpose of the PPA was to ensure that *not* all employment obligations give rise to FLSA liability.[17]  This is why neither the mandatory nature of the activity, nor the fact that "the activity is [done] for the benefit of the employer," is an appropriate metric for determining whether an activity is "integral" to employment.[18]  Rather, the metric is whether an activity is "an intrinsic element" of an employee's job.[19]

In *Steiner v. Mitchell*,[20] the Supreme Court held that battery plant employees were entitled to compensation for time spent donning and doffing

---

[15]     *See Haight v. The Wackenhut Corp.*, 692 F. Supp. 2d 339, 344-45 (S.D.N.Y. 2010).

[16]     *See id.* at 344 ("In response to [] plaintiffs' argument that their employer required [donning security equipment], the [Second Circuit] concluded that . . . [the analysis] focus[es] on whether the activities performed by plaintiff are *integral*, not just indispensable, to their principal activities.") (emphasis in original).  *See also Gorman*, 488 F.3d at 594 (explaining that mandatory security measures "do not [] become principal activities of [] employment" simply because they are necessary).

[17]     *See Integrity Staffing*, 135 S.Ct. at 519 ("If the ['integral and indispensable'] test could be satisfied merely by the fact than an employer required an activity, it would sweep into 'principal activities' the very activities that the [PPA] was designed to addressed.").

[18]     *Id.*

[19]     *Id.*

[20]     350 U.S. 247 (1956).

-5-

protective gear, due to the especially hazardous nature of their work environment. In so holding, the Court distinguished between (1) donning and doffing protective gear designed to mitigate the unique hazards of a work environment, and (2) the act of "changing clothes and showering under normal conditions" — *i.e.*, not uniquely hazardous — "conditions."[21]

Against this backdrop, the Second Circuit has concluded that "[t]he donning and doffing of [] *generic* protective gear is not different in kind from 'changing clothes and showering under normal conditions,' which, under *Steiner*, are not covered by the FLSA."[22]  According to the Second Circuit, such "generic protective gear" includes (but is not limited to) "helmet[s], safety glasses, and steel-toed boots."[23]  Furthermore, two trial court opinions from this District have also understood "generic protective gear" to include the uniforms and equipment donned by security workers.  In *Haight v. The Wackenhut Corp.*,[24] Judge Stephen Robinson reasoned that there was no meaningful difference between "helmet[s], safety glasses, and steel-toed boots," and the "gun holster [and] inclement weather

---

[21]     *Id.* at 249.

[22]     *Gorman*, 488 F.3d at 594 (emphasis added).

[23]     *Id.*

[24]     692 F. Supp. 2d 339 (S.D.N.Y. 2010)

-6-

gear" that security officers at a nuclear facility were required to don.[25]  Similarly, in *Edwards v. City of New York*,[26] Judge Denise Cote held — in response to an FLSA claim almost identical to this one, brought by corrections officers rather than AUPRs — that "[t]here is no basis to distinguish between the 'helmet, safety glasses, and steel-toed boots' found to be 'generic protective gear' in *Gorman* and the uniform, utility belt, and slash resistant vest" that corrections officers were required to wear.[27]

## III.   STANDARD OF REVIEW

"Summary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"[28] Accordingly, summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the [non-moving party] and drawing all reasonable inferences in that party's favor, there is no genuine issue as to any

---

[25]     *Id.* at 345.

[26]     No. 08 Civ. 3134, 2011 WL 3837130 (Aug. 29, 2011).

[27]     *Id.* at *7.

[28]     *Whethers v. Nassau Healthcare Corp.*, No. 13 Civ. 2991, 2014 WL 4637215, at *1 (2d Cir. Sept. 18, 2014) (*citing Matsushida v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

material fact and . . . the movant is entitled to judgment as a matter of law."[29]

## IV.   DISCUSSION

There is no dispute that, in the Second Circuit, "[t]he donning and doffing of [] generic protective gear is . . . not covered by the FLSA."[30]  With that premise in mind, this case presents two questions.  *First*, is the preliminary activity here — changing into and out of Parks Department uniforms, including security equipment — tantamount to "donning and doffing of [] generic protective gear"?  *Second*, if the preliminary activity here *is* tantamount to "donning and doffing of [] generic protective gear," does the fact that it takes place on the employer's premises revive plaintiffs' FLSA claim?

### A.   The Donning and Doffing in this Case Involves "Generic Protective Gear"

*Haight* and *Edwards* are on all fours with this case.  There, as here, plaintiffs argued that wearing uniforms equipped with basic security equipment was "integral" to their job responsibilities.  And in both cases, the argument was rejected for the same reason:  the court held that the security equipment fell within the category of "generic protective gear" articulated in *Gorman*, whose donning

---

[29]   *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014) (internal citations omitted).

[30]   *Gorman*, 488 F.3d at 594.  *Accord* Pl. Opp. at 22.

and doffing is non-compensable under the FLSA.

        *Haight* and *Edwards* are persuasive.  In accordance with the goals of the PPA, the Second Circuit clearly intended the phrase "generic protective gear" to be broadly construed.  And if security equipment is not integral to the primary responsibilities of security guards, it follows *a fortiori* that the same equipment is not integral to the primary responsibilities of AUPRs.  Plaintiffs have only one rejoinder to this point.  Namely, because defendants have failed to properly "*identify* [AUPRs'] principal activities,"[31] plaintiffs argue that it is impossible for them — or, apparently, for this Court — to "analyze in a meaningful way whether AUPRs' donning [and] doffing of the Parks Department uniform, including equipment, is integral . . . [to those] activities."[32]

        This argument inverts the burden of proof.  Given the Second Circuit's crystal-clear statement that "[t]he donning and doffing of [] generic protective gear is . . . not covered by the FLSA,"[33] as well as the factual similarity between this case and *Haight* and *Edwards*, it is plaintiffs' burden to demonstrate that their security equipment is *not* generic protective gear — not the other way

---

[31]    Plaintiffs' Memorandum of Law in Response to Defendants' Motion for Summary Judgment ("Pl. Opp."), at 18.

[32]    *Id.*

[33]    *Gorman*, 488 F.3d at 594.

around.  According to plaintiffs, their responsibilities as AUPRs include, *inter alia*, "providing assistance to the public in New York City parks and pools," giving "aid to those persons who may have suffered an injury [or] been victimized by a crime," "advising persons of their legal obligations," and, if need be, "making arrests."[34]

Even cast in the light most favorable to plaintiffs, however, this list merely underscores the deficiency of their legal position.  The donning and doffing of uniforms and security equipment is not integral to any of these tasks.  And the donning and doffing of uniforms and security equipment is certainly not *more integral* to any of these tasks than it is to the tasks performed by security guards.  Indeed, the only task that plausibly bears an integral relationship to security equipment — "making arrests" — was also before the courts in *Haight* and *Edwards*.  It was unavailing there, and it is unavailing here.

**B.    That the Donning and Doffing Occurred at Work Is Irrelevant**

Plaintiffs try to distinguish *Haight* and *Edwards* on the grounds that those cases, unlike this one, "did not involve donning [and] doffing at the workplace."[35]  But this argument is similarly unavailing.[36]  An activity that is not

---

[34]    Pl. Opp. at 18.

[35]    *Id.* at 23.

[36]    As noted above, this issue is in dispute.  For the purpose of assessing the viability of plaintiffs' legal position, I adopt their version of the facts *arguendo*.

A-290

otherwise integral to an employee's job responsibilities does not become integral simply because it must be done at a particular place.  In *Steiner*, when the Supreme Court distinguished between (1) the donning of specialized security gear and (2) "changing clothes and showering under normal conditions," it was not because the first activity occurred at work, while the second occurred at home.  In fact, by using the example of "changing clothes and showering under normal conditions" — both workplace activities — the Court's point was precisely that certain activities are non-compensable under the FLSA *despite* occurring at work.  In *Gorman*, the Second Circuit adopted the logic of *Steiner* in full; that was how it justified the distinction between specialized and generic protective gear.  Plaintiffs have offered no reason to think — much less any case law to demonstrate — that the *Gorman* court meant to disturb *Steiner*'s core holding that certain preliminary and postliminary activities are non-compensable regardless of where they occur.

In support of their view that the FLSA recognizes a distinction between activities that take place at home and those that take place at work, plaintiffs invoke an advisory regulation from the Department of Labor ("DOL Regulation"), which offers the following gloss on the "integral and indispensable" requirement:

_____

-11-

> Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance.  If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, *changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity*.  On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a "preliminary" or "postliminary" activity rather than a principal part of the activity.[37]

According to plaintiffs, the italicized language establishes that if "an employer requires that a uniform (including equipment) be put on at the workplace . . . [then] donning and doffing is compensable."[38]

Plaintiffs' reliance on the DOL Regulation is misplaced for two reasons.  *First*, the logic of the DOL Regulation is flatly at odds with the logic of the relevant case law.  The first sentence of the cited portion defines an "integral" task as one that is "indispensable" to the performance of a principal activity.  But this definition — by casting integral *in terms of* indispensability — collapses the dichotomy adopted by the Second Circuit and the Supreme Court to analyze FLSA cases.  This Court is bound by the precedent of higher courts, not by the dictates of

---

[37]    29 C.F.R. § 790.8(c) (emphasis added).

[38]    Pl. Opp. at 20 (emphasis omitted).

an advisory regulation.[39]

       *Second*, even if the DOL Regulation *did* bind this Court, its language does not support the distinction that plaintiffs seek to draw.  Read holistically, the point of the regulation is that the donning and doffing of "certain clothes" is compensable insofar as "an employee . . . cannot perform his principal activities without putting on [those] clothes," but *not* compensable "if changing clothes is merely a convenience to the employee and not directly related to his principal activities."[40]  This, however, is just a different way of articulating what the case law makes clear:  that the donning and doffing of clothes is compensable if it is integral, and not compensable if not.   To establish this distinction, the regulation sets out a hypothetical that *assumes* that employees of a chemical plant would change into and out of their work clothes "on the employer's premises."[41]  But that aspect of the hypothetical — that it envisions employees changing at work — is

---

[39]    As the Supreme Court has explained, "[agency] interpretations contained in policy statements, agency manuals, and enforcement guidelines" — like the DOL Regulation here — "lack the force of law [and] do not warrant *Chevron*-style deference."  *Christensen v. Harris County*, 529 U.S. 576, 587 (2000).  Instead, such materials "are entitled to respect . . . but only to the extent that [they] have the power to persuade."  *Id.* (internal citations omitted).  In other words, this Court is free to look to the DOL Regulation for guidance, but it has no binding effect.

[40]    29 C.F.R. § 790.8(c).

[41]    *Id.*

irrelevant to the larger point.[42]   The point is that donning and doffing is only

compensable if the clothing in question is integral to an employee's primary job

responsibilities.

    When all is said and done, plaintiffs' argument about the location of

donning and doffing comes back to a simple — and sympathetic — proposition.

Being forced to change at work adds time to plaintiffs' workday; so they should be

compensated.   Yet this is exactly the type of claim that Congress, in passing the

PPA, sought to foreclose.   Preliminary and postliminary activities add time to the

workday by their very nature.   Nonetheless, the PPA shields those activities from

FLSA liability — and in doing so, it requires plaintiffs to show *more* than just (1)

"that an employer require[s] an activity," or the (2) that "[an] activity is for the

---

[42]  The structure of the DOL Regulation bolsters this point.   It offers two examples that yield different results — and that difference highlights the variables that govern FLSA claims.   Accordingly, if the DOL Regulation was trying to emphasize the importance of *where* donning and doffing occurs, one would expect location to appear as a variable in *both* examples.   But that is not the case.   As drafted, only the first example contains a reference to location.   Namely, "[i]f an employee in a chemical plant [] cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity."   *Id.*   The second example merely states — without mentioning location — that "if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be [] a "preliminary" or "postliminary" activity."   *Id.*   Put slightly different, it is easy to imagine an alternative version of the regulation that drops the reference to "on the employer's premises" *entirely*, but nonetheless retains the same core meaning.   This casts serious doubt on plaintiffs' reading of the "on the employer's premises" clause.

-14-

benefit of the employer.'"[43]  To sustain a compensation claim under the FLSA, an activity must be "integral" to the core purpose of employment.  Here, that standard is not met.  Plaintiffs' claim fails as a matter of law.  The Clerk of the Court is directed to close this motion (Dkt. No. 146) and close this case.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.


Dated:     New York, New York
           January 15, 2015


---

[43]     *Integrity Staffing*, 135 S.Ct. at 519.

A-295

## - Appearances -

**For Plaintiffs:**

Amelia K. Tuminaro, Esq.
James M. Reif, Esq.
Jane Chung, Esq.
Gladstein Reif and Meginniss
817 Broadway
New York, NY 10003
(212) 228-7727

Kenneth A. Falk, Esq.
Kenneth Falk, Attorney at Law
171 Madison Avenue Ste. 1002
New York, NY 10016
(212) 366-4600

Jesse D. Gribben, Esq.
Steven E. Sykes, Esq.
District Council 37, AFSCME, AFL-CIO
125 Barclay Street
New York, NY 10007
(212) 815-1450

**For Defendants:**

Asad Rizvi
Andrea M. O'Connor
Kathryn E. Martin
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007
(212) 788-6838

Eamonn F. Foley, Esq.
New York City Transit Authority

-16-

130 Livingston Street
Brooklyn, NY 11201
(718) 694-3905

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
HENRY PEREZ, et al., on behalf of themselves
and others similarly situated,

                                    Plaintiffs,

                    -against-

THE CITY OF NEW YORK, BILL DE BLASIO,
in his official capacity as Mayor, THE NEW YORK
CITY DEPARTMENT OF PARKS & RECREATION,
and MITCHELL J. SILVER, in his official
capacity as Commissioner,

                                    Defendants.
---------------------------------------------------------X

USDC SDNY

DOCUMENT

ELECTRONICALLY FILED 01/16/2015

12 **CIVIL** 4914 (SAS)

**JUDGMENT**

    Plaintiffs, Associate Urban Park Rangers ("AUPRs") currently and previously employed by

the New York City Department of Parks and Recreation, are seeking compensation under the Fair

Labor Standards Act ("FLSA") for time spent donning and doffing their uniforms at the beginning

and end of each work day, and whereas Defendants having moved for summary judgment (Doc.

#146) on three grounds. First, Defendants argue that the donning and doffing of AUPR uniforms is

a non-compensable "preliminary or postliminary" activity. Second, defendants argue that the

donning and doffing of AUPR uniforms is exempt from FLSA liability under the "changing clothes"

clause of section 203(o) of the Act. Third, defendants argue that even if Plaintiffs' legal position is

sound, time spent donning and doffing is de minimus, and the matter having come before the

Honorable Shira A. Scheindlin, United States District Judge, and the Court, January 15, 2015,

having rendered its Opinion and Order (Doc. #170) to sustain a compensation under the FLSA, an

activity must be "integral" to the core purpose of employment. Here the standard has not been met.

Plaintiffs' claim fails as a matter of law. For the reasons set forth in the Order, Defendants' first

argument prevails, therefore granting their motion, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Opinion and Order dated January 15, 2015,Defendants' first argument prevails, and their

motion is granted; accordingly, the case is closed.

**Dated:** New York, New York
          January 16, 2015

                                                  **RUBY J. KRAJICK**
                                        _____
                                                   **Clerk of Court**
                                    **BY:**   _K. Mango_
                                        _____
                                                   **Deputy Clerk**

A-299

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
HENRY PEREZ, RALPH BASELICE, JUAN
BAYRON, JERRY CORDERO, RONALD EASON,
DONALD KOONCE, JOSEPH ORO, RUBEN
RIOS JR., PEDRO ROSADO and DEREK
G. WALTHER, on behalf of themselves
and all others similarly situated,

                                  Plaintiffs,

          -versus-                                              No. 12 Civ. 4914 (SAS)(MHD)

THE CITY OF NEW YORK, MICHAEL R.
BLOOMBERG, as Mayor, THE NEW YORK
CITY DEPARTMENT OF PARKS &
RECREATION and ADRIAN BENEPE, as
Commissioner,

                                  Defendants.                   NOTICE OF APPEAL
------------------------------------------------------------------x

          PLEASE TAKE NOTICE that all of the plaintiffs named in the caption of this

action, on their own behalves and on behalf of all of the plaintiffs who opted in to this action

whom this Court found to be similarly situated to the named plaintiffs, hereby appeal to the

United States Court of Appeals for the Second Circuit from the Judgment filed herein on January

16, 2015 (Doc. 171) and from each and every part thereof.

Dated: February __2__, 2015

                                        Yours, etc.,

                                        _James Reif_
                                        James Reif (JR 2974)
                                        Amelia K. Tuminaro (AKT 3490)
                                        GLADSTEIN, REIF & MEGINNISS, LLP
                                        817 Broadway, 6th Floor
                                        New York, New York 10003
                                        (212) 228-7727

A-300

Robin Roach
  General Counsel
Steven E. Sykes
Jesse Gribben
DISTRICT COUNCIL 37, AFSCME,
  AFL-CIO
125 Barclay Street, Room 510
New York, New York 10007
(212) 815-1450

Attorneys for Plaintiffs