# 15-0315-cv

## United States Court of Appeals

*for the*

## Second Circuit

———————◆———————

HENRY PEREZ, On behalf of themselves and others similarly situated,
BASELICE RALPH, On behalf of themselves and others similarly situated,
JUAN BAYRON, On behalf of themselves and others similarly situated, JERRY
CORDERO, On behalf of themselves and others similarly situated, RONALD
EASON, On behalf of themselves and others similarly situated, DONALD
KOONCE, On behalf of themselves and others similarly situated, JOSEPH ORO,
On behalf of themselves and others similarly situated, RUBEN RIOS, JR., On
behalf of themselves and others similarly situated, PEDRO ROSADO, On behalf
of themselves and others similarly situated, DEREK G. WALTHER, On behalf of
themselves and others similarly situated,

*Plaintiffs-Appellants*,

ELIZABETH KAY BESOM,

*Plaintiff*,

*(For Continuation of Caption See Inside Cover)*

———————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLANTS

GLADSTEIN, REIF & MEGINNISS, LLP
*Attorneys for Plaintiffs-Appellants*
817 Broadway, 6th Floor
New York, New York 10003
(212) 228-7727

---

v.

THE CITY OF NEW YORK, MAYOR BILL DE BLASIO, THE NEW YORK
CITY DEPARTMENT OF PARKS & RECREATION, and MITCHELL J.
SILVER, in official capacity as Commissioner of the Department of Parks and
Recreation,

*Defendants-Appellees.*

---

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ................................................................... ii

JURISDICTIONAL STATEMENT ......................................................1

ISSUES PRESENTED.........................................................................1

STATEMENT OF CASE .....................................................................2

    PROCEDURAL HISTORY ............................................................2

    STATEMENT OF FACTS RELEVANT TO ISSUE SUBMITTED
    FOR REVIEW ..............................................................................10

SUMMARY OF ARGUMENT ..........................................................13

ARGUMENT ....................................................................................15

  I.   THE DISTRICT COURT ERRED IN GRANTING SUMMARY
      JUDGMENT DISMISSING PLAINTIFFS' DONNING AND
      DOFFING CLAIMS...................................................................15

        A.  Governing Standard And Application Thereof .............................15

        B.  The Decision Below ....................................................25

  II.  THE DISTRICT COURT ERRED IN DIRECTING THE CLERK TO
      CLOSE THE CASE, THEREBY AWARDING JUDGMENT
      AGAINST PLAINTIFFS ON ALL CLAIMS NOTWITHSTANDING
      THAT ONLY PLAINTIFFS' DONNING AND DOFFING CLAIMS
      WERE THE SUBJECT OF DEFENDANTS' MOTION FOR
      "PARTIAL" SUMMARY JUDGMENT AND THE COURT DID
      NOT RESOLVE ANY OF PLAINTIFFS' REMAINING CLAIMS ..........31

CONCLUSION....................................................................................34

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................35

# TABLE OF AUTHORITIES

Page

Cases:

*Abbe v. City of San Diego*, 05-CV-1629DMS (JMA), 2007 WL 4146696
  (S.D. Cal. Nov. 9, 2007), *aff'd*, 444 F. App'x. 189 (9th Cir. 2011) ...................29

*Adams v. Alcoa, Inc.*, 822 F. Supp. 2d 156 (N.D.N.Y. 2011) .................................29

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ....................................................21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................................21

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ....................................16

*Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004) ..........................29

*Bamonte v. City of Mesa*, 598 F.3d 1217 (9th Cir. 2010) ..................................28, 29

*Edwards v. City of New York*, No. 08 Civ. 3134 (DLC), 2011 WL
  3837130 (S.D.N.Y. Aug. 29, 2011) ........................................................27, 28, 29

*First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109
  (2d Cir. 1999) ........................................................................................................33

*Gorman v. Con. Ed. Corp.*, 488 F.3d 586 (2d Cir. 2007) ................................*passim*

*Haight v. Wackenhut Corp.*, 692 F. Supp. 2d 339 (S.D.N.Y. 2010) ................27, 28

*IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) .....................................................17, 18, 19

*Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014) .....................*passim*

*Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706
  (2d Cir. 2001) ........................................................................................................18

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011) .................................22

*Lee v. Am-Pro Protective Agency, Inc.*, 860 F. Supp. 325 (E.D. Va. 1994)............29

*Lemmon v. City of San Leandro*, 538 F. Supp. 2d 1200 (N.D. Cal. 2007)..............25

*Mitchell v. King Packing Co.*, 350 U.S. 260 (1956).........................................17, 19

*Perez v. City of New York*, 2015 WL 424394 (S.D.N.Y. Jan. 15, 2015)..................6

*Priestly v. Headminder, Inc.*, 647 F.3d 497 (2d Cir. 2011) .....................................33

*Reich v. N.Y.C. Transit Auth.*, 45 F.3d 646 (2d Cir. 1995).......................18, 30 n. 15

*Rule v. Brine, Inc.*, 85 F.3d 1002 (2d Cir. 1996) .....................................................21

*Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870 (2014) .................................18, 20 n. 12

*Steiner v. Mitchell*, 350 U.S. 247 (1956) .....................................17, 18, 19, 20 n. 12

*Summa v. Hofstra Univ.*, 708 F.3d 115 (2d Cir. 2013)...........................................15

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590
    (1944) ...............................................................................................................16

Statutes:

Fair Labor Standards Act:

29 U.S.C. § 203(o) ........................................................................18, 20 n. 12

29 U.S.C. § 206............................................................................................1

29 U.S.C. § 206(a)(1)...............................................................................3, 8

29 U.S.C. § 207............................................................................................1

29 U.S.C. § 207(a)(1)..........................................................................1, 3, 4, 8

29 U.S.C. § 207(o)(1) ............................................................................3, 8, 31

29 U.S.C. § 207(o)(3)(A).......................................................................4, 8, 32

29 U.S.C. § 216(b) .................................................................1, 2 n. 1, 9 n. 3

Portal-to-Portal Act:

29 U.S.C. § 254(a)(2).............................................................*passim*

Title 28 U.S.C. § 1291 ...........................................................................1

Rules:

Fed. R. Civ. P. 56(c) ...........................................................................21

Regulations:

29 CFR § 790.7(d) ..............................................................................20

29 CFR § 790.7(g) ..............................................................................19

29 CFR § 790.8(a)...................................................................17 n. 11, 28

29 CFR § 790.8(c)...................................................................19, 30

Miscellaneous:

*Wage & Hour Advisory Memorandum No.* 2006-2 (May 31, 2006).......................29

# JURISDICTIONAL STATEMENT

As Plaintiffs' action is one to recover the liability prescribed in Sections 6 and 7 of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 206 and 207, the District Court had original jurisdiction over Plaintiffs' claims pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b). On January 16, 2015, a final judgment was entered below granting Defendants' motion for summary judgment against Plaintiffs and closing the case. On February 3, 2015, Plaintiffs filed a notice of appeal from said judgment. Plaintiffs' appeal is from a final judgment that disposed of all claims below and therefore this Court has jurisdiction of Plaintiffs' appeal pursuant to 28 U.S.C. § 1291.

# ISSUES PRESENTED

Did the District Court err in holding on summary judgment that Plaintiffs' pre-shift donning and post-shift doffing of their uniforms/equipment are noncompensable preliminary and postliminary activities, respectively, within the meaning of 29 U.S.C. § 254(a)(2)?

Did the District Court err in directing the Clerk to close this case, thereby effectively awarding judgment against Plaintiffs on their several other claims, each of which is unrelated to their "donning and doffing" claims, when Defendants' motion for "partial" summary judgment did not seek dismissal of any

1

of those other claims and the Court did not determine that Defendants were entitled to summary judgment dismissing any of those remaining claims?

## STATEMENT OF CASE

**PROCEDURAL HISTORY**

Plaintiffs-Appellants ("Plaintiffs")[1] are and/or were employed by the New York City Department of Parks & Recreation ("Parks Department") as Associate Urban Park Rangers ("AUPRs"), primarily in the City's parks and pools.[2] In their action filed on June 22, 2012 in the U.S. District Court for the Southern District of New York, Plaintiffs allege that they regularly perform certain off-the-clock tasks immediately prior to the start and immediately after the conclusion of their regularly scheduled shifts, including but not limited to the donning and doffing of uniforms/equipment. They are not compensated at all for the performance of these tasks. Plaintiffs allege that Defendants' failures to compensate them for these pre-shift and post-shift tasks performed outside the normal 40 hour workweek violate 29 U.S.C. § 207(a)(1), which guarantees compensation at the rate of one and one-half times the regular rate of pay for work

---

[1] Unless otherwise noted, the term "Plaintiffs" includes both those persons who initiated the action below ("named Plaintiffs") and those other persons who, pursuant to 29 U.S.C. § 216(b), filed written consents to become plaintiffs in this action and did not thereafter withdraw therefrom ("opt-in Plaintiffs").

[2] Some Plaintiffs are no longer employed by the Parks Department and others are (or were) employed in the AUPR title only seasonally. For ease of reference, however, Plaintiffs' performance of tasks will be spoken of in the current tense.

performed in excess of 40 hours in a week. *See* Second Amended Complaint ("SAC"), ¶¶ 21-22, 30, 33 (A-100, 101, 102).

Plaintiffs further allege that, during what are ostensibly unpaid meal breaks, they actually and often perform tasks off-the-clock which are also performed during scheduled working hours but that they are not compensated for these off-the-clock activities. Plaintiffs assert that Defendants' failures to compensate them at one and one half times their regular rates of pay for their actual performance of these tasks during their "meal breaks" violate § 207(a)(1). *See id.*, ¶¶ 23, 37 (A-100, 102). Plaintiffs also allege that Defendants' failures to compensate them at all for performance of off-the-clock work performed pre-shift, post-shift or during a "meal break" violates the minimum wage guarantee of § 206(a)(1). *See id.*, ¶ 44 (A-103).

At least through March 31, 2013, if Defendants compensated Plaintiffs for on-the-clock overtime work in time off, rather than in money, Plaintiffs were "paid" a number of hours equal to the number of overtime hours worked. Plaintiffs assert that when Defendants compensated them for overtime work with time off, Defendants were required under 29 U.S.C. § 207(o)(1) to "pay" Plaintiffs with one and one-half hours of compensatory time off for each hour of overtime worked. *See id.* ¶¶ 20, 27 (A-99, 101).

3

Plaintiffs allege that they accrued more than 480 hours of compensatory time off but that Defendants continued to compensate Plaintiffs for overtime hours with compensatory time off despite § 207(o)(3)(A)'s prohibition on such practice. *See id.*, ¶¶ 39, 40 (A-103). Plaintiffs' action was assigned to the Hon. Alison J. Nathan.

Prior to the filing of the original Complaint (A-50), Defendants treated Plaintiffs as exempt from the protection of § 207(a)(1) and continued that practice for several months thereafter. Plaintiffs alleged both in their initial pleading and in the Amended Complaint filed on October 11, 2012 that they were entitled to the protection of § 207(a)(1) and expressly rejected the assertion that Defendants could lawfully treat them as exempt. *See* Complaint, ¶ 16 (A-52) and First Amended Complaint, ¶ 14 (A-77). In their Answer To The Complaint and their Answer To The Amended Complaint, Defendants affirmatively asserted that their treatment of Plaintiffs as exempt from the protections of the FLSA was lawful. In their Sixth Defense in each of these pleadings, Defendants alleged: "Plaintiffs, those similarly situated to plaintiffs, and any opt-in plaintiffs are exempt from the provisions of the FLSA." (A-70, 91).

In the SAC, Plaintiffs reiterated that they were entitled to the protections of the overtime compensation guarantee, *see* SAC, ¶¶ 19, 27, 30, 33 (A-99, 101, 102), and, in paragraph 17 thereof, specifically asserted that

4

Defendants could not lawfully treat them as exempt. (A-99). On April 10, 2013, Defendants forwarded a letter to Judge Nathan, with copies e-mailed to Plaintiffs' attorneys, in which Defendants advised that the City of New York had "reclassified the title of Associate Urban Park Ranger as covered by the overtime provisions of the FLSA, effective prospectively beginning March 31, 2013." *See also* Defs' Rule 56.1 Statement, ¶ 7 (A-123). Defendants further stated that they would treat Plaintiffs in this action as covered by the FLSA's overtime provisions for purposes of Plaintiffs' off-the-clock pre-shift, post-shift and "meal break" claims for the period for which Defendants believed Plaintiffs could assert FLSA claims. On the same day, Defendants filed their Answer To The Second Amended Complaint. (A-107-118). Defendants deleted therefrom the exemption defense that they had included as their Sixth Defense in each of Defendants' prior pleadings. *Compare* (A-70, 91) with (A-115).

Notwithstanding Defendants' abandonment of their exemption defense, they asserted that they had not violated the FLSA in any respect. *See* Answer To Second Amended Complaint, ¶ 51 (A-115). On April 3, 2014, after discovery, Defendants filed a motion "for partial summary judgment." (A-119). Defendants limited their motion to the following contentions: (i) Plaintiffs' pre-shift donning and post-shift doffing of their uniforms/equipment was not compensable under the FLSA; (ii) Plaintiffs' claims predicated on any violations of

the FLSA occurring prior to June 22, 2009 were time-barred; (iii) Defendants

lacked actual or imputed knowledge that Plaintiffs were performing overtime work

except for that overtime work which they were reporting to Defendants; and (iv)

the Parks Department was not suable by Plaintiffs. (A-119-120). *See also*

Defendants' Memorandum Of Law In Support Of Their Partial Motion For

Summary Judgment, at 2. (Doc. 149).

      On May 16, 2014, Plaintiffs filed Plaintiffs' Response To Defendant's

Local Rule 56.1 Statement Of Undisputed Material Facts, (A-236-273), their

opposing declarations, (A-136-144 and Doc. 155), and Plaintiffs' Memorandum Of

Law In Opposition To Defendants' Motion For Partial Summary Judgment. (Doc.

157). Defendants filed their reply papers on June 3, 2014. *See* Doc. 160-162. By

letter dated June 2, 2014 submitted to Judge Nathan, Plaintiffs requested oral

argument on Defendants' motion.

      On December 8, 2014, the parties were notified electronically that the

case had been reassigned to the Hon. Shira A. Scheindlin. No party had requested

Judge Nathan's recusal, and the reason for the reassignment was not made known.

      On January 15, 2015, without holding oral argument, the District

Court (Scheindlin, J.) issued an Opinion and Order granting Defendants' motion

directed to Plaintiffs' claims for compensation for time expended on donning and

doffing of uniforms/equipment. (A-280-294). *Perez v. City of New York*, 2015

WL 424394 (S.D.N.Y. Jan. 15, 2015).  The Court held that Plaintiffs' pre-shift

donning of uniforms/equipment and their post-shift doffing of same was not

compensable because the donning and doffing constituted activities which were

preliminary and postliminary, respectively, to Plaintiffs' principal activities within

the meaning of 29 U.S.C. § 254(a)(2).  That holding was in turn predicated on the

Court's view that while AUPRs' wearing of their uniforms/equipment was

indispensable, it was not also integral to the performance of the principal activities

of the AUPRs.  (A-289, 294).

Plaintiffs' claim that they perform various compensable overtime

activities but are not compensated at all for such activities is not limited to the

donning and doffing of uniforms/equipment.  *See* SAC ¶¶ 21-22 (describing pre-

shift and post-shift activities for which they should be but are not compensated as

"donning [and doffing] a uniform and equipment as required by Defendants,

completing required paperwork and performing other required, regularly recurrent

tasks").  (A-100).  An example of pre-shift work other than donning of a

uniform/equipment which Plaintiffs contend is compensable is preparation of the

deployment plan, a daily written plan prepared at the job site assigning personnel

to sites and activities for a particular shift, the contents of which are conveyed to

those personnel at the "muster," the roll call that occurs at the start of a shift.  *Id.*;

7

s*ee also* SAC ¶ 23 (describing performance of overtime work during supposed

meal breaks). (A-100).

The District Court did not purport to pass on those parts of Plaintiffs'

Second and Third Causes of Action which seek compensation under § 207(a)(1)

for off-the-clock pre-shift and post-shift overtime work not involving donning or

doffing of uniforms/equipment. SAC ¶¶ 20-23, 30, 33 (A-100, 102). Similarly,

the Court did not address Plaintiffs' Fourth Cause of Action which likewise seeks

compensation under § 207(a)(1) for "meal break" overtime work, SAC ¶¶ 23, 36

(A-100, 102), the First Cause of Action which seeks redress under §§ 207(a)(1)

and 207(o)(1) for payment of Plaintiffs for on-the-clock overtime work in time off

at straight time rather than at the rate of one and one-half hours of time off for

every hour of overtime worked, SAC ¶¶ 20-23, 27 (A-100, 101), the Fifth Cause of

Action which seeks redress under §§ 207(a)(1) and 207(o)(3)(A) for Defendants'

use of time off to compensate Plaintiffs for overtime worked notwithstanding that

Plaintiffs had accrued 480 hours of compensatory time off, SAC ¶¶ 21, 40 (A-100,

103), nor the Sixth Cause of Action which seeks redress under § 206(a)(1) for

minimum wage violations. Defendants did not seek full summary judgment on

these other claims; they sought only to challenge parts of those claims, for

example, as by arguing that those parts of Plaintiffs' claims based upon violations

of the FLSA occurring prior to June 22, 2012 were time-barred or that the Parks

8

Department, unlike the other defendants, was not suable. The District Court did not address, much less resolve, such contentions.

Notwithstanding the foregoing, at the conclusion of its January 15 Opinion and Order, the District Court directed the Clerk to close the case. (A-294). Accordingly, the Judgment prepared and signed by the Deputy Clerk and filed on January 16, 2015 recites that it is "ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion and Order dated January 15, 2015, Defendants' first argument prevails, and their motion is granted; accordingly the case is closed." (A-298). On February 3, 2015, the named Plaintiffs, "on their own behalves and on behalf of all the plaintiffs who opted in to this action whom [the District] Court found to be similarly situated to the named plaintiffs," filed a notice of appeal to this Court from the January 16, 2015 Judgment. (A-299).[3]

---

[3]    The named Plaintiffs had moved for leave to maintain a collective action "on behalf of themselves and the approximately sixty-nine (69) other persons who 'opted-in' to this action by filing consent to sue forms with this Court on or before September 15, 2013 and who did not thereafter withdraw from this action…" (A-274), on the ground that such other persons were "similarly situated" to the named Plaintiffs within the meaning of 29 U.S.C. § 216(b). *See* Doc. 165. That motion was granted. (A-277).

## STATEMENT OF FACTS RELEVANT TO ISSUE SUBMITTED FOR REVIEW

As AUPRs employed by the Parks Department, Plaintiffs' primary responsibilities are[4] to service the public making use of New York City's parks and pools and to enforce laws, including New York City rules and regulations, governing use of the parks and pools. Their activities include: providing directions and other information to persons seeking to use parks or pools; providing assistance to those persons involved in accidents or those who may be victims of unlawful activity and investigating such accidents or activity;[5] implementing crowd control procedures at special events; providing safety and educational information to the public; and issuing summonses to or making arrests of persons suspected of unlawful conduct.[6] Declaration of Marlena Poelz-Giga at ¶¶ 12, 22 (A-194, 197).

As AUPRs, Plaintiffs are regularly scheduled to work five days per week with a shift of 8 ½ hours each day. Eight of those hours are working time for which Plaintiffs are compensated. The remaining ½ hour in a daily shift is ostensibly for a meal break and, on that assumption, is not compensated. Thus,

---

[4]   *See* n. 2 *supra.*

[5]   AUPRs take statements from persons who may have been injured or victimized by crime and from persons who may have witnessed accidents or criminal activity. They transport injured persons in need of medical care that cannot be administered on site.

[6]   AUPRs may transport to a precinct for criminal processing persons arrested in the parks or pools.

each Plaintiff regularly works at least 40 hours on-the-clock per week. *See* Poelz-Giga Decl. at ¶ 5 (A-192).

Some of Plaintiffs' overtime work hours, that is, hours worked beyond the first 40 hours of work in a week, are not recorded by Defendants. The regularly recurrent pre-shift and post-shift work and the work performed during what is theoretically a meal break is normally performed off-the-clock. Defendants do not compensate Plaintiffs at all for such work. *See*, *e.g.*, Declaration of Domingo Sanchez at ¶¶ 12, 13 (A-226, 227), Poelz-Giga Decl. at ¶¶ 9, 18, 20 (A-193, 196); *see also* Plaintiffs' ("Pls.'") 56.1 Statement at ¶¶ 31, 44, 45, 46 (A-257-260, 264-266). Pre-shift tasks include "donning" or changing into a uniform, insuring certain equipment is in working order, putting on a utility belt to which various equipment must be attached, preparing a deployment plan for subordinate officers, and completing reports and other paperwork. *See*, *e.g.*, Poelz-Giga Decl. at ¶¶ 9-11 (A-193-194). Post-shift tasks include: "doffing" or changing out of the uniform and back into civilian clothes, taking off and putting away the utility belt and the equipment worn thereon, and completing reports, writing up summonses, and finishing other paperwork. *See*, *e.g.*, *id*. at ¶¶ 9-11, 13. Off-the-clock pre-shift and post-shift overtime activities occur regularly on virtually every day a Plaintiff works a scheduled shift. *See*, *e.g.*, Poelz-Giga Decl. at ¶ 9; Sanchez Decl. at ¶¶ 8, 11; Declaration of Robin Wickert at ¶ 7 (A-193, 225,

226, 234).  Irregularly and to varying degrees, Plaintiffs also work off-the-clock

during what is supposed to be, but is not, a ½ hour meal break.  Pls.' 56.1

Statement at ¶ 6 (A-257-259).  Off-the-clock overtime is performed without a

specific request or direction by, or specific approval, of a Captain.  *See*, *e.g.*, Poelz-

Giga Decl. at ¶ 20 (A-196), Sanchez Decl. at ¶ 12 (A-226).

      Defendants require Plaintiffs to be in uniform and to wear their utility

belt with equipment attached by the start of their shifts and to wear their

uniforms/equipment at all times while on duty.  *See* Poelz-Giga Decl., Ex. 74,

Appx. 3 (A-212).  Conversely, they prohibit Plaintiffs from wearing those

uniforms/equipment when not on duty, including when commuting to and from

work.  Pls. 56.1 Statement at ¶¶ 14-28 (A-246-257).  Effectively, this means that

Defendants require Plaintiffs to don their uniforms/equipment *after they report to*

*their command sites (workplaces)* but before the start of a shift and to doff same at

their command sites after the conclusion of a shift.  *Id.* at ¶ 2.  The record contains

substantial evidence that, pursuant to Parks' Department policy, AUPRs are

required to don and doff their uniforms at their respective commands.   The

overwhelming majority of the 37 Plaintiffs deposed, and 4 non-party Captains,

testified that it was Parks Department policy that AUPRs were not permitted to

commute to/from work in uniform and at least 25 Plaintiffs testified they were

specifically instructed at the Parks Department training academy not to do so.  Pls'

56.1 at ¶ 14.  Two Captains, Prince and Calderon, testified that a written operations

order exists prohibiting commuting in uniform.[7]  Pls' 56.1 at ¶¶ 18, 22.  Of the 79

Plaintiffs, only a handful testified that they ever wore any portion of their uniform

to work, and if they did, they did so infrequently and wore uniform pants only.

Pls' 56.1 at ¶ 26.[8]  On average, the time expended by Plaintiffs donning

uniforms/equipment prior to a shift is approximately 15 minutes.  Plaintiffs expend

somewhat less time doffing same post-shift.  Pls. 56.1 Statement at ¶¶ 11-13 (A-

239-246).[9]

## SUMMARY OF ARGUMENT

The District Court erred in granting summary judgment to Defendants

dismissing Plaintiffs' claims seeking compensation for Plaintiffs' pre-shift donning

---

[7]     Captain Prince supervised at least 37 Plaintiffs (Dep. of Prince at 16:23-25, 28:1-5), and Captain Calderon supervised at least 40 Plaintiffs (Dep. of Calderon at 30-32).

[8]     There is no record evidence that any AUPR ever donned/doffed their utility belt and the equipment thereon at any site other than his/her command post.

[9]     In contrast to off-the-clock work, on-the-clock overtime is normally performed at the specific request or direction of a Captain or with a Captain's specific approval.  *See*, *e.g.*, Poelz-Giga Decl. at ¶ 19 (A-196).  Such overtime is episodic and includes work performed in connection with special events (particularly during summer months), the provision of or arranging for medical assistance to persons injured in the parks/pools and arrests that necessitate processing of an arrestee beyond the regularly-scheduled shift.  Poelz-Giga Decl. at ¶ 19 (A-196); Sanchez Decl. at ¶ 12 (A-226).  Plaintiffs are compensated for on-the-clock overtime work either in "compensatory" time off, that is, they are paid in time off from future regularly-scheduled shift work, or in money.  At least through March 31, 2013, if Plaintiffs were compensated for on-the-clock overtime in compensatory time off, they were usually compensated at a rate of "straight time," *i.e.*, one hour off for each hour of overtime worked.  *See*, *e.g.*, Poelz-Giga Decl. at ¶ 19 (A-196).  When compensated in cash for such overtime, Plaintiffs were often paid at time and one-half their regular rates of pay but sometimes only at straight time.  *See*, *e.g.*, *id.*

and post-shift doffing of their uniforms/equipment. These donning and doffing activities are integral and indispensable to performance of Plaintiffs' principal activities and, hence, are properly deemed principal activities themselves, rather than preliminary and/or postliminary activities within the meaning of 29 U.S.C. § 254(a)(2) as the Court held.

Plaintiffs' duties include providing assistance to members of the public who frequent City parks and/or pools. This includes providing information to those seeking same and arranging for medical assistance or providing transportation for such assistance to those who may have suffered an injury or medical condition and taking information from persons who seek to report unlawful activity. Plaintiffs' duties also entail law enforcement responsibilities in which Plaintiffs may issue warnings to persons of possible violations, seek to arrest and potentially transport individuals and seek to obtain statements from potential witnesses where an arrest has been made. The performance of these duties effectively depends upon the identification of AUPRs to persons seeking assistance and to persons with whom Plaintiffs interact in enforcing Parks Department rules and regulations and/or the Penal Law. Such identifications depend upon AUPRs' wearing of uniforms/equipment. For these reasons, Plaintiffs' donning and doffing of uniforms/equipment are intrinsic elements of their principal activities with which they cannot dispense if they are to perform those principal duties.

14

The District Court erred in directing the Clerk to close the case. Defendants' motion was one for "partial" summary judgment limited to four issues. The Court decided only one of those and only granted summary judgment dismissing the donning and doffing claims. By directing the Clerk to close the case, the Court effectively rendered a final judgment against Plaintiffs on all claims.

## ARGUMENT

### I. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT DISMISSING PLAINTIFFS' DONNING AND DOFFING CLAIMS.

As the compensability of Plaintiffs' donning and doffing claims was decided on summary judgment dismissing those claims, this Court's review of the decision below on those claims is *de novo*, resolving all ambiguities and drawing all permissible factual inferences in favor of Plaintiffs. *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013).

### A. Governing Standard And Application Thereof

The District Court held that the time spent by Plaintiffs donning and doffing AUPR uniforms/equipment is noncompensable under the FLSA because the donning and doffing involves "generic protective gear" tantamount to that held noncompensable in *Gorman v. Con. Ed. Corp.*, 488 F.3d 586, 589 (2d Cir. 2007). This focus fails to take into account that the wearing of uniforms/equipment is not

simply a protective measure, it is the essential means of identifying the AUPRs to the public as Parks Department representatives so that they may perform their responsibilities of providing information and/or assistance to persons seeking same and so that they can perform their law enforcement responsibilities.

As enacted in 1938, the FLSA did not expressly define "work" or "workweek."  In *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944), the Supreme Court defined the former as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  Shortly thereafter, in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-691 (1946), the Court defined the latter to "include[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace."  Congress soon acted to narrow those broad definitions.  In Section 4 of the Portal-to-Portal Act, 61 Stat. 86-87, enacted in 1947, it exempted employers from liability for future claims based on the following activities, among others:

> activities which are preliminary to or postliminary to said
> principal activity or activities,
> which occur either prior to the time on any particular workday
> at which such employee commences, or subsequent to the time
> on any particular workday at which he ceases, such principal
> activity or activities.

(Codified at 29 U.S.C. § 254(a)(2)).[10]

      In *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956), the Supreme Court held that notwithstanding § 254(a)(2), the "activities performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed[.]"  Any activities that are an integral and indispensable part of the principal activities for which workmen are employed are themselves "principal"[11] activities for purposes of § 254(a).  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005).

      In *Steiner*, the Court held compensable time employees at a battery plant spent showering and changing clothes because the chemicals in the plant were toxic and the employer acknowledged that the employees' clothes-changing and showering were "indispensable to the performance of their productive work and integrally related thereto."  350 U.S. at 249, 251.  In *Mitchell v. King Packing Co.*, 350 U.S. 260, 262 (1956), the Supreme Court held compensable time

---

[10]     This legal history was traced in *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 517 (2014).

[11]     "Principal" activities are those "which an employee is employed to perform."  *Gorman*, 488 F.3d at 590 (quoting 29 CFR § 790.8(a)).  This regulation is based upon the language of § 254(a)(1).  The Department of Labor has noted that "principal" activities "should be construed liberally" to "include any work of consequence performed for an employer, no matter when the work is performed."  29 CFR § 790.8(a).

meatpacking employees devoted to sharpening knives because dull knives would

"slow down production" on the assembly line, adversely "affect the appearance of

the meat as well as the quality of the hides," "cause waste" and lead to "accidents."

In *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 874 (2014), the Court held that the

time associated with donning and doffing various items of protective gear that an

employer required employees to wear "would otherwise be compensable under the

Act" but for the applicability of 29 U.S.C. § 203(o). *See also Kosakow v. New

Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 717-718 (2d Cir. 2001) (powering

up and testing x-ray machine integral to taking x-rays); *Reich v. N.Y.C. Transit

Auth.*, 45 F.3d 646, 650-651 (2d Cir. 1995) (feeding, training, walking dog integral

to work of K-9 officer).  On the other hand, in *IBP*, 546 U.S. at 42, the Court held

noncompensable time spent by poultry-plant employees waiting to don protective

gear because the waiting was "two steps removed from the productive activity on

the assembly line."  *See also Gorman*, 488 F.3d at 594 (donning and doffing

generic protective gear not integral to principal activities of power plant

employees).

   In *Integrity Staffing*, the Supreme Court provided its most recent and

most complete explanation of what it meant in *Steiner* by "integral and

indispensable."  The Court first cited ordinary dictionary definitions of those terms.

"Integral" means "[b]elonging to or making up an integral whole; constituent,

component; spec[ifically] necessary to the completeness or integrity of the whole; forming an intrinsic portion or element, as distinguished from an adjunct or appendage." 135 S. Ct. at 517 (citations omitted). An "indispensable" duty is one "[t]hat cannot be dispensed with, remitted, set aside, disregarded, or neglected." *Id.* (citations omitted). *See also Gorman*, 488 F.3d at 592. The Court then held:

> An activity is…integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities.

135 S. Ct. at 517.

In explicating this standard, the Court quoted with approval several regulations promulgated by the U.S. Department of Labor. It quoted the general rule in 29 CFR § 790.7(g) that "when performed under the conditions normally present," activities such as "changing clothes" are ordinarily "preliminary" or "postliminary" for purpose of § 254(a)(2). At the same time, it referred to 29 CFR § 790.8(c) which it expressly noted was "consistent" with the Court's approach in *Steiner*, *King Packing* and *IBP*. 135 S. Ct. at 518. It quoted approvingly from that regulation: "Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance." The Court added:

> As an illustration, [§ 790.8(c)] explain[ed] that the time spent by an employee in a chemical plant changing clothes would be

19

> compensable if he "c[ould not] perform his principal activities without putting on certain clothes" but would not be compensable if "changing clothes [were] merely a convenience to the employee and not directly related to his principal activities."

*Id.*[12]  In *Gorman*, this Court quoted with approval 29 CFR § 790.7(d) which it described as "noting, for example, that 'the carrying by a logger of a portable power saw or other heavy equipment (as distinguished from ordinary hand tools) on his trip into the woods to the cutting area…is not *segregable from* the simultaneous performance of his assigned work' and is thus integral to his principal activities."  488 F.3d at 593 (emphasis by this Court).

In *Integrity Staffing*, the Court held that neither employees' waiting to pass through metal detectors before they left the workplace at the end of the workday nor their actual passing through the detectors, in order to prevent theft, was integral and indispensable to the employees' duties.  Such activities "were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment."  Furthermore, "Integrity Staffing could have eliminated the screenings altogether without impairing the employees' ability to complete their work."  135 S. Ct. at 518.

---

[12]     As the Supreme Court suggested in *Steiner*, 350 U.S. at 254-255, and made explicit in *Sandifer*, 134 S. Ct. at 874, any notion to the effect that changing clothes at the beginning or end of a workday is always noncompensable would be inconsistent with 29 U.S.C. § 203(o), which excludes changing clothes at the beginning or end of a workday from compensable work in specifically-defined circumstances.

On an appeal such as the instant one, this Court applies the same summary judgment burdens and principles as a district court, acting as if the Rule 56 motion were being presented to this Court in the first instance. *See Summa*, *supra* (appellate review of grant of summary judgment is *de novo*). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material within the meaning of Rule 56(c) if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The party moving for summary judgment has the burden to demonstrate that there is no genuine dispute as to any material fact. *See*, *e.g.*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Choosing between conflicting versions of facts is the role of a fact finder at a trial, not a federal court on a Rule 56 motion. *See*, *e.g.*, *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) (citing authorities). The only question on a Rule 56 motion is whether "a fair minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. If so, a defendant's motion for summary judgment must be denied. The foregoing

summary judgment rules are particularly important here because "[w]hether an activity is 'integral and indispensable' to an employee's principal activities is a fact-dependent inquiry." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 359 (2d Cir. 2011).

As shown above at pages 12-13, Plaintiffs are required to wear their uniforms/equipment at all times while on duty. Conversely, they are prohibited from wearing same when not on duty. Plaintiffs are subject to disciplinary action for any failure to comply with these rules, which are part of the Parks Department Uniform Code. Defendants' juxtaposition of these rules effectively imposes a requirement on Plaintiffs that they don their uniforms/equipment at their command posts immediately before their shifts commence and doff their uniforms/equipment at the command posts immediately after their shifts have concluded.

Plaintiffs are required to wear: pants, shirt, patch, tie, shield, nameplate, insignia, jacket, hat, shoes, socks, belt, rain gear (based on weather), working wristwatch and bulletproof vest. Plaintiffs are also required to wear a utility belt to which must be attached: gloves, one pair of Smith & Wesson handcuffs with case and key, pen holder (black, double, with 2 black pens), flashlight and holder, whistle and whistle holder, mace and holder, PR-24 Baton

and holder, memo books, summons book, CB summonses, universal summonses, and Summons Code cards.  (A-215-216).[13]

Plaintiffs take an average of approximately 15 minutes each day to don their uniforms/equipment.  Substantial effort is involved, in part due to the fact that the Parks Department prescribes in exacting detail how uniforms/equipment are to be worn.  The Parks Department Uniform Code prescribes that insignia must be pinned on both sides of uniform shift collar; medals must be worn ¼ inch above the badge; pants must be regulation drab pressed with a crease; short sleeve shirts must be worn with top button open; long sleeve shirts must be worn with a black clip-on tie with regulation clasp; nameplate must be worn on the left side; chin strap on hat must be adjusted so that the brim is parallel to the ground and buckle on hat will rest on the back of the head; shirts and jackets must bear patches 1 ½ inches below the left shoulder seam.  The utility belt must be centered; radio must be worn on the right hip, pen holder is to be placed just left of the radio; summons pouch is worn on the left hip; handcuffs must be worn in the center back and the flashlight placed between handcuffs and summons holder.  (A-215-216).

The principal duties of an AUPR involve some where an AUPR is approached in or near a New York City park or pool by one or more members of the public seeking assistance and some where an AUPR approaches one or more

---

[13]     It should be noted that while working in the AUPR title, virtually all Plaintiffs fulfill the duties of a Parks Enforcement Patrol Officer.

members of the public in a law enforcement capacity. A person or persons in a park might seek directions to the location of a special event or to a particular part of a park. Or they might seek information as to the date and/or time of an event in the park. A person or persons might seek assistance for someone who has suffered an apparent injury. Or a person or persons might seek to report the commission of a crime. In each of these circumstances, the person or persons will usually want to talk with a knowledgeable representative of the Parks Department in order to obtain assistance.

One of the principal activities for which AUPRs are employed is the provision of such assistance. But whether an AUPR can fulfill that responsibility is dependent in the first instance on whether (s)he is identifiable as a Parks Department representative. It is the wearing of the AUPR uniform (together with equipment) which makes AUPRs identifiable as such. As more than one Plaintiff has noted, "Parks Department supervisors frequently tell AUPRs that our role is to be a highly visible uniformed presence" in New York City's parks and pools. (Decl. of Poelz-Giga., ¶ 12) (A-194); *see also* Declaration of Ralph Baselice, ¶ 8 ("The Parks Department often says that our job is to be a 'highly visible uniformed presence.' The uniform makes us visible to members of the public who may need to seek out our assistance. The uniform also lets the public know that we are authorized to enforce Parks Department rules and regulations, and to make arrests

24

and issue summonses.") (A-230). *Cf.*, *Lemmon v. City of San Leandro*, 538 F. Supp. 2d 1200, 1204 (N.D. Cal. 2007) ("components of the police uniform trigger instant recognition of police officers").

The identification of AUPRs as Parks Department representatives through the wearing of uniforms/equipment is a simultaneous and inherent element of everything AUPRs seek to do while on duty. It may rightly be said that the wearing of uniforms/equipment while on duty is, in the circumstances of Parks Department AUPRs, a principal activity of those AUPRs. *See* n. 11 *supra*. Donning and doffing of uniforms/equipment is an intrinsic element of an AUPR's principal activities. If AUPRs dressed no differently than the members of the public they seek to serve, they would be unable to effectively serve the public. As donning and doffing of uniforms/equipment is required of AUPRs at all times they are on duty, it is apparent that such activity is also one with which they cannot dispense if they are to perform their principal duties. (We note that Defendants do not seriously dispute that Plaintiffs' donning and doffing of uniforms/equipment is indispensable to the performance of their principal duties.)

**B.    The Decision Below**

In order to determine whether a specific pre-shift or post-shift activity performed by employees is integral and indispensable to performance of a principal activity, it is necessary to identify the principal activities and then to

analyze the nature and extent of the relationship of the pre-shift or post-shift

activity to the principal activities. The District Court's discussion of Plaintiffs'

principal activities and the relationship of their donning and doffing of

uniforms/equipment to those principal activities was three sentences long:

> According to plaintiffs, their responsibilities as AUPRs include, *inter alia*, "providing assistance to the public in New York City parks and pools," giving "aid to those persons who may have suffered an injury [or] been victimized by a crime," "advising people of their legal obligations," and, if need be, "making arrests."
>
> Even cast in the light most favorable to plaintiffs, however, this list merely underscores the deficiency of their legal position. The donning and doffing of uniforms and security equipment is not integral to any of these tasks.

(Citation omitted) (A-289). With respect, this *ipse dixit* did not adequately analyze

the relationship of AUPRs' wearing of uniforms and equipment to the performance

of their principal responsibilities. This is because there was no acknowledgment

that a principal reason AUPRs wear uniforms is to identify AUPRs to the public as

Parks Department personnel, so that if persons in a park or pool seek assistance for

any of several possible reasons or if the AUPRs are involved in a law enforcement

activity, the persons seeking assistance or who are the subjects of the law

enforcement activity will know that Plaintiffs are Parks Department

representatives, not members of the general public. In short, the District Court

erroneously assumed throughout its opinion that protecting AUPRs is the sole

purpose underlying the requirement that AUPRs wear uniforms/equipment.

26

This flaw led to the District Court's reliance on cases which are distinguishable.  In *Gorman*, which did not concern donning or doffing of a uniform, this Court held that donning and doffing of "generic protective gear" was not compensable under the FLSA.  The court below stated that Plaintiffs' donning and doffing of their uniforms/equipment was "tantamount" to the donning and doffing of protective gear in *Gorman*.  It also held that *Haight v. The Wackenhut Corp.*, 692 F. Supp. 2d 339 (S.D.N.Y. 2010), and *Edwards v. City of New York*, No. 08 Civ. 3134, 2011 WL 3837130 (S.D.N.Y. Aug. 29, 2011), "are on all fours with this case."  (A-287).  The *Gorman* plaintiffs who sought compensation for donning and doffing generic protective gear were private employees working at a power plant located on private property to which access was restricted and limited to a regular work force.  In *Haight*, the plaintiffs who sought compensation for donning and doffing of hardhats, safety glasses, steel-toed boots, a gun holster and inclement weather gear, which the court found was "generic protective gear" and thus noncompensable under *Gorman*, *see* 692 F. Supp. 2d at 345, were private employees providing guard and security services at the same plant as was involved in *Gorman*.  In *Edwards*, corrections officers sought compensation for donning and doffing uniforms and equipment the court likewise found indistinguishable from the generic protective gear in *Gorman*, 2011 WL 3837130, at * 7, in connection

27

with performance of their duties at Rikers Island and other detention facilities in New York City.[14]

In none of these cases did the duties of the plaintiffs involve extensive interaction with, much less servicing of, the public at large. None of them involved the interest in the identification of the plaintiffs to the public at large (or anyone else) as persons likely qualified to provide assistance of one sort or another. Even assuming *arguendo* that the "generic protective gear" rule applied in *Gorman*, *Haight* and *Edwards* would satisfactorily dispose of a *security* rationale for Plaintiffs' wearing of equipment, it is not responsive to the identification purpose behind Plaintiffs' wearing of uniforms (together with equipment). *See* 29 CFR § 790.8(a) (one principal activity need not predominate over others; employee could be employed to perform multiple principal activities).

In *Edwards*, in arriving at the conclusion that the activity in question was not compensable, the court specifically relied in part on the circumstance that the plaintiffs were not required to perform the donning and doffing at the workplace. 2011 WL 3837130, at * 7. And the court relied on *Bamonte v. City of Mesa*, 598 F.3d 1217, 1232-1233 (9th Cir. 2010), which, it noted, in turn relied on

---

[14] The court below stated that making arrests "was also before the courts in *Haight* and *Edwards*" and "was unavailing there." (A-289). It is not clear what the basis was for this statement. The opinions in those cases do not identify making arrests as a principal activity of the plaintiffs there, and neither court relied upon such a circumstance. It would seem doubtful that the plaintiffs in *Haight* even had lawful authority to effect an arrest. And any arrests by the plaintiffs in *Edwards* almost certainly would have been of persons who knew previously that the plaintiffs there were corrections officers.

28

the circumstance that the plaintiffs there were not required to change at work. *Id.*, at * 8. (Thus the view of the court below that evidence that Plaintiffs were required to don and doff at their workplaces is irrelevant, *see* A-289-290, is at odds with *Bamonte* and *Edwards*. It is also at odds with *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 903, 911-912 (9th Cir. 2004); *Adams v. Alcoa, Inc.*, 822 F. Supp. 2d 156, 164 (N.D.N.Y. 2011); *Abbe v. City of San Diego*, Nos. 05cv1629, 06cv0538, 2007 WL 4146696, at * 3-6 (S.D. Cal. Nov. 9, 2007), *aff'd*, 444 F. Appx. 189 (9th Cir. 2011); *Lee v. Am-Pro Protective Agency, Inc.*, 860 F. Supp. 325, 326 and 327 n. 2 (E.D. Va. 1994), all of which rely on the presence or absence of a requirement that donning and doffing be performed at the workplace in determining whether donning and doffing is integral and indispensable. *See also Wage & Hour Advisory Memorandum No.* 2006-2 (May 31, 2006) (same).

The District Court referred to a "core holding" in *Steiner* that certain preliminary and postliminary activities are noncompensable "regardless of where they occur." (A-290). A review of the opinion in that case compels rejection of the view that there was such a "core holding." The activities in question in *Steiner* occurred at the workplace, and the Supreme Court held they were integral and indispensable. There is nothing in that opinion, much less a "core holding," to the effect that the location of the activity at issue there was, or that the location of any other pre-shift or post-shift activity is, always irrelevant. It should be noted that

just because the location of an activity is not *sufficient*, by itself, to resolve whether that particular activity is integral or indispensable to the performance of a principal activity does not mean such a location may not be *relevant* to the resolution of that question, particularly if an employer requires the activity to be performed at a particular location.[15]

Finally, the District Court's rejection of Plaintiffs' reliance on that part of 29 CFR § 790.8(c) which the Court quotes, on the basis that said regulation "is flatly at odds with the logic of the relevant case law" (A-291) is itself flatly at odds with the recent opinion in *Integrity Staffing* in which the Supreme Court quoted with approval and relied upon this very regulation, not once but twice. *See* 131 S. Ct. at 518, 519.

---

[15] The same is true with respect to other issues that bear on whether pre-shift or post-shift activity is compensable. Whether an activity is integral or indispensable cannot be determined "merely" from the fact that an employer required the activity, nor does that issue "turn[ ] on "whether the activity is for the benefit of the employer." *Integrity Staffing*, 135 S. Ct. at 519. But this does not mean that whether an employer required an activity or whether an activity was for the employer's benefit may not be *relevant* to determination of the compensability issue. *See*, *e.g.*, this Court's opinion in *NYC Transit Auth.*, 45 F.3d at 650 ("The more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable.").

## II. THE DISTRICT COURT ERRED IN DIRECTING THE CLERK TO CLOSE THE CASE, THEREBY AWARDING JUDGMENT AGAINST PLAINTIFFS ON ALL CLAIMS NOTWITHSTANDING THAT ONLY PLAINTIFFS' DONNING AND DOFFING CLAIMS WERE THE SUBJECT OF DEFENDANTS' MOTION FOR "PARTIAL" SUMMARY JUDGMENT AND THE COURT DID NOT RESOLVE ANY OF PLAINTIFFS' REMAINING CLAIMS.

As set forth above, this action seeks compensation under the FLSA for Plaintiffs' performance of both "off-the-clock" and "on-the-clock" work. The regularly-occurring "off-the-clock" claims include, but are not limited to, the donning and doffing claims on which Defendants obtained summary judgment. They also include claims concerning the performance of tasks such as preparation of deployment plans, completing reports, and writing up summonses. *See* SAC, ¶¶ 21-22, 30, 33 (A-100-102). The "off-the-clock" claims further include claims pertaining to the performance of work during unpaid, supposed "meal breaks." *See* SAC, ¶¶ 23, 36 (A-100, A-102). Plaintiffs' "on-the-clock" claims include claims pertaining to Defendants' failures to compensate Plaintiffs at the proper rate – *i.e.*, one and one half times Plaintiffs' regular rates of pay– for all work performed in excess of 40 hours per week when "paid" in compensatory time off, *see* 29 U.S.C. § 207(o)(1), or in cash and those concerning Defendants' payments to Plaintiffs of overtime compensation in comp time notwithstanding that Plaintiffs had accrued

31

overtime in excess of 480 hours. *See* 29 U.S.C. § 207(o)(3)(A). (SAC, ¶¶ 20, 27) (A-99, A-101).

Defendants' motion for partial summary judgment was limited in scope to four issues: (1) whether parts of Plaintiffs' claims are time-barred; (2) the compensability under the FLSA of the time spent donning and doffing uniforms/equipment; (3) Defendants' liability for Plaintiffs' off-the-clock claims to the extent Defendants contend they did not have actual or imputed knowledge that Plaintiffs were working overtime hours in excess of their regularly scheduled workweek; and (4) whether the Department of Parks and Recreation is a non-suable entity. *See* A-75. Other than the subset of Plaintiffs' "off-the-clock" claims relating to donning and doffing of uniforms/equipment, Defendants' motion for "partial" summary judgment did not seek full summary adjudication of any of the above claims (A-75).

The only claim determined by the District Court was the one for compensation for Plaintiffs' pre-shift donning and post-shift doffing of uniforms/equipment. It did not purport to decide any other claims. Nevertheless, it directed the Clerk to close the file, thereby effectively rendering final judgment against Plaintiffs on all their other claims as well. Given that the vast majority of Plaintiffs' claims were not subjects of Defendants' motion for partial summary

judgment and were not decided by the District Court, it was error for that Court to direct the Clerk to close the case.

A district court may not grant summary judgment against a party *sua sponte* without first determining that "the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). In *Priestly*, a plaintiff moved for summary judgment against two of three defendants. The district court granted summary judgment for the plaintiff against all defendants. This Court held that it was error to grant summary judgment in whole or in part against the third defendant without giving it the opportunity to be heard on whether there was a genuine issue of material fact to be tried. *Id.*, *cf.*, *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109 (2d Cir. 1999). In the instant case, the District Court did not even purport to grant summary judgment in whole or in part against Plaintiffs on their remaining claims. It simply directed the Clerk to close the case without deciding those remaining claims on summary judgment or otherwise, thereby precluding Plaintiffs from being heard on those claims. *A fortiori* this was error.

## CONCLUSION

For the foregoing reasons, the grant of summary judgment in favor of Defendants dismissing Plaintiffs' pre-shift donning and post-shift doffing claims should be reversed.  The balance of the District Court's judgment should be vacated and the remaining claims reinstated.  On remand, the District Court should be free to consider the contentions raised on Defendants' April 3, 2014 motion for partial summary judgment that were not previously passed upon by the District Court.

Dated:  May 7, 2015

Respectfully submitted,

GLADSTEIN, REIF & MEGINNISS, LLP

By:   /s/  James Reif             
        James Reif (JR2974)
        Amelia K. Tuminaro (AT3490)
817 Broadway, 6th Floor
New York, New York 10003
(212) 228-7727
jreif@grmny.com
atuminaro@grmny.com

Attorneys for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.      This brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B) because it contains 8,138 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it

has been prepared in a proportionally spaced typeface using Microsoft Office

Word 2007 in 14 point Times New Roman font.

Dated:  May 7, 2015

       /s/  James Reif
        James Reif
       Attorney for Plaintiffs-Appellants