# 15-0315-CV

## United States Court of Appeals
## for the Second Circuit

HENRY PEREZ, on behalf of themselves and others similarly
situated, BASELICE RALPH, on behalf of themselves and
others similarly situated, JUAN BAYRON, on behalf of
themselves and others similarly situated, JERRY CORDERO,
on behalf of themselves and others similarly situated,
RONALD EASON, on behalf of themselves and others
similarly situated, DONALD KOONCE, on behalf of
themselves and others similarly situated, JOSEPH ORO, on
behalf of themselves and others similarly situated, RUBEN
RIOS, JR., on behalf of themselves and others similarly
situated, PEDRO ROSADO, on behalf of themselves and
others similarly situated, and DEREK G. WALTHER, on
behalf of themselves and others similarly situated,

*Plaintiffs-Appellants,*

*(Caption Continued on Inside Cover)*

On Appeal from the United States District Court
for the Southern District of New York

## BRIEF FOR APPELLEES

DEVIN SLACK
*of Counsel*

August 6, 2015

ZACHARY W. CARTER
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees
100 Church Street
New York, New York 10007
212-356-0817
dslack@law.nyc.gov

Reproduced on Recycled Paper

---

ELIZABETH K. BESOM,

*Plaintiff,*

*against*

THE CITY OF NEW YORK, MAYOR BILL DE BLASIO, THE NEW YORK CITY DEPARTMENT OF PARKS & RECREATION, and MITCHELL J. SILVER, in his official capacity as Commissioner of the Department of Parks & Recreation,

*Defendants-Appellees.*

---

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................iii

PRELIMINARY STATEMENT.............................................. 1

ISSUES PRESENTED ............................................................ 4

STATEMENT OF THE CASE ................................................ 5

    A.    Statutory Background............................................ 5

        1.    The Supreme Court's Early and Expansive View of Compensable Work under the FLSA ........................ 5

        2.    Congress's Repudiation of the Supreme Court's Expansive View of Compensable Work in the Portal-to-Portal Act........................................ 7

    B.    Factual Background................................................ 9

    C.    Procedural History ............................................... 13

SUMMARY OF ARGUMENT ................................................ 17

ARGUMENT ......................................................................... 19

    POINT I: ASSOCIATE URBAN PARK RANGERS ARE NOT ENTITLED TO PAY FOR TIME SPENT DONNING AND DOFFING THEIR UNIFORMS AND EQUIPMENT.................... 19

    A.    Associate Urban Park Rangers' Donning-and-Doffing Undertakings Are Non-Compensable Preliminary and Postliminary Activities. ........................................ 19

        1.    An "Identification Purpose" Does Not Render Associate Urban Park Rangers' Uniforms and Equipment Integral to their Principal Work.............. 20

i

# TABLE OF CONTENTS (cont'd)

**Page**

2. Plaintiffs' Argument about the Location of their Donning-and-Doffing Undertakings Is Wrong on Both the Law and the Facts. ....................................... 28

B. In the Alternative, If any Donning-and-Doffing Time Qualified as a Principal Activity, It Would Be *De Minimis* and Thus Non-Compensable .................................. 33

C. In the Alternative, Donning-and-Doffing Time Is Non-Compensable By Virtue of a Custom or Practice Accepted in Collective Bargaining. ....................................... 36

1. The Entire Donning-and-Doffing Period Qualifies as Time Spent "Changing Clothes." ............................ 37

2. A "Custom" or "Practice" Under the Relevant CBAs Treated Clothes-Changing Time as Non-Compensable. .............................................. 40

POINT II: PLAINTIFFS HAVE WAIVED ANY ARGUMENT OPPOSING DEFENDANTS' REQUEST FOR PARTIAL SUMMARY JUDGMENT ON THEIR OTHER CLAIMS .............. 45

POINT III: THE ACTION SHOULD BE REMANDED FOR FURTHER PROCEEDINGS ON THE REMAINDER OF PLAINTIFFS' RATE-OF-PAY CLAIMS ....................................... 48

CONCLUSION ........................................................... 50

CERTIFICATE OF COMPLIANCE ..................................... 51

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Albrecht v. Wackenhut Corp.*,
379 F. App'x 65 (2d Cir. 2010) ............................................................ 25

*Allen v. McWane Inc.*,
593 F.3d 449 (5th Cir. 2010) .................................................. 37, 41, 42

*Anderson v. Cagle's Inc.*,
488 F.3d 945 (11th Cir. 2007) ...................................................... 41, 42

*Anderson v. Mount Clemens Pottery Co.*,
328 U.S. 680 (1946) ...................................................................... *passim*

*Arcadi v. Nestle Food Corp.*,
38 F.3d 672 (2d Cir. 1994) .................................................................. 41

*Bamonte v. City of Mesa*,
598 F.3d 1217 (9th Cir. 2010) .................................................. 29, 30, 32

*Dow Jones & Co. v. Int'l Sec. Exch., Inc.*,
451 F.3d 295 (2d Cir. 2006) ................................................................ 47

*Edwards v. City of New York*,
No. 08-cv-3134, 2011 U.S. Dist. LEXIS 97134
(S.D.N.Y. Aug. 29, 2011) .................................................................... 25

*Franklin v. Kellogg Co.*,
619 F.3d 604 (6th Cir. 2010) .............................................................. 37

*Gorman v. Consol. Edison Corp.*,
488 F.3d 586 (2d Cir. 2007) ....................................................... *passim*

*Haight v. Wackenhut Corp.*,
692 F. Supp. 2d 339 (S.D.N.Y. 2010) ................................................. 25

iii

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*IBP, Inc. v. Alvarez,*
  546 U.S. 21 (2005) .................................................................. 21, 26

*Integrity Staffing Solutions, Inc. v. Busk,*
  135 S. Ct. 513 (2014) ................................................................ 22

*Jones v. Town of E. Haven,*
  691 F.3d 72 (2d Cir. 2012) ....................................................... 43

*JP Morgan Chase Bank v. Altos Hornos de Mex.,
  S.A. de C.V.,*
  412 F.3d 418 (2d Cir. 2005) .................................................... 47

*Lindow v. United States,*
  738 F.2d 1057 (9th Cir. 1984) .................................................. 35

*McElwee v. Cnty. of Orange,*
  700 F.3d 635 (2d Cir. 2012) .................................................... 33

*Pirant v. U.S. Postal Serv.,*
  542 F.3d 202 (7th Cir. 2008), *modified in part,*
  No. 07-1055, 2008 U.S. App. LEXIS 24371
  (7th Cir. Dec. 3, 2008) ............................................................ 27

*Potter v. District of Columbia,*
  558 F.3d 542 (D.C. Cir. 2009) ................................................. 46

*Priestley v. Headminder, Inc.,*
  647 F.3d 497 (2d Cir. 2011) .................................................... 45

*Rosano v. Twp. of Teaneck,*
  754 F.3d 177 (3d Cir. 2014) ............................................. 39, 41, 42

*Sandifer v. U.S. Steel Corp.,*
  134 S. Ct. 870 (2014) ....................................................... 37, 38, 39

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Singh v. City of New York,*
    524 F.3d 361 (2d Cir. 2008) ........................................................ 33, 34

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) ............................................................................ 24

*Steiner v. Mitchell,*
    350 U.S. 247 (1956) ......................................................... 21, 22, 23

*Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123,*
    321 U.S. 590 (1944) ............................................................. 6, 29

*United States v. Dunkel,*
    927 F.2d 955 (7th Cir. 1991) ......................................................... 46

**Statutes**

Fair Labor Standards Act of 1938,
    Pub. L. No. 75-718, 52 Stat. 1060 (1938) .................................. *passim*

Portal-to-Portal Act of 1947,
    Pub. L. No. 80-49, 61 Stat. 84 (1947) ....................................... *passim*

29 U.S.C. § 202(a) ..................................................................................... 5

29 U.S.C. § 203(*o*) ...................................................................... 37, 38, 41

29 U.S.C. § 206 .......................................................................................... 5

29 U.S.C. § 207 .......................................................................................... 5

29 U.S.C. § 216(b) ................................................................................... 13

29 U.S.C. § 254(a)(1) ................................................................................ 8

29 U.S.C. § 254(a)(2) .......................................................................... 8, 20

v

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

29 U.S.C. § 254(b) ......................................................................... 8

29 U.S.C. § 255(a) ....................................................................... 31

29 U.S.C. § 256 ............................................................................ 31

**Legislative History**

93 Cong. Rec. 2081 (1947) ........................................................... 7

S. Rep. No. 75-884 (1937) ............................................................ 5

S. Rep. No. 80-48 (1947) ........................................................ 7, 8

**Rules**

FED. R. CIV. P. 54(b) ................................................................. 48

FED. R. EVID. 1007 .................................................................... 31

## PRELIMINARY STATEMENT

Plaintiffs are or were associate urban park rangers employed by the New York City Department of Parks and Recreation. They now seek to compel the City to pay them for minutes they spend putting on and taking off their uniforms and equipment before and after shifts. Plaintiffs do not claim that they have ever been paid for those minutes or were ever told they would be. Nor do they claim that their union ever bargained for them to receive such payments from the City.

The U.S. District Court for the Southern District of New York (Scheindlin, J.) correctly held that the Fair Labor Standards Act of 1938 (the FLSA) does not require the City to pay associate urban park rangers for putting on and taking off—or "donning" and "doffing"—their uniforms and equipment. Decades ago, in the Portal-to-Portal Act of 1947, Congress recognized what every working person knows: it is to be expected that some time will be required to get ready for work, unwind after it, and travel to and from it. Congress refused to mandate that all employers and employees separately track those minutes, understanding instead that those things are typically accounted for in

the rate of pay, and that parties may always bargain for a different approach.

The district court properly held that associate urban park rangers are not among the limited class of employees whose donning-and-doffing activities should be deemed an "integral and indispensable" part of their core productive work, such that compensation is mandated by federal law. Park rangers are sharply different, for example, from workers in a chemical plant who must put on heavy protective gear to survive—a situation where donning-and-doffing time has been found compensable. Plaintiffs' argument is that their uniforms help identify them to the public—but the same is true for workers at Target and Best Buy and Applebee's and innumerable other workplaces. That is not enough to make the donning and doffing of a work uniform "integral and indispensable" to an employee's core productive work under the FLSA. Plaintiffs' argument would open litigation floodgates and ignores the practical realities of working life that led Congress to pass the Portal-to-Portal Act.

Plaintiffs' donning-and-doffing claims also fail for two additional and independent reasons. First, even assuming that some of the

minutes that park rangers spend donning and doffing their uniforms and equipment could be considered an integral and indispensable part of their core productive work (and none can), those minutes would nonetheless be non-compensable as *de minimis*. And second, even if plaintiffs could surmount both these other hurdles, their donning-and-doffing time would be non-compensable because a custom or practice under their collective bargaining agreements with the City treats it that way.

For these reasons, any one of which is sufficient on its own, the Court should uphold the district court's grant of summary judgment to defendants on plaintiffs' donning-and-doffing claims. The Court should also affirm the judgment below insofar as it granted defendants' motion to award partial summary judgment on plaintiffs' other claims, as plaintiffs have waived any argument concerning the merits of these aspects of their complaint by failing to raise such an argument in their opening brief to this Court.

## ISSUES PRESENTED

1.    Are defendants entitled to summary judgment on plaintiffs' donning-and-doffing claims, where (a) the minutes that associate urban park rangers spend donning and doffing their uniforms and equipment constitute non-compensable "preliminary" and "postliminary" activities, (b) even assuming that some of those minutes could be treated as a principal activity, such time would be insubstantial and non-compensable under the *de minimis* doctrine, and (c) the donning-and-doffing time is also non-compensable by virtue of a custom or practice accepted in the course of collective bargaining?

2.    Are defendants entitled to summary judgment on plaintiffs' other claims—those that seek compensation for other tasks performed before or after their shifts or during their meal breaks, those asserted against the Parks Department, and those accruing outside the limitations period—where plaintiffs have waived any argument about the merits of these aspects of their complaint by failing to raise such an argument in their opening brief?

3.     Should the action be remanded to allow the district court to address the one set of remaining claims that was not within the scope of defendants' motion for partial summary judgment?

## STATEMENT OF THE CASE

### A.     Statutory Background

Congress enacted the FLSA, Pub. L. No. 75-718, 52 Stat. 1060 (1938), to improve the lives of the "undernourished, poorly clad, and ill-housed" and those workers who, despite working "long hours" "injurious to health," were paid "wages too low to buy the bare necessities of life." S. Rep. No. 75-884, at 3-4 (1937); *see also* 29 U.S.C. § 202(a). Through the Act, Congress did not attempt to regulate all aspects of the employment relationship, but instead looked to set "a few rudimentary standards" targeted at "socially and economically oppressive" business practices. S. Rep. No. 75-884 at 3.

### 1.     The Supreme Court's Early and Expansive View of Compensable Work under the FLSA

The FLSA introduced the minimum wage and overtime compensation for work performed by covered employees beyond a standard forty-hour workweek. *See* 29 U.S.C. §§ 206-207. Although the concept of "work" lies at the heart of these compensation mandates,

Congress did not define that concept. The Supreme Court soon filled the void with an expansive view of compensable work, defining the concept to capture any activity "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).

*Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680 (1946), represented the high water mark of this expansive view of compensable work. In *Mount Clemens*, the Supreme Court found that pottery factory workers were entitled to compensation for activities performed before and after their productive work on the factory floor. *See id.* at 690-94. The preliminary and postliminary activities that the Court found to be compensable included tasks like walking to workstations and, more relevant here, the donning and doffing of work-related clothing and equipment like aprons, overalls, and finger cots. *See id.* In the Court's view, these activities qualified as compensable work because they were "compelled" by the employer and because, without them, the employer's "productive aims . . . could not be achieved." *Id.* at 691.

6

*Mount Clemens* brought a wide array of non-productive activities, including the donning and doffing of work-related clothing and equipment, within the FLSA's compensation mandates. Two dissenting justices in *Mount Clemens* observed that the customary way of compensating employees for such preliminary and postliminary activities was to account for them in the rate of pay. *See id.* at 697 (Burton, J., dissenting). The dissenting justices advocated for leaving such questions to voluntary agreement, and predicted that the majority's expansive approach "would lead to innumerable unnecessary minor controversies between employers and employees." *Id.* at 698.

### 2. Congress's Repudiation of the Supreme Court's Expansive View of Compensable Work in the Portal-to-Portal Act

Time proved the *Mount Clemens* dissent to be prescient. In the wake of that decision, employers were drowned in a "flood of litigation," 93 Cong. Rec. 2081, at 2089 (1947), as employees sought billions of dollars in compensation for preliminary and postliminary activities that had little to do with their actual productive work, *see id.* at 2087; S. Rep. No. 80-48, at 3 (1947).

7

Six months after *Mount Clemens*, Congress responded with the Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84 (1947), emphatically repudiating the Supreme Court's expansive view of compensable work. Rejecting the premise that employees must be compensated for any "work" required by an employer and performed for the employer's benefit, Congress established two broad categorical exceptions to the FLSA's compensation mandates. The first exception covered "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a)(1). The second (and here more relevant) exception covered "activities which are preliminary to or postliminary to" the principal activity or activities that an employee is employed to perform. *Id.* § 254(a)(2).

While the Portal-to-Portal Act established a default rule of no compensation for preliminary and postliminary activities, it also afforded employers and employees the freedom to alter that default rule through collective bargaining. *See* 29 U.S.C. § 254(b); *see also* S. Rep. No. 80-48 at 47. Congress thus struck a balance: it required employers to compensate employees for their core productive work, but it left the

8

question of whether employees would be compensated for peripheral activities to be addressed by voluntary agreements between employers and employees. Absent such an agreement, the extent of non-compensable preliminary and postliminary activities would simply be one factor that an employee would consider in deciding whether to take a job in the first place.

The courts' treatment of preliminary and postliminary activities after the Portal-to-Portal Act is discussed in Point I.A.1 below.

## B.    Factual Background

Plaintiffs are or were employed by the Parks Department as associate urban park rangers. (App'x ["A-"] 236, ¶ 1.) Associate urban park rangers are represented by the City's largest public employee union—District Council 37—and are compensated based on a forty-hour workweek. (A-237, ¶ 5.) To be promoted to associate urban park ranger, a person must first serve as an urban park ranger for at least a year; that position in turn requires that the person have either an associate

degree or a high school diploma plus a year of relevant experience.[1] Pursuant to the CBAs negotiated by their union, and in force at the time relevant to this action, associate urban park rangers were paid an annual salary of between $42,249 and $48,586, and were entitled to overtime compensation at one-and-one-half times their rate of pay for work performed beyond a standard forty-hour workweek. (Suppl. App'x ["SA-"] 18-19, 62-64.) Plaintiffs do not claim that they have ever been paid separately for the minutes they spend donning and doffing their uniforms or equipment. Nor do they claim that their union has ever negotiated for such payments in the course of collective bargaining.

According to plaintiffs, associate urban park rangers "service the public making use of New York City's parks and pools" and "enforce laws . . . governing use of the parks and pools." (App. Br. at 10 (footnote omitted).) For the purpose of this appeal, defendants accept plaintiffs' assertion that associate urban park rangers "provid[e] directions and

---

[1] *See* N.Y.C. Dep't of Citywide Admin. Servs., *Notice of Examination: Promotion to Associate Urban Park Ranger*, at 1 (Feb. 2, 2011), http://tinyurl.com/opzxtcl; N.Y.C. Dep't of Citywide Admin. Servs., *Notice of Examination: Urban Park Ranger*, at 2 (Apr. 16, 2014), http://tinyurl.com/pxdey75.

other information to persons seeking to use parks and pools; provid[e] assistance to those persons involved in accidents or who may be victims of unlawful activity and investigating such accidents or activity; implement[] crowd control procedures at special events; provid[e] safety and educational information to the public; and issu[e] summonses to or mak[e] arrests of persons suspected of unlawful conduct." (*Id.* (footnotes omitted); *see also* A-192, ¶ 5.)

Associate urban park rangers are required to wear uniforms and carry certain equipment while on duty. (A-238-39, ¶¶ 8-10; SA-997-98, ¶¶ 8-10.) The uniform and equipment requirements are set forth in the Park Department's operations manual. Associate urban park rangers' uniforms consist of shirts, pants, hats, shoes, seasonal items like jackets and sweaters, and similar items of clothing. (A-212-14.) Their equipment includes flashlights, watches, mace, memo books, and, when performing patrol duties, bullet-proof vests, batons, and handcuffs. (A-215-16.) Several of these items are held in a utility belt, which an individual puts on and takes off at the beginning and end of a shift. (SA-177-78, 192, 301.) To view a photograph of park rangers with their uniforms and equipment, please see Andy Newman, *Goose with Arrow*

11

*in Neck Still Evades Capture*, N.Y. Times City Room Blog (June 17, 2010), http://tinyurl.com/332mrut.

Plaintiffs' brief concedes that it takes only about fifteen minutes for associate urban park rangers to put on their uniforms and equipment. (*See* App. Br. at 13.) Indeed, some of the plaintiffs said that it takes only a handful of minutes to put on their uniforms and two or three minutes to put on their equipment. (*See, e.g.*, SA-437-38, 601-02.)

Other plaintiffs gave longer estimates. One claimed that it takes her up to forty-five minutes to change into her uniform, and seven minutes just to put on her hat (SA-395-97)—even though other park rangers acknowledged that they are able to change into their uniforms in a few minutes and put on their hats in a few seconds (SA-208, 244, 601-02). Another plaintiff allegedly spends several minutes each day replacing the individual pins on his uniform, which he removes at the end of each day because he prefers to keep anything metal on one side of his locker and to keep clothing on another side. (SA-340-44.) But nothing in the Parks Department's rules prohibits those pins from being left in place on the uniform between shifts. (A-212-14.) Some plaintiffs claim to spend up to ten minutes assembling and putting on their

12

utility belts each day (SA-256, 762), when other park rangers are capable of completing that task in a minute or less (SA-423, 540, 662).

## C.    Procedural History

Plaintiffs commenced this action in June 2012. (A-237, ¶ 3.) With defendants' consent, the district court granted plaintiffs leave to maintain a collective action.[2] (A-277.)

Plaintiffs assert the following four categories of claims in the third and current iteration of their complaint. (A-101-04, ¶¶ 26-45.)

- **Donning-and-Doffing Claims.** Plaintiffs claim that they were wrongfully denied compensation for the time that they spent donning and doffing their uniforms and equipment before and after their scheduled shifts.

- **Pre-and-Post-Shift Claims.** Plaintiffs claim that they were wrongfully denied compensation for a variety of other tasks

---

[2] The FLSA allows plaintiffs to bring claims on behalf of similarly situated employees in a "collective action," but those additional employees do not become part of the action unless and until they opt in by filing written consents to join as party-plaintiffs. *See* 29 U.S.C. § 216(b). In this case, sixty-nine opt-in plaintiffs joined the ten named plaintiffs. (A-237, ¶ 2.)

performed before or after their scheduled shifts, including, for example, completing reports and other paperwork.

- **Meal-Break Claims.** Plaintiffs claim that they were wrongfully denied compensation for tasks performed during their dedicated meal breaks.

- **Rate-of-Pay Claims.** Plaintiffs claim that, before and after associate urban park rangers were classified as exempt,[3] (1) when they received cash overtime pay, defendants incorrectly calculated their regular rate of pay, and (2) when they received compensatory time-off, they were incorrectly compensated at a "straight" rate instated of at one-and-one-half times their regular rate of pay.

Following an extensive discovery period, defendants moved for partial summary judgment. (A-119-21.) With respect to plaintiffs' donning-and-doffing claims, defendants argued that (1) associate urban park rangers' donning-and-doffing undertakings are non-compensable "preliminary" and "postliminary" activities; (2) even assuming that

---

[3] Associate urban park rangers were classified as exempt under the FLSA until March 2013, when they were reclassified as non-exempt. (A-238, ¶ 7.)

14

some subset of donning-and-doffing time could be treated as a principal activity, such time would be non-compensable under the *de minimis* doctrine; and (3) donning-and-doffing time was non-compensable by virtue of a custom or practice accepted in the course of collective bargaining. *See* Defs.' Mem. of Law in Supp. of Partial Mot. for Summ. J., *Perez v. City of New York*, No. 12-cv-04914 (S.D.N.Y. Apr. 3, 2014), ECF No. 149 ["Defs.' Mem. Below"] at 5-21.

With respect to plaintiffs' other claims, defendants also argued that all of plaintiffs' claims accruing outside of the two-year limitations period are time-barred; plaintiffs are not entitled to compensation for time allegedly worked in excess of their scheduled shifts but not reported to defendants; and plaintiffs' claims against the Parks Department fail because the department is a non-suable entity. *See id.* at 3-5, 21-28. If accepted by the district court, these arguments would have been fully dispositive of plaintiffs' (1) pre-and-post-shift claims, (2) meal-break claims, and (3) claims against the Parks Department. They also would have been partially dispositive of plaintiffs' rate-of-pay claims against the City and the two City officials sued in their official capacities, insofar as those claims accrued outside the two-year

15

limitations period. Defendants' motion did not seek summary judgment on the remainder of plaintiffs' rate-of-pay claims. *See id.* at 1 n.1.

In a January 2015 opinion, the district court held that defendants were entitled to summary judgment on plaintiffs' donning-and-doffing claims because associate urban park rangers' donning-and-doffing undertakings constitute non-compensable preliminary and postliminary activities. (A-280-94.) The district court did not resolve defendants' alternative arguments for granting summary judgment on plaintiffs' donning-and-doffing claims. The district court's opinion also did not discuss defendants' arguments concerning plaintiffs' other claims, or recognize that defendants' motion did not seek summary judgment on all aspects of plaintiffs' rate-of-pay claims. After resolving the donning-and-doffing claims, the district court simply entered a final judgment and closed the case. (A-297-98.)

Plaintiffs did not seek relief from the final judgment from the district court or ask the court to reinstate or reconsider the claims that had not been addressed in the court's opinion. Instead, they filed a notice of appeal.

## SUMMARY OF ARGUMENT

Plaintiffs, current and former associate urban park rangers, claim that the FLSA requires defendants to compensate them for the minutes they spend donning and doffing their uniforms and equipment before and after their scheduled shifts. There are three separate reasons why plaintiffs are wrong.

First, the donning-and-doffing undertakings in this case are non-compensable "preliminary" and "postliminary" activities. Plaintiffs have failed to establish a genuine dispute as to whether associate urban park rangers' donning and doffing of their uniforms and equipment are "integral" and "indispensable" to their core productive work.

Second, in the alternative, any donning-and-doffing time that could be considered a principal activity would be non-compensable under the *de minimis* doctrine. The FLSA requires employers to compensate employees only for principal activities that take up a "substantial" measure of time, and no part of associate urban park rangers' donning-and-doffing undertakings fits that bill.

Third, also in the alternative, the donning-and-doffing time in this case falls outside the FLSA's definition of compensable time, which

17

excludes time spent "changing clothes" that is treated as non-compensable by a "custom" or "practice" under a CBA. Associate urban park rangers have never been compensated for donning-and-doffing time, and this unwritten custom or practice of non-compensation was part and parcel of the CBAs in force at the relevant time.

The Court should also affirm the judgment below insofar as it granted defendants summary judgment on plaintiffs' pre-and-post-shift claims, meal-break claims, claims against the Parks Department, and claims accruing outside the two-year limitations period. Plaintiffs do not address the merits of the extensive arguments raised by defendants below demonstrating why they are entitled to summary judgment on these claims. Plaintiffs have thus waived any argument to the contrary.

# ARGUMENT

## POINT I

### ASSOCIATE URBAN PARK RANGERS ARE NOT ENTITLED TO PAY FOR TIME SPENT DONNING AND DOFFING THEIR UNIFORMS AND EQUIPMENT

### A. Associate Urban Park Rangers' Donning-and-Doffing Undertakings Are Non-Compensable Preliminary and Postliminary Activities.

The district court correctly applied the Portal-to-Portal Act, and the precedents of the Supreme Court and this Court, in holding that associate urban park rangers' donning-and-doffing undertakings constitute non-compensable preliminary and postliminary activities. The minutes park rangers spend putting on and taking off their basic uniforms and equipment are peripheral to the core productive work for which they are employed, and fairly and lawfully compensated. This time thus falls under the umbrella of the ancillary activities that every working person must engage in at the beginning and end of his or her workday—the kind of activities that Congress intended to be the subject of voluntary agreement, or simply accounted for in the overall rate of pay. Plaintiffs, having bargained for and received all the compensation they are due for their core productive work, are not entitled to

19

additional payments for minutes spent putting on and taking off their uniforms and equipment.

> 1. **An "Identification Purpose" Does Not Render Associate Urban Park Rangers' Uniforms and Equipment Integral to their Principal Work.**

In the Portal-to-Portal Act, Congress created a broad categorical exception to the FLSA's compensation mandates for activities that are "preliminary to or postliminary to" the principal activities that employees are employed to perform, 29 U.S.C. § 254(a)(2), abrogating the Supreme Court's previous broad understanding of compensable work. Congress rejected, in particular, the Court's belief that peripheral pre- and post-shift activities like the donning and doffing of work-related clothing and equipment should be universally compensated by government mandate. *See Mount Clemens*, 328 U.S. at 692. Congress decided that, instead, federal law should stop at requiring compensation for the principal activities that employees are actually employed to do. That is, Congress meant for there to be a whole world of work-related activities that, although performed for employers' benefit, would be compensated not on a mandatory minute-by-minute basis, but rather in employees' overall rate of pay or through any number of other flexible

20

arrangements bargained for by employees and their union representatives.

The Supreme Court first addressed the reach of the Portal-to-Portal Act's preliminary-and-postliminary activities exception in *Steiner v. Mitchell*, 350 U.S. 247 (1956), holding that activities performed before or after an employee's productive work are compensable only if they are an "integral and indispensable" part of his or her principal activities. *Id.* at 256. Stated differently, pre- and post-shift activities are not compensable unless they are *themselves* principal activities. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 33 (2005).

*Steiner* involved the mandatory use of protective clothing essential for battery plant workers to do their jobs in a lethal environment, where highly toxic and corrosive chemicals "permeate[d] the entire plant and everything and everyone in it." *Steiner*, 350 U.S. at 249. The employer did not dispute that wearing the protective clothing was an integral and indispensable part of the workers' productive work. *Id.* at 251. As the Court observed, it would be "difficult to conjure up an instance when changing clothes . . . [is] more clearly an integral and indispensable part of the principal activity of the employment." *Id.* at 256. However, the

21

Court did not suggest that mandatory donning and doffing of work-related clothing and equipment would always, or even usually, meet the integral-and-indispensable test.

In *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586 (2d Cir. 2007), this Court explained that the terms "integral" and "indispensable" have independent meaning. Whereas indispensable means "necessary," integral means "essential to completeness," "organically joined or linked," and "composed of constituent parts making a whole." *Id.* at 592 (quotation marks omitted); *see also Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 517 (2014).

In *Gorman*, this Court held, in no uncertain terms, that *Steiner* "invite[d] a narrow interpretation," reasoning that the donning and doffing of the clothing and equipment by the battery plant workers in that case were "integral" to their principal activities because "when work is done in a lethal atmosphere, the measures that allow entry and immersion into the destructive element may be integral to all work done there." *Gorman*, 488 F.3d at 593. Quite simply, "[w]ithout the taking of the measures required, the environment of the battery plant could not sustain life" and, in that way, the use of protective clothing

and equipment was akin to "a diver's donning of a wetsuit, oxygen tank and mouthpiece" to work underwater. *Id.*

The Court then contrasted the situation presented by the battery plant workers in *Steiner* to the situation presented by the plaintiffs in *Gorman*, who worked in a nuclear power plant and were required to wear protective equipment that included safety glasses, metal-capped safety boots, and helmets. *Id.* at 592, 594. The Court found that, while the donning and doffing of such gear was "arguably" indispensable to the plaintiffs' principal activities, it was not "integral to their principal activities." *Id.* at 593. The Court concluded that putting on and taking off such "generic protective gear" is not materially different from a working person's normal changing of his or her clothes before and after a given workday, which is not compensable. *Id.* at 594. In short, the Court held that the donning and doffing of generic clothing and equipment under normal conditions are not subject to the FLSA's compensation mandates, though they may of course be compensated in other ways agreed upon between employers and employees.

In his brief to this Court, the Secretary of Labor purports to ask the Court to "clarify" *Gorman* (Br. of Sec'y of Labor at 15), but, in

23

actuality, the Secretary wants the Court to abrogate the rationale for its own prior decision, which is binding here. The Secretary, in amicus filings to other courts, has acknowledged that *Gorman* says precisely what the district court here found it says and has offered his misguided belief that *Gorman* was wrongly decided. *See, e.g.*, Br. for Sec'y of Labor at 13-17, *Perez v. Mountaire Farms, Inc.*, No. 09-1917 (4th Cir. Mar. 25, 2010), ECF No. 46-1; Br. of Sec'y of Labor at 3-10, *Pirant v. U.S. Postal Serv.*, No. 07-1055 (7th Cir. Nov. 3, 2008). The Secretary does not explain how *Gorman* said one thing when he appeared before other courts, and says another thing now before this Court.

The Secretary also claims that the Department of Labor's advisory regulations are entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). (Br. for Sec'y of Labor at 9 n.3.) Such deference is warranted only where regulations have "the power to persuade," *Skidmore*, 323 U.S. at 140, and this Court already considered the regulations in question in *Gorman*, and gave them all the deference that they were due. *See* 488 F.3d at 590-94. Regardless, to the extent the regulations depart from this Court's interpretation of the FLSA and the Portal-to-Portal Act, they lack the power to persuade.

24

And despite plaintiffs' assertions to the contrary, associate urban park rangers' donning and doffing of their uniforms and equipment clearly fall on the non-compensable side of the line drawn by this Court in *Gorman*. Plaintiffs have failed to show that associate urban park rangers' uniforms and equipment are *integral* to their core productive work. Plaintiffs cannot, for instance, credibly claim that the City's parks and pools pose an atmosphere so "lethal," that, without their uniforms and equipment, the parks and pools "could not sustain life." *Id.* at 593.

Notably, plaintiffs do not quarrel with this Court's decision in *Gorman*—rejecting mandatory payments for nuclear plant workers donning and doffing generic protective gear. Nor do plaintiffs quarrel with the district court decisions that have followed *Gorman* to reject similar donning-and-doffing claims raised by corrections officers and security guards. *See Edwards v. City of New York*, No. 08-cv-3134, 2011 U.S. Dist. LEXIS 97134, at *18-24 (S.D.N.Y. Aug. 29, 2011) (corrections officers); *Haight v. Wackenhut Corp.*, 692 F. Supp. 2d 339, 345 (S.D.N.Y. 2010) (security guards). Plaintiffs do not even mention *Albrecht v. Wackenhut Corp.*, 379 F. App'x 65, 66 n.1 (2d Cir. 2010) (summary order), in which this Court found that the donning and doffing of

25

uniforms and equipment by security guards constituted non-compensable "preliminary/postliminary activity."

Rather, plaintiffs try to put their claims in this case on different footing from all these prior decisions by positing that their uniforms and equipment serve a purpose not explicitly addressed in those cases. Plaintiffs' *sole* argument on this point is that associate urban park rangers' uniforms and equipment are an integral part of their principal activities because they serve an "identification purpose." (App. Br. at 23-28.) According to plaintiffs, "[t]he identification of [park rangers] as Parks Department representatives through the wearing of uniforms/equipment is a simultaneous and inherent element of everything [they] seek to do while on duty." (*Id.* at 25.) But the uniforms and equipment worn by associate urban park rangers serve no obvious "identification purpose" above and beyond the uniforms and gear worn by corrections officers or security guards.

More broadly, plaintiffs improperly collapse the analytically distinct concepts of "integral" and "indispensable" into a single concept of necessity or importance. *See IBP*, 546 U.S. at 40 ("[T]he fact that certain preshift activities are necessary for employees to engage in their

26

principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity.'"). The uniforms and equipment worn by associate urban park rangers are no more integral to park rangers' work in the City's parks and pools than a store- or company-branded shirt or outfit is integral to the work performed by a retail salesman or waiter or service person. Nor is plaintiffs' uniform and equipment more integral to their work than a suit is to the work performed by a businessperson or a lawyer.

In all these instances, wearing specific clothing may be required by the position, and may even be indispensable to an individual's perceived authority to perform his or her job, but the clothing is not *integral* to the individual's core productive work like "a diver's donning of a wetsuit, oxygen tank and mouthpiece" is integral to his or her work underwater. *Gorman*, 488 F.3d at 593. One need only look to plain-clothes police officers, who are able to identify themselves to the public and perform core law-enforcement tasks in the absence of the trappings of their official uniforms. *Cf. Pirant v. U.S. Postal Serv.*, 542 F.3d 202, 208-09 (7th Cir. 2008) (holding that donning and doffing of a postal service worker's official shirt and other items were not integral and

27

indispensable to her work), *modified in part*, No. 07-1055, 2008 U.S. App. LEXIS 24371 (7th Cir. Dec. 3, 2008).

### 2. Plaintiffs' Argument about the Location of their Donning-and-Doffing Undertakings Is Wrong on Both the Law and the Facts.

Plaintiffs make only one other argument about their donning-and-doffing claims—that their donning-and-doffing time is compensable because they are "required to wear their uniforms/equipment at all times while on duty" and are "prohibited from wearing [the] same when not on duty." (App. Br. at 22.) This argument is simply irrelevant to whether associate urban park rangers' donning and doffing of uniforms and equipment are *integral* to their core activities, as opposed to something "with which they cannot dispense." (*Id.* at 25.) As this Court held in *Gorman*, donning-and-doffing undertakings are "not rendered integral by being required by the employer." 488 F.3d at 594. That holding was a logical outgrowth of the Court's conclusion that the terms "integral" and "indispensable" have independent meaning, and requirements imposed by an employer are relevant to, if anything, the latter but not the former. The Court's holding was also a natural consequence of the Portal-to-Portal Act itself, through which Congress

28

repudiated the notion that employees are entitled to compensation for anything that is "required" or "compelled" by the employer. *See generally Tenn. Coal*, 321 U.S. at 598; *Mount Clemens*, 328 U.S. at 691.

Plaintiffs' argument about the alleged location of their donning-and-doffing undertakings seems to be directed at the reasoning of an out-of-circuit case that has no relevance here. In *Bamonte v. City of Mesa*, 598 F.3d 1217 (9th Cir. 2010), the Ninth Circuit held that the time spent by police officers donning and doffing their uniforms and equipment was non-compensable. In reaching that conclusion, the Ninth Circuit relied on the fact that the police officers there had the option to don and doff their uniforms and equipment off-site. *See id.* at 1225-32. But *Bamonte* is not the law in this Circuit, and the Ninth Circuit's analysis was not meant to be compatible with this Court's decision in *Gorman*. To the contrary, the Ninth Circuit generally disagreed with this Court's approach to donning-and-doffing claims, *id.* at 1232, and it specifically rejected this Court's holding that donning-

and-doffing undertakings are not rendered integral by virtue of being required by the employer, *id.* at 1232 n.17.[4]

As a result, the Ninth Circuit's reasoning in *Bamonte* has little utility in this Circuit. Even so, plaintiffs' claims would not survive under the Ninth Circuit's analysis in that case. Just as the police officers involved in *Bamonte* were not prohibited from donning and doffing their uniforms and equipment off-premises, associate urban park rangers were not prohibited from donning and doffing their uniforms and equipment in the privacy of their own homes or vehicles. To be sure, some plaintiffs testified that they were instructed not to don their uniforms at home and wear them while commuting to work. But those plaintiffs were testifying about what they were allegedly told when they first began their employment with the Parks Department,

---

[4] In *Bamonte*, the Ninth Circuit applied a multi-step test that begins by asking whether an activity qualifies as "work" before determining whether it is "integral and indispensable." 598 F.3d at 1224. The court noted that the officers' donning and doffing of uniforms and equipment arguably did not constitute "work" at all, but it bypassed that question and instead proceed to apply its approach to the integral-and-indispensable test. *See id.* at 1225.

several years before the time period relevant to this action.[5] (A-161, 171-72, 175-76, 191, 193.) Nothing in the Park Department's operations manual (or any other written policy) prohibits associate urban park rangers from putting on their uniforms at home and wearing them while commuting, nor requires park rangers to change into and out of their uniforms while on the Park Department's premises. (A-212-16.) One plaintiff claimed to have seen a written operations order on the subject, but she could not identify the order because, indeed, no such order exists. (A-180.) This plaintiff also did not specify the alleged contents of the order, which, in any event, could not be proved through her testimony. *See* FED. R. EVID. 1007 ("The proponent may prove the content of a writing . . . by the testimony . . . *of the party against whom the evidence is offered*.") (emphasis added).

More to the point, regardless of whether such a policy ever existed, there was, at a bare minimum, a great deal of variation in the

---

[5] The earliest time period potentially relevant to plaintiffs' donning-and-doffing claims is the period between June 2010 and June 2012. The precise time period is dictated by the two-year statute of limitations and varies by the individual plaintiff: (1) for each named plaintiff, the two-year period reaches back from the filing of the complaint; and (2) for each opt-in plaintiff, the two-year period reaches back from the filing of a written consent to join this action. *See* 29 U.S.C. §§ 255(a), 256.

31

actual practices of associate urban park rangers. Many plaintiffs admitted to putting on parts of their uniforms before arriving for work without suffering any disciplinary action. (A-149, 161-62, 181; SA-294-95, 423-24, 467-68, 496, 525-26, 541, 556, 571, 587, 631-32, 662-63, 677-78, 688-89, 698, 702-03, 706, 717-18, 732-33, 748, 762, 776-77, 806, 835, 850.) Thus, in actuality, park rangers exercised the freedom to don and doff all or part of their uniforms off-premises. Accordingly, plaintiffs' donning-and-doffing claims would also fail under the Ninth Circuit's analysis in *Bamonte*, if that approach were the law in this Circuit.

In the final analysis, plaintiffs have failed to establish a genuine dispute as to whether associate urban park rangers' donning-and-doffing undertakings are both integral and indispensable to their principal activities. Those undertakings therefore must be treated as non-compensable preliminary and postliminary activities. For this reason alone, defendants are entitled to summary judgment on plaintiffs' donning-and-doffing claims, as the district court found.

**B.    In the Alternative, If any Donning-and-Doffing Time Qualified as a Principal Activity, It Would Be *De Minimis* and Thus Non-Compensable.**

In the alternative, even if any of the time spent by associate urban park rangers donning and doffing their uniforms and equipment could be considered a principal activity, it would be an insubstantial amount of time and non-compensable under the FLSA's *de minimis* doctrine.[6] Employees are entitled to compensation only for activities that consume "a *substantial* measure of [their] time." *Mount Clemens*, 328 U.S. at 692 (emphasis added). The *de minimis* doctrine thus permits employers, and courts, to "disregard . . . otherwise compensable work '[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours.'" *Singh v. City of New York*, 524 F.3d 361, 370 (2d Cir. 2008) (Sotomayor, J.) (quoting *Mount Clemens*, 328 U.S. at 692). This Court typically looks to three factors when evaluating whether the time spent performing a given task is sufficiently

---

[6] The district court did not reach defendants' alternative arguments in support of their motion for summary judgment. This Court, however, "may affirm summary judgment on any ground supported by the record, even if it is not one on which the district court relied." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). Plaintiffs do not address defendants' alternative arguments in their opening brief, despite being on notice that defendants intended to raise them on appeal.

substantial to be compensable: (1) the total amount of time spent on the task; (2) the frequency with which the task is performed; and (3) the practicality of recording the time spent on the task. *Id.*

For the reasons set forth in Point I.A above, *all* of associate urban park rangers' donning-and-doffing undertakings constitute non-compensable preliminary and postliminary activities. However, even assuming, for the sake of argument, that the donning and doffing of *some subset* of the items comprising park rangers' uniforms and equipment could be considered so integral and indispensable to park rangers' core productive work to constitute principal activities, then the time allocated to donning and doffing those particular items would be insubstantial and non-compensable under the *de minimis* doctrine.

For example, crediting plaintiffs' accounts, associate urban park rangers generally spend less than three minutes putting on their bullet-

proof vests.[7] Most of this time is allocated to adjusting the straps on the vests, which would be unnecessary when removing the vests. However, even assuming that the same amount of time would be required to take off the vests, the total amount of time spent donning and doffing the vests would be less than six minutes each day. Such an insubstantial amount of time, even if occurring on a daily basis, falls well within the scope of the *de minimis* doctrine. *See Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984) ("Most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable."). Moreover, there is no practical way for defendants to parse out and accurately record the insubstantial amount of time dedicated to putting on and taking off bullet-proof vests, as opposed to

---

[7] The average is 2.8 minutes. The raw figures, in minutes, are as follows: Arriola (1); Baselice (5); Bayron (4); Brooks (1.5); Carrillo (5); Charlemagne (0.5); Charles (1); Corrao (2); Cruz (3); Edusei (1); Green (2); Greenberg (5); Harris (2); Hawkins (5); Henderson (1); Howell (2); A. Johnson (2); R. Johnson (1); Joseph (3); Lawrence (3); Lener (3); Lewis (1); Mason (1); Mercado (1); Oro (10); Phillips (15); R. Perez (3); Pierre (3); H. Ramos (1); R. Ramos (2); Reed (5); Sanchez (0.2); Seyfried (4); Shulyar (5); Simon (1); Small (4); St. Louis (2); Torres (1); Vazquez (1); Velilla (5); Ventura (1.5); Walther (3); Williams (2); Yancey (2). (*See* SA-158, 172, 178, 193, 211, 219, 231, 243, 256, 265, 282, 297-98, 316, 329, 348, 364, 385, 396, 408, 423, 438, 453, 481, 495, 511, 525, 540, 555, 570, 602, 616, 631, 646, 662, 677, 717, 732, 747, 761, 775, 790, 805, 819, 837, 849.)

other items, especially as park rangers don and doff their uniforms and equipment in private settings.

Accordingly, even if any of the time spent by associate urban park rangers donning and doffing their uniforms and equipment qualified as a principal activity, it would be non-compensable as *de minimis*.

## C. In the Alternative, Donning-and-Doffing Time Is Non-Compensable By Virtue of a Custom or Practice Accepted in Collective Bargaining.

Even assuming that the time spent by park rangers donning and doffing their uniforms and equipment could be considered a principal activity, and even assuming that such time would be more than *de minimis*, defendants would still be entitled to summary judgment on plaintiffs' donning-and-doffing claims for the independent reason that park rangers' donning-and-doffing time falls outside the FLSA's definition of compensable time. Congress, recognizing that the compensability of time spent changing into and out of work-related clothing is a subject best left to voluntary agreement, carved out from the definition of compensable time "any time spent in changing clothes . . . at the beginning or end of each workday" that is "excluded from measured working time" by the express terms of a CBA or an unwritten

36

"custom" or "practice" under a CBA. 29 U.S.C. § 203(*o*). Since this carve-out is built into the very definition of compensable time, plaintiffs bear the burden of proving that the time they spend donning and doffing their uniforms and equipment falls outside the carve-out's ambit and thus comes within the definition of compensable time. *See Franklin v. Kellogg Co.*, 619 F.3d 604, 611-12 (6th Cir. 2010); *Allen v. McWane Inc.*, 593 F.3d 449, 458 (5th Cir. 2010). Plaintiffs cannot meet their burden because the donning-and-doffing time at issue both (1) qualifies as time spent "changing clothes," and (2) was non-compensable by virtue of an unwritten "custom" or "practice" under the relevant CBAs.

## 1. The Entire Donning-and-Doffing Period Qualifies as Time Spent "Changing Clothes."

On the first point, the entire period of time spent by associate urban park rangers donning and doffing their uniforms and equipment qualifies as "changing clothes." 29 U.S.C. § 203(*o*). In *Sandifer v. United States Steel Corp.*, 134 S. Ct. 870 (2014), the Supreme Court construed the term "clothes" in this context to include any "items that are both designed and used to cover the body and are commonly regarded as

37

articles of dress."[8] *Id.* at 876 (emphasis omitted). The Court then applied this definition to the "protective gear" that the steel plant workers in that case were required to wear for their jobs. The Court found that most of the items in question "clearly fit" within the definition of clothes, including flame-retardant jackets, pants, and hoods, hardhats, snoods, gloves, wristlets, and metatarsal boots. *Id.* at 879. But the Court found that other items were more appropriately classified not as clothes but as "accessories" or "tools," including safety glasses, earplugs, and respirators. *Id.* at 880.

To be sure, only time spent "changing clothes" comes under the umbrella of the FLSA's carve-out to the definition of compensable time. 29 U.S.C. § 203(*o*). However, in *Sandifer*, the Supreme Court recognized that courts should not operate as "time-study professionals," engaging in the "intricate exercise of separating the minutes spent clothes-changing . . . from the minutes devoted to other activities." *Id.* at 880-

---

[8] The question presented in *Sandifer* was whether the donning and doffing in that case qualified as "changing clothes" within the meaning of 29 U.S.C. § 203(*o*), not whether it was integral and indispensable to the employees' principal activities, which the employer "d[id] not dispute" on appeal. *Sandifer*, 134 S. Ct. at 876; *see also* Br. for Resp't, *Sandifer v. U.S. Steel Corp.*, No. 12-417 (U.S. July 19, 2013).

81. The Court instead adopted a practical test: if the "vast majority" of a period of time is spent changing clothes, then a court need not subtract from the period any time spent donning and doffing non-clothes items. *Id.* at 881. In other words, if the "period at issue can, *on the whole*, be fairly characterized as time spent changing clothes," then "the entire period qualifies." *Id.* (quotation marks omitted; emphasis in original).

Here, most of the items donned by associate urban park rangers fit neatly within the definition of "clothes." This includes, at a minimum, the shirts, pants, hats, shoes, seasonal jackets and sweaters, and similar items comprising associate urban park rangers' uniforms. (A-213-14.) The term "clothes" almost certainly also captures the bullet-proof vests worn by associate urban park rangers when on patrol duty, which correspond most closely to the flame-retardant jackets worn by the steel plant workers in *Sandifer*. *See* 134 S. Ct. at 879; *see also Rosano v. Twp. of Teaneck*, 754 F.3d 177, 194 (3d Cir. 2014) (holding that bullet-resistant vests "clearly fit" within the definition of "clothes").

But even assuming that the bullet-proof vests worn by associate urban park rangers should instead be categorized as "accessories" or "tools," and considered together with the various other items of

39

equipment used by such rangers like batons and memo books, the vast majority of park rangers' donning-and-doffing time is spent putting on and taking off clothes, not accessories or tools. Crediting plaintiffs' individual accounts below, park rangers generally spend three-quarters of their donning-and-doffing time putting on and taking off clothes, not accessories or tools.[9] Accordingly, the period as a whole can fairly be characterized as time spent "changing clothes."

### 2. A "Custom" or "Practice" Under the Relevant CBAs Treated Clothes-Changing Time as Non-Compensable.

Since the entire period of time spent by associate urban park rangers donning and doffing their uniforms and equipment qualifies as

---

[9] Defendants credit here the time estimates proffered by plaintiffs below. Where the amounts of time proffered by plaintiffs differed from those initially identified by defendants (using plaintiffs' deposition testimony and interrogatory responses), defendants have used plaintiffs' proffered amounts. Where plaintiffs provided a range of times, defendants have used the higher end of the range. The raw figures, reflected as the ratio of minutes spent donning clothes to the minutes spent donning equipment, are as follows: Baselice (18.5:8); Bayron (15:7); Brooks (10.5:4.5); Charlemagne (25.5:6.5); Charles (20:3.5); Corrao (15:6); Cruz (12:6.5); Edusei (15:4); Green (25:4); Greenberg (13.5:10); Guzman (21:8); Harris (20:6); Hawkins (16:11); Henderson (3.25:2); Hendricks (20:5); Howell (20:7); Lener (30:5); Lewis (30:15); Mason (13:1.5); Mercado (15:2); Oro (15:20); Perez (15:4); Pierre (16:6); H. Ramos (12:3); R. Ramos (20:4); Reed (45:10); Rosado (10:2); Sanchez (20:10); Seyfried (15:5.5); Shulyar (25:9); Simon (15:2); Small (15:6); Tobel (11:9); Torres (25:2.5); Vazquez (15:2); Velilla (26:10); Ventura (15:4); Walther (14.5:7); Yancey (7:3). (A-241-46, ¶¶ 12-13; SA-998, ¶¶ 12-13.)

changing clothes, plaintiffs were required to produce evidence showing whether such time was compensable by a "custom" or "practice" under a *bona fide* CBA. 29 U.S.C. § 203(*o*); *see also Allen*, 593 F.3d at 458 (holding that plaintiff "had the burden of proof as to whether or not a custom or practice . . . existed"). However, plaintiffs adduced no relevant evidence below, and the undisputed facts in the record show that pre- and post-shift clothes-changing time was considered non-compensable by a custom or practice under the relevant CBAs.

The term "custom" includes an "ongoing, even if recent, course of conduct," while the term "practice" includes "understandings with regard to the future." *Arcadi v. Nestle Food Corp.*, 38 F.3d 672, 675 (2d Cir. 1994). Regardless of whatever difference in meaning there may be between these terms, a custom or practice exists in this context when an unwritten policy of compensating, or not compensating, employees for their clothes-changing time was in existence when a CBA was executed. *Anderson v. Cagle's Inc.*, 488 F.3d 945 (11th Cir. 2007); *see also Allen*, 593 F.3d at 457. This principle applies with equal force when a CBA itself is silent on the compensability of clothes-changing time, *see Anderson*, 488 F.3d at 958; *Allen*, 593 F.3d at 452; *Rosano*, 754 F.3d at

41

193; when the parties never actually negotiated over the compensability of clothes-changing time, *see Anderson*, 488 F.3d at 959; *Allen*, 593 F.3d at 452; *Rosano*, 754 F.3d at 193; and when the parties were unaware of their statutory rights, *see Allen*, 488 F.3d at 456.

Here, the CBAs in effect during the relevant time period, like their predecessors, specified the wage scale and working hours. Under the CBAs, associate urban park rangers were entitled to an annual salary of between $42,249 and $48,586, and were entitled to overtime compensation at one-and-one-half times their regular rate of pay for any work in excess of forty hours in a given workweek. (SA-18-19, 62-64; *see also* SA-864-65.) To be sure, the CBAs were silent on the question of whether associate urban park rangers would be compensated for the time spent donning and doffing their uniforms and equipment. However, plaintiffs cannot credibly dispute that associate urban park rangers have *never* been compensated for such time, including at any point prior to the negotiation and execution of the CBAs in effect at the relevant time. Indeed, that there was an unwritten policy of not compensating employees for such time is an essential premise of plaintiffs' donning-and-doffing claims.

42

Below, plaintiffs argued only that, on a few isolated occasions, a handful of associate urban park rangers were compensated for "on the clock" donning-and-doffing time. *See* Pls.' Mem. of Law in Opp'n to Defs.' Mot. for Partial Summ. J. at 23-24, *Perez v. City of New York*, No. 12-cv-04914 (S.D.N.Y. May 16, 2014), ECF No. 157. The isolated incidents alleged by plaintiffs, even if credited, would be insufficient to show that park rangers were compensated for such time as a matter of custom or practice. *Cf. Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (holding, in addressing a claim under 42 U.S.C. § 1983, that "isolated acts" are "generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability"). More fundamentally, however, the question of whether a handful of park rangers were occasionally compensated for donning-and-doffing time *during* their shifts is irrelevant to the question of whether park rangers were, as a matter of custom or practice, compensated for donning-and-doffing time *before and after* their shifts. On this point, plaintiffs presented no evidence that would allow a fact-finder to conclude that the time spent by park rangers putting on and taking off their uniforms

43

and equipment before and after their shifts was ever treated as anything other than non-compensable.

It cannot genuinely be disputed that associate urban park rangers have never been compensated for the time spent donning and doffing their uniforms and equipment; that park rangers and their union representatives were aware that park rangers were not being compensated for such time; and that this unwritten policy of non-compensation existed at the time the parties negotiated and entered into the relevant CBAs. Plaintiffs have failed to carry their burden of showing that the pre- and post-shift time spent by park rangers changing clothes falls outside the FLSA's carve-out to the definition of compensable time. For this independent reason, defendants are entitled to summary judgment on plaintiffs' donning-and-doffing claims.

At bottom, this is not the kind of case that warrants government-mandated compensation. Rather, the non-compensability of associate urban park rangers' donning-and-doffing undertakings are one factor that individuals must weigh when deciding whether to become a park ranger and that park rangers' union representatives must take into account in the course of bargaining for salary and benefits.

44

## POINT II

### PLAINTIFFS HAVE WAIVED ANY ARGUMENT OPPOSING DEFENDANTS' REQUEST FOR PARTIAL SUMMARY JUDGMENT ON THEIR OTHER CLAIMS

As plaintiffs acknowledge, defendants' motion below also argued that defendants are entitled to partial summary judgment on plaintiffs' other claims. (*See* App. Br. at 32.) Defendants argued below that plaintiffs cannot recover on any claims that accrued outside the two-year limitations period; that seek compensation for time allegedly worked in excess of their scheduled shifts that was not reported to defendants; or that are asserted against the Parks Department, a non-suable entity. *See* Defs.' Mem. Below at 3-5, 21-28. These arguments, if accepted, would have been fully dispositive of plaintiffs' (1) pre-and-post-shift claims, (2) meal-break claims, and (3) claims asserted against the Parks Department. They also would have been partially dispositive of plaintiffs' rate-of-pay claims, insofar as those claims accrued outside the two-year limitations period.

In their opening brief to this Court, plaintiffs cite to *Priestley v. Headminder, Inc.*, 647 F.3d 497 (2d Cir. 2011), for the principle that "[a] district court may not grant summary judgment against a party *sua*

45

*sponte* without first determining that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried." (App. Br. at 33 (quotation marks omitted).) While that principle is undoubtedly true, it has no bearing on the points that were actually raised and presented by defendants as part of their motion below. In this regard, the district court did not grant summary judgment *sua sponte*; rather, defendants moved for summary judgment. And plaintiffs were not denied an opportunity to be heard; rather, they had the full opportunity to respond to defendants' motion and in fact did so.

Plaintiffs misconceive their burden on appeal. This Court has no obligation to sift through the record in an attempt to locate issues and evidence in support of their claims. *See generally Potter v. District of Columbia*, 558 F.3d 542, 553 (D.C. Cir. 2009) ("Judges 'are not like pigs, hunting for truffles buried in the briefs' or the record.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). And while plaintiffs correctly observe that "the district court failed to address" the arguments on the other claims, plaintiffs "present[] no meaningful argument as to why" defendants are not entitled to partial summary

judgment on the above-cited grounds. *Dow Jones & Co. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 301 n.7 (2d Cir. 2006). Plaintiffs neither respond to the merits of the arguments raised by defendants below, nor make any attempt to identify specific disputes of material fact (and the accompanying support in the record) that would entitle them to proceed to trial. And in the absence of any argument from plaintiffs, there is nothing for defendants to respond to and crystalize for this Court's review.

Plaintiffs have therefore waived any argument that defendants are not entitled to summary judgment on their (1) pre-and-post-shift claims, (2) meal-break claims, (3) claims against the Parks Department, and (4) rate-of-pay claims accruing outside the two-year limitations period. *See generally JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) (holding that a party waives any argument not raised in its opening brief, even if presented to the district court or in a reply brief on appeal). Accordingly, the Court should also affirm the judgment below insofar as it granted summary judgment to defendants on these aspects of plaintiffs' complaint.

## POINT III

## THE ACTION SHOULD BE REMANDED FOR FURTHER PROCEEDINGS ON THE REMAINDER OF PLAINTIFFS' RATE-OF-PAY CLAIMS

As plaintiffs observe, although the district court's judgment was final and closed the case (A-298), the district court appears not to have realized that defendants did not seek summary judgment on all aspects of plaintiffs' rate-of-pay claims. *See* Defs.' Mem. Below at 1 n.1. The district court's issuance of a final judgment appears to have been the result of an inadvertent oversight. It is unclear why plaintiffs never brought this apparent oversight to the district court's attention through a motion for reconsideration, which would have afforded the district court an opportunity to narrow its ruling and delayed any appeal until all of plaintiffs' claims had been fully considered on the merits. *See* FED. R. CIV. P. 54(b). Whatever the reason, plaintiffs elected to pursue this appeal, thus prematurely burdening this Court and multiplying the proceedings required to resolve this action.

Nonetheless, defendants agree with plaintiffs that the district court's judgment should be vacated insofar as it granted summary judgment to defendants on plaintiffs' rate-of-pay claims and closed the

48

case. The action should be remanded to allow the district court to address plaintiffs' rate-of-pay claims to the extent those claims are asserted against the City and the two City officials sued in their official capacities and to the extent they accrued within the two-year limitations period.

## CONCLUSION

The district court's judgment should be affirmed insofar as it granted summary judgment to defendants on plaintiffs' (1) donning-and-doffing claims, (2) pre-and-post-shift claims, (3) meal-break claims, and (4) claims against the Parks Department. The judgment should otherwise be vacated and the action remanded for further proceedings on plaintiffs' rate-of-pay claims against the City and the two City officials sued in their official capacities, to the extent those claims accrued within the two-year limitations period.

Dated:   New York, New York
         August 6, 2015

Respectfully submitted,

ZACHARY W. CARTER
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees

By: _____

DEVIN SLACK
Assistant Corporation Counsel

100 Church Street
New York, New York 10007
212-356-0817
dslack@law.nyc.gov

50

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word 2010, and according to that software, it contains 9,447 words, not including the cover, table of contents, table of authorities, and this certificate.

_____

DEVIN SLACK