# 15-0315-cv

## United States Court of Appeals
### *for the*
## Second Circuit

———————◆———————

HENRY PEREZ, On behalf of themselves and others similarly situated,
BASELICE RALPH, On behalf of themselves and others similarly situated,
JUAN BAYRON, On behalf of themselves and others similarly situated, JERRY
CORDERO, On behalf of themselves and others similarly situated, RONALD
EASON, On behalf of themselves and others similarly situated, DONALD
KOONCE, On behalf of themselves and others similarly situated, JOSEPH ORO,
On behalf of themselves and others similarly situated, RUBEN RIOS, JR., On
behalf of themselves and others similarly situated, PEDRO ROSADO, On behalf
of themselves and others similarly situated, DEREK G. WALTHER, On behalf of
themselves and others similarly situated,

*Plaintiffs-Appellants*,

ELIZABETH KAY BESOM,

*Plaintiff*,

*(For Continuation of Caption See Inside Cover)*

————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

GLADSTEIN, REIF & MEGINNISS, LLP
*Attorneys for Plaintiffs-Appellants*
817 Broadway, 6th Floor
New York, New York 10003
(212) 228-7727

v.

THE CITY OF NEW YORK, MAYOR BILL DE BLASIO, THE NEW YORK
CITY DEPARTMENT OF PARKS & RECREATION, and MITCHELL J.
SILVER, in official capacity as Commissioner of the Department of Parks and
Recreation,

*Defendants-Appellees.*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTORY STATEMENT ........................................................1

ARGUMENT .........................................................................................1

I. NONE OF DEFENDANTS' ARGUMENTS PROVIDE A VALID
   BASIS FOR AN AFFIRMANCE OF THE SUMMARY
   JUDGMENT DISMISSING PLAINTIFFS' DONNING AND
   DOFFING CLAIMS ...........................................................................1

   A. The District Court Erred In Dismissing Plaintiffs' Donning
      And Doffing Claims Under § 254(a)(2) .......................................2

   B. § 203(o) Has No Application In The Circumstances Of This Case ...........9

   C. The *De Minimis* Doctrine Does Not Apply Here .....................................21

II. THIS COURT SHOULD REINSTATE IN FULL EACH OF
    PLAINTIFFS' REMAINING CLAIMS.........................................25

CONCLUSION ....................................................................................29

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................30

# TABLE OF AUTHORITIES

Page

Cases:

*Allen v. McWane, Inc.*, 593 F.3d 449 (5th Cir. 2010).......................................14, 18

*Anderson v. Cagle's Inc.*, 488 F.3d 945 (11th Cir. 2007).......................................14

*Arcadi v. Nestle Food Corp.*, 38 F.3d 672 (2d Cir. 1994)...........................15, 16, 17

*Arcadi v. Nestle Food Corp.*, 841 F. Supp. 477 (N.D.N.Y.),
    *aff'd*, 38 F.3d 672 (2d Cir. 1994).............................................................16 n. 10

*Avery v. City of Talladega*, 24 F.3d 1337 (11th Cir. 1994) ....................................19

*Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728 (1981) ........................20

*Beck v. City of Cleveland, Ohio*, 390 F.3d 912 (6th Cir. 2004)...............................19

*Brubach v. City of Albuquerque*, 893 F. Supp. 2d 1216
    (D. N. Mex. 2012)............................................................................7 n. 5, 24 n. 13

*Cheeks v. Freeport Pancake House, Inc.*, No. 14-299-cv, 2015 WL
    4664283 (2d Cir., Aug. 7, 2015)...............................................................11 n. 6

*Corning Glass Works v. Brennan*, 417 U.S. 188 (1974) ...............................19 n. 11

*D.A. Schulte v. Gangi*, 328 U.S. 108 (1946)....................................................11 n. 6

*Edwards v. City of New York*, No. 08 Civ. 3134 (DLC), 2011 WL
    3837130 (S.D.N.Y. Aug. 29, 2011).....................................................................9

*Frank v. U.S.*, 78 F.3d 815 (2d Cir. 1996), *judgment vacated on
    other ground*, 521 U.S. 114 (1997)...................................................................28

*Franklin v. Kellogg Co.*, 619 F.3d 604 (6th Cir. 2010) ..........................................18

*Holly Farms Corp. v. N.L.R.B.*, 517 U.S. 392 (1996) ............................................19

*Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014).............................8

*In re Cargill Meat Solutions*, 632 F. Supp. 2d 368 (M.D. Pa. 2008) ....................20

*Jacobs v. New York Foundling Hosp.*, 577 F.3d 93 (2d Cir. 2009)..................10, 19

*Jewell Ridge Coal Corp. v. Local No. 6167*, 325 U.S. 161 (1945) ..................11, 20

*Johnson v. City of Columbia, S.C.*, 949 F.2d 127 (4th Cir. 1991)
    (*en banc*) ........................................................................................21

*Kassa v. Kerry, Inc.*, 487 F. Supp. 2d 1063 (D. Minn. 2007)..................................20

*Martino v. Michigan Window Cleaning Co.*, 327 U.S. 173 (1946)..................11, 20

*Maska U.S. Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74 (2d Cir. 1999) ....................23

*N.L.R.B. v. N.Y. Telephone Co.*, 930 F.2d 1009 (2d Cir. 1991) ............................21

*Perrin v. United States*, 444 U.S. 37 (1979) ..........................................................10

*Professional Staff Cong.-CUNY v. N.Y.S. PERB*, 7 N.Y.3d 458,
    824 N.Y.S. 2d 577 (2006)............................................................14 n. 9

*Reich v. N.Y.C.T.A.*, 45 F.3d 646 (2d Cir. 1995) ..................................................19

*Rivera-Flores v. Bristol-Myers Squibb Caribbean*, 112 F.3d 9
    (1st Cir. 1997) ....................................................................................20

*Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870 (2014) ....................................*et passim*

*Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008)........................................24

*Steiner v. Mitchell*, 350 U.S. 247 (1956) ........................................5 n. 3, 6 n. 4, 7, 8

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*,
    321 U.S. 590 (1944)..........................................................................11

*Valladon v. City of Oakland*, No. C 06-07478 SI, 2009 WL 3401263
    (N.D. Cal. Oct. 20, 2009)..................................................................20

*Walling v. Harnischfeger Corp.*, 325 U.S. 427 (1945)............................................11

Statutes:

Fair Labor Standards Act:

    29 U.S.C. § 203.......................................................................18

    29 U.S.C. § 203(o)............................................................*et passim*

    29 U.S.C. § 203(r)(1)...........................................................10, 19

    29 U.S.C. § 206................................................................*et passim*

    29 U.S.C. § 207................................................................*et passim*

    29 U.S.C. § 207(a)(1)........................................................12, 19, 26

    29 U.S.C. § 207(k)...................................................................19

    29 U.S.C. § 207(o)(1)................................................................26

    29 U.S.C. § 207(o)(3)(A)............................................................26

    29 U.S.C. § 207(o)(5)................................................................19

    29 U.S.C. § 208 note..................................................................8

    29 U.S.C. § 213...................................................................18, 19

    29 U.S.C. § 254(a)(2).......................................................*et passim*

Fair Labor Standards Amendments of 1949:

    Section 3(o), 63 Stat. 911, 29 U.S.C. § 203(o)....................................10

    Section 16(c), 63 Stat. 912, 29 U.S.C. § 208 note..................................8

New York Civil Service Law § 209-a(1)..........................................14 n. 9

Portal-to-Portal Act:

Section 4, 29 U.S.C. § 254(a)(2) ...................................................................4

Rules:

Code of Federal Regulations:

29 C.F.R. § 778.103 ...............................................................................12

29 C.F.R. § 785.47 ................................................................................24

29 C.F.R. Part 790 ............................................................................4 n. 2

29 C.F.R. § 790.7(g) .................................................................4, 5, 7, 8

29 C.F.R. § 790.7(h) ................................................................................4

29 C.F.R. § 790.8(a) ................................................................................2

29 C.F.R. § 790.8(c) .................................................................5, 6, 7, 8

Federal Rules of Appellate Procedure ...............................................28

Federal Rules of Civil Procedure:

Rule 8(c)...........................................................................................19, 20

Rule 8(c)(1)...........................................................................................20

Rule 56 ...............................................................................................2, 8

Miscellaneous:

U.S. Department of Labor, *General Statement as to the Effect of the Portal-to-Portal Act of 1947 on the Fair Labor Standards Act of 1938*, 12 Fed. Reg. 7655 ...................................................4 n. 2, 5, 8

## INTRODUCTORY STATEMENT

Plaintiffs-Appellants ("Plaintiffs") submit this brief to reply to the Brief For Appellees ("Ds. Br.").

## ARGUMENT

## I. NONE OF DEFENDANTS' ARGUMENTS PROVIDE A VALID BASIS FOR AN AFFIRMANCE OF THE SUMMARY JUDGMENT DISMISSING PLAINTIFFS' DONNING AND DOFFING CLAIMS.

Plaintiffs claim *inter alia* that Defendants have failed to compensate them properly under 29 U.S.C. §§ 206 and 207 for their performance of various tasks immediately before or after their regularly-scheduled shifts. *See* Second Amended Complaint ("SAC"), paras. 21-22 and Second, Third and Sixth Causes of Action (A100-104). In the court below, Defendants sought a partial summary judgment that, *inter alia*, would dismiss pre-shift and post-shift claims insofar as they involve Plaintiffs' donning and doffing activities on the basis that such activities are not compensable under the FLSA. Defendants argued: (a) Plaintiffs' pre-shift donning and post-shift doffing are preliminary and postliminary activities, respectively, within the meaning of 29 U.S.C. § 254(a)(2); (b) time expended by Plaintiffs on said activities is properly excluded from compensable time pursuant to 29 U.S.C. § 203(o); and (c) time expended on donning and doffing of equipment is *de minimis*. *See* Doc. 149. The District Court granted summary judgment dismissing the donning/doffing claims solely on the basis of § 254(a)(2). (A280-

296).  It noted but did not address the merits of the § 203(o) and *de minimis*
defenses.  (A280-281).

Defendants contend the court below properly dismissed the donning
and doffing claims under Fed. R. Civ. P. 56 on the basis of § 254(a)(2).
Alternatively, they say the Rule 56 dismissal of those claims is justified by §
203(o) and by the *de minimis* doctrine.  None of these contentions justifies
affirmance of the summary judgment dismissing those claims.

### A. The District Court Erred In Dismissing Plaintiffs' Donning And Doffing Claims Under § 254(a)(2).

Under settled Rule 56 principles, an appellate court reviewing a grant
of summary judgment to a defendant movant must accept all material facts not
disputed by the defendant and, as to any dispute of material fact(s), must assume
that the facts as set forth by the plaintiff are correct.  The question for the appellate
court is whether on such undisputed facts and such assumption, the defendant
would be entitled to judgment as a matter of law.  *See* Brief For Plaintiffs-
Appellants ("Pls. Br.") at 21.

Defendants acknowledge that Plaintiffs' duties and functions as
AUPRs include those identified in Pls. Br. at 10.  *See* Ds. Br. at 10-11.  And they
concede that said duties and functions are "principal" activities of an AUPR within
the meaning of § 254(a)(2).  *See also* 29 C.F.R. § 790.8(a).  It is undisputed that
Defendants require Plaintiffs to wear their uniforms and equipment while

2

performing their principal duties.  It is also undisputed that Plaintiffs in fact don/doff their uniforms and equipment at their command sites.  Further, it is not disputed that the wearing of the AUPR uniform, particularly with the utility belt and the equipment attached thereto, serves to identify Plaintiffs to members of the public as Parks Department personnel.  Defendants dispute whether they effectively require Plaintiffs to don/doff uniforms and equipment at their command sites.  The court below specifically found such a dispute of fact.  *See* Opinion and Order at 3 n. 5 (A282).  *And see* Plaintiffs' Response To Defendant's Local Rule 56.1 Statement Of Undisputed Material Facts ("Pls. 56.1") at ¶¶ 14, 18, 22 (A246-251, A252-253).  Thus, in determining whether the District Court erred in granting partial summary judgment dismissing Plaintiffs' donning/doffing claims, this Court must determine whether Defendants would be entitled to judgment as a matter of law on those claims in view of the foregoing undisputed facts and on the assumption that Defendants require Plaintiffs to don/doff their uniforms and equipment at their command posts.[1]

       Defendants strive to divert this Court's attention from the regulations originally promulgated by the U.S. Department of Labor ("DOL") to provide guidance to employers and employees as to when changing clothes, if performed

---

[1]     As Defendants do not dispute that Plaintiffs' donning/doffing activities are "indispensable," Plaintiffs focus on why the District Court erred in resolving the "integral" issue on summary judgment in Defendants' favor.

outside the regularly-scheduled workday, would be compensable under the FLSA and when, in light of Section 4 of the Portal-to-Portal Act ("PPA), § 254(a)(2), it would not. *See*, *e.g.*, Ds. Br. at 24. A review of the regulations and related documents shows this effort is ill-conceived on many levels. The regulations in question were promulgated almost 70 years ago. They were substantially drawn from the explanations of the PPA expressed in the congressional debate on that law. They have been embraced by the Supreme Court and by Congress.

Six months after enactment of § 254(a)(2), the DOL issued an interpretative bulletin to provide guidance directed to the compensability of donning/doffing activity in light of the FLSA and § 254(a)(2). *See*, *e.g.*, *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 875-876 (2014).[2] In that part of the bulletin appearing in 29 C.F.R. § 790.7(g), the DOL stated:

> [A]ctivities which may be performed outside the workday and, *when performed under the conditions normally present*, would be considered "preliminary" or "postliminary" activities, include … changing clothes …

(Emphasis added). After pointing out that "an activity which is a 'preliminary' or 'postliminary' activity under one set of circumstances may be a principal activity under other conditions," (§ 790.7(h) (footnote omitted)), the DOL identified

---

[2] Entitled *General Statement as to the Effect of the Portal-to-Portal Act of 1947 on the Fair Labor Standards Act of 1938* (hereinafter "*Bulletin*"), this guideline appeared in the Federal Register at 12 Fed. Reg. 7655 and was published in the Code of Federal Regulations at 29 C.F.R. Part 790.

changing clothes as one such activity and described the standard for determining

when clothes-changing outside the scheduled workday should not be regarded as

preliminary or postliminary under § 254(a)(2):

> [T]he changing of clothes, may in certain circumstances be so
> directly related to the specific work the employee is employed
> to perform that it would be regarded as an integral part of the
> employee's "principal activity."  See colloquy between
> Senators Cooper and McGrath, 93 Cong. Rec. 2297-2298.

(§ 790.7(g) n. 49).[3]  Note 49 in turn cross-referenced that part of the *Bulletin*

appearing in 29 C.F.R. § 790.8(c).  The first three sentences of that subsection

explain carefully when pre- or post-shift clothes-changing should be deemed

"integral" and when it should not:

> Among the activities included as an integral part of a principal
> activity are those closely related to activities which are
> indispensable to its performance.  If an employee … cannot
> perform his principal activities without putting on certain
> clothes, changing clothes on the employer's premises at the
> beginning and end of the workday would be an integral part of
> the employee's principal activity.  On the other hand, if
> changing clothes is merely a convenience to the employee and
> not directly related to his principal activities, it would be
> considered as a "preliminary" or "postliminary" activity rather
> than a principal part of the activity.

---

[3]     The colloquy between Senators Cooper and McGrath during the debate on the PPA cited
in n. 49 is included as an appendix to *Steiner v. Mitchell*, 350 U.S. at 247, 256-258 (1956).

(§ 790.8(c) (footnotes omitted)).[4]  § 790.8(c) makes clear that if (i) an employer requires employees to wear uniforms while on duty, (ii) the wearing of the uniform is closely related to the ability of employees to successfully perform a principal activity, and (iii) the employer requires the employees to change into and out of their uniforms on the employer's premises, the donning/doffing activity is an integral part of that principal activity (and, hence, is compensable).

Defendants are not entitled to summary judgment under this standard. They do not dispute that in order to perform their servicing and law enforcement duties, Plaintiffs need to be identifiable to the public as Parks Department personnel.  They do not dispute that wearing of the uniform, particularly with the utility belt to which equipment is attached, serves to identify AUPRs to the public as Parks Department personnel (and, thus, as persons from whom the public may obtain information or other assistance and who are authorized to enforce laws and regulations pertaining to city parks and pools).  Defendants' rule prohibiting Plaintiffs from wearing their uniforms while off-duty serves to highlight the identification function served by the wearing of the uniform:  this rule is based on Defendants' recognition that the uniform serves to notify the public that the wearer is a Parks Department employee and the concern that this may lead to some

---

[4]      The District Court expressed the view that § 790.8(c) collapsed "the dichotomy" between the terms integral and indispensable.  *See* A291.  This was a misreading of the regulation in that it treated the term "closely related" as superfluous.  As the Supreme Court noted in *Steiner*, 350 U.S. at 255, as used in the regulation, this term was intended to be comparable to "integral" and distinct from "indispensable."

6

exchange/altercation between the employee and a person holding some grudge arising from a past on-the-job interaction with that employee or some other employee of the Parks Department. Assuming *arguendo* that Defendants have created a genuine issue whether they effectively require Plaintiffs to don/doff their uniforms and/or equipment,[5] there is at worst a dispute as to whether Plaintiffs satisfy the three-pronged test arising from § 790.8(c).

As the pertinent regulations plainly support Plaintiffs' claims for compensation, Defendants attempt to make light of these regulations. *See*, *e.g.*, Ds. Br. at 24. As noted, the pertinent regulations are longstanding and were carefully drawn. Much of the key language therein was drawn *verbatim* from the Senate colloquy on the PPA. *See*, *e.g.*, § 790.8(c) and § 790.7(g) n. 49 and the *Steiner* appendix.

In addition, the pertinent regulations have been endorsed by the Supreme Court. The integral-and-indispensable standard for compensating pre- and post-shift activity did not originate with that Court. Rather the DOL asserted in *Steiner* that this was the proper standard, *see* 350 U.S. at 249, and the Court

---

[5]    Defendants do not dispute that Plaintiffs were consistently instructed at the Parks Department Training Academy not to wear their uniforms and equipment while off-duty. However, they contend that on the infrequent occasions when a Plaintiff wore a single item such as AUPR pants while traveling to work, they were not disciplined. Defendants argue this shows that, notwithstanding Defendants' instructions to Plaintiffs at the Training Academy, the latter were not required to don/doff at their command sites. *But see Brubach v. City of Albuquerque*, 893 F. Supp. 2d 1216, 1231 (D. N. Mex. 2012) ("The Court is not persuaded that a lack of discipline for an employee's failure to comply with a supervisor's mandate is persuasive evidence that the mandate did not exist or that the employee should have disregarded it.").

7

adopted the DOL's position.  *Id*. at 256.  That standard was taken *verbatim* from the 1947 *Bulletin*.  *See*, *e.g.*, § 790.8(c).  The "closely related" formulation that *Steiner* referred to approvingly as bearing on the meaning of "integral," 350 U.S. at 255, likewise was taken directly from the *Bulletin*.  *See* § 790.8(c); *see also* § 790.7(g) n. 49.  *See also Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 518, 519 (2014) (quoting approvingly from § 790.8(c)).  Finally, it should be noted that, in Section 16(c) of the Fair Labor Standards Amendments of 1949, 63 Stat. 911, 912, 29 U.S.C. § 208 note, Congress ratified the regulations at issue here.  *See Steiner*, 350 U.S. at 255 n. 8.

　　　　The longstanding and thoughtful explication in the *Bulletin* of the relationship between the FLSA and § 254(a)(2), drawn in substantial respects from the Senate colloquy during the debate on the PPA, is persuasive in its own right. When the unusual circumstances that important parts of the *Bulletin* have already been embraced by the Supreme Court and that Congress has ratified the *Bulletin* are also taken into account, the pertinent regulations merit a *substantial* degree of deference.  Those regulations warrant the conclusion on the undisputed and assumed facts here that Defendants were not entitled to a Rule 56 dismissal of the donning/doffing claims based upon § 254(a)(2).

　　　　Defendants are also not entitled to summary judgment on Plaintiffs' donning/doffing claims insofar as they pertain to equipment.  It is undisputed that

Plaintiffs are required to wear their equipment while on duty. All of that

equipment, except the bulletproof vest, is visible to the public and, hence, in

tandem with the uniform, serves to identify Plaintiffs to the public as Parks

Department personnel. The donning/doffing of that equipment is therefore integral

to principal activities of Plaintiffs. Where, as here, it must be assumed the

employer requires that Plaintiffs don/doff the bulletproof vest at the employer's

site, the donning/doffing is integral in that it is essential to the performance of

AUPR duties as a protective measure. *Cf., Edwards v. City of New York*, No. 08

Civ. 3134 (DLC), 2011 WL 3837130, at *7-8 (S.D.N.Y. Aug. 29, 2011)

(corrections officer donning/doffing bulletproof vest would be compensable if

employer required employee to don/doff at workplace).

## B. § 203(o) Has No Application In The Circumstances Of This Case.

As an alternative to their § 254(a)(2) contention, Defendants argue

that they have had a custom or practice of not compensating Plaintiffs for time

expended on donning or doffing uniforms/equipment and that Plaintiffs' union

effectively acquiesced to that custom or practice. Defendants say § 203(o) thus

excuses their failures to compensate Plaintiffs for such activities. This argument

ignores the limiting language of § 203(o) and the undisputed circumstances.

Plaintiffs show first why § 203(o) is irrelevant to Plaintiffs' claims based on

donning/doffing prior to March 31, 2013. Plaintiffs then show why § 203(o) does

9

not even excuse Defendants' failures to compensate Plaintiffs for donning/doffing activities on or after that date.

Through March 30, 2013

§ 203(o), enacted as Section 3(o) of the Fair Labor Standards Amendments of 1949, 63 Stat. 911, provides as follows:

> In determining for the purposes of sections 206 and 207 the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a collective bargaining agreement applicable to the particular employee.

The Supreme Court has held that this statutory language is to be interpreted as taking its ordinary, contemporary, common meaning. *Sandifer*, 134 S. Ct. at 876, quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979). Defendants' discussion of § 203(o) carefully avoids any mention of its opening clause. But that clause may not be so easily excised from § 203(o). Courts are to presume that every statutory clause has purpose and meaning and, therefore, every statute is to be read so as to give effect, if possible, to every clause and word. *See*, *e.g.*, *Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 99 (2d Cir. 2009) (applying this canon of construction to 29 U.S.C. § 203(r)(1)).

Congress's adoption of § 203(o) was intended to create an exception to an important, pre-existing FLSA rule. Before enactment of § 203(o), the

Supreme Court had made clear that rights otherwise guaranteed by §§ 206 and 207 may not be waived or otherwise contracted away by entry of employees' employer and union into a collective bargaining agreement ("CBA") purporting to relinquish at least in part the § 206 right to be paid at not less than the minimum wage rate for each hour of work performed and/or the § 207 right to be paid at one and one half times the regular rate for each hour worked in excess of 40 hours per week.  *See Martino v. Michigan Window Cleaning Co.*, 327 U.S. 173, 177-178 (1946) (agreement in CBA to exclude certain hours from determinations of hours worked weekly for purposes of calculating amount of employee's entitlement to overtime compensation under § 207 unenforceable); *Jewell Ridge Coal Corp. v. Local No. 6167*, 325 U.S. 161, 166-169 (1945) (CBA provision that certain hours worked by employee may be excluded when measuring employee's hours for purpose of calculating minimum weekly wages employer must pay under § 206 invalid); *see also Walling v. Harnischfeger Corp.*, 325 U.S. 427, 429-432 (1945); *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602-603 (1944).[6]

At the same time, Congress's inclusion in § 203(o) of its opening clause was intended to establish that § 203(o)'s authorization of exclusion of time

---

[6]    The authorities cited in the text are part of a broader line of cases in which courts have been alert to protect employees, whether unionized or not, from loss of FLSA rights through contracts or other private agreements, even where employees may have legal counsel.  *See*, *e.g.*, *D.A. Schulte v. Gangi*, 328 U.S. 108 (1946).  For a recent example of this line of cases, see this Court's opinion in *Cheeks v. Freeport Pancake House, Inc.*, No. 14-299-cv, 2015 WL 4664283 (2d Cir., Aug. 7, 2015).

11

expended on clothes changing or washing from measured working time does not apply in all circumstances but only where an employer is engaged in determining the number of hours worked by an employee in a week as part of the employer's calculation of the amount of minimum wages under § 206 and/or overtime compensation under § 207 to which the employee is entitled. In short, § 203(o) comes into play solely where an employee is being treated by the employer as otherwise entitled to minimum wages and/or overtime compensation under §§ 206 and 207. *Sandifer*, 134 S. Ct. at 874. Thus, § 203(o) is *not* applicable when an employee is being treated as exempt from the §§ 206 and 207 guarantees. *See*, *e.g.*, 29 C.F.R. § 778.103 ("If in any workweek an employee is covered by the [FLSA] *and is not exempt from its overtime pay requirements*, the employer must total the hours worked by the employee for him in that workweek … and pay overtime compensation for each hour worked in excess of the maximum hours applicable under [§ 207(a)(1)]." (Emphasis added).

Through commencement of Plaintiffs' action on June 22, 2012 (A50) and continuing to March 31, 2013, Defendants treated all employees performing the job of an AUPR, including Plaintiffs, as exempt from the protections of §§ 206 and 207.[7] Consequently, Defendants never made *any* determinations of the number of hours in a week prior to March 31, 2013 worked by any Plaintiff as an

---

[7] *See* Pls. 56.1, at ¶ 7 (A238); April 10, 2013 Letter to Hon. Alison J. Nathan from Diana Goell Voight (Ex. 88 to Reif Declaration) (Doc. 155).

AUPR "for the purposes of sections 206 and 207" because, in Defendants' view, those sections were inapplicable to Plaintiffs. In this circumstance, it is § 203(o) that did not apply to any time expended by Plaintiffs on donning/doffing uniforms prior to March 31, 2013.

After March 30, 2013

§ 203(o) is also irrelevant to Defendants' failures to compensate Plaintiffs for donning/doffing activities on or after March 31, 2013. Defendants contend that since the reclassification of Plaintiffs, there has been an exclusion of Plaintiffs' clothes-changing time from measured working time for purposes of §§ 206 and 207 by virtue of "a custom or practice under a collective bargaining agreement." Both parts of this argument fail.

Defendants' argument as to the existence of a custom or practice "under a collective bargaining agreement" is based solely upon the so-called "Blue Collar Agreement" and the "Citywide Agreement" attached to Declaration of Andrea O'Connor, Exs. C (Doc. 147-2) and D (Docs. 147-3 and 147-4). But these CBAs were negotiated when Defendants were treating Plaintiffs as exempt from the protections of §§ 206 and 207, and both expired well before the reclassification of Plaintiffs.[8] Ex. C is the most recent CBA applicable to Plaintiffs, as evidenced

---

[8] The record does not disclose when either the Blue Collar Agreement or the Citywide Agreement was negotiated, but the former was effective from March 3, 2008 to March 2, 2010 and was executed on March 30, 2012. *See* Doc. 147-2 at page 4. The Citywide Agreement was

13

by Defendants' inability to rely upon or even cite to any subsequent CBA.
Because no CBA has been "applicable to" Plaintiffs within the meaning of §
203(o) since March 2, 2010, Defendants' failures to compensate Plaintiffs for time
expended on clothes-changing after that date have not been pursuant to a custom or
practice "under a collective bargaining agreement." *See Anderson v. Cagle's, Inc.*,
488 F.3d 945, 958-959 (11th Cir. 2007) (policy of excluding clothes-changing time
from measured working time may constitute custom or practice under a CBA
within meaning of § 203(o) where policy "in force or effect at the time a CBA was
executed"); *accord*: *Allen v. McWane, Inc.*, 593 F.3d 449, 457 (5th Cir. 2010).[9]

   In addition, no "custom or practice" within the meaning of § 203(o)
has existed since March 31, 2013 pursuant to which time expended by Plaintiffs on
clothes-changing has been excluded by Defendants from measured working time.
Defendants' attempt to construct a "custom" from their failures to compensate
Plaintiffs for donning/doffing uniforms and the supposed union acquiescence to
such failures beginning with the period of the 1995-2001 Citywide Agreement
ignores the fact that during the period of that agreement and continuing until

---

in effect from January 1, 1995 through June 30, 2001 and was executed on May 19, 2000. *See*
Doc. 147-3 at pages 2 and 4 and Doc. 147-4 at page 6. Thus both were executed and effective
only during the period when Defendants were treating Plaintiffs as exempt.

[9]   Because of the failure of Defendants and Plaintiffs' union to enter into any CBA that
would govern Plaintiffs' employment after March 2, 2010, Plaintiffs' employment after that date
has been governed by *statute*, to wit, N.Y. Civil Service Law § 209-a(1)(e). *See Professional
Staff Cong.-CUNY v. N.Y.S. PERB*, 7 N.Y.3d 458, 824 N.Y.S.2d 577 (2006).

14

March 31, 2013, Defendants treated Plaintiffs as exempt from the protections of §§

206 and 207.  In that circumstance, it cannot fairly be said that Defendants have

had a "custom" of excluding time expended on changing clothes from measured

working time.  *See Arcadi v. Nestle Food Corp.*, 38 F.3d 672 (2d Cir. 1994).

      In *Arcadi*, the employer had a longstanding program under which

unionized employees voluntarily wore uniforms and were not compensated for

donning and doffing thereof.  In the course of 1990 collective bargaining

negotiations, the employer raised converting to a mandatory uniform program.

The unions proposed that employees be compensated for mandatory clothes-

changing.  The employer rejected and the unions then dropped their proposal.  The

resultant CBAs contained no reference to compensation for the mandatory clothes-

changing.  38 F.3d at 673-674.  In the employees' suit for compensation under the

FLSA for time expended on the mandatory clothes-changing, the employer argued

that its longtime exclusion of time expended on clothes-changing from

compensable working time constituted a "custom" within the meaning of §203(o).

This Court rejected that argument.  Noting that term "suggests an ongoing

understanding with some continuity," *id.* at 675, this Court observed:

> [T]he shift from a voluntary uniform program to an involuntary
> uniform policy largely vitiates the precedential effect of
> Nestle's prior policy of non-compensation for clothes-
> changing....  Because the mandatory uniform policy is new, we
> believe that there was no pertinent "custom."

15

*Id*.

The situation here is analogous to that in *Arcadi*: Defendants cannot rely on non-compensation of clothes-changing prior to March 31, 2013 to demonstrate a "custom" because such non-compensation was predicated on Defendants' treatment of Plaintiffs as exempt from the protections of §§ 206 and 207. "The shift" from treating Plaintiffs as exempt to treating them as covered by §§ 206 and 207 "largely vitiates the precedential effect of [Defendants'] prior policy of non-compensation for clothes-changing," *id*. at 675. Because treatment of Plaintiffs as entitled to the protections of §§ 206 and 207 was "new" as of March 31, 2013, "there was no pertinent 'custom'" of exclusion from compensable working time of time expended on clothes-changing. *Id*.

In *Arcadi*, this Court did not specifically discuss for how long an employer must engage in a course of conduct before it might properly be deemed a "custom" for purposes of § 203(o). However, the facts of that case are instructive. The relevant CBA had gone into effect on May 21, 1990. The employer's imposition of a mandatory uniform policy began February 25, 1991. The lawsuit was commenced in March, 1992. The order dismissing the action on summary judgment, which was affirmed by this Court, issued on January 14, 1994.[10] Accordingly, this Court's holding that there was no "custom" barred application of

---

[10] *See Arcadi v. Nestle Food Corp.*, 841 F. Supp. 477 (N.D.N.Y.), *aff'd*, 38 F.3d 672 (2d Cir. 1994).

§ 203(o) to the claims for compensation for donning/doffing at least in the 13 months the mandatory policy was in effect before the action was begun, if not until the district court's January 14, 1994 decision.

Since March 31, 2013, there have been no collective bargaining agreements entered into or understandings reached concerning whether time expended on clothes-changing would be excluded from measured working time. Thus there has been no "practice" concerning same. *See Arcadi*, 38 F.3d at 675 ("If the parties to a collective bargaining agreement negotiate over an issue and have an understanding that resolves it, then a 'practice' exists, even in the absence of express written terms.").

Contrary to Defendants' conclusory assertion (not supported by the record), Plaintiffs have always been paid for time expended on donning or doffing of uniforms/equipment when donning has occurred "at the beginning of" the workday promptly *after* the scheduled start of a Plaintiff's shift or when doffing has occurred at the "end of [the] workday" just *prior* to the scheduled conclusion of a Plaintiff's shift. *See* Declaration of Ralph Baselice at ¶¶ 9-10 (A230-231); Declaration of Eunice Hill at ¶ 7 (Doc. 155, Ex. 85). Such circumstances further show why there has been no "custom or practice" within the meaning of § 203(o) of excluding such time from measured working time.

17

Finally, it should be noted that Plaintiffs' bulletproof vests and other equipment are not "clothes." *See Sandifer*, 134 S. Ct. at 880. Time expended by Plaintiffs on donning/doffing equipment, whether pre- or post-March 31, 2013, could not possibly be brought within the reach of § 203(o)'s exclusion from measured working time unless Plaintiffs' time expended on donning/doffing uniforms fit within § 203(o). *See id.* at 880-881. As their time spent clothes-changing does not fit within § 203(o), *see supra*, it follows their time donning/doffing equipment cannot either.

Burden of Proof

Defendants allege summarily that the "burden" on their § 203(o) defense lies with Plaintiffs. *See* D. Br. at 37. This allegation is essentially academic: the facts material to determination of the § 203(o) defense are undisputed. *See*, *e.g.*, *Sandifer* (resolving dispute as to applicability of § 203(o) without allocating burden of proof where no dispute as to material facts). Nonetheless, it bears noting that Defendants' assertion is incorrect. Defendants say the burden lies with employees simply because the language in question appears in the definitions in § 203, rather than in § 213 (addressing certain exemptions), citing *Franklin v. Kellogg Co.*, 619 F.3d 604, 611-612 (6th Cir. 2010); *Allen*, 593 F.3d at 458.

18

Defendants mistakenly assume that the statutory language cannot create an exemption[11] unless it appears in § 213. Several cases are to the contrary. *E.g.*, *Jacobs*, 577 F.3d at 99 (§ 203(r)(1) creates "independent contractor exemption"); *Reich v. N.Y.C.T.A.*, 45 F.3d 646, 651 (2d Cir. 1995) (§ 254(a)(2) creates "exemptions" for preliminary/postliminary activities); *Avery v. City of Talladega*, 24 F.3d 1337, 1342 (11th Cir. 1994) (§ 207(k) creates "exemption" of certain hours worked from hours measured for purposes of § 207(a)(1)); *see also Holly Farms Corp. v. N.L.R.B.*, 517 U.S. 392, 401, 405 (1996) (deeming exclusion of agricultural laborers from N.L.R.A. definition of employee an "exemption").

Defendants' more basic mistake is their assumption that if a defense is not an exemption, it follows without more that the burden of proof lies with the plaintiff. With all respect, this is a non-sequitur. Under Fed. R. Civ. P. 8(c) there are at least 18 *other* circumstances where a defense to a federal claim may be an affirmative defense on which the defendant bears the burden of proof. *See*, *e.g.*, *Beck v. City of Cleveland, Ohio*, 390 F.3d 912, 926 n. 4 (6th Cir. 2004) (employer has burden to prove employee use of comp time would be unduly disruptive within meaning of § 207(o)(5) regardless whether that provision is in nature of exception to or exemption from FLSA obligation of employer to provide compensatory

---

[11] A defense that creates an exemption under the FLSA "is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-197 (1974).

19

leave).  In *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 740-741, n. 19 (1981), the Supreme Court termed § 203(o) an "exception" to the general FLSA rule set forth in *Martino* and *Jewell Ridge*.  *See* pages 10-11 *supra*.  Even assuming *arguendo* the Court used that term in contradistinction to "exemption," § 203(o) may still be an affirmative defense on which an employer bears the burden.  *E.g.*, *Valladon v. City of Oakland*, No. C 06-07478 SI, 2009 WL 3401263, at * 10 (N.D. Cal. Oct. 20, 2009) (§ 203(o) creates affirmative defense); *In re Cargill Meat Solutions*, 632 F. Supp. 2d 368, 384 (M.D. Pa. 2008) (employer "is required to satisfy the burden of proof in establishing a § 203(o) exception"); *Kassa v. Kerry, Inc.*, 487 F. Supp. 2d 1063, 1067-68 (D. Minn. 2007) (employer bears burden of proof on § 203(o) defense).

Under § 203(o), a CBA wherein an employees' union effectively agrees expressly or by omission that time expended on clothes-changing need not be compensated under the FLSA operates as a waiver of a pre-existing statutory right otherwise possessed by the employees.  *See Martino* and *Jewell Ridge*, *supra*. This defense is an "avoidance or affirmative defense" within the meaning of Fed. R. Civ. P. 8(c)(1), and the party asserting such a defense has the burden of proof. *Rivera-Flores v. Bristol-Myers Squibb Caribbean*, 112 F.3d 9, 12 (1st Cir. 1997) (where employee asserts federal claim, "[w]aiver and release are affirmative defenses on which the employer bears the burden," citing Fed. R. Civ. P. 8(c)).

Therefore, where, as here, the employer asserts a § 203(o) defense, the burden is properly placed on the employer. *See N.L.R.B. v. N.Y. Telephone Co.*, 930 F.2d 1009, 1011 (2d Cir. 1991) (where employer asserts union waived substantive statutory right by terms of CBA, burden on employer to prove waiver). And *see Johnson v. City of Columbia, S.C.*, 949 F.2d 127 (4th Cir. 1991) (*en banc*). In that case, a firefighter sought to redress his employer's failures to compensate him under the FLSA for so-called sleep time and meal time. The employer said its exclusions of such time from measured working time were justified by the plaintiff's agreement to those exclusions. The Court held:

> Since the City seeks to come within the meal time and sleep time exceptions, the burden is on the City to show that it is entitled to the benefits of those exceptions. Thus, the City has the burden of showing that Johnson expressly agreed to the exclusion of sleep time and meal time from the compensable hours that he worked.

*Id.* at 130 (citations omitted).

## C. The *De Minimis* Doctrine Does Not Apply Here.

As a second alternative to the § 254(a)(2) rationale, Defendants argue that the time expended by Plaintiffs on donning/doffing activities is *de minimis* and, therefore, they need not be compensated.

As an initial matter, Defendants' assertion of a *de minimis* defense here as to Plaintiffs' claims pertaining to donning/doffing of *uniforms*, *see* D. Br. at 33-36, is improper because Defendants failed to raise that defense to such claims

on their motion in the District Court. Defendants asserted a *de minimis* defense on their motion below solely as to that part of Plaintiffs' claims pertaining to time expended on donning/doffing *equipment*. Point II B(5) of their memorandum below was titled: "Alternatively, the Time Spent Donning and Doffing Equipment by Plaintiffs is *De Minimis*." *See* D. Memo. at ii and 19 (Doc. 149). In the first sentence of the text in Point II B(5), Defendants stated:

> [I]f the Court finds that plaintiffs' donning and doffing their *utility belts and bullet proof vests* are integral and indispensable to their principal activities and not excluded as time worked under § 203(o), defendants respectfully submit that the time spent donning/doffing this *equipment* is *de minimis*, and thus this claim should still be dismissed.

*Id.* at 19 (emphasis added, footnote omitted). There was not a single sentence in Defendants' entire memorandum discussing the *de minimis* doctrine applied to donning/doffing of uniforms.[12] In a footnote to the sentence quoted above, Defendants affirmatively stated they were *not* seeking to invoke the *de minimis* doctrine with respect to Plaintiffs' donning/doffing of uniforms and purported to explain why not. *Id*. at 19 n. 7. Notably, the text (and title) of each of the other four subdivisions of Point II B, concerning arguments other than the *de minimis* doctrine, discussed donning/doffing of equipment as well as of uniforms. *See id.* at 8-19.

---

[12]     *See also* Defendants' Reply Memorandum at 12 n. 3 (Doc. 162).

It is well-established that ordinarily an appellate court will not consider an issue raised for the first time on appeal. *Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 79-80 (2d Cir. 1999) (citing authorities). Particularly as Defendants seek to apply the *de minimis* doctrine to time expended on donning/doffing uniforms for the first time on this appeal after deliberately not presenting that contention below, there is no good reason impelling consideration of such issue here.

Defendants' argument directed to the donning/doffing of equipment is without merit. The equipment donned/doffed by each Plaintiff, *i.e.*, bulletproof vest, radio and utility belt to which is attached handcuffs, mace, baton, flashlight and memo book, does not constitute "clothes" within the meaning of § 203(o). *Sandifer*, 134 S. Ct. at 878-880. The Supreme Court has held that the donning/doffing of equipment which does not constitute "clothes" is not subject to the *de minimis* doctrine. *Id.* at 880. Accordingly, the only part of Defendants' argument that is properly before this Court must be rejected.

Even if the *de minimis* doctrine were applicable, Defendants could not prevail on such a defense on summary judgment. This Court has held that in determining whether time expended on an activity is *de minimis*, courts are to consider the practical administrative difficulty, if any, of recording the additional time, whether the work in question is performed on a regular basis and the size of

23

the claim in the aggregate. *See*, *e.g.*, *Singh v. City of New York*, 524 F.3d 361, 370-72 (2d Cir. 2008). The applicable Department of Labor regulation indicates that the first two of these are the most important factors: "An employer may not arbitrarily fail to count as hours worked, any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." (29 C.F.R. § 785.47).[13]

Plaintiffs have regularly expended time on donning/doffing equipment; indeed, Plaintiffs are required to perform such donning/doffing in connection with virtually every shift they work. *See* Declaration of Marlena Poelz-Giga at ¶ 11 (A193-194). And the time spent on such activities is clearly ascertainable: instead of waiting to clock in on the computer at the scheduled start of a shift, a Plaintiff need only clock in when (s)he begins the donning in question, which is performed at the command post where the clocking in is accomplished. And instead of clocking out at the scheduled end of a shift, a Plaintiff need only clock out upon completion of the doffing in question which is performed at the same site where the clocking out is performed. *See*, *e.g.*, Poelz-Giga Decl. at ¶ 21 (A196-197); Declaration of Earline Reed at ¶¶ 11-12 (Doc. 155, Ex. 28). In short, the *actual* start and end times for the performance of AUPR tasks are every bit as

---

[13] In *Sandifer*, the Supreme Court highlighted this regulation. *See* 134 S. Ct. at 880 n. 8; *see also Brubach*, 893 F. Supp. 2d at 1234-1235.

24

ascertainable as the start and end times which Plaintiffs otherwise record. The evidence shows that the donning of equipment, including as it does the daily testing of whether certain equipment is in working order, when aggregated with the doffing thereof, takes an average of 8-10 minutes per shift. *See*, *e.g.*, Poelz-Giga Decl. at ¶ 11 (A193-194); Declaration of Domingo Sanchez at ¶ 8 (A225). Given this combination of circumstances, partial summary judgment could not be granted to Defendants even were the *de minimis* doctrine applicable here.

## II.  THIS COURT SHOULD REINSTATE IN FULL ALL OF PLAINTIFFS' CLAIMS.

As is clear from Pls. Br., Plaintiffs seek reinstatement of all of their claims. Specifically, in addition to reinstatement of Plaintiffs' Second, Third and Sixth Causes of Action (A101-104) insofar as they claim compensation for time expended on pre- or post-shift donning/doffing of uniforms and equipment, Plaintiffs seek reinstatement of each of their other claims, which include:

1.  Second, Third and Sixth Causes of Action insofar as they seek such compensation under §§ 206 and 207 for Plaintiffs' pre- or post-shift development of deployment plans and completion of certain paperwork;

2.  Fourth Cause of Action (A102) and Sixth Cause of Action insofar as they seek such compensation for work performed during so-called meal breaks;

25

3.     First Cause of Action (seeking redress for failures to

compensate Plaintiffs under §§ 207(a)(1) or 207(o)(1) at one and one-half times

their regular rates of pay for overtime work performed at the express direction of

Defendants); and

4.     Fifth Cause of Action (seeking redress for payments in comp

time for overtime hours worked in excess of 480 overtime hours in violation of §

207(o)(3)(A)).

Defendants argued below that the Court should grant summary

judgment dismissing Plaintiffs' claims for compensation for pre-shift and post-shift

activities and for their work during meal breaks because Defendants neither knew

nor should have known of these activities/work.  They also argued that all of

Plaintiffs' claims were untimely insofar as they pertain to Defendants' conduct

occurring more than two years before Plaintiffs complained of said conduct.[14]

These arguments were the only bases asserted below for dismissal of the pre-

shift/post-shift claims (not pertaining to donning/doffing) and the meal break

claims.  The untimeliness argument was the only basis asserted for the partial

dismissal on summary judgment of the claims set forth in the First and Fifth

---

[14]     Plaintiffs vigorously opposed these contentions.  *See* Plaintiffs' Memorandum Of Law In Opposition To Defendants' Motion For Partial Summary Judgment at 4-15 (untimeliness) and at 31-34 (ignorance) (Doc. 157).  In the circumstances of this case, the Magistrate Judge termed Defendants' untimeliness contention "ridiculous."  *See* Transcript of June 13, 2013 Conference (Doc. 155, Ex. 92).

Causes of Action. The District Court did not address the untimeliness argument or the ignorance argument.

Defendants do not raise either of these arguments on Plaintiffs' appeal. They argue, however, that Plaintiffs have "waived" their claims pertaining to pre-shift and post-shift activities (except insofar as those claims concern donning/doffing), their meal break claims and *all* of their claims insofar as they accrued more than two years prior to Plaintiffs' assertions of those claims. The ostensible waiver is said to result from Plaintiffs' failures to address the ignorance and untimeliness arguments in their opening brief. *See* Ds. Br. at 45-47. The waiver contention is without merit.

As an initial matter, it is clear Plaintiffs have challenged here the effective dismissal of all of their claims, including those referenced above. Moreover, the cases cited by Defendants in support of their waiver contention, *see* Ds. Br. at 47, have no application. They were concerned with whether a failure by an appellant to address an issue in its opening brief barred the appellant from arguing that issue for the first time in its reply brief, where no manifest injustice would result were this Court to refuse to entertain the appellant's argument in its reply brief. Plaintiffs do not seek to address Defendants' ignorance or untimeliness

arguments here.[15]  Thus, the issue in those cases is not presented.  If Defendants

mean to suggest that not addressing Defendants' timeliness and ignorance

arguments in their opening appellate brief bars Plaintiffs from addressing those

arguments on remand, should Defendants reassert them below, they fail to cite any

case supporting such a notion.  The cases Defendants do cite are premised on

failures of the appellants there to comply with the Federal Rules of Appellate

Procedure.  *See Frank v. U.S.*, 78 F.3d 815, 832-833 (2d Cir. 1996), *judgment

vacated on other ground*, 521 U.S. 114 (1997).  There is no suggestion that

Plaintiffs have failed to comply with said Rules.  The cases invoked by Defendants

are therefore unavailing.[16]

---

[15]     Parenthetically, in an April, 2015 telephone conversation, Plaintiffs' counsel asked defense counsel whether Defendants intended to raise before this Court any of the defense contentions that were not addressed by the District Court and, if so, to identify same.  Defense counsel declined to answer either part of Plaintiffs' inquiry.

[16]     Defendants do not oppose the reinstatement of Plaintiffs' claims in their First and Fifth Causes of Action (A101, 103), except as to the timeliness of parts of those claims.

## <u>CONCLUSION</u>

The grant of summary judgment in favor of Defendants dismissing Plaintiffs' pre-shift donning and post-shift doffing claims should be vacated. The balance of the District Court's judgment should also be vacated and all of Plaintiffs' claims reinstated.

Dated: August 20, 2015

        Respectfully submitted,

        GLADSTEIN, REIF & MEGINNISS, LLP

        By:   /s/  James Reif
                James Reif (JR2974)
                Amelia K. Tuminaro (AT3490)
        817 Broadway, 6th Floor
        New York, New York 10003
        (212) 228-7727
        jreif@grmny.com
        atuminaro@grmny.com

        Attorneys for Plaintiffs-Appellants

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.     This reply brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 6,992 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in 14 point Times New Roman font.

Dated:  August 20, 2015

    /s/  James Reif
    James Reif
    Attorney for Plaintiffs-Appellants